NONCONFIDENTIAL<br>VERSION

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., <br><br>     Plaintiff, <br><br> v. <br><br>UNITED STATES, <br><br>     Defendant, <br><br> and <br><br>ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT GROUP AND ITS INDIVIDUAL MEMBERS, ET AL., <br><br>     Defendant-Intervenors. | Consol. Court No. 21-00246 |

### CONSOLIDATED PLAINTIFFS' REPLY BRIEF

JOHN M. HERRMANN<br>
PAUL C. ROSENTHAL<br>
R. ALAN LUBERDA<br>
JOSHUA R. MOREY<br>
JULIA A. KUELZOW<br>
KELLEY DRYE & WARREN LLP<br><br>
Counsel to Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its Individual Members, et al.

Dated: March 24, 2022

**NONCONFIDENTIAL VERSION**

## **Table of Contents**

**Page**

PETITIONERS' REPLY BRIEF ..................................................................................... 1

I. THE DEPARTMENT'S GRANT OF A DUTY DRAWBACK ADJUSTMENT TO ASSAN IS UNLAWFUL .................................................. 1

    A. The Department's Two-Pronged Test Was Not at Issue in Maverick Tube II and Is Not at Issue Here ........................................... 2

    B. Defendant and Assan Fail to Cite Record Evidence Establishing That Assan's Imports Were Capable of Being Used to Produce CAAS ............................................................................................. 5

II. COMMERCE'S RELIANCE ON ASSAN'S REPORTED FREIGHT CHARGES IS UNLAWFUL ........................................................................ 7

    A. Commerce's Failure to Address, Let Alone Acknowledge, Detracting Evidence Is Unlawful ....................................................... 7

    B. Commerce's Determination That Assan Cooperated to the Best of Its Ability Ignores Contrary Information on the Record of the Underlying Investigation ............................................................... 10

III. COMMERCE FAILED TO EXPLAIN ITS DECISION NOT TO APPLY AN ADVERSE INFERENCE IN ITS SELECTION OF FACTS AVAILABLE .................................................................................................. 11

IV. CONCLUSION ............................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S.,
   861 F.3d 1269 (Fed. Cir. 2017) ("Maverick Tube II") ................................................ *passim*

Motor Vehicle Mfrs. Ass'n v. State Farm Mut.,
   463 U.S. 29 (1983) ............................................................................................................9, 12

Nippon Steel Corp. v. United States,
   337 F.3d 1373 (Fed. Cir. 2003) ............................................................................................12

### **Administrative Determinations**

Decision Memorandum for the Preliminary Affirmative Determination in the
   Less-Than-Fair-Value Investigation of Common Alloy Aluminum Sheet from
   Turkey (Oct. 6, 2020) (PR 247) .............................................................................................11

Issues and Decision Memorandum for the Final Affirmative Determination in the
   Less-Than-Fair-Value Investigation of Common Alloy Aluminum Sheet from
   Turkey, and Final Negative Determination of Critical Circumstances
   (Dep't Commerce Mar. 1, 2021) (PR 330) ...................................................................... *passim*

Issues and Decision Memorandum for the Antidumping Duty (AD) Investigation
   of Certain Cold-Rolled Carbon Steel Flat Products (Cold-Rolled Steel) from
   Belgium (Dep't of Commerce Sept. 23, 2002), ref'd in, 67 Fed. Reg. 62,130
   (Oct. 3, 2002) (final results) ............................................................................................ 12-13

NONCONFIDENTIAL VERSION

## PETITIONERS' REPLY BRIEF

This brief, filed on behalf of the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members, Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc. (collectively, "Petitioners"), replies to Defendant's Consolidated Response to Plaintiff's and Consolidated Plaintiff's Motions for Judgement on the Agency Record (ECF No. 40) (hereinafter, "Def.'s Resp.") submitted by Defendant, the United States, and the Response Brief of Assan Aluminyum Sanayi Ve Ticaret A.S. to Petitioners' Rule 56.2 Motion for Judgement on the Agency Record (ECF No. 33) (hereinafter "Assan's Resp.") submitted on behalf of Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan"). For the reasons set forth in Petitioners' opening brief (ECF No. 29) ("Petitioners' 56.2 Br.") and this reply, the Court should grant Petitioners' Rule 56.2 motion for judgment on the agency record and remand the agency's decision for reconsideration consistent with Petitioners' request for relief.

