UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., <br><br> *Plaintiff,* <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant,* <br><br> ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, et al., <br><br> *Defendant-Intervenors.* | **NON-CONFIDENTIAL VERSION** <br><br> Consol. Court No. 21-00246 <br><br> **Confidential Business Proprietary Information removed from pages: 3, 4, 5.** |

**PLAINTIFF'S POST-ARGUMENT SUBMISSION**

Leah N. Scarpelli
Matthew M. Nolan
Yun Gao

ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, D.C. 20006
Tel: (202) 857-6013
Fax: (202) 857-6395
Email: leah.scarpelli@afslaw.com

July 26, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., <br><br> *Plaintiff*, <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant*, <br><br> ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, et al., <br><br> *Defendant-Intervenors*. | **NON-CONFIDENTIAL VERSION** <br><br> Consol. Court No. 21-00246 <br><br> **Confidential Business Proprietary Information removed from pages: 3, 4, 5.** |

**PLAINTIFF'S POST-ARGUMENT SUBMISSION**

On behalf of Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan"), we respectfully provide this post-argument submission as directed by the Court during oral argument held on July 19, 2022. ECF 71.

**I.   Assan Is Entitled To A Duty Drawback Adjustment**

In its *Final Determination*, Commerce granted Assan a duty drawback adjustment based on its use of the Turkish drawback system, which has consistently been found to satisfy Commerce's two-prong test for drawback eligibility. *Common Alloy Aluminum Sheet from Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 13326 (Dep't Commerce Mar. 8, 2021) ("*Final Determination*"), P.R. 358, ECF 15-1, and accompanying Issues and Decision Memorandum ("*Final IDM*") at 8, P.R. 330, ECF 15-2. Specifically, Commerce's two-prong test requires: "(1) that the exemption is linked to the exportation of the subject

1

merchandise; and (2) that there are sufficient imports of the raw material to account for the duty drawback on the export of subject merchandise." *Id.*

The Turkish drawback system has been analyzed by Commerce and consistently found to satisfy its two-prong test. With regards to the first prong, Commerce has concluded that there is a "link" between inputs and the exports under the same Inward Processing Certificate ("IPC") pursuant to "the Turkish Resolution Concerning Domestic Processing Regime, Article 2 Scope, Article 9 Evaluation of Applications and Issuance of Certificate/Authorization, and Article 20 Failure to Realize Exportation, {which} collectively demonstrate that the import duty and its rebate or exemption are directly linked to, and dependent upon, one another." *Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 11227 (Dep't Commerce Feb. 24, 2021), and accompanying IDM at 13 (decision to grant duty drawback adjustment unchanged in final); *see also* Section C Questionnaire Response at Exh. C-8 (Jun. 29, 2020) ("Sec. C QR"), C.R. 52, P.R. 142-143. The second prong is satisfied by the Government of Turkey's ("GOT") closure of the IPC, which validates that there were sufficient imports and exports under the IPC number to qualify for the drawback program. *Id.* As Commerce has repeatedly found, "Turkish companies that meet the requirements under Turkey's Inward Processing Regime (IPR), which issues {IPCs}, *have satisfied the statute and two-prong test for duty drawback adjustments*." Memorandum from J. Maeder to J. Kessler, re: Decision Memorandum for the Preliminary Affirmative Determination in the Less Than Fair Value Investigation of Common Alloy Aluminum Sheet from Turkey at 10 (Oct. 6, 2020) ("Preliminary Decision Memo"), P.R. 247 (emphasis added); *see also Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final*

*Determination of No-Shipments; 2019-2020*, 87 Fed. Reg. 7118 (Dep't Commerce Feb 8, 2022), and accompanying IDM at 18 ("*Rebar IDM*").

Throughout the course of the investigation, Assan provided documentation demonstrating that it used the Turkish IPR system, imported [              ] inputs, exported subject merchandise, applied to the GOT for closure, and was ultimately granted a drawback adjustment under IPC [     ] upon a finding by the GOT that the provisions of the IPR had been satisfied. *See* Sec. C QR at Exhs. C-9-11, C.R. 52, P.R. 142-143. The documentation provided was consistent with that considered by Commerce and found to be sufficient in other recent proceedings involving Turkey. *See, e.g. Rebar IDM* at 17-18. Ignoring this recent precedent, Petitioner instead cites an inapplicable scenario considered in *Maverick Tube Corp. v. Toscelik Profil*, 861 F.3d 1269, 1272 (Fed. Cir. 2017) ("*Maverick II*"). This case, involving a 2013 investigation of a wholly separate product, considered the provision of the Turkish IPR governing "equivalent goods," which enabled a respondent to claim drawback on *domestically-acquired inputs*. *Maverick II* at 1271-72. Indeed, the equivalent goods provision of the IPR is only applicable in situations where exportation in advance occurs. Response Brief of Assan at 7 (Feb. 22, 2022) ("Assan Resp. Br.") (citing Sec. C QR at Exh. C-8, Art. 3), ECF 33 and 34 . In that circumstance, the exportation of goods produced from equivalent goods *purchased in the home market* occurs prior to the importation of the inputs. *Id*. The limitation of equivalent goods to home market inputs is clear in the plain language of the IPR law, which notes that equivalent goods may be used "*instead of the imported goods* used in obtaining the processed products." *Id*. (emphasis added).

