NON-CONFIDENTIAL

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., ) ) ) Plaintiff, ) ) ) v. ) ) ) UNITED STATES, ) ) Defendant ) ) and ) ) ALUMINUM ASSOCIATION COMMON ALLOY ) ALUMINUM SHEET TRADE ENFORCEMENT ) WORKING GROUP AND ITS INDIVIDUAL ) MEMBERS, ET AL., ) ) Defendant-Intervenors. ) ) | Consol. Court No. 21-00246 |

### CONSOLIDATED PLAINTIFFS' COMMENTS ON REMAND REDETERMINATION

          John M. Herrmann
          Paul C. Rosenthal
          Joshua R. Morey
          Kelley Drye & Warren LLP
          3050 K Street, N.W., Suite 400
          Washington, DC 20007
          (202) 342-8400

          **Counsel to Consolidated Plaintiffs**

**Dated: June 30, 2023**

NON-CONFIDENTIAL

## Table of Contents

<u>Page</u>

CONSOLIDATED PLAINTIFFS' COMMENTS ON REMAND REDETERMINATION .................................................................................................................1

I. THE DUTY DRAWBACK METHODOLOGY RELIED ON BY THE DEPARTMENT IN THE REMAND RESULTS IS CONTRARY TO THE STATUTE'S PLAIN LANGUAGE AND IS OTHERWISE UNLAWFUL ...........................................................................................................1

    A. Defendant's Duty Drawback Adjustment Calculation Significantly Overstates the Adjustment Applicable to Assan's U.S. Exports .............................1

    B. The Methodology Applied by the Department in the Remand Results Is Contrary to the Plain Language of the Statute and the Agency's Past Practice ...................................................................................................4

    C. The Department's Determination Is Inconsistent With a Nearly Identical Factual Scenario in Which the Department Calculated a Duty Drawback Adjustment for Assan Using a Different Methodology ........................................................................................................7

II. CONCLUSION ........................................................................................................11

NON-CONFIDENTIAL

# TABLE OF AUTHORITIES

Page(s)

### Cases

Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, Consol. Court No. 21-00246, Slip Op. 23-26 (CIT March 1, 2023) Common Alloy Aluminum Sheet from the Republic of Turkey Final Results of Redetermination Pursuant To Court Remand, May 31, 2023 (ECF No. 94) ("Remand Results") ............................ *passim*

Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi, A.Ş. v. United States, 439 F. Supp. 3d 1342 (Ct. Int'l Trade 2020) ........................................................................... 6

Uttam Galva Steels Ltd. v. United States, 997 F.3d 1192 (Fed. Cir. 2021) ................................................................................... 10, 11

### Statutes

19 U.S.C. § 1677a(c)(1) ................................................................................................................. 6

19 U.S.C. § 1677a(c)(1)(B) .................................................................................................. *passim*

### Administrative Decisions

Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Aluminum Foil from the Republic of Turkey (Dep't Commerce Sept. 16, 2021), ref'd in 86 Fed. Reg. 52,880 (Dep't Commerce Sept. 23, 2021) ............................................................................... 8

Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Steel Concrete Reinforcing Bar from Turkey; 2019-2020 (Dep't Commerce Feb. 2, 2022), ref'd in 87 Fed. Reg. 7,118 (Dep't Commerce Feb. 8, 2022) ("Rebar from Turkey I&D Memo") .......................................................................................................................... 6, 7

Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Steel Concrete Reinforcing Bar from Turkey; 2020-2021 (Dep't Commerce Feb. 1, 2023), ref'd in 88 Fed. Reg. 7,941 (Dep't Commerce Feb. 7, 2023) ......................................................................... 10

**CONSOLIDATED PLAINTIFFS' COMMENTS ON REMAND REDETERMINATION**

These comments, filed on behalf of the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members, Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc. (collectively, "Consolidated Plaintiffs"), challenge the U.S. Department of Commerce's ("Defendant") final results of redetermination pursuant to Court remand.  See Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, Consol. Court No. 21-00246, Slip Op. 23-26 (CIT March 1, 2023) Common Alloy Aluminum Sheet from the Republic of Turkey Final Results of Redetermination Pursuant To Court Remand, May 31, 2023 (ECF No. 94) (hereinafter, "Remand Results").  For the reasons set forth below, the duty drawback methodology relied on by Defendant in the Remand Results is fundamentally flawed, is not supported by substantial evidence, and is otherwise not in accordance with law.  As a result, Consolidated Plaintiffs urge this Court to remand Defendant's Remand Results for reconsideration and with instructions for Defendant to apply a duty drawback methodology that is consistent with the statute, Defendant's past practice, and the record evidence.

