UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) Consol. Court No. 21-00246 |
| *Defendant*, | ) ) ) |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, et al., | ) ) ) ) |
| *Defendant-Intervenors.* | ) ) ) |

**ASSAN'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

Leah N. Scarpelli
Matthew M. Nolan
Jessica R. DiPietro

ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, D.C. 20006
Tel: (202) 857-6013
Fax: (202) 857-6395
Email: leah.scarpelli@afslaw.com

July 31, 2023

## TABLE OF CONTENTS

Page

I. COMMERCE PROPERLY CALCULATED ASSAN'S DUTY DRAWBACK
ADJUSTMENT .................................................................................................... 2

    A. COMMERCE'S DRAWBACK CALCULATION PROPERLY
CAPTURES THE AMOUNT OF DRAWBACK RECEIVED BY ASSAN
DURING THE POI ................................................................................... 2

    B. COMMERCE'S DRAWBACK CALCULATION IS CONSISTENT
WITH THE PLAIN LANGUAGE OF THE STATUTE ............................ 4

    C. COMMERCE'S DRAWBACK CALCULATION COMPORTS WITH
ITS PRACTICE IN OTHER RECENT CASES ........................................ 7

II. CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Algoma Steel Corp., Ltd. v. United States*,
   865 F.2d 240 (Fed. Cir. 1989)......................................................................................8

*Assan Aluminyum Sanayi v. Ticaret A.S. v. United States*,
   624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) .........................................................2, 6, 9

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
   222 F. Supp. 3d 1255 (Ct. Int'l Trade 2017) ...............................................................5

*Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States*,
   415 F. Supp. 3d 1195 (Ct. Int'l Trade 2019) ............................................................5, 8

*Maverick Tube Corp. v. United States*,
   861 F.3d 1269 (Fed. Cir. 2017).....................................................................................5

*NMB Sing. Ltd. v. United States*,
   557 F.3d 1316 (Fed. Cir. 2009).....................................................................................8

*Saha Thai Steel Pipe (Pub.) Co. v. United States*,
   635 F.3d 1335 (Fed. Cir. 2011).....................................................................................9

*Uttam Galva Steels Ltd. v. United States*,
   311 F. Supp. 3d 1345 (Ct. Int'l Trade 2018), *aff'd* 997 F.3d 1192 (Fed Cir.
   2021) ............................................................................................................................2

*Uttam Galva Steels Ltd. v. United States*,
   997 F.3d 1192 (Fed Cir. 2021)..........................................................................2, 6, 11

**Federal Statutes**

19 U.S.C. § 1677a(c)(1)(B)................................................................................... *passim*

**Regulations**

*Certain Aluminum Foil from the Republic of Turkey: Final Affirmative
   Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 52880 (Dep't
   Commerce Sept. 23, 2021)...........................................................................................7

*Common Alloy Aluminum Sheet From Turkey: Final Affirmative Determination of
   Sales at Less Than Fair Value*, 86 Fed. Reg. 13326 (Dep't Commerce Mar. 8,
   2021), and accompanying Issues and Decision Memorandum................................5, 9

*Common Alloy Aluminum Sheet from Turkey: Preliminary Results of Antidumping Duty Administrative Review; 2020–2022*, 88 Fed. Reg. 30089 (Dep't Commerce May 10, 2023), and accompanying Issues and Decision Memorandum ..................................................................................................................8

*Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2021*, 88 Fed. Reg. 7941 (Dep't Commerce Feb. 7, 2023) ......................6, 22

**Other Authorities**

*Antidumping Methodologies: Market Economy Inputs, Expected Non-Market Economy Wages, Duty Drawback; and Request for Comments*, 71 Fed. Reg. 61716, 61723 (Dep't Commerce Oct. 19, 2006) ......................................................................10

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |  |
|---|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | Consol. Court No. 21-00246 |
| *Defendant*, | ) ) ) | |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, et al., | ) ) ) ) | |
| *Defendant-Intervenors.* | ) ) | |

