NONCONFIDENTIAL

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., ) ) Plaintiff, ) ) v. ) ) UNITED STATES, ) ) Defendant, ) ) and ) ) ALUMINUM ASSOCIATION COMMON ALLOY ) ALUMINUM SHEET TRADE ENFORCEMENT ) WORKING GROUP AND ITS INDIVIDUAL ) MEMBERS, ET AL., ) ) Defendant-Intervenors. ) ) | Consol. Court No. 21-00246 |

## CONSOLIDATED PLAINTIFFS' POST-ARGUMENT WRITTEN SUBMISSION

John M. Herrmann
Joshua R. Morey
Kelley Drye & Warren LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

**Counsel to Consolidated Plaintiffs**

**Dated: January 31, 2024**

Table of Contents

I.    THE DRAWBACK METHODOLOGY APPLIED IN THE *REMAND REDETERMINATION* RESULTS IN A DISTORTED ADJUSTMENT THAT SUBSTANTIALLY EXCEEDS THE ADJUSTMENT PERMISSIBLE UNDER THE STATUTE'S PLAIN LANGUAGE ................................. 1

II.   THE REASONS ARTICULATED IN THE *REMAND REDETERMINATION* FOR REJECTING CONSOLIDATED PLAINTIFFS' CHALLENGES TO THE REVISED DRAWBACK ADJUSTMENT ARE BASELESS AND REQUIRE REMAND ........................................ 4

III.  THE COURT'S ADDITIONAL QUESTION ................................................................. 6

IV.  CONCLUSION .......................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States,
   439 F. Supp. 3d 1342 (Ct. Int'l Trade 2020) ....................................................................1, 6

ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States,
   2023 Ct. Intl. Trade LEXIS 127 (Ct. Int'l Trade Aug. 23, 2023) .........................................1, 6

Noksel Celik Boru Sanayi A.S. v. United States,
   2023 Ct. Intl. Trade LEXIS 126 (Ct. Int'l Trade Aug. 23, 2023) .........................................1. 6

Uttam Galva Steel Limited. v. United States,
   997 F.3d 1192 (Fed. Cir. 2021)..............................................................................................4, 5

**Statutes and Regulations**

19 U.S.C. § 1677a(c)(1)(B).................................................................................................. 1, 3-4

**Administrative Determinations**

Final Results of Redetermination Pursuant To Court Remand
   (Dep't Commerce May 31, 2023) (ECF No. 94) .......................................................... *passim*

On behalf of Consolidated Plaintiffs, the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members, we submit the following written comments and response to the Court's question (see ECF No. 113). Because the Remand Redetermination[1] is not supported by substantial evidence and not in accordance with law, this Court should return it to the Department of Commerce ("Commerce") for further proceedings.

I. **THE DRAWBACK METHODOLOGY APPLIED IN THE *REMAND REDETERMINATION* RESULTS IN A DISTORTED ADJUSTMENT THAT SUBSTANTIALLY EXCEEDS THE ADJUSTMENT PERMISSIBLE UNDER THE STATUTE'S PLAIN LANGUAGE**

As the United States acknowledged during oral argument, the statute provides explicit guidance on the circumstances that Commerce shall take into account in making a duty drawback adjustment.[2] Specifically, Commerce will increase the constructed export price ("CEP") by:

> The amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States.

19 U.S.C. § 1677a(c)(1)(B) (emphases added). Further, Commerce's established practice is to include in the numerator of the adjustment calculation only duty liability that has been forgiven by the Government of Turkey ("GOT") pursuant to a closed Inward Processing Certificate ("IPC").[3]

---

[1] See Final Results of Redetermination Pursuant To Court Remand, May 31, 2023 (ECF No. 94) ("Remand Redetermination").

[2] See Transcript of Jan. 24, 2024 Argument ("Tr.") at 24 (Mr. Beckrich) (ECF No. 114).

[3] See Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States, 439 F. Supp. 3d 1342, 1349 (Ct. Int'l Trade 2020) ("Habas"); ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States, 2023 Ct. Intl. Trade LEXIS 127, at *14-17 (Ct. Int'l Trade Aug. 23, 2023)

(cont'd on next page)

There is no dispute among the parties about the facts analyzed by Commerce in calculating Assan's drawback adjustment:

- Amount of Duties Exempted Under the Closed IPC: [            ];[4]

- Total Volume of Assan's Exports Under the Closed IPC: [       ] metric tons ("MT");[5]

- Total Volume of Assan's Exports of Subject Merchandise to the United States During the Period of Investigation ("POI") Involving the Closed IPC: [      ] MT;[6] and

- Total Volume of Assan's U.S. Sales of Subject Merchandise During the POI (including both sales covered by the closed IPC and sales not associated with a closed IPC, or any IPC): [         ] MT.[7]

The exports in the one closed IPC at issue involve sales of subject merchandise to the United States during the POI, as well as sales of non-subject merchandise, sales of merchandise to markets other than the United States, and sales outside the POI. Tr. at 10 (Ms. Scarpelli).

Assan calculated a per-unit drawback adjustment of [        ] per MT by dividing the total duties exempted pursuant to IPC [    ] (i.e., [           ]) by the total quantity of exports Assan made pursuant to this IPC ([       ] MT).[8] During the POI, Assan had total

---

[“ICDAS”]; Noksel Celik Boru Sanayi A.S. v. United States, 2023 Ct. Intl. Trade LEXIS 126, at *9-14 (Ct. Int'l Trade Aug. 23, 2023) ("Noksel").

[4]   Response from Mayer Brown, LLP to Sec of Commerce Pertaining to Assan Sec C QR at Exh. C-12 (CR 52) (PR 142-143) ("CQR").

[5]   Id.

[6]   See id. ([


]).

[7]   See Data from Mayer Brown, LLP to Sec of Commerce Pertaining to Assan at file assanus05 (CR 398) (PR 305).

[8]   See CQR at Exh. C-12 (CR 52) (PR 142-43).

-2-

export sales of [        ] MT.⁹  If this per-unit drawback adjustment is applicable to any export sale, that would imply the GOT had forgiven [        ] of duty liability (i.e., [     ] per MT * [        ] MT).  Treating the [       ] per MT as if it is applicable to any export sale, rather than only an export made pursuant to IPC [     ], therefore, results in an amount of drawback that exceeds by [      ] percent the amount of duty liability the GOT actually forgave ([           ]).

Commerce, however, applied the per-unit adjustment to all of Assan's reported U.S. sales, regardless of whether it was exported pursuant to IPC [    ].  In doing so, Commerce has allocated [        ] (i.e., [       ] per MT * [        ] MT) of exempted duties to Assan's sales of subject merchandise to the United States during the POI.  Assan's total exports under the single closed IPC of [        ] MT include [         ] MT of subject merchandise destined for the United States during the POI.  Applying the [      ] per MT to the remaining exports under the closed IPC – exports under the closed IPC that were outside the POI, to markets other than the United States, or involving non-subject merchandise – results in total exempted duties of [          ] (i.e., [       ]).  Thus, in aggregate, Commerce assigns [          ] of exempted duties, comprising [          ] of exempted duties associated with exports of subject merchandise to the United States during the POI and [          ] of exempted duties associated with the remaining exports made pursuant to the closed IPC.  Commerce's methodology, therefore, unreasonably inflates the total drawback far beyond the [          ] of duty liability actually forgiven by the GOT.

---

⁹ See Response from Mayer Brown, LLP to Sec of Commerce Pertaining to Assan Supp. B QR at Exh. S3-11 Part IIa (CR 253-281) (PR 217-218).

Indeed, the United States acknowledged at oral argument that Commerce's methodology results in a total drawback adjustment that increases as the quantity of sales of subject merchandise to the United States increases. Tr. at 23 (Mr. Beckrich). The United States, nonetheless, defends Commerce's methodology on the basis that it supposedly accounts for duty liability that will be forgiven by the GOT in the future. Tr. at 19, 22 (Mr. Beckrich). The statute, however, does not contemplate increasing U.S. price with import duty liability that may or may not be forgiven at a future date. 19 U.S.C. § 1677a(c)(1)(B).

Because Commerce's methodology results in a total drawback amount that substantially exceeds the amount of duty liability actually forgiven by the GOT pursuant to the closed IPC, it is not supported by substantial evidence and is not in accordance with the statute.

II. **THE REASONS ARTICULATED IN THE *REMAND REDETERMINATION* FOR REJECTING CONSOLIDATED PLAINTIFFS' CHALLENGES TO THE REVISED DRAWBACK ADJUSTMENT ARE BASELESS AND REQUIRE REMAND**

In comments addressing the draft Remand Redetermination, as well as in comments filed with this Court, Consolidated Plaintiffs have identified errors in Commerce's calculation of Assan's drawback adjustment. In response, Commerce (and Assan) have baselessly asserted that Consolidated Plaintiffs' proposed modifications involve "tracing" that is prohibited by Uttam Galva.[10] This is wrong and demonstrates the need for further deliberations by Commerce.

As agreed by all parties at oral argument, and as stated in Uttam Galva, "tracing" involves a circumstance where a respondent must "trace particular imported goods to U.S. exports." Uttam Galva, 997 F.3d at 1197-98; Tr. at 19-20 (Mr. Beckrich); id. at 13 (Ms. Scarpelli). Thus, were it applicable here, tracing would require Assan to link specifically the

---

[10] See Uttam Galva Steel Limited v. United States, 997 F.3d 1192 (Fed. Cir. 2021).

importation into Turkey of input materials (e.g., an aluminum ingot) consumed in manufacturing subject merchandise that was exported to the United States in connection with a drawback adjustment (e.g., a coil of aluminum sheet).

As reflected above in Section I, Consolidated Plaintiffs' challenge of the Remand Redetermination concerns Commerce's calculation of a per-unit drawback adjustment by spreading the total amount of exempted duties over a smaller universe of sales – i.e., exports made pursuant to a closed IPC – and then erroneously applying the resulting per-unit adjustment to a larger universe of sales – i.e., exports made pursuant to a closed IPC, open IPCs, and no IPC. This error in Commerce's methodology has nothing to do with "tracing."

In its comments on the Remand Redetermination, Consolidated Plaintiffs suggested an alternative calculation that is consistent with the statute.[11] Consolidated Plaintiffs determined the amount of duty liability forgiven by reason of Assan's sales of subject merchandise to the United States during the POI by allocating the total exempted duties associated with IPC [    ] evenly over all exports under this IPC (resulting in [    ] per MT, just as in Assan's and Defendant's calculation) and multiplying this amount by the quantity of Assan's sales made pursuant to IPC [    ] that are included in Assan's U.S. sales database ([    ] MT).[12] This methodology does *not* involve "tracing" because it does not involve tying specific Turkish imports of inputs to specific exports of finished products. Commerce has identified no rational

---

[11]   Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts on Draft Remand at Attachment 1 (Remand CR 11) (Remand PR 8) ("Petitioners' Cmts. on Draft Remand").

[12]   See id.

argument linking Consolidated Plaintiffs' challenges to the Remand Redetermination to "tracing" that is prohibited under Uttam Galva.

Consolidated Plaintiffs' suggested methodology is one alternative that is consistent with the statute, but may not be the only such alternative. Commerce may devise another methodology, but it in order for its methodology to be mathematically correct and consistent with the statute, Commerce may only assign a per-unit drawback adjustment to a sale if the denominator it used to calculate the per-unit drawback includes that sale. Accordingly, Commerce's repeated invocation of "tracing" as a rationale for rejecting Consolidated Plaintiffs' challenges is baseless and demonstrates that the Remand Redetermination is not supported by substantial evidence and not otherwise in accordance with law.

### III. THE COURT'S ADDITIONAL QUESTION

In response to the Court's written question, Consolidated Plaintiffs are not asking the Court to endorse a strong version of the holding in Habas. Commerce has held in this investigation that it is relying only on closed IPCs, consistent with its practice sustained in Habas, as well as in ICDAS and Noksel. Accordingly, the numerator in Commerce's calculation of a per-unit drawback adjustment comprised only duties exempted pursuant to a closed IPC.

The sales to which Commerce may properly apply a per-unit drawback adjustment is determined by the universe of sales comprising the denominator in its calculation. If Commerce spreads the total exempted duties (the numerator) over only exports made pursuant to a closed IPC (the denominator), then Commerce may apply the resulting per-unit adjustment *only* to that set of shipments. Alternatively, if Commerce spreads the total exempted duties (the numerator) over all exports (including exports made pursuant to open IPCs, or no IPC) (the denominator),

NONCONFIDENTIAL

then Commerce may apply the resulting per-unit drawback adjustment to any such export, even to exports for which there no evidence that it was made pursuant to a closed IPC.

## IV.  CONCLUSION

In urging swift affirmance of the flawed Remand Redetermination (Tr. at 6), Assan is anxious to exploit the flawed Remand Redetermination to secure revocation from coverage under the antidumping order.  As discussed above, however, the Remand Redetermination should not be affirmed.  Commerce's calculation of the drawback adjustment is erroneous, and Commerce's rationale for rejecting Consolidated Plaintiffs' suggested modifications to the agency's calculations – asserting without any rational explanation that they would involve "tracing" – is baseless.

Given the fundamental flaws in the Remand Redetermination, as well as the significance of the accuracy of the Remand Redetermination to Assan's coverage under the antidumping order, Consolidated Plaintiffs respectfully request that this Court remand this matter to Commerce for further deliberations.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY

Counsel to Consolidated Plaintiffs

Dated:  January 31, 2024

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to this Court's January 26, 2024 Letter (ECF No. 113) setting the word limitation to the Parties' Answers to Supplemental Questions to 2,000 words, counsel to Consolidated Plaintiffs certifies that this Response to the Court's Questions contains 1,960 words, including footnotes. The word count certification is made in reliance on the word count feature contained in Microsoft Word Office 2016.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
(202) 342 8400

Counsel to Consolidated Plaintiffs

Dated: January 31, 2024