A-489-839
Remand
Slip Op. 24-44
POI: 01/01/2019 – 12/31/2019
**Public Document**
E&C/OVII: SC

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,
Consol. Court No. 21-00246; Slip Op. 24-44 (CIT April 11, 2024)
**Common Alloy Aluminum Sheet from the Republic of Turkey**

**FINAL RESULTS OF SECOND REDETERMINATION
PURSUANT TO COURT REMAND**

**I.  SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the opinion and second remand order of the U.S. Court of International Trade (the Court) in *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, Consol. Court No. 21-00246, Slip Op. 24-44 (CIT April 11, 2024) (*Second Remand Order*). This action arises from the final determination of the antidumping duty (AD) investigation of common alloy aluminum sheet from the Republic of Türkiye (Türkiye).[1] The petitioner is the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group & Individual Members (the Association). The respondents in this investigation are the following companies: Assan Aluminyum Sanayi ve Ticaret A.S. (Assan); and Teknik Aluminyum Sanayi A.S. The sole live issue on remand concerns Commerce's calculation of Assan's duty drawback adjustment.[2] The Court remanded for Commerce to: (1) reconsider or further explain its duty

---

[1] *See Common Alloy Aluminum Sheet from Turkey:  Final Affirmative Determination of Sales at Less Than Fair Value*, 86 FR 13326 (March 8, 2021) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

[2] Given that Commerce announced a *de minimis* dumping margin for Assan, the other unrelated issues discussed in the first remand opinion were no longer live (*i.e.*, the Court's decision to:  (1) sustain Commerce's denial to Assan of a home market rebate adjustment; (2) sustain Commerce's deduction of Assan's affiliated freight costs from its calculation of Assan's constructed export price; (3) remand for further explanation Commerce's determination not to apply an adverse inference as to Assan's reporting of certain billing adjustments; and (4) stay consideration of

drawback calculation methodology in light of the statutory constraints imposed by section 772(c)(1)(B) of Tariff Act of 1930, as amended (the Act); and (2) respond to the arguments raised by the Association in its comments on the first draft remand results.[3] Consistent with the *Second Remand Order*, we have reconsidered our remand redetermination and have now decreased Assan's duty drawback benefit from the *Final Determination* to align with the statutory constraints of section 772(c)(1)(B) of the Act, which limits a duty drawback benefit to import duties associated only with the subject merchandise. The net effect of Assan's duty drawback adjustment results in a *de minimis* margin for Assan.[4] As a result, the "All Others" *ad valorem* weighted-average rate decreased from 4.85 percent in the *Final Determination* to 13.56 percent.[5]

## II.   BACKGROUND

On March 8, 2021, Commerce issued its *Final Determination*.[6] Relevant here, Commerce granted and calculated Assan's duty drawback adjustment based on the amount of the duty imposed on the input and rebated or not collected on the export of the subject merchandise by properly allocating the amount rebated or not collected to all production for the relevant period based on the cost of inputs during the period of investigation (POI).[7] Consequently, both Assan and the Association challenged certain aspects of Commerce's determination to grant Assan a duty drawback adjustment.[8] First, the Association argued that Assan was ineligible for a

---

Assan's challenge to Commerce's deduction of certain tariffs until the Federal Circuit's then-pending decision in *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 63 F.4th 25 (Fed. Cir. 2023)).
[3] *See Second Remand Order* at 20.
[4] Memorandum, "Final Results of Second Redetermination; Revised Margin Calculation for Assan Aluminyum Sanayi ve Ticaret A.S.," dated concurrently with these final results of second redetermination (Second Final Remand Calculation Memorandum).
[5] *Id.*
[6] *See Final Determination*, 86 FR at 13326.
[7] *See Final Determination* IDM at Comment 1.
[8] *See Assan Aluminyum Sanayi v. Ticaret A.S.*, 624 F. Supp. 3d 1343, 1349 (CIT 2023) (*First Remand Order*).

2

duty drawback adjustment.⁹ In contrast, Assan argued that although Commerce was correct in granting a duty drawback adjustment, the "duty neutral" methodology that Commerce employed to calculate Assan's adjustment was not in accordance with law.¹⁰

On March 1, 2023, in its *First Remand Order*, the Court sustained Commerce's general grant of a duty drawback adjustment to Assan but held that Commerce's specific implementation of this duty drawback adjustment contravened the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Uttam Galva*.¹¹ As the Court explained, "the Federal Circuit {has} held that '{t}here is no basis in {section 772(c)(1)(B) of the Act} for dividing exempted duties by both exports and home-market sales of subject merchandise."¹² Consequently, the Court granted Commerce's request for a voluntary remand to recalculate Assan's duty drawback adjustment in accordance with the latest Federal Circuit precedent.¹³

On May 10, 2023, Commerce issued its first draft remand results, where it revised its duty drawback calculation by: (1) dividing the amount of total duties exempted on the Inward Processing Certificate (IPC) closed during the period of investigation over the total quantity of exports made under that closed IPC to calculate a per-unit duty drawback adjustment; and (2) applied that adjustment to all of Assan's sales of subject merchandise.¹⁴ The Association argued that Commerce's duty drawback methodology improperly applied a closed IPC-derived adjustment to open-IPC sales as there is no record evidence that Assan exported all its U.S. sales

---

⁹ *Id.*, 624 F. Supp. 3d at 1359.
¹⁰ *Id*.
¹¹ *Id.*, 624 F. Supp. 3d at 1362 (citing *Uttam Galva Steels Ltd. v. United States*, 997 F. 3d 1192 (Fed Cir. 2021) (*Uttam Galva*)).
¹² *See Second Remand Order* at 5-6.
¹³ *Id*.
¹⁴ *Id.* (citing Draft Results of Redetermination Pursuant to Court Order, *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, Consol. Court No. 21-00246, Slip Op. 23-26 (CIT March 1, 2023), dated May 10, 2023 (First Draft Remand Results)); *see also* Memorandum, "Draft Results of Redetermination; Revised Margin Calculation for Assan Aluminyum Sanayi ve Ticaret A.S.," dated May 10, 2023 (First Draft Remand Calculation).

pursuant to the closed IPC.[15]  The Association further argued that the duty exemptions pursuant to the closed IPC did not all constitute exemptions by reason of "the exportation of the subject merchandise to the United States," section 772a(c)(1)(B) of the Act, because, the closed IPC includes export destinations other than the United States as well as exports made outside of the POI.[16]

On May 30, 2023, Commerce issued its final results of redetermination pursuant to the remand order[17] of the Court in *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 624 F.Supp. 3d 1343 (CIT 2023).  Commerce revised its duty drawback methodology by dividing the amount of duties exempted on the IPC closed during the POI over the total quantity of exports made under that closed IPC to calculate a per-unit duty drawback adjustment that reasonably reflects the duties actually exempted for the exports of subject merchandise made to the United States during the POI.[18]

On April 11, 2024, the Court held that Commerce's recalculation of Assan's duty drawback resulted in a larger drawback adjustment which, in turn, brought the respondent's overall dumping margin below *de minimis*.[19]  The Court elaborated that Commerce's revised duty drawback adjustment impermissibly increased Assan's export price by applying the adjustment to all of Assan's U.S. sales of subject merchandise, including certain open-IPC sales that did not earn the benefits of the exempted duties.[20]  The Court further explained that

---

[15] *See* Assan's First Draft Remand Comments, "Assan's Comments on Draft Remand Redetermination Pursuant to Court Remand," dated May 17, 2023.
[16] *See* the Association's First Draft Remand Comments, "Comments on Draft Redetermination Concerning Assan Aluminyum Sanayi ve Ticaret A.S.," dated May 17, 2023 (Association's First Draft Comments).
[17] *See Final Results of Redetermination Pursuant to Court Remand*, *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, Consol. Court No. 21-00246, Slip Op. 23-26 (CIT March 1, 2023), dated May 30, 2023 (*First Remand Results*), available at https://access.trade.gov/Resources/remands/23-26.pdf.
[18] *See First Draft Remand Results* at 2-4; *see also* First Draft Remand Calculation.
[19] *See Second Remand Order* at 2-3.
[20] *Id.* at 11-12.

4

Commerce applied the revised per-unit drawback adjustment to open-IPC sales where the duties had been collected but not rebated as of the end of the POI.[21] Therefore, the Court remanded for Commerce to further explain or reconsider its remand redetermination in light of the statutory limitations of a duty drawback adjustment and instructed Commerce to respond to the arguments raised by the Association that were not previously addressed.[22]

### III.    ANALYSIS OF REMANDED ISSUES

*Duty Drawback Adjustment*

On remand, Commerce re-opened the record to request additional information necessary for purposes of calculating Assan's duty drawback adjustment.[23] On June 6, 2024, Assan responded to Commerce's duty drawback questionnaire.[24] On June 13, 2024, the Association submitted comments and rebuttal factual information regarding Assan's response.[25] On June 20, 2024, Assan submitted comments and rebuttal factual information in response to the Association's submission.[26]

In the *First Remand Results*, Commerce revised its duty drawback methodology by dividing the amount of all duties exempted on the one IPC that closed during the POI, over the total quantity of exports made under that closed IPC to calculate a per-unit duty drawback adjustment that reasonably reflects the duties actually exempted for the exports of subject

---

[21] *Id.* at 16.
[22] *Id*.
[23] *See* Commerce's Letter, "Request for Additional Information to Calculate Duty Drawback," dated May 23, 2024 (Remand Questionnaire).
[24] *See* Assan's Letter, "Assan Group's Response to Remand Request for Additional Information to Calculate Duty Drawback," dated June 6, 2024 (Assan's Remand Response).
[25] *See* the Association's Letter, "Petitioners' Comments and Rebuttal Factual Information Concerning Assan Aluminyum Sanayi ve Ticaret A.S.'s June 6, 2024 Response to the Department's Request for Information," dated June 14, 2024 (the Association's Comments).
[26] *See* Assan's Letter, "Assan Group's Submission of Comments and Rebuttal Factual Information in Response to Petitioners' June 13, 2024 Submission," dated June 20, 2024 (Assan's Rebuttal Factual Information).

merchandise made to the United States during the POI.[27] On remand, Commerce has recalculated Assan's duty drawback adjustment to address the Court's concern that Commerce's drawback methodology is only a closed IPC-derived adjustment.[28] Specifically, in the per-unit duty drawback adjustment calculation for these results of redetermination, the numerator consists of the estimated amount of the duty drawback benefit for exempted import duties realized by each respondent for exports to the United States during the POI of merchandise similar to scope merchandise as documented on the closed IPC.[29] For the denominator, we used the quantity of sales associated with the closed IPC in the U.S. sales database.[30] We then applied this per-unit benefit to U.S. sales associated with the closed IPC in the U.S. sales database.[31] This modified approach is also consistent with the methodology used in the final results of the first administrative review of *Aluminum Foil from Türkiye*.[32]

However, because information on the record of the underlying investigation, regarding Assan's closed-IPC and reported U.S. sales was inadequate (*i.e.*, for purposes of allocating the duty drawback benefit only to those reported U.S. sales associated with the closed-IPC), on remand, we re-opened the record to request that Assan identify the relevant in-scope merchandise exported to the United States associated with the IPC that was closed during the POI, and to tie these sales to the company's U.S. sales database.[33] On June 6, 2024, Assan responded to Commerce's duty drawback questionnaire, with information to reconcile the total

---

[27] *See First Remand Results*.
[28] *See* Memorandum, "Draft Results of Second Redetermination; Revised Margin Calculation for Assan Aluminyum Sanayi ve Ticaret A.S.," dated concurrently with these draft results of redetermination (Second Draft Remand Calculation Memorandum).
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] *See Certain Aluminum Foil from the Republic of Türkiye: Final Results of Antidumping Duty Administrative Review*; 2021–2022, 89 FR 48889 (June 10, 2024) (*Aluminum Foil from Türkiye*), and accompanying IDM at Comment 1.
[33] *See* Commerce's Letter, "Request for Additional Information to Calculate Duty Drawback," dated May 23, 2024.

quantity and value of in-scope merchandise under the relevant closed-IPC to a now revised U.S. sales database.[34] Assan also submitted additional factual information to demonstrate that all its reported U.S. sales in the POI can be tied to a closed-IPC, including IPCs that were closed outside of the POI.[35] However, Assan also maintains that "{…} it is reasonable to treat all IPCs, open or closed, as closed for the purpose of calculating drawback adjustments."[36]

On June 13, 2024, the Association submitted comments and rebuttal factual information regarding Assan's response, arguing that Assan submitted unsolicited new factual information which was not related to the one IPC that was closed during the POI.[37] The Association notes that Assan only reported one closed IPC during the POI and that the information submitted in Assan's remand questionnaire response does not establish that any of the other IPCs are either related to Turkey's suspension system,[38] which allows for exempted duties and a duty drawback benefit, or have ample documentation such as an import list and export list to demonstrate an entitlement to a duty drawback adjustment.[39]

On June 20, 2024, Assan submitted comments and rebuttal factual information in response to the Association's submission to demonstrate that the information in Assan's duty drawback questionnaire response is accurate by including the same documentation that was submitted to Commerce in the first administrative review of the instant order.[40]

---

[34] *See* Assan's Remand Response.
[35] *Id*.
[36] *Id.*
[37] *See* the Association's Comments at 5.
[38] The Türkiye suspension system is a separate system from the drawback system but also under the Turkish Inward Processing Regime.
[39] *See* the Association's Comments at 3 and 6-7.
[40] *See* Assan's Rebuttal Factual Information; *see also Toscelik Profil v. Sac Endustrisi A.S.*, 348 F. Supp. 3d 1321, 1327 (CIT 2018) ("Two exports that are in different administrative review periods that occur on the same {duty exemption certificate/IPC} are entitled to the same adjustment.") (*Toscelik Profil*)

On June 27, 2024, Commerce issued its second draft results of redetermination and agreed with the Association, in part, that Assan had unnecessarily provided information associated with IPCs that remained open during the POI.[41]  For the Second Draft Results, Commerce calculated a per-unit duty drawback adjustment on the basis of a single closed IPC, noting that Assan exported subject merchandise during the POI under four distinct Turkish IPCs but only "one of these IPCs closed during the period of investigation; the other three remained open."[42]  This followed Commerce's practice at the time of the investigation to decline to calculate a duty drawback adjustment on the basis of an IPC until that IPC is closed,[43] requiring evidence of official approval by the Turkish government during the POI.[44]  Therefore, although Commerce accepted Assan's submission as timely and responsive to its questionnaire, Commerce considered all other issues regarding the three additional IPCs that remained open during the POI moot.[45]

Based on the comments addressed below, we have revised our analysis in the Second Draft Results to use IPCs that are closed outside the period of investigation (POI) for purposes of calculating duty drawback adjustments when sufficient evidence exists on the record to demonstrate their closure.[46]  Given previous instruction to not confine our margin calculation to

---

[41] *See* Draft Results of Redetermination Pursuant to Court Order, *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, Consol. Court No. 21-00246; Slip Op. 24-44 (CIT April 11, 2024), dated June 27, 2024 (Second Draft Results); *see also* Second Draft Remand Calculation Memorandum.
[42] *See Second Remand Order* at 9.
[43] *See, e.g.*, *Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States*, 439 F. Supp. 3d 1342, 1349 (CIT 2020) (*Habas*) (explaining "that eligibility for inclusion in the adjustment is based on the existence of record evidence establishing that the IPC has closed, which demonstrates that 'the Turkish government has forgiven the duty liability.'").
[44] Commerce considers an IPC to be closed after the applicant has applied to the Turkish Government for closure of an IPC and the application is then officially approved by Turkish authorities, at which point the IPC holder is officially released of these liabilities.
[45] *See* Second Draft Results at 8.
[46] *See Toscelik Profil*, 348 F.Supp.3d at 1328 (agreeing that "there is no 'element of predictability or transparency served by denying a drawback adjustment {,}the accuracy of which is not in question.'"); *see also Habas*, 439 F.Supp.3d at 1342 (affirming Commerce's decision to include an IPC upon evidence of closure, despite parties arguing that there is insufficient evidence that Commerce verified the relevant IPC.").

8

IPCs closed during the POI, we now find an evaluation of Assan's three additional claimed IPCs are relevant for purposes of calculating a fair and accurate dumping margin for this remand redetermination.[47] Based on the evidence on the record, Commerce finds that one of the additional IPCs is related to import duty exemptions.[48] Indeed, the record contains documentation (*e.g.*, associated import and export lists and official government closure documentation) to support the IPC's use, closure, and association with subject merchandise sold to the United States during the POI.[49] Therefore, Commerce has calculated the duty drawback adjustment using both the one IPC that closed during the POI that was addressed in the investigation, and this one additional IPC that closed after the POI but whose duty drawback adjustment is related to sales reported during the POI. This fulfills Commerce's statutory requirement to calculate fair and accurate dumping margins.[50]

As mentioned above, we have calculated the duty drawback adjustment for Assan's U.S. sales in accordance with the methodology used in *Aluminum Foil from Türkiye*.[51] This methodology ensures that Commerce calculates a duty drawback benefit based on the amount of duties rebated on a closed IPC that are associated only with reported U.S. exports of subject merchandise during the POI.[52] Moreover, Commerce's revised methodology now accounts for the Association's prior draft remand arguments that Commerce's duty drawback adjustment

---

[47] *See Toscelik Profil,* 348 F. Supp. 3d at 1328*; Habas*, 439 F. Supp. 3d at 1342; *see also Parkdale Int'l v. United States*, 475 F.3d 1375, 1380 (Fed. Cir. 2007). ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible").
[48] *See* Assan's Rebuttal Factual Information at Attachment 1.
[49] *Id*.; *see also Noksel Celik Boru Sanayi A.S. v. United States,* No. 21-00140, 2023 WL 5426585, at *5 (CIT Aug. 23, 2023) (affirming Commerce's requirement that respondents provide sufficient evidence establishing that an IPC was closed by the Government of Turkey.).
[50] *See Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 102 F. Supp. 2d 486, 495 (CIT 2000) (*Shakeproof Assembly*) (stating that "any given methodology must always seek to effectuate the statutory purpose-calculating accurate dumping margins").
[51] *See Aluminum Foil from Türkiye* IDM at Comment 1.
[52] *See* Second Final Remand Calculation Memorandum.

increased Assan's export price by more than what was allowed by the statute, since we have limited the duty drawback adjustment only to those reported U.S. sales of subject merchandise which were exported under these two closed IPCs.[53]  Commerce's revised methodology is consistent with the statute under section 772a(c)(1)(B) of the Act, which defines a duty drawback adjustment as "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States."

**IV.    INTERESTED PARTIES' COMMENTS**

On June 27, 2024, Commerce issued its Second Draft Results and provided interested parties an opportunity to comment on Commerce's analysis and redetermination.[54]  Commerce received comments from the Association and Assan.[55]  These comments are summarized *verbatim* from the executive summaries in the relevant submissions and are addressed below. After considering these comments, we made the change to include the one additional IPC that closed after the POI which has associated U.S. exports of subject merchandise during the POI and adjusted the calculation methodology in response to parties' comments which are further discussed, below.

---

[53] *See* the Association's First Draft Comments.
[54] *See* Second Draft Results.
[55] *See* the Association's Letter, "Petitioners' Comments on the Draft Remand Redetermination Concerning Assan Aluminyum Sanayi ve Ticaret A.S.," dated July 8, 2024 (the Association's Comments); *see also* Assan's Letter, "Assan's Comments on Draft Results of Second Redetermination Pursuant to Court Remand," dated July 5, 2024 (Assan's Comments).

Comment 1:  Commerce's Practice to Use All Closed IPCs

*Assan's Comments:*

The following is a verbatim summary of the comments submitted by Assan.  For further details, *see* Assan's Comments at 2-3.

> Commerce ignored evidence properly submitted by Assan, and now on the record of this investigation, that all IPCs used during the POI have been officially approved by the Government of Turkey ("GOT").  Commerce's established practice is to consider IPCs that the GOT has closed in its calculation of a duty drawback adjustment.  Commerce has unlawfully departed from that practice in this case in excluding three of Assan's four closed IPCs from its calculation of the duty drawback adjustment in the Second Draft Remand Results.  The result is to grant Assan an adjustment based on only a fraction of the entire drawback Assan received "by reason of the exportation of the subject merchandise to the United States{.}"[56]  Commerce's methodology in the Second Draft Remand Results is thus inconsistent with the plain language of the statute and the {Federal Circuit} ruling in *Uttam Galva Steels Ltd. v. United States*, which "requires an adjustment to 'export price' based on the full extent of the duty drawback."[57]
>
> Second, Commerce has imposed a new restriction in the Second Draft Remand Results that IPCs must be officially approved by the GOT within the POI to be considered in its drawback calculation.  This is patently unreasonable given that parties cannot apply to the GOT for closure until imports and exports under an IPC are completed, and the length of time it takes the GOT to issue its final approval letter.  Both Commerce and the CIT have previously rejected the "POI limitation" Commerce now endorses in the Second Draft Remand Results.[58]  There is no basis for Commerce to suddenly impose such a restrictive new requirement here and, as the CIT has found, doing so "unreasonably undercuts its stated goals of accuracy, transparency, and predictability{.}"[59]

*Association's Comments:*

The following is a verbatim summary of the comments submitted by the Association.  For further details, *see* the Association's Comments at 2-4.

> The Association agrees with {Commerce's} decision to calculate a per-unit duty drawback adjustment using only the sole IPC that Assan reported was closed in the underlying investigation and to apply the resulting adjustment only to U.S. sales

---

[56] *See* section 772(c)(1)(B) of the Act.
[57] *See Uttam Galva*, at 997 F.3d 1192, 1197.
[58] *See Toscelik Profil,* 348 F.Supp.3d at 1321; *see also Habas*, 439 F.Supp.3d 1342.
[59] *See Toscelik Profil,* 348 F.Supp.3d at 1328.

11

made under this same IPC.[60] As explained below in section II, however, the Association urges Commerce to provide additional reasoning for its decision to consider only the single IPC that Assan reported was closed in the original investigation. Specifically, the reasoning the Department provided in the Draft Remand – that {Commerce's} practice is to require IPCs to be closed "during the POI,"[61] has previously been remanded as unlawful by the {Court}.[62]

Assan, however, has not met its burden of establishing its eligibility for, or the amount of, an adjustment under 19 C.F.R. § 351.401(b)(1) for any of the other IPCs because: the factual information Assan submitted concerning these IPCs on June 6, 2024 was unsolicited and, therefore, should be struck from the record, (2) the factual information Assan submitted on June 20, 2024 was untimely and, therefore, should be struck from the record, and (3) Commerce has not verified any factual information concerning these other IPCs. These circumstances are similar to Icdas,[63] where the Court sustained {Commerce's} (i) definition of "closure," (ii) the evidentiary burden Commerce imposed on the respondent in that case to demonstrate closure, and (iii) Commerce's rejection of unsolicited and untimely submitted information that allegedly demonstrated closure. Therefore, in the final remand determination transmitted to the Court in this proceeding, Commerce should update its reasoning for calculating a drawback adjustment based solely on the single IPC Assan reported was closed during the period of investigation in this proceeding.

**Commerce's Position:** Commerce agrees with both parties that our practice allows for the consideration of IPCs that close outside the POI or period of review where evidence shows that during the course of a proceeding, the IPC closure has been fully documented and the relevant information is available to calculate a duty drawback adjustment.[64] Here, Commerce was required to seek additional information necessary to accurately calculate the duty drawback adjustment for the one IPC found closed during the investigation and within the POI, which was the subject of this *Second Remand Order*.[65] Although the focus of the questionnaire was directed on this sole closed IPC found during the investigation, we *did* request that Assan identify in the

---

[60] *See* Second Draft Results at 7-8.
[61] *Id.* at 8.
[62] *See Toscelik Profil,* 348 F.Supp.3d at 1321.
[63] *See Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States*, 654 F. Supp. 3d 1311, 1317-22 (CIT 2023) (*Icdas*).
[64] *See Toscelik Profil,* 348 F. Supp. 3d at 1321; *see also Habas*, 439 F. Supp. 3d 1342.
[65] *See* Remand Questionnaire.

12

U.S. sales database which sales were made under an open IPC, and Assan indicated that they had none.[66] Specifically, Assan reported that to date, there are no reported U.S. sales in the POI with open IPCs and provided documentation in support of its claims that does not conflict with other information provided on the record.[67] We find Assan's response to Commerce's inquiry to be *both* reasonable and relevant for purposes of complying with the Court's order. Specifically, the Court held that Commerce cannot impermissibly increase Assan's export price by applying the duty drawback adjustment to all of Assan's U.S. sales of subject merchandise, including certain open-IPC sales that did not earn the benefits of the exempted duties.[68] The information submitted by Assan regarding the status of any open IPCs was not only responsive and relevant to Commerce's remand questionnaire, but also the Court's instructions; the Association's argument to the contrary (*i.e.*, information is unsolicited and untimely) is, therefore, without merit. Indeed, accepting Assan's submissions provides Commerce with a complete record from which to redetermine the respondent's duty drawback adjustment.

Commerce's review of the information submitted by Assan regarding the three additional closed IPCs finds only one of the three to be related to import duty exemptions based on the closure documentation, and to be fully documented with the inclusion of the relevant import and export lists that are needed in calculating the duty drawback adjustment associated with this closed IPC.[69] The other two additional closed IPCs reported by Assan lack the necessary information in the closure documentation to show that these closed IPCs are related to either import duty exemptions or reimbursements, and cannot be tied to the reported U.S. sales of subject merchandise during the POI because of the absence of any detailed import and export

---

[66] *See* Assan's Remand Response at 7.
[67] *Id.*
[68] *See Second Remand Order* at 11-12.
[69] *See* Assan's Rebuttal Factual Information at Attachment 1.

lists.[70] Therefore, Commerce finds only one of the three additional closed IPCs claimed by Assan to meet the eligibility requirements for a duty drawback adjustment, noting that this is the same closed IPC with the same documentation reported in the first administrative review of this order.[71]

As noted above, Commerce has calculated the duty drawback adjustment using both the one closed IPC during the POI that was addressed in the investigation, and this one additional IPC that closed after the POI but whose duty drawback adjustment is related to sales reported during the POI. This fulfills Commerce's statutory requirement to calculate fair and accurate dumping margins.[72] Below, Commerce addresses the modifications made to its duty drawback adjustment calculations based on the comments submitted by both parties.

Comment 2:  Mathematical Errors in the Calculation of Assan's Duty Drawback Adjustment

*The Association's Comments:*

The following is a verbatim summary of comments submitted by the Association. For further details, *see* the Association's Comments at 2-3.

> Petitioners agree with Commerce's descriptions of its methodology and application of the duty drawback adjustment in the Draft Remand. Specifically, to calculate the per-unit duty drawback adjustment, Commerce states that it used "the estimated amount of the duty drawback benefit for exempted import duties realized by each respondent for exports to the United States during the POI of merchandise similar to scope merchandise as documented on the closed IPC" as the numerator, and the agency used "the quantity of sales associated with closed IPC in the U.S. sales database" as the denominator.[73] Commerce "then applied this per-unit benefit to U.S. sales       associated with {the} closed IPC in the U.S. sales database."[74] This methodology satisfies the statute's plain language, which requires increasing U.S.

---

[70] *See* Assan's Remand Response in general and Exhibit 2-B for closure documentation.
[71] *See* Assan's Rebuttal Factual Information at 2 and footnote 4, and Attachment 1; *see also Common Alloy Aluminum Sheet from Turkey: Final Results of Antidumping Duty Administrative Review; 2020–2022*, 88 FR 77550 (November 13, 2023), and accompanying IDM at Comment 1.
[72] *See Shakeproof Assembly*, 102 F.Supp.2d 486, 495 (CIT 2000).
[73] *See* Second Draft Results at 6.
[74] *Id.*

14

price only by import duties exempted "by reason of the exportation of the subject merchandise to the United States."[75]

While Petitioners agree with Commerce's description of its methodology, Commerce's implementation of this methodology contains two errors, which should be corrected in the final remand determination transmitted to the Court: (1) Commerce did not limit the amount of the duty drawback benefit serving as the numerator to the POI, contrary to its stated intent, and (2) Commerce's calculation includes an unnecessary step that reduced Assan's per-unit drawback adjustment. Specifically, Commerce included a step from the agency's duty drawback calculation in the original investigation of certain aluminum foil from Türkiye where Commerce increased the U.S. price of all sales (thereby allocating the adjustment over total U.S. sales), a step that is not intended or necessary here.

*Assan's Comments:*

The following is a verbatim summary of comments submitted by Assan. For further details, *see* Assan's Comments at 3.

Commerce's revised duty drawback calculation in the Second Draft Remand Results contains mathematical errors that should be corrected in the Second Final Remand Results.

**Commerce's Position:** As an initial matter, Commerce finds that the proposals by parties regarding the methodology used to calculate Assan's duty drawback adjustment for the one closed-IPC during the POI *both* result in the same per-unit duty drawback adjustment.[76] Even so, we find that the methodological corrections noted by the Association better account for the fact pattern, here – where not all of Assan's reported U.S. sales are associated with an IPC that Commerce has found to be eligible for duty drawback adjustment. Moreover, the Association's corrections are in-line with Commerce's rationale in *Aluminum Foil from Türkiye* (*i.e.*, to calculate a duty drawback benefit associated only with U.S. exports made during the POI).[77] Commerce, therefore, will apply the "closing ratio" only to the reported U.S. exports of subject

---

[75] *See* Section 772(c)(1)(B) of the Act.
[76] *See* the Association's Remand Comments at 8 and Attachment 1; *see also* Assan's Remand Comments at Attachment 1.
[77] *See Aluminum Foil from Türkiye* IDM at Comment 1.

15

merchandise *in the POI* for each respective closed-IPC instead of the total U.S. exports of subject merchandise in each respective closed-IPC.

In addition, Commerce agrees with the Association that no proportional benefit is needed to calculate a closed-IPC-specific duty drawback benefit to be applied to all sales because Assan has identified the relevant closed-IPCs in its U.S. sales database. Accordingly, we have removed those additional steps in the calculation which are unnecessary since Commerce has derived the specific duty drawback benefit only for POI U.S. sales of subject merchandise for each of the closed-IPCs and calculated the per-unit benefit by dividing this benefit by the relevant quantity of these POI U.S. sales of subject merchandise for each of the closed-IPCs.

Finally, Commerce notes that Assan correctly found a minor error by Commerce in identifying the relevant POI sales of subject merchandise in the closed-IPC by utilizing the date in the U.S. sales database instead of the date in the export list of the closed-IPC.[78] Therefore, for purposes of identifying the relevant U.S. exports of subject merchandise in the POI for each respective closed-IPC, Commerce will use the Turkish Customs' export date in the relevant export list for the two respective closed IPCs. By incorporating all the noted changes above, this methodology ensures that Commerce calculates a closed-IPC specific duty drawback benefit associated only with reported U.S. exports of subject merchandise during the POI that were made under closed IPCs.[79]

## V. FINAL RESULTS OF SECOND REMAND REDETERMINATION

Consistent with *Second Remand Order*, we have reconsidered our decision from the First Remand Results and have revised our duty drawback methodology, which now divides the total closed-IPC duty drawback benefit associated with U.S. exports in the POI for each closed-IPC,

---

[78] *See* Assan's Remand Response, at 11.
[79] *See* Second Final Remand Calculation Memorandum.

by their respective quantity of subject merchandise exported to the U.S. during the POI for each of the two closed-IPCs; and then applies the relevant per-unit duty drawback adjustment for each closed IPC to the respective U.S. sales of subject merchandise during the POI that were exported under that closed IPC.[80] The net effect of Assan's duty drawback adjustment results in a *de minimis* margin for Assan.[81] As a result of the decrease in Assan's margin, the "All Others" *ad valorem* weighted-average rate increased from 4.85 percent[82] in the *Final Determination* to 13.56 percent.[83] Should the Court affirm these second final results of redetermination, Commerce intends to publish a notice of amended final determination and order in the *Federal Register*. In the event that the Court's ruling is not appealed or, if appealed, upheld by a final and conclusive court decision, Commerce intends to issue appropriate customs instructions to U.S. Customs and Border Protection.

7/31/2024

X _____

Signed by: RYAN MAJERUS
Ryan Majerus,
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

---

[80] *See* Second Final Remand Calculation Memorandum.
[81] *Id*.
[82] *See Final Determination*, 86 FR at 13327.
[83] *See* Second Final Remand Calculation Memorandum.