I. **THE DEPARTMENT'S GRANT OF A DUTY DRAWBACK ADJUSTMENT TO ASSAN IS UNLAWFUL**

Defendant and Assan have failed to respond directly to Petitioners' central argument – that the Turkish government forgave Assan's import duty liability based on imports of [        ] that could not possibly have been used to produce CAAS due to their [                    ] As a result, the Court should find that the U.S. Department of Commerce's (the "Department" or "Commerce") determination to grant Assan a duty drawback adjustment is unlawful, and should remand Commerce's final determination for additional consideration of this issue.

A.  **The Department's Two-Pronged Test Was Not at Issue in *Maverick Tube II* and Is Not at Issue Here**

In responding to Petitioners' arguments, Defendant largely reiterates the analysis provided in the agency's Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Common Alloy Aluminum Sheet from Turkey, and Final Negative Determination of Critical Circumstances (Dep't Commerce Mar. 1, 2021) (PR 330) (hereinafter, "I&D Memo"), but fails to address the issues presented in Petitioners' opening brief.[1] See Def.'s Resp. at 12-15. Defendant first states that Petitioners argue "that Assan did not satisfy the two-pronged test to justify a duty drawback." Id. at 12. This is incorrect. Petitioners *did not* (and do not) argue that Assan failed to satisfy the two-pronged test. See Petitioners' 56.2 Br. at 18 ("Petitioners, however, *did not argue* that the duty drawback provision or Commerce's practice require 'actual use' of the imported input.") (emphasis added). For this same reason, Assan's explanation for why it satisfies the Department's two-pronged test is not responsive to Petitioners' claim. See Assan's Resp. at 4-6.

Similarly, Defendant states that Petitioners "misunderstand{} the law" because "Commerce lawfully determined that the conditions of *Maverick Tube* were satisfied because (1) the exemption from import duties is linked to the exportation of subject merchandise and (2) the inputs imported under the closed IPC are suitable to produce subject merchandise." Def.'s Resp. at 13. Contrary to Defendant's statement, however, "the conditions of *Maverick Tube*" are not the Department's two-pronged test. The legal question at issue in the Maverick Tube litigation

---

[1]  Documents in the administrative record are cited using the descriptions provided in the Index to the Administrative Record, filed with this Court on June 30, 2021 (ECF No. 15). Documents are cited by their confidential record number ("CR __") and/or their public record number ("PR __"), as appropriate.

was whether the Department's rejection of a respondent's claim for a duty drawback adjustment, because the respondent's imports were not capable of being used to produce the subject merchandise, was lawful. See Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S., 861 F.3d 1269, 1271 (Fed. Cir. 2017) (hereinafter, "Maverick Tube II"). As discussed in Petitioners' opening brief, although the respondent's duty liability on imports of hot-rolled steel was forgiven by the Turkish government, the imported hot-rolled steel was not suitable for use in manufacturing the merchandise that was exported to the United States (i.e., oil country tubular goods ("OCTG")). See Petitioners' 56.2 Br. at 10-12. The Court of Appeals for the Federal Circuit ("CAFC") concluded that the Department's interpretation of the statute (i.e., restricting a respondent's eligibility for a duty drawback adjustment to instances where the imported merchandise on which drawback was received was capable of being used in producing subject merchandise) was "entirely reasonable," because "allowing for duty drawbacks for goods unrelated to the subject merchandise contravenes the statutory goal of making apples-to-apples comparisons between foreign and United States prices." Id., 861 F.3d at 1274. Thus, the CAFC sustained Commerce's application of a threshold test – whether the imported inputs are capable of being used to produce the subject merchandise – in the certain factual circumstances that are applicable to the antidumping duty order on OCTG, and that are also applicable here. See Petitioners' 56.2 Br. at 12-13.

Defendant next argues that "tracing specific inputs into the production of specific exports, as advocated by the Aluminum Association, is unnecessary as long as Commerce's duty drawback adjustment results in a drawback duty neutral margin calculation." Def.'s Resp. at 14. Again, Petitioners did not (and do not) argue that the Department was required to trace specific inputs into the production of specific exports. Petitioners are fully aware of the agency's court-

approved two-pronged test for a duty drawback adjustment. However, the specific conditions of Maverick Tube II are implicated in this case based on the unique features of the scope of the underlying antidumping order, which includes as in-scope merchandise only aluminum sheet manufactured from a 1xxx-, 3xxx-, or 5xxx-series alloy, and the Harmonized Tariff Schedule. See Petitioners' 56.2 Br. at 12-13. As a result, the Department should have examined whether the imports upon which Assan claimed a duty drawback adjustment *were capable of being used* to produce CAAS. The Department, however, did not complete such an analysis and, as a result, the Court should instruct the agency to complete such an analysis on remand.

Assan adds that the Department's "longstanding practice {is} to grant a drawback adjustment for the amount of the duty foregone" and "any deviations" from application of this two-pronged test have been "categorically rejected." Assan's Resp. at 4. This is incorrect, however, as explained in Petitioners' opening brief. See Petitioners' 56.2 Br. at 16. Maverick Tube II involved a Turkish respondent's claim for duty drawback where the respondent satisfied the agency's two-pronged test (and the Turkish drawback system), but the Department denied the claim because the imports underlying the drawback claim were not capable of being used to produce the subject merchandise. See Maverick Tube II, 861 F.3d at 1271-72. The CAFC ultimately held that "allowing for duty drawbacks for goods unrelated to the subject merchandise," even where the foreign government granted the respondent duty drawback, "contravenes the statutory goal of making apples-to-apples comparisons between foreign and United States prices." Id., 861 F.3d at 1274. Thus, Assan is wrong in claiming that "any deviations" from the Department's two-pronged test have been "categorically rejected."

NONCONFIDENTIAL
VERSION

**B.    Defendant and Assan Fail to Cite Record Evidence Establishing That Assan's Imports Were Capable of Being Used to Produce CAAS**

In the closing sentences of its response brief, Defendant states that "substantial evidence suggests that at least one imported input under the closed IPC can be use in the production of subject merchandise." Def.'s Resp. at 14. In support of this claim, Defendant states that Assan's production process involved the use of the materials it imported. See id. As Petitioners demonstrated in their opening brief, however, this analysis is insufficient. Specifically, Assan imported what it referred to as [            ] See Response from Mayer Brown, LLP to Sec. of Commerce Pertaining to Assan Sec. C QR at 44, Exhibit C-11 (CR 52-62) (PR 142-43). Because CAAS is produced from only three series of aluminum alloys – specifically, 1xxx-, 3xxx-, and 5xxx-series alloys – Assan's description of the material inputs as [          ], did not establish that these inputs could be used to produce CAAS because [


] As a result, Assan failed to meet its burden of establishing eligibility for a duty drawback adjustment under Maverick Tube II.

Indeed, in response to Commerce's supplemental questionnaire directing Assan to indicate whether a sampling of the imports could be used to produce CAAS, Assan admitted that *none* of the import transactions identified by the Department involved inputs suitable for the production of CAAS. See Response from Mayer Brown, LLP to Sec. of Commerce Pertaining to Assan Verification QR at 14 (CR 373-82) (PR 305). Further, the documentation provided by Assan with respect to the specific import transactions identified in the Department's questionnaire confirmed that none of the imports could be used in the production of CAAS because [

] See id. at Exhibit V-21 (CR 373-82) (PR 305). As a result, the Department's explanation that Assan's imports were capable of being used to produce CAAS because (1) Assan's production process uses [          ], and (2) Assan imported [          ], is not supported by substantial evidence.

Assan similarly argues that Maverick Tube II is not applicable because "imported inputs ([          ]) are capable of being used to produce CAAS." Assan's Resp. at 7. In support of this claim, Assan argues that its imported [

          ] and, therefore, they can be used to produce CAAS. See Assan's Resp. at 9-10. As explained in Petitioners' opening brief (and again just above), the [          ] of Assan's imports are insufficient for determining whether the imported inputs are suitable for use in producing CAAS. See Petitioners' 56.2 Br. at 12-13. The important physical characteristic that Commerce must examine is the alloy of Assan's [          ], because CAAS is produced from only three series of aluminum alloys – 1xxx, 3xxx, and 5xxx. See id. This is directly analogous to the hot-rolled steel imports involved in the Maverick Tube II litigation. Hot-rolled steel is used to produce OCTG, but OCTG can only be produced using a specific grade of hot-rolled steel. Because the respondent in Maverick Tube II did not import a grade of hot-rolled steel that was capable of being used to produce OCTG (although it did import hot-rolled steel), the Department denied its duty drawback claim. Similarly here, the only record evidence [

          ] See Response from Mayer Brown, LLP to Sec. of Commerce Pertaining to Assan Verification QR at Exhibit V-21 (CR 373-82) (PR

305). Thus, the Department's determination that the conditions of <u>Maverick Tube II</u> are not met is not support supported by substantial evidence.

### II.   COMMERCE'S RELIANCE ON ASSAN'S REPORTED FREIGHT CHARGES IS UNLAWFUL

Defendant and Assan urge the Court to sustain Commerce's determination that Assan's affiliated freight charges were made at arm's length.  <u>See</u> Def.'s Resp. at 21-23; Assan's Resp. at 15-20.  The arguments by Defendant and Assan, however, look past contradictory record evidence, the wholesale failure of Commerce to address detracting evidence in the <u>Final Determination</u>, and the agency's unexplained adoption of Assan's reporting that was not responsive to Commerce's request.

#### A.   Commerce's Failure to Address, Let Alone Acknowledge, Detracting Evidence Is Unlawful

Defendant asserts that "{t}he Aluminum Association did not identify any deficiencies" or "contest the accuracy of the calculation." Def.'s Resp. Br. at 22.  To the contrary, however, Petitioners' affirmative administrative case brief addressing Commerce's preliminary determination explicitly challenged the Department's reliance on Assan's reported freight charges.  <u>See</u> Petitioners' Case Br. at 23-26 (CR 403) (PR 310). Specifically, and as discussed below, during the administrative proceedings, Petitioners challenged the accuracy and representativeness of the [           ] with respect to whether the freight charges were made at arm's length.[2]  <u>See id.</u> (CR 403) (PR 310).  The Department, however, did not address these arguments in reaching its final determination.

---

[2]   Commerce instructed Assan to:

> **{P}rovide a worksheet calculating the average price** that the affiliated company [           ] charged to unaffiliated

(cont'd on next page)

First, Assan's calculation of freight charges based on [          ] did not square with the level of [          ] in Assan's financial statements, and Assan never explained why [

          ] As Petitioners' explained in their administrative case brief, [

          ] it is unlikely that [



          ] See Petitioners' Case Br. at 21 (citing Response from Mayer Brown, LLP to Sec of Commerce Pertaining to Assan, Sec A QR, at Exh. A-18 (CR 21-23) (PR 117-19)). Commerce failed to address this issue, which was explicitly raised in Petitioners' administrative case brief, in the Final Determination.³

Second, Petitioners' case brief emphasized that the [          ] was for an [          ] as compared to [

          ] See Petitioners' Case Br. at 20 (CR 403) (PR 310) (citing SCQR at Exhibit

---

customers for the same logistical services related to transporting subject merchandise to the port for export. **Provide a price comparison of this average price to the average price reported for foreign inland freight**, noting the discount or premium between the two average prices.

Response from Mayer Brown, LLP to Sec. of Commerce Pertaining to Assan Suppl. Sec. C QR at 9 (CR 283-85) (PR 227) (hereinafter, "SCQR")(emphasis added).

³ Assan wrongly attempts to redirect the Court's focus – which should be on whether Commerce's determination is supported by substantial evidence – to Petitioners' alleged failure to explain why, in its view, domestic freight services would be viewed as a "foreign sale" in the accounting. See Assan's Resp. Br. at 18. Petitioners do not argue that domestic freight services should be viewed as "foreign sale," rather the [                                                                    ]

S4-15 (CR 283-85) (PR 227)). As Assan acknowledges, the [          ] it submitted is for a different route – specifically, from the [     ] plant to the same [         ] See Assan's Resp. Br. at 18 (citing SCQR at Exh. S4-15, at 3 (CR 283-284) (PR 227)). The fact that Petitioners did not quantify the precise difference between the two routes does not excuse the Department's failure to address that difference, let alone determine and explain whether it was meaningful, in its Final Determination.[4]

Third, Petitioners' administrative case brief pointed out that [      ] tax returns and financials demonstrated that the company [              ] further indicating that the company was not charging arm's length prices during the period of investigation.[5] See Petitioners' Case Br. at 22 (CR 403) (PR 310). Commerce, again, did not address this issue in the Final Determination.[6]

Thus, contrary to the Department's claim that Petitioners "did not identify any deficiencies" or "contest the accuracy of the calculation," Petitioners identified – in detail – record evidence that called into question the relevance and veracity of Assan's submitted information. I&D Memo at 18 (PR 330). Commerce's I&D Memo, therefore, cannot be read as providing a reasoned explanation, absent an explanation. Cf. Motor Vehicle Mfrs. Ass'n v. State

---

[4]  Assan's argument that "Petitioners' characterization of the difference in distance from Assan and the unaffiliated customer to the port was speculative and baseless" is inapposite, because the issue Petitioners raise is Commerce's failure to address this detracting evidence in the agency's final determination. Assan's Resp. at 18.

[5]  Indeed, as Assan observes, there is no "requirement" to demonstrate that the unaffiliated company was profitable. Cf. Assan's Resp. at 19. Again, the issue Petitioners raise is Commerce's failure to address, much less acknowledge, detracting evidence on the record that evinces that the [          ] is not an arm's length price for freight services.

[6]  Assan claims Petitioners did not identify any legal requirement that the affiliated company be profitable. See Assan's Resp. at 19. Petitioners' argument, however, is that this evidence detracts from the Department's finding that the freight charges were made at arm's length, and Commerce's failure to address this detracting evidence makes its Final Determination unlawful.

Farm Mut., 463 U.S. 29, 43 (1983) (requiring an agency to "'"articulate a satisfactory explanation for its action including 'a rational connection between the facts found and the choice made.'"') (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)). Accordingly, Commerce's reliance on Assan's reported freight charges is not supported by substantial evidence.

### B. Commerce's Determination That Assan Cooperated to the Best of Its Ability Ignores Contrary Information on the Record of the Underlying Investigation

More fundamentally, Commerce adopted Assan's reporting, even though [

] submitted by Assan failed to identify the "average price that the affiliated company

[           ] charged to unaffiliated customers," as requested by Commerce. See SCQR at 9 (CR 283-85) (PR 227). As emphasized by Petitioners during the administrative proceedings, Assan's response was insufficient – particularly when, as discussed above, the record indicated that the affiliated freight charges were not made at arm's length. See Petitioners' Case Br. at 20 (CR 403) (PR 310). Moreover, Assan only clarified in its rebuttal case brief – submitted after the administrative record was closed – that the [

] and an unaffiliated customer during the period of investigation – a late-stage admission that only underscored the questionable veracity of Assan's reporting, when the record indicated that [            ] likely had other unaffiliated customer transactions. See Brief from Mayer Brown, LLP to Sec. of Commerce Pertaining to Assan Rebuttal Brief at 17 (CR 404) (PR 317). Contrary to Assan's argument before this Court that Petitioners "provided no factual or legal basis supporting its purported interpretation that Assan's [

]," Petitioners *did* explain, in detail, why the record evidence indicated that the [     ] did not appear representative of average prices [            ] charged to

unaffiliated customers, as recounted above. Therefore, Commerce's conclusion that Assan "fully cooperated and provided all the information and documentation requested by Commerce in order to determine whether the price paid by Assan to the affiliated freight service provider was at arms-length" is not reasonable and is unsupported by substantial evidence. I&D Memo at 18 (PR 330). Petitioners respectfully urge that the Court to remand this matter to Commerce and, in doing so, instruct the agency to revisit its determination that Assan cooperated to the best of its ability.

### III. COMMERCE FAILED TO EXPLAIN ITS DECISION NOT TO APPLY AN ADVERSE INFERENCE IN ITS SELECTION OF FACTS AVAILABLE

Defendant's and Assan's assertion that Commerce sufficiently explained why it declined to apply an adverse inference in the selection of facts available for certain billing adjustments lacks support. See Def.'s Resp. at 23-24; Assan's Resp. at 22-23.

In the Preliminary Determination, Commerce found that Assan did not provide customer-specific documentation and, thus, failed to demonstrate its entitlement to billing adjustments to U.S. price. See Prelim. Calc. Mem. at 5-6 (CR 253) (PR 249); see also Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Common Alloy Aluminum Sheet from Turkey (Oct. 6, 2020) at 9 (PR 247). Therefore, the Department set Assan's reported upward adjustment to zero and the downward adjustment to the lowest reported value for such adjustments, resulting in a lower U.S. price and thus higher dumping margin for Assan. See Prelim. Calc. Memo at 5-6 (CR 253) (PR 249). In the Final Determination, however, Commerce reversed course and relied on Assan's reported information on the record for the downward adjustment, rather than the lowest reported value, even though

the record remained incomplete. See I&D Memo at 22-24 (PR 330). In explaining the determination to change its approach, the Department opaquely stated:

> **As discussed above, we disagree that use of an adverse inference under section 776(b) of the Act is warranted.** In the Preliminary Determination, we incorrectly set BILLADJ2U to the lowest reported value. For the final determination, we will use the reported information on the record for BILLADJ2U since this adjustment does not benefit Assan because it results in a lower U.S. price.

I&D Memo at 24 (PR 330) (emphasis added). Given that the application of adverse facts available relates to specific gaps in the record, and not the total disregard of information, Commerce's reference to its "discuss{ion} above" on an unrelated issue is not supported by substantial evidence or in accordance with law. See id.; cf. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983) (citing Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)) ("{T}he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'")).

Further, the Department's decision not to apply an adverse inference ignores Assan's repeated failure to provide the requested information supporting its claimed billing adjustments, demonstrating that Assan did not cooperate to the best of its ability. Cf. Assan's Resp. at 31-32. Commerce instructed Assan to correct and clarify certain aspects of its claimed billing adjustments reported for U.S. sales. Assan, however, did not follow the Department's instructions, nor did it provide documentation requested by the agency. See SCQR at 5-6 (CR 283-85) (PR 227). Absent this documentation, Commerce applied facts available, but problematically failed to address Assan's uncooperative behavior. See Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382-83 (Fed. Cir. 2003). For example, in Commerce's

investigation of certain cold-rolled carbon flat steel products from Belgium, Commerce applied partial AFA to a respondent's billing adjustments where the respondent similarly failed to provide requested information, despite multiple opportunities to do so in response to questionnaires issued by Commerce.  See <u>Issues and Decision Memorandum for the Antidumping Duty (AD) Investigation of Certain Cold-Rolled Carbon Steel Flat Products (Cold-Rolled Steel) from Belgium,</u> at Comment 9 (Dep't of Commerce Sept. 23, 2002), <u>ref'd</u> <u>in</u> 67 Fed. Reg. 62,130 (Oct. 3, 2002) (final results).  Assan's suggestion that the "voluntary" claimed billing adjustments obviates the possibility of AFA is contradicted by the Department's practice. <u>See</u> Assan's Resp. at 21.

In sum, Commerce's decision is not supported by substantial evidence and improperly allows Assan to benefit from its uncooperative behavior.

NONCONFIDENTIAL VERSION

## IV. CONCLUSION

For the reasons discussed above, Petitioners respectfully request that this Court:

1. Grant Petitioners' motion for judgment upon the agency record;

2. Remand the Department's <u>Final Determination</u> for the agency to reconsider its determination consistent with Petitioners' opening brief and this reply; and

3. Provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
PAUL C. ROSENTHAL
R. ALAN LUBERDA
JOSHUA R. MOREY
JULIA A. KUELZOW
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400
jherrmann@kelleydrye.com

Counsel to Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and Its Individual Members

Dated:  March 24, 2022

# CERTIFICATE OF COMPLIANCE
# WITH COURT OF INTERNATIONAL TRADE
# STANDARD CHAMBERS PROCEDURES

Pursuant to this Court's September 2, 2021 Order (ECF No. 20) setting the word limitation to Plaintiffs Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members, Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc.'s ("Petitioners") Reply Brief to 7,000 words, counsel to Petitioners certifies that this Brief contains 3,875 words, including footnotes.  The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

        Respectfully submitted,

        <u>/s/ John M. Herrmann</u>
        JOHN M. HERRMANN
        PAUL C. ROSENTHAL
        R. ALAN LUBERDA
        JOSHUA R. MOREY
        JULIA A. KUELZOW
        KELLEY DRYE & WARREN LLP
        3050 K Street, N.W., Suite 400
        Washington, D.C.  20007
        (202) 342-8400

        Counsel to Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and Its Individual Members

Dated:  March 24, 2022