While the respondent in *Maverick II* claimed drawback on "domestically-acquired" inputs under the equivalent goods provision of the IPR, Assan did not. *Compare Maverick II* at 1271 ("{Respondent} sourced *all* its J55 coils from a domestic Turkish producer") (emphasis added) *with* Section D Questionnaire Response at Exhs. D-5-6 (Jul. 2, 2020), C.R. 70, P.R. 148; *see also*

3

*Final IDM* at 11 ("Assan reported that it had substantial purchases of the imported input during the POI."). Petitioner's argument that the same "specific factual scenario" addressed in *Maverick II* is present here ignores this critical distinction between domestically-acquired inputs and imported [          ]. Defendant-Intervenors' Responses to Court's Questions for Oral Argument at 6 (Jul. 14, 2022), ECF 63, 65. The equivalent goods provision considered in *Maverick II* has no applicability in this case and there is, thus, no basis for Commerce to depart from its well-established two-prong test in considering Assan's drawback eligibility. *See* Assan Resp. Br. at 7-8 ("Assan has not reported use of the equivalent goods under IPC [     ] and record evidence demonstrates that Assan had sufficient imports to account for the duty drawback on its exports of CAAS under IPC [     ] without the purchase of equivalent goods in the domestic market.").

The Court's decision in *Eregli Demir Ve Celik Fabrikalari T.A.S, et al. v. United States*, 308 F.Supp.3d 1297 (Ct. Int'l Trade 2018), similarly provides no support for Petitioner's position. In *Eregli Demir*, the Court found that "Commerce has failed to articulate a clear standard by which it determines whether a link {between the imported inputs and the duties exempted upon export} has been met." *Id.* at 1316. Upon remand, however, Commerce reopened the record to confirm respondent's participation in the Turkish IPR, including by soliciting "legible and translated copies of the IPR documentation previously on the record, as well as additional information regarding how the . . . {GOT} monitors the company's participation in the duty drawback program." Final Results of Redetermination (July 20, 2018) at 10 (pursuant to the order issued in *Eregli Demir*, Consol. Ct. No. 16-00218, Slip Op. 18-27 (March 22, 2018), https://access.trade.gov/resources/remands/18-27.pdf (last accessed July 26, 2022)). Commerce ultimately found that the respondent satisfied the first prong of its test "based on the information in its IPR permits, and subsequent correspondence received from the GOT {, s}pecifically, the closing documents for IPR permit numbers{.}" *Id.* This exact same documentation, *i.e.* Assan's

4

application for IPC [     ] and the GOT's closing correspondence, is on the record in this investigation, establishing the requisite "link" to satisfy the first prong of Commerce's test. Sec. C QR at Exh. C-9, C.R. 52, P.R. 142-143.

Commerce's finding that Assan satisfied its two-prong test was therefore reasonable, supported by record evidence, and consistent with its determinations in past proceedings, including *Maverick II* and *Eregli Demir*.

## II. Commerce Should Have Granted Assan's Rebate Adjustment

Assan demonstrated that it was entitled to a home market ("HM") rebate adjustment based on its provision of supply contracts, rebate invoices, and bank receipts, which tied to the HM sales database and established that the terms and conditions of were known to the customer at the time of the sale. Supplemental Section B Questionnaire Response at Exh. S3-19 (Sept. 3, 2020), C.R. 255, P.R. 218. Assan relied on the actual volume sold to the customer and actual rebate paid to calculate the values reported in field REBATEH. Nothing on the record indicates that this reporting was inaccurate. Had Commerce required additional information to validate the claimed adjustment, it should have notified Assan of the deficiencies and given Assan the opportunity to provide additional information in a supplemental questionnaire, consistent with the Court's finding in *Jindal Poly Films Ltd. of India v. United States*, 365 F.Supp.3d 1379, 1387 (Ct. Int'l Trade 2019).

### III. There Is No Basis To Apply AFA

Commerce correctly found that there was no basis to provide AFA with regards to Assan's reporting of affiliated freight charges or claimed billing adjustments. Commerce has discretion to determine where AFA is appropriate and instead found that "Assan had fully cooperated and provided all the information and documentation requested by Commerce" in this investigation. *Final IDM* at 18. There is no indication that the reporting was inaccurate or that Assan did not answer Commerce's requests to the best of its ability. Application of AFA to a fully cooperative respondent like Assan serves no purpose and would have been an abuse of Commerce's discretion.

\* \* \*

Please contact the undersigned if there are any questions regarding this submission.

Respectfully submitted,

**/s/ Leah N. Scarpelli**
Leah N. Scarpelli
Matthew M. Nolan
Yun Gao

July 26, 2022                                   *Counsel for Assan Aluminyum Sanayi ve Ticaret A.S.*

## CERTIFICATE OF COMPLIANCE

Pursuant to the directions in the Court's directive regarding post-argument submissions, the undersigned certifies that Plaintiff's Post-Argument Submission, filed on July 26, 2022, is 1,493 words and therefore complies with the Court's word count limitation requirement of 1500 words.

<u>**/s/ Leah N. Scarpelli**</u>
Leah N. Scarpelli

*Counsel to Assan Aluminyum Sanayi ve Ticaret A.S.*