I.  **THE DUTY DRAWBACK METHODOLOGY RELIED ON BY THE DEPARTMENT IN THE REMAND RESULTS IS CONTRARY TO THE STATUTE'S PLAIN LANGUAGE AND IS OTHERWISE UNLAWFUL**

   A.  **Defendant's Duty Drawback Adjustment Calculation Significantly Overstates the Adjustment Applicable to Assan's U.S. Exports**

Defendant's calculation of a duty drawback adjustment with respect to Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan") involves two steps.  First, Defendant based Assan's drawback adjustment on the values Assan reported in variable DTYDRAWU, which

Assan calculated "by dividing the amount of duties exempted on the Inward Processing Certificate (IPC) closed during the POI over the total quantity of exports made under that closed IPC." Memo from USDOC to File Pertaining to Assan Draft Remand Analysis Memo at 2-3 (Remand CR 1) (Remand PR 2) (hereinafter, "Remand Calc Memo").[1] Second, the Department assigned the calculated drawback adjustment to <u>all</u> of Assan's U.S. sales, regardless of whether the sale was exported pursuant to a closed IPC. <u>See id.</u>

The Department's methodology is fundamentally flawed because it significantly overstates the duty drawback adjustment by increasing Assan's U.S. price for <u>all</u> sales by a per-unit amount that is applicable to only a small portion of Assan's U.S. sales. More specifically, Assan calculated a drawback adjustment of [     ] USD per metric ton by dividing the total customs duties exempted pursuant to IPC [     ] by the total quantity of exports Assan made pursuant to this same IPC. <u>See</u> Response from Mayer Brown, LLP to Sec of Commerce Pertaining to Assan Sec C QR at Exh. C-12 (CR 52) (PR 142-143) (hereinafter, "CQR"). Consequently, the resulting per-unit drawback adjustment of [     ] USD per metric ton was obtained by Assan only for export shipments made pursuant to IPC [     ]. Assan (and Defendant) then improperly assigned this per-unit drawback amount to <u>all</u> of Assan's

---

[1]   Documents in the administrative record compiled in connection with the <u>Remand Results</u> are cited using the descriptions provided in the Index to the Administrative Record, filed with this Court on June 23, 2023 (ECF No. 97). Documents are cited by their confidential record number ("Remand CR __") and/or their public record number ("Remand PR __"), as appropriate. Additionally, documents in administrative record compiled in connection with the Department's original determination are cited using the descriptions provided in the Index to the Administrative Record, filed with this Court on June 30, 2021 (ECF No. 15). These documents are cited by their confidential record number ("CR __") and/or their public record number ("PR __"), as appropriate.

U.S. sales. See Remand Calc Memo at 3 (Remand CR 1) (Remand PR 2).[2] As a result, the total amount of the duty drawback adjustment applied by the Department in the Remand Results is [          ] USD, i.e., [       ] USD per metric multiplied by the total quantity of Assan's U.S. sales of [          ] metric tons. Moreover, during the period of investigation ("POI"), Assan had total export sales of [          ] metric tons. See Response from Mayer Brown, LLP to Sec of Commerce Pertaining to Assan Supp. B QR at Exh. S3-11 Part IIa (Sept. 3, 2020) (CR 253-281) (PR 217-218).

If one assumed that all of Assan's exports during the POI were eligible for a duty drawback adjustment of [       ] USD per metric ton (as the Department did in the Remand Results for all of Assan's U.S. sales), rather than only export sales made pursuant to IPC [     ], the total forgiven duty liability would be [

                                    ] In contrast, the total amount of duties actually forgiven by the Turkish government under IPC [       ] is [           ] USD. See CQR at Exh. C-12 (CR 52) (PR 142-143); Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts on Draft Remand at 4-5, Attachment 1 (Remand CR 11) (Remand PR 8) (hereinafter, "Petitioners' Cmts. on Draft Remand").[3]

As such, Defendant's improper and flawed methodology increased Assan's U.S. price using a duty drawback adjustment that accounts for more than [     ] percent (i.e., [          ] USD (the total amount of the drawback adjustment applied by the Department in the Remand

---

[2] This is also evident in the electronic files accompanying the Department's Remand Results, which show that variable DTYDRAWU is [       ] USD per metric ton for all of Assan's U.S. sale.

[3] This figure is calculated by summing the [              ] column and multiplying it by [     ] percent, which is the [              ] applicable [              ]. Id.

Results) / [          ] USD (the total amount of duties forgiven by the Turkish government under IPC [    ])) of the total amount of duty liability forgiven by the Turkish government under IPC [    ]. IPC [    ], however, was not closed using only exports to the United States. CQR at Exhs. C-11 - C-12 (CR 52) (PR 142-143). Nor were the exports Assan used to close IPC [    ] exclusively exported during the period of investigation ("POI") – or even exclusively of subject merchandise. Id. at Exh. C-12 (CR 52) (PR 142-143). As a result, Defendant's methodology significantly overstates the drawback adjustment by increasing Assan's U.S. prices by duty liability forgiven by the Turkish government that is unrelated to Assan's exports of subject merchandise to the United States during the period of investigation.

### B. The Methodology Applied by the Department in the Remand Results Is Contrary to the Plain Language of the Statute and the Agency's Past Practice

The statute provides that "{t}he price used to establish export price and constructed export price shall be—(1) increased by . . . (B) the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." 19 U.S.C. § 1677a(c)(1)(B). As noted above in section I.A., the Department calculated a per-unit duty drawback adjustment based on duty liability forgiven by the Turkish government on an IPC that Assan closed using exports to the United States – and other countries, and then increased the U.S. price of *all* of Assan's sales by the per unit amount, regardless of whether those sales were exported pursuant to the closed IPC. The Department's methodology is contrary to the statute's plain language.

Assan exported [          ] metric tons of merchandise pursuant to IPC [     ] (see CQR at Exh. C-12 (CR 52) (PR 142-143)), but:

- Only [          ] metric tons of those exports were destined for the United States,

- Only [          ] metric tons of those exports were [

  ], and

- Only [      ] metric tons were destined for the United States during the period of investigation ("POI").

See CQR at Exh. C-12 (CR 52) (PR 142-143); Petitioners' Cmts. on Draft Remand at 4-5, Attachment 1 (Remand CR 11) (Remand PR 8). The volume of merchandise that meets all three criteria is [     ] metric tons. Id. Thus, while Assan's exports of subject merchandise to the United Stated during the POI account for [        ] percent (i.e., [       ] metric tons / [          ] metric tons) of Assan's exports under IPC [     ], the Defendant assigned more than [   ] percent (see supra section I.A) of the total amount of duty liability forgiven by the Turkish government under IPC [     ] to such exports.

Moreover, the Department's methodology incorporates all customs duty liability forgiven by the Turkish government on imports under IPC [      ], despite the fact that the liability was extinguished by non-subject merchandise, merchandise exported to third countries, and merchandise exported outside of the Department's period of investigation. This is contrary to the statute's plain language for the following reasons.

First, the statute provides that the U.S. price shall be increased by any import duty liability that has been forgiven "by reason of the exportation of the *subject merchandise* . . . ." 19 U.S.C. § 1677a(c)(1)(B) (emphasis added). As noted above, the duty drawback methodology relied on in the Remand Results increases Assan's U.S. prices in connection with duty liability that the Turkish government forgave based on Assan's exports of non-subject merchandise, i.e., merchandise classifiable under HTS codes beginning with [

].

See CQR at Exh. C-12 (CR 52) (PR 142-143). Because these exports are by definition <u>not</u> "subject merchandise," the Department's methodology is contrary to the statute's plain language.

<u>Second</u>, the statute also provides that the U.S. price shall be increased by any import duty liability that has been forgiven "by reason of the exportation of the subject merchandise ***to the United States***." 19 U.S.C. § 1677a(c)(1)(B) (emphasis added). As noted above, the duty drawback methodology applied by the Department incorporates duty liability that the Turkish government forgave based on Assan's exports of merchandise to countries other than the United States. See CQR at Exh. C-12 (CR 52) (PR 142-143). Because the Department's methodology increases Assan's U.S. prices by duty liability that was forgiven on the basis of Assan's exports to countries other than the United States, it is contrary to the statute's plain language.

<u>Third</u>, the statutory language plainly ties the duty drawback adjustment to the prices used to establish export price and constructed export prices, and the only relevant prices used to establish export price and constructed export prices are those prices relevant to U.S. sales made during the period of investigation. 19 U.S.C. § 1677a(c)(1) (stating that "{t}he price used to establish export price and constructed export price shall be—(1) increased by . . ."). Thus, there is a temporal aspect of the statute that the Department's methodology ignores. Indeed, the Department's longstanding practice is to grant a duty drawback adjustment with respect to only those IPCs that are closed. See <u>Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi, A.Ş. v. United States</u>, 439 F. Supp. 3d 1342, 1349 (Ct. Int'l Trade 2020) ("Commerce reasonably predicates its inclusion of IPCs on evidence of closure as demonstrating final duty exemption."); <u>Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Steel Concrete Reinforcing Bar from Turkey; 2019-2020</u> (Dep't Commerce Feb. 2, 2022) at 18, <u>ref'd</u> <u>in</u> 87 Fed. Reg. 7,118 (Dep't Commerce Feb. 8, 2022) ("Commerce's

practice is to use closed IPCs only for purposes of calculating a duty drawback adjustment.") ("Rebar from Turkey I&D Memo"). The Department's decision on remand to calculate a per-unit duty drawback adjustment inclusive of all duty liability forgiven by the Turkish government pursuant to Assan's closed IPC, and to then increase the U.S. price for all sales by the per unit amount calculated using IPC [      ], regardless of whether the sales were exported pursuant to IPC [    ], completely undermines the Department's reasoning for limiting the duty drawback to only closed IPCs. As the Department explained in Rebar from Turkey:

> application for closure or evidence that the IPC is complete is sufficient information for a company to demonstrate that the second prong of the two-prong test is met. This is because the duty liability remains contingent until the approval letter from the GOT is issued. A paid duty or duty liability does not qualify as a drawn back duty until the refund occurs or the liability is extinguished by the government.

Rebar from Turkey I&D Memo at 18. Similarly, the fact that only a small fraction of Assan's exports -- [      ] metric tons[4] -- could be included in Assan's U.S. sales database, completely undermines the Department's decision to grant the per unit adjustment to all of Assan's sales, as these sales are "linked" to imports for which the Turkish government has not extinguished duty liability under the Department's two-pronged test.

### C. The Department's Determination Is Inconsistent With a Nearly Identical Factual Scenario in Which the Department Calculated a Duty Drawback Adjustment for Assan Using a Different Methodology

Noting that the Department's duty drawback methodology is unlawful and contrary to the plain language of the statute in comments on the Department's draft remand, Consolidated

---

[4]   Calculated using only exports with a destination of the United States, an HTS code of [                                           ], and a [                                ] within the period of investigation – January 1, 2019 – December 31, 2019.

Plaintiffs urged the Department to instead adopt the methodology used by the Department to calculate Assan's duty drawback adjustment in the recently completed investigation of aluminum foil from Turkey.  See Petitioners' Cmts. on Draft Remand at 5-6 (Remand CR 11) (Remand PR 8) (citing Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Aluminum Foil from the Republic of Turkey (Dep't Commerce Sept. 16, 2021) at 28, ref'd in 86 Fed. Reg. 52,880 (Dep't Commerce Sept. 23, 2021) (stating that "we have calculated a per-unit duty drawback adjustment based on: (1) the total amount of duty drawback for exempted import duties associated with exports of subject merchandise during the POI, that fall under the Harmonized Tariff Schedule subheadings for in-scope merchandise; and (2) the total quantity of sales during the POI in the U.S. sales data (i.e., the total amount of the duty drawback benefit has been allocated over all reported U.S. sales.")).  What makes the Department's determination even more on point is that it was made with respect to Assan and for a very similar time period.  See id. at 1 (identifying the period of investigation as July 1, 2019 to June 30, 2020 and Assan as the mandatory respondent).

Consolidated Plaintiffs do not urge the Court to direct the Department's methodology on remand, as there may be more than one that is consistent with the statute.  However, the Department's explanation for declining to rely on the methodology employed in CAF from Turkey, is unreasonable and therefore unlawful.  Specifically, the Department states that Consolidated Plaintiffs' arguments were:

> subsequently addressed in Rebar from Turkey, finding that the statutory purpose of the duty drawback provision is fulfilled by eliminating, to the extent possible, any effect of the Turkish duty drawback system on the dumping calculations by spreading the duty actually drawn back generally over all the exports in the closed IPC. The petitioners' argument suffers the same deficiencies as those noted by Commerce in Rebar from Turkey

-8-

> Final Results, where Commerce rejected a similar argument on the basis that it amounts to attempting specific tracing of imported inputs into a specific product being produced and whether that specific product is exported, even though the Turkish duty drawback system does not require these specific links for duty drawback to be granted. As articulated in the Federal Circuit case Uttam Galva Steels, "the duty drawback statute requires an adjustment to "export price" based on the full extent of the duty drawback." The statute does not impose an additional requirement that the respondent trace particular imported goods to U.S. exports. Moreover, the Federal Circuit went as far as to state that "{i}t does not make a difference whether the imported inputs that qualified for a drawback were actually incorporated into goods sold in the exporter's domestic market because the {foreign} government credited the drawback to the quantity of goods that were in fact exported … ." The Court explained that the entire drawback was allowed "by reason of exportation."

Remand Results, at 12-13. The Department's explanation is wrong and unlawful for several reasons.

First, as explained above in Section I.B., contrary to the Department's statement that "the entire drawback was allowed 'by reason of exportation,'"[5] the statute explicitly provides that a duty drawback adjustment is allowed "by reason of the exportation of the ***subject merchandise*** to the ***United States***." 19 U.S.C. § 1677a(c)(1)(B) (emphasis added). As further discussed in Section I.B., the Department's methodology on remand is not based on duty liability extinguished by the Turkish government "by reason of the exportation of the subject merchandise" or "by reason of the exportation" of any merchandise "to the United States." As a result, the Department's analysis is contrary to the statute's plain language.

Second, contrary to the Department's explanation, Rebar from Turkey did not reject the methodology proposed by Consolidated Plaintiffs' in their comments on remand. In Rebar from

---

[5] Remand Results, at 13.

Turkey, the Department explained that an interested party argued that the agency should revise the margin calculations for one of the respondents because the respondent "did not receive duty drawback in certain months of the POR" and should "calculate{} an inflation adjusted amount for each month of the POR." Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Steel Concrete Reinforcing Bar from Turkey; 2020-2021 (Dep't Commerce Feb. 1, 2023) at 20, ref'd in 88 Fed. Reg. 7,941 (Dep't Commerce Feb. 7, 2023). Consolidated Plaintiffs did not make either of these arguments.

Instead, Consolidated Plaintiffs: (1) explained why the Department's duty drawback methodology was unreasonably inflated and contrary to the statute (see Petitioners' Cmts. on Draft Remand at 3-5 (Remand CR 11) (Remand PR 8)); and (2) suggested an alternative methodology that is consistent with the statute's plain language. Consolidated Plaintiffs' suggested methodology does not address adjusting for inflation, and in fact continued to assign the adjustment to all U.S. sales, regardless of whether they were exported during the time period when IPC [     ] remained open. See id. at 5-7, Attachment 1 (Remand CR 11) (Remand PR 8). Thus, the Department's assertion that it was rejecting Consolidated Plaintiffs' suggested methodology because the agency had already addressed Consolidated Plaintiffs' arguments in Rebar from Turkey is wrong.

Last, the Department's citation to Uttam Galva is also inapposite. That case involved the Department's decision to "allocate{} the import duties exempted or rebated 'based on the import duty absorbed into, or imbedded in, the overall cost of producing the merchandise under consideration,'" which in effect "attribute{d} some portion of the duty drawbacks to home market sales and another portion to U.S. exports." Uttam Galva Steels Ltd. v. United States, 997 F.3d 1192, 1196 (Fed. Cir. 2021). In other words, the case did not involve an analysis of

whether the statute permits the Department to calculate a duty drawback adjustment based on a respondent's exportation of non-subject merchandise, during a period other than the period of investigation, to countries other than the United States. In fact, in rejecting the Department's methodology, the Court explained that:

> {i}t does not make a difference whether the imported inputs that qualified for a drawback were actually incorporated into goods sold in the exporter's domestic market because the Indian government credited the drawback to the quantity of goods that were in fact exported, *whatever the source of the inputs used to produce foreign goods*.

Id., 997 F.3d at 1198 (emphasis added). In other words, the Court's analysis was focused on the source and final consumption of the imported goods, whereas here, the question is the destination of the exported merchandise, which is a requirement that is specified explicitly in the statute, which provides that a drawback adjustment may be made "by reason of the exportation of the subject merchandise to the *United States*." 19 U.S.C. § 1677a(c)(1)(B).

In sum, all of the reasons the Department provided for rejecting Consolidated Plaintiffs' proposed alternative methodology are wrong and, as a result, the Department's rejection of Consolidated Plaintiffs' proposed alternative methodology is unsupported by substantial evidence and otherwise unlawful.

## II.    CONCLUSION

For the reasons set forth above, Consolidated Plaintiffs respectfully urge this Court to determine that the Department's Remand Results are not supported by substantial evidence and are otherwise not in accordance with law. Consolidated Plaintiffs, therefore, urge this Court to remand the Remand Results to the Department with instructions to calculate a duty drawback adjustment that is consistent with the statute's plain language.

NON-CONFIDENTIAL

        Respectfully submitted,

        /s/ John M. Herrmann
        JOHN M. HERRMANN
        PAUL C. ROSENTHAL
        JOSHUA R. MOREY
        KELLEY DRYE & WARREN LLP
        3050 K Street, N.W., Suite 400
        Washington, DC  20007
        (202) 342-8400

        Counsel to Consolidated Plaintiffs

Dated:  June 30, 2023

CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES

Pursuant to the Court of International Trade Standard Chambers procedures, and the U.S. Court of International Trade's decision in <u>Assan Aluminyum Sanayi ve Ticaret A.S. v. United States</u>, 624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) setting the word limitation for comments on Remand to 10,000 words, counsel to Consolidated Plaintiffs, certifies that these Comments challenging U.S. Department of Commerce's ("Defendant") final results of redetermination pursuant to Court remand (<u>see</u> Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, Consol. Court No. 21-00246, Slip Op. 23-26 (CIT March 1, 2023) Common Alloy Aluminum Sheet from the Republic of Turkey Final Results of Redetermination Pursuant To Court Remand, May 31, 2023 (ECF No. 94)) contain 3,555 words, including footnotes.  The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

                                                          /s/ John M. Herrmann
                                                          JOHN M. HERRMANN
                                                          PAUL C. ROSENTHAL
                                                          JOSHUA R. MOREY
                                                          KELLEY DRYE & WARREN LLP
                                                          3050 K Street, N.W., Suite 400
                                                          Washington, DC  20007
                                                          (202) 342-8400

                                                          Counsel to Consolidated Plaintiffs

Dated:  June 30, 2023