## ASSAN'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

Plaintiff Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan") provides the following response to the comments filed on behalf the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members, Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc. (collectively, "Petitioners"), Consolidated Plaintiffs' Comments on Remand (June 30, 2023), ECF No. 101 ("Petitioners' Comments"). For the reasons set forth below, and in Assan's comments on the Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant To Court Remand (May 31, 2023), ECF No. 94 ( "Final Remand Redetermination"), the Court should sustain Commerce's duty drawback calculation in the Final Remand Redetermination, which properly captures all exports and imports under the closed inward processing certificate ("IPC") during the period of investigation ("POI"), comports with the plain

language and purpose of the duty drawback provision, and is consistent with Commerce's practice in other recent cases.

## I. COMMERCE PROPERLY CALCULATED ASSAN'S DUTY DRAWBACK ADJUSTMENT

In its Remand Order, the Court "sustained Commerce's general grant of a duty drawback adjustment to Assan," but found the calculation of that adjustment to be unlawful based on precedent of the U.S. Court of Appeals for the Federal Circuit ("CAFC"). *Assan Aluminyum Sanayi v. Ticaret A.S. v. United States*, 624 F. Supp. 3d 1343, 1362 (Ct. Int'l Trade 2023) (citing *Uttam Galva Steels Ltd. v. United States*, 311 F. Supp. 3d 1345, 1355 (Ct. Int'l Trade 2018), *aff'd* 997 F.3d 1192 (Fed Cir. 2021)). As detailed in Assan's initial Comments on Remand Redetermination, Plaintiff's Comments on Remand (June 30, 2023), ECF No. 99 ("Assan Comments"), Commerce's Final Remand Redetermination properly recalculated the applicable per-unit drawback adjustment by dividing "the amount of total duties exempted on the IPC closed during the POI over the total quantity of exports made under that closed IPC{.}" Final Remand Redetermination at 10, 12. Contrary to Petitioners' claims, this methodology best captures the drawback received by Assan, is consistent with the plain language of the statute, and comports with Commerce's recent practice in other cases involving the Turkish drawback system, the Inward Processing Regime ("IPR").

### A. Commerce's Drawback Calculation Properly Captures the Amount of Drawback Received By Assan During the POI

As Commerce noted, the per-unit drawback calculation in the Final Remand Redetermination properly "reflects the duties actually exempted for the exports of subject merchandise made to the United States during the POI." Final Remand Redetermination at 12. Nevertheless, Petitioners maintain that Commerce's revised calculation "overstates the adjustment applicable to Assan's U.S. exports." Petitioners' Comments at 1. For the reasons that

follow, Petitioners' arguments should be rejected by the Court.

In their Comments, Petitioners take issue with Commerce's per unit drawback calculation, which divides the total amount of customs duties and charges corresponding to the imports made under the closed IPC by the total amount of exports made as a commitment against the imports to close that same IPC. *Id.* at 2. Petitioners' baselessly categorize this methodology as "fundamentally flawed" because the closed IPC used to calculate the per-unit adjustment includes exports made before the POI and/or destined for export destinations other than the United States. Petitioners' Comments at 2-4. As a result, Petitioners believe that Commerce's calculation "significantly overstates the duty drawback adjustment." *Id.* at 2.

However, Petitioners' challenge is based on a fundamental misunderstanding of the per-unit drawback calculation in the Final Remand Redetermination. Contrary to Petitioners' claims, Commerce's calculation properly captures all exports and imports under the IPC closed during the POI. The fact that the closed IPC also includes pre-POI sales and exports to destinations other than the United States is irrelevant because both the numerator and the denominator of Commerce's per unit drawback calculation directly relate to the closed IPC. The resulting *per-unit* adjustment is then applied *only* to Assan's U.S. sales, *i.e.* subject merchandise exported to the United States during the POI. Because all of Assan's U.S. sales are made pursuant to an IPC, and are thus eligible for a drawback adjustment, application of the calculated per-unit adjustment to all U.S. sales is appropriate and does not involve any "unrelated" duty liability, as Petitioners claim. *Id.* at 4; Supplemental Section C Questionnaire Response of Assan Aluminyum Sanayi ve Ticaret A.S. at Exh. S4-11 (Sept. 10, 2020), CR 283; PR 227 ("Supp. C QR").

Though Petitioners contend that they "do not urge the Court to direct the Department's methodology on remand," they do recommend that Commerce "instead adopt the methodology

used by {Commerce} to calculate Assan's duty drawback adjustment in the recently completed investigation of aluminum foil from turkey." Petitioners' Comments at 8. As detailed below, Commerce's methodology in that case remains on appeal and has since been rejected by Commerce in more recent cases involving the Turkish IPR. Final Remand Redetermination at 11-14. Use of the methodology applied by Commerce in *Aluminum Foil from Turkey*, which would rely on all U.S. sales (including sales not subject to the closed IPC) as the denominator in the calculation of Assan's per unit drawback adjustment, rather than the total quantity of exports made pursuant to Assan's closed IPC, would seriously dilute the statutory adjustment to which Assan is entitled. Specifically, this methodology improperly results in an inconsistent numerator and denominator by allocating duties exempted pursuant to the closed IPC over *all* U.S. exports, including exports that were made pursuant to other, open IPCs with no relation to the IPC closed during the POI.

Allocating the duties exempted pursuant to the closed IPC over all U.S. exports is also contrary to record evidence. Petitioners' proposed methodology assumes that all U.S. sales have benefited from the same closed IPC, even though record evidence clearly demonstrates that this is factually inaccurate. Supp. C QR at Exh. S4-11, CR 283; PR 227. Contrary to Petitioners' claims, Commerce's per-unit drawback calculation is in the Final Remand Redetermination is reasonable should be sustained by the Court.

### B. Commerce's Drawback Calculation Is Consistent With The Plain Language Of The Statute

Petitioners next argue that Commerce's duty drawback calculation "is contrary to the statute's plain language." Petitioners' Comments at 4 (citing 19 U.S.C. § 1677a(c)(1)(B)). Petitioners again misunderstand the plain language and purpose of the drawback provision.

The text of the drawback statute specifically directs Commerce to increase U.S. price by:

> the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been

> collected, by reason of the exportation of the subject merchandise to the United States{.}

19 U.S.C. § 1677a(c)(1)(B). As the Court has repeatedly recognized, duty drawback adjustments should be granted "*only when there is some kind of connection* between the nonpayment of import duties and the exportation of the subject merchandise to the United States," *i.e.* where "but for the exportation of the subject merchandise to the United States, the manufacturer would have shouldered the cost of an import duty." *Maverick Tube Corp. v. United States*, 861 F.3d 1269, 1273 (Fed. Cir. 2017) (emphasis added). Use of total U.S. sales as the denominator in Commerce's per-unit drawback calculation, which is the methodology Petitioners' indirectly propose, severs the "statutory linkage" between the exempted duties under the closed IPC and the products exported to the United States under that same IPCs. *See, e.g.*, *Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States*, 415 F. Supp. 3d 1195, 1203 (Ct. Int'l Trade 2019).

Indeed, the methodology endorsed by Petitioners ignores Commerce's requirement that the amount of the per-unit drawback adjustment be limited to "closed IPC{s} under the Turkish IPR." *Common Alloy Aluminum Sheet From Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 13326 (Dep't Commerce Mar. 8, 2021), PR 358, and accompanying Issues and Decision Memorandum at 10, PR 330 ("*CAAS Inv. IDM*"). Use of all U.S. sales rather than only those sales covered by a closed IPC as the denominator in the per-unit drawback calculation also improperly reduces the statutory adjustment in contravention of its explicit purpose to "prevent a dumping margin from being created, or artificially inflated{.}" *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 222 F. Supp. 3d 1255, 1261 (Ct. Int'l Trade 2017).

Finally, Petitioners categorization of the drawback statute and the requirements thereof

continues to demand "specific tracing of imported inputs into a specific product being produced and whether that specific product is exported, even though the Turkish IPR does not require these specific links for duty drawback to be granted." Remand Redetermination at 12. This type of tracing has been rejected by the CAFC, which held that:

> It does not make a difference whether the imported inputs that qualified for a drawback were actually incorporated into goods sold in the exporter's domestic market because the . . . government credited the drawback to the quantity of goods that were in fact exported, whatever the source of the inputs used to produce foreign goods.

*Uttam Galva*, 997 F.3d at 1198. This Court likewise affirmed that inputs under a closed IPC need not be "*demonstrably* capable of," producing subject merchandise, but rather "*potentially* capable of, or in other words, not demonstrably *incapable* of." *Assan*, 624 F. Supp. 3d at 1361. Assan has met this burden and Petitioners' attempt to dilute the drawback adjustment to which Assan is entitled by requiring further tracing of imports and exports should again be rejected by the Court.

Commerce's duty drawback calculation in the Final Remand Redetermination properly captures all exports and imports under the closed IPC during the POI, consistent with the purpose of the drawback provision, which is "to eliminate, to the extent possible, any effect of the Turkish duty drawback system on the dumping calculations." *Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2020-2021*, 88 Fed. Reg. 7941 (Dep't Commerce Feb. 7, 2023), and accompanying Issues and Decision Memorandum at 22 (Cmt. 5) ("*Rebar from Turkey IDM*"). Because "the Turkish duty drawback system does not trace the actual use of the imported input to the actual finished product that is exported," Commerce's per unit calculation of the duty actually drawn back under the closed IPC best fulfills that statutory purpose. Final Remand

Redetermination at 13-14. The resulting *per-unit* adjustment is then applied only to Assan U.S. sales, *i.e.* "export{s} of the subject merchandise to the United States," consistent with the plain language of the statute. *See* 19 U.S.C. § 1677a(c)(1)(B).

### C. Commerce's Drawback Calculation Comports With Its Practice In Other Recent Cases

Petitioners argue that Commerce should have relied on it is "proposed alternative methodology," Petitioners' Comments at 11, because Commerce's calculations in the Final Remand Redetermination are "contrary to . . . the Agency's past practice." *Id.* at 4, 8. As explained above, Commerce's drawback methodology is in complete alignment with the statute and this Court's Remand Order. Indeed, Petitioners acknowledge that "there may be more than one {methodology} that is consistent with the statute." *Id.* at 8. Contrary to Petitioners' claims, Commerce's explanation of the duty drawback methodology relied upon in its Final Remand Redetermination is also consistent with its recent practice in cases involving the Turkish IPR.

In their Comments, Petitioners specifically argue that Commerce should rely on the methodology utilized in *Certain Aluminum Foil from Turkey*, stating that that decision was "made with respect to Assan and for a very similar time period." *Id.* As an initial matter, and as noted above, the methodology advocated by Petitioners and utilized in a separate investigation involving *Aluminum Foil from Turkey* is currently on appeal with this Court. *See Assan Aluminyum Sanayi Ve Ticaret A.S. v. United States*, CIT Ct. No. 21-616, ECF No. 10 (providing Complaint Against the United States, which challenges Commerce's duty drawback methodology); *see also Certain Aluminum Foil from the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 52880 (Dep't Commerce Sept. 23, 2021), and accompanying Issues and Decision Memorandum at 28. It is quite persuasive that Commerce, given the opportunity on remand to review its duty drawback methodology in this

-7-

case, explicitly did not rely on Petitioners' advocated methodology utilized in *Certain Aluminum Foil from Turkey*. Commerce's "explanations do not have to be perfect," but they "must be reasonably discernable to a reviewing court." *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009). Commerce's Final Remand Redetermination adequately describes the duty drawback methodology used and, as explained above, details why that methodology is reasonable on the record of this particular case. *See, e.g., Habas*, 439 F. Supp. at 1349 (holding that "{t}he court may not disturb the agency's determination unless it is unsupported by substantial evidence or otherwise not in accordance with law," specifically relating to Commerce's duty drawback methodology).

Second, each case stands on its own, *see Algoma Steel Corp., Ltd. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989) (holding that one judge is not bound by the decision of another in trial courts), and the time period covered by this case involving *CAAS from Turkey* is different than that involving *Aluminum Foil from Turkey*. In *Aluminum Foil*, Commerce was investigating the period of July 1, 2019 through June 30, 2020, and, here, Commerce was investigating the period of January 1, 2019, though December 31, 2019.

Third, and perhaps most importantly, Petitioners' proposed methodology is inconsistent with Commerce's recent practice, which mirrors that relied upon in the Final Remand Redetermination. Indeed, Commerce's updated duty drawback calculation in the Final Remand Redetermination is consistent with its own methodology in other recent cases involving the Turkish IPR, including the first administrative review of this *Order*. *See Common Alloy Aluminum Sheet from Turkey: Preliminary Results of Antidumping Duty Administrative Review; 2020–2022*, 88 Fed. Reg. 30089 (Dep't Commerce May 10, 2023), and accompanying Issues and Decision Memorandum ("*CAAS AR1 I&D Memo*"). In that review, Commerce specifically

accepted Assan's reporting of its drawback calculation based on the same methodology utilized in the Final Remand Redetermination, *i.e.* calculating a per-unit adjustment based on duties exempted under the closed IPCs and applying that per-unit adjustment to all U.S. sales. Though Petitioners misleadingly claim that this methodology contradicts Commerce's "longstanding practice . . . to grant a duty drawback adjustment with respect to only those IPCs that are closed," Petitioners' Comments at 6, Commerce's methodology in this and other cases involving the Turkish IPR calculates a per-unit adjustment based only on those IPCs closed during the POI. Petitioners' proposed methodology, by contrast, would include all U.S. sales, including U.S. sales not covered by a closed IPC, in the denominator of its per-unit calculation.

Petitioners' proposed methodology also contradicts Commerce's longstanding policy with respect to duty drawback adjustments. Specifically, in determining whether to grant a duty drawback adjustment to U.S. price under 19 U.S.C. § 1677a(c)(1)(B), Commerce applies a two-prong test in which the party requesting the adjustment must demonstrate:

> (1) that the rebate and import duties are dependent upon one another, or in the context of an exemption from import duties, that the exemption is linked to the exportation of the subject merchandise, and (2) that there are sufficient imports of the raw material to account for the duty drawback on the exports of the subject merchandise.

*Saha Thai Steel Pipe (Pub.) Co. v. United States*, 635 F.3d 1335, 1340 (Fed. Cir. 2011) (citation omitted); *see also* CAAS Inv. IDM at 8. Commerce has consistently found that the Turkish IPR utilized by Assan satisfies the two-prong test. *CAAS Inv. IDM* at 8 ("Since Assan satisfied the criteria described above, we have granted a duty drawback adjustment to Assan consistent with our practice."); *see also Assan*, 624 F. Supp. 3d at 1362 ("{T}he court sustains Commerce's general grant of a duty drawback adjustment to Assan."). In this case, Commerce and the Court agree that Assan satisfied both prongs of the test, and that a duty drawback adjustment was

warranted. *See* Final Remand Redetermination at 2-3. Where, as here, an importer satisfies both criteria, Commerce has consistently granted a drawback adjustment by allocating the "total amount of duty drawback received {under a closed IPR} across all exports that may have incorporated the duty-paid input in question, *regardless of destination*." *Antidumping Methodologies: Market Economy Inputs, Expected Non-Market Economy Wages, Duty Drawback; and Request for Comments*, 71 Fed. Reg. 61716, 61723 (Dep't Commerce Oct. 19, 2006) (emphasis added).

Consistent with this standard practice, Commerce reasonably rejected Petitioners' proposed methodology, explaining in the Final Remand Redetermination that:

> Commerce's current duty drawback methodology . . . divides the amount of total duties exempted on the IPC closed during the POI over the total quantity of exports made under that closed IPC to calculate a per-unit duty drawback adjustment. This methodology reasonably reflects the duties actually exempted for the exports of subject merchandise made to the United States during the POI.

Final Remand Redetermination at 12 (footnote omitted). Petitioners' arguments implying that Commerce's methodology in this Final Remand Redetermination is somehow inconsistent with its past cases are factually inapposite and should be rejected by this Court.

Petitioners' next argument that "the question" in determining the appropriate methodology for calculating Assan's duty drawback adjustment in this case "is the destination of the exported merchandise," is similarly contradicted by the law and Commerce's past practice. *See* Petitioners' Comments at 11. As Commerce stated, Petitioners' proposal "amounts to attempting specific tracing of imported inputs into a specific product being produced and whether that specific product is exported, even though the Turkish duty drawback system does not require these specific links for duty drawback to be granted." Final Remand Redetermination at 12. As detailed above, the CAFC has confirmed that the statute does not require respondents

like Assan to trace imported goods to U.S. exports "because the {foreign} government credited the drawback to the quantity of goods that were in fact exported." *Uttam Galva*, 997 F.3d at 1198. Likewise, in this case, the per-unit adjustment applies only to Assan's U.S. exports during the POI, consistent with the requirements of the statute. 19 U.S.C. § 1677a(c)(1)(B).

Petitioners finally attempt to discount Commerce's reliance on its methodology in *Rebar from Turkey* as support for the Final Remand Redetermination, stating that its "explanation is wrong and unlawful for several reasons." Petitioners' Comments at 9. But, again, Petitioners' comments boil down to a request that Commerce use the alternative methodology it proposes simply because the situation in rebar was different. However, the methodology and explanation in *Rebar from Turkey*, which involved the same Turkish IPR drawback system, is indeed applicable here. Overarchingly, "{t}he Turkish duty drawback system does not require this specific level of link for duty drawback to be granted" and "the statutory purpose of the duty drawback provision is to eliminate, to the extent possible, any effect of the Turkish duty drawback system on the dumping calculations, and Commerce's calculation spreading the duty actually drawn back generally over exports fulfills the statutory purpose." *Rebar from Turkey IDM* at 22. Commerce's application of the per-unit drawback adjustment to all U.S. sales fulfils the exact same statutory purpose.

Having found that Assan satisfied its requirements for duty drawback, Commerce properly granted Assan a full adjustment to U.S. price in accordance with its usual practice, *i.e.* by dividing the amount of the uncollected duty under the closed IPC by Assan's total exports covered by that closed IPC and applying that per-unit adjustment to Assan's U.S. sales. Petitioners have provided no basis for Commerce to depart from its practice utilized in other

cases involving the Turkish IPR and to adopt a different methodology in the Final Remand Determination.

## II. CONCLUSION

Assan respectfully requests that the Court sustain Commerce's Final Remand Determination, and order Commerce to promptly publish an amended final determination and AD order assigning a *de minimis* margin to Assan.

 

Respectfully submitted,

**/s/ Leah N. Scarpelli**
Leah N. Scarpelli
Jessica R. DiPietro
Matthew M. Nolan

July 31, 2023    *Counsel for Assan Aluminyum Sanayi ve Ticaret A.S.*

# CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Assan's Response to Comments on the Final Remand Redetermination filed on July 31, 2023, complies with the word limitation requirement. The word count for Plaintiff's Comments, as computed by ArentFox Schiff LLP's word processing system is 3,303.


 **/s/ Leah N. Scarpelli**
Leah N. Scarpelli

AFDOCS:198609624.4