NONCONFIDENTIAL
VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) ) |
| Defendant, | ) ) |
| and | ) ) |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT GROUP AND ITS INDIVIDUAL MEMBERS, ET AL., | ) ) ) ) |
| Defendant-Intervenors. | ) ) |

Consol. Court No. 21-00246

## CONSOLIDATED PLAINTIFFS' COMMENTS ON SECOND REMAND REDETERMINATION

JOHN M. HERRMANN
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP

Counsel to Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its Individual Members, et al.

August 30, 2024

NONCONFIDENTIAL
VERSION

## Table of Contents

**Page**

I.   THE DEPARTMENT'S ACCEPTANCE OF, AND RELIANCE ON, UNSOLICITED, UNTIMELY, AND UNVERIFIED INFORMATION IS UNLAWFUL .........................................................................................................2

    A.   Assan Submitted Unsolicited and Untimely New Factual Information During the Commerce Department's Remand Proceedings ...........................................................................................2

    B.   The Commerce Department's Acceptance of, and Reliance on, Assan's Untimely, Unsolicited, and Unverified New Factual Information Is Contrary to the Agency's Regulations and Practice .......................6

        1.   The Department's Acceptance of Unsolicited Information In Assan's June 6 Supplemental Questionnaire Response Is Unlawful .................................................................................6

        2.   The Department's Failure to Reject Assan's Untimely and Unsolicited Information in Its June 20 Letter Is Unlawful .........................8

    C.   The Department's Reliance on Unverified Information Is Unlawful ...................12

    D.   The Compelling Interests of Finality, Efficiency, and Fundamental Fairness Outweigh Any Need for Considering the Untimely Information Submitted by Assan .........................................................15

II.   CONCLUSION .........................................................................................................18

i

NONCONFIDENTIAL
VERSION

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

Alloy Pipe Prods., Inc. v. United States, 210 F. Supp. 2d 1267 (Ct. Int'l Trade
  2002), aff'd sub nom., Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.,
  334 F.3d 1284 (Fed. Cir. 2003)................................................................................17, 18

Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.,
  334 F.3d 1284 (Fed. Cir. 2003)..............................................................................................16

Assan Aluminyum Sanayi ve Ticaret A.S. v. United States,
  Slip Op. 24-44, 2024 Ct. Int'l Trade LEXIS 42 (Apr. 11, 2024)............................2, 3, 11, 12

Brooklyn Bedding, LLC v. United States,
  Slip Op. 23-107, 2023 WL 4637146 (Ct. Int'l Trade July 20, 2023) ......................................13

Clearon Corp. v. United States,
  Slip Op. 15-91, 2015 Ct. Intl. Trade LEXIS 91 (Aug. 20, 2015) ....................................11, 12

CS Wind Viet. Co. v. United States, 219 F. Supp. 1273 (Ct. Int'l Trade 2017),
  aff'd per curiam, 721 F. App'x 993 (Fed. Cir. 2018) ................................................16, 17, 18

Dalian Meisen Woodworking Co. v. United States,
  Slip Op. 24-83, 2024 WL 3580510 (Ct. Int'l Trade July 22, 2024) ........................................13

Essar Steel Ltd. v. United States,
  678 F.3d 1268 (Fed. Cir. 2012)........................................................................................16, 18

Fischer S.A. Comercio, Industria & Agricultura v. United States,
  700 F. Supp. 2d 1364 (Ct. Int'l Trade 2010) ........................................................................16

Fort Stewart Sch. v. Fed. Lab. Rels. Auth.,
  495 U.S. 641 (1990)..............................................................................................................14

ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States,
  654 F. Supp. 3d 1311 (Ct. Int'l Trade 2023) ..................................................................11, 12

Jinan Yipin Corp. v. United States,
  637 F. Supp. 2d 1183 (Ct. Int'l Trade 2009) ..................................................................11, 12

Since Hardware (Guangzhou) Co. v. United States,
  35 C.I.T. 1670 (2011)............................................................................................................14

Tosçelik Profil ve Sac Endüstrisi A.S. v. United States,
  348 F. Supp. 3d 1321 (Ct. Int'l Trade 2018) ..................................................................14, 15

NONCONFIDENTIAL
VERSION

Uttam Galva Steels Ltd. v. United States,
    997 F.3d 1192 (Fed Cir. 2021)............................................................................2

Wilmar Trading PTE Ltd. v. United States,
    675 F. Supp. 3d 1215 (Ct. Int'l Trade 2023) .....................................................13

**Statutes and Regulations**

19 U.S.C. § 1677m(i)(1) .............................................................................................13

19 C.F.R. § 351.301(c)(1) .............................................................................................9

19 C.F.R. § 351.301(c)(1)(v) ....................................................................................9, 10

19 C.F.R. § 351.302(d)(1)(i) ........................................................................................10

19 C.F.R. § 351.302(d)(1)(ii) ......................................................................................6, 7

19 C.F.R. § 351.307(b)(i).............................................................................................14

19 C.F.R. § 351.302(d) ................................................................................................16

**Administrative Determinations**

Final Results of Second Redetermination Pursuant to Court Remand: Assan
    Aluminyum Sanayi ve Ticaet A.S. v. United States, Consol. Ct. No. 21-00246
    (Dep't Commerce July 31, 2024) ("2nd Remand Results") ...........................*passim*

## CONSOLIDATED PLAINTIFFS' COMMENTS ON
## SECOND REMAND REDETERMINATION

These comments, filed on behalf of the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members, Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc. (collectively, "Consolidated Plaintiffs"), challenge the U.S. Department of Commerce's ("Defendant") final results of second redetermination pursuant to Court remand. See Final Results of Second Redetermination Pursuant to Court Remand: Assan Aluminyum Sanayi ve Ticaet A.S. v. United States, Consol. Ct. No. 21-00246 (Dep't Commerce July 31, 2024) (2nd Remand PR 16)[1] (ECF No. 122) ("2nd Remand Results").  For the reasons below, Defendant's 2nd Remand Results wrongly confer a windfall to Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan") by incorporating and relying on unsolicited, untimely, and unverified new factual information.  This Court should require Defendant to comply with the statute's plain language and the agency's regulations, consistent with case precedent and the strong interests of finality and fairness, and disregard the untimely and unverified factual information submitted by Assan during the second remand proceedings.

---

[1]    Documents in the administrative record compiled in connection with the 2nd Remand Results are cited using the descriptions in the Index to the Administrative Record, filed with this Court on August 14, 2024 (ECF No. 123).  Documents are cited by their confidential record number ("2nd Remand CR __") and/or their public record number ("2nd Remand PR __"), as appropriate.  Additionally, documents in administrative record compiled in connection with the Department's original determination are cited using the descriptions provided in the Index to the Administrative Record, filed with this Court on June 30, 2021 (ECF No. 15).  These documents are cited by their confidential record number ("CR __") and/or their public record number ("PR __"), as appropriate.

NONCONFIDENTIAL
VERSION

## I.    THE DEPARTMENT'S ACCEPTANCE OF, AND RELIANCE ON, UNSOLICITED, UNTIMELY, AND UNVERIFIED INFORMATION IS UNLAWFUL

### A.    Assan Submitted Unsolicited and Untimely New Factual Information During the Commerce Department's Remand Proceedings

In <u>Assan II</u>,[2] this Court remanded Defendant's first remand redetermination, finding the Defendant's duty drawback adjustment methodology unlawful because Defendant "calculated a per-unit duty drawback adjustment on the basis of a single closed IPC and applied that adjustment to all of Assan's U.S. sales of subject merchandise, including to sales of merchandise exported under open IPCs" despite there being "no clear statutory basis for doing so." <u>Assan II</u>, Slip Op. 24-44 at 11-12, 2024 Ct. Int'l Trade LEXIS 42, at *14. The Court also found that Defendant failed to address adequately Consolidated Plaintiffs' arguments by relying on <u>Uttam Galva</u>[3] and raising "the specter of 'tracing'" – a case and methodological issue that do not address the lawfulness of applying closed IPC drawback benefits to open IPC sales. <u>See id.</u> at 17-18, 2024 Ct. Int'l Trade LEXIS 42, at *23. In remanding the Commerce Department's final determination, this Court directed Defendant to "reconsider or further explain its duty drawback calculation methodology in light of the statutory constraints imposed by 19 U.S.C. § 1677a(c)(1)(B)" and to respond to Consolidated Plaintiffs' arguments without reliance on the inapplicable <u>Uttam Galva</u> precedent. <u>See id.</u> at 20, 2024 Ct. Int'l Trade LEXIS 42, at *26.

In its initial response to the Commerce Department's Section C (U.S. sales) questionnaire, Assan reported that it "imported inputs under **[      ]** IPCs {Inward Processing

---

[2]    <u>See</u> <u>Assan Aluminyum Sanayi ve Ticaret A.S. v. United States</u>, Slip Op. 24-44, 2024 Ct. Int'l Trade LEXIS 42 (Apr. 11, 2024) (ECF No. 119) (hereinafter, "<u>Assan II</u>").

[3]    <u>See</u> <u>Uttam Galva Steels Ltd. v. United States</u>, 997 F.3d 1192 (Fed Cir. 2021) (hereinafter, "<u>Uttam Galva</u>").

Certificates} for shipments made to the U.S." – and identified the following IPCs in that regard:

[                                    ] Response from Mayer Brown, LLP to Sec of Commerce

Pertaining to Assan Sec C QR at 43 (hereinafter, "CQR") (CR 52) (PR 142-143).  Because only

IPC [      ] was closed, Assan calculated a per-unit duty drawback adjustment using

information from only this single IPC.  See id. at 43-45, Exh. C-11 (pdf pgs. 167-184), and Exh.

C-12 (pdf pgs. 186-204) (CR 52) (PR 142-143).

During its most recent remand proceedings in connection with Assan II, Defendant issued

Assan a supplemental questionnaire stating that it required additional information "to address the

issues raised by the Court."  Letter from USDOC to Arent Fox Pertaining to Assan Duty

Drawback Supp Qnaire at 2 (2nd Remand CR 1) (2nd Remand PR 1).  Defendant instructed Assan

to submit, among other information, "a revised U.S. sales database by adding an additional field

(e.g., 'IPCNOU') . . . that identifies those reported U.S. sales that are included in the [      ]

reported closed IPC [      ]." Id. at 3 (2nd Remand CR 1) (2nd Remand PR 1).

In response to Defendant's supplemental questionnaire, Assan claimed that the other

[         ] – i.e., [                           ] – have closed since the conclusion of the

Commerce Department's less-than-fair-value investigation.  Based on this circumstance, Assan

asserted that all its reported U.S. sales of subject merchandise are associated with a closed IPC

and should be assigned a duty drawback benefit.  See Response From ArentFox Schiff LLP To

Sec of Commerce Pertaining To Assan Duty Drawback Supp Qnaire 1-2 (2nd Remand CR 2-4)

(2nd Remand PR 4) (hereinafter, "Assan's June 6, 2024 SQR").

Consolidated Plaintiffs submitted comments on Assan's response to the Department's

supplemental questionnaire demonstrating that Assan's claim that all of the company's U.S. sales

were associated with closed IPCs is wrong.  See Letter from Kelley Drye & Warren LLP to Sec

of Commerce Pertaining to Petitioners Cmts on Assan Supp QR (2nd Remand CR 8) (2nd Remand PR 5).  Assan had reported throughout the Commerce Department's investigation that sales made pursuant to IPCs [                    ], which covered the [                    ] of Assan's sales, were not exempt from customs duties (only Value Added Tax) and, therefore, were ineligible for a drawback adjustment.  See id. at 3-5, Attachments 1-2 (2nd Remand CR 8) (2nd Remand PR 5).  In addition, the record did not support the Commerce Department granting a drawback adjustment for sales made pursuant to IPC [        ] because the record did not contain any of the closure documents or other necessary information required for Defendant to calculate an adjustment.  See id. at 6-8 (2nd Remand CR 8) (2nd Remand PR 5).  Consolidated Plaintiffs also emphasized that Assan's submission of new factual information concerning IPCs [                    ] was not solicited by the Commerce Department and should be rejected pursuant to Defendant's regulations.  See id. at 5, 9 (2nd Remand CR 8) (2nd Remand PR 5).

In response to Consolidated Plaintiffs' arguments, Assan submitted even further untimely and unsolicited information to the Commerce Department.  See Letter from ArentFox Schiff LLP to Sec of Commerce Pertaining to Assan Rebuttal Cmts on Supp QR (2nd Remand CR 9) (2nd Remand PR 6).  Assan claimed this new information was timely submitted pursuant to 19 C.F.R. § 351.301(c)(1)(v) and that the new information rebutted, clarified, or corrected information contained in Consolidated Plaintiffs' comments on Assan's response to the Commerce Department's supplemental questionnaire.  See id. at 2 (2nd Remand CR 9) (2nd Remand PR 6).

Consolidated Plaintiffs urged Defendant to reject Assan's untimely and unsolicited new factual information, as it did not rebut, clarify, or correct any information contained in Consolidated Plaintiffs' comments.  See Letter from Kelley Drye & Warren LLP to Sec of

Commerce Pertaining to Petitioners Req to Reject Untimely-Filed NFI (2nd Remand CR 12) (2nd Remand PR 7).

Defendant subsequently released to interested parties for comment a draft of its redetermination pursuant to Court remand in which the agency amended the duty drawback methodology applied to Assan. Defendant described a lawful duty drawback adjustment in its draft remand explaining that to calculate the per-unit duty drawback adjustment, the agency used "the estimated amount of the duty drawback benefit for exempted import duties realized by each respondent for exports to the United States during the POI of merchandise similar to scope merchandise as documented on the closed IPC" as the numerator, and "the quantity of sales associated with closed IPC in the U.S. sales database" as the denominator. Other from USDOC to File Pertaining to Assan Draft Remand Redetermination at 6 (2nd Remand PR 8) (hereinafter, "Draft Remand"). Defendant "then applied this per-unit benefit to U.S. sales associated with {the} closed IPC in the U.S. sales database." Id. (2nd Remand PR 8).

Defendant also calculated Assan's adjustment based only on IPC [        ] – the sole IPC closed by the time Assan filed its final questionnaire response during the less-than-fair-value investigation. See Memo from USDOC to Pertaining to Assan Calc Memo Draft 2nd Remand Redetermination at 3 (2nd Remand CR 13) (2nd Remand PR 9). However, Defendant's reasoning for doing so – that the agency's practice is to require IPCs to be closed "during the POI" – has been found unlawful by the U.S. Court of International Trade. See Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts on 2nd Draft Remand Results at 9 (2nd Remand CR 26) (2nd Remand PR 15). Consolidated Plaintiffs, therefore, urged the Department to revise the justification in the Draft Remand for calculating a duty drawback adjustments based solely on IPC [        ] In particular, as Consolidated Plaintiffs had

previously explained, Assan's justification for expanding the duty drawback adjustment to additional IPCs was based on untimely, unsolicited, and unverified information that Consolidated Plaintiffs urged Defendant to reject and not rely on in reaching its final redetermination on remand.  See id. at 9-17 (2nd Remand CR 26) (2nd Remand PR 15).

> **B.     The Commerce Department's Acceptance of, and Reliance on, Assan's Untimely, Unsolicited, and Unverified New Factual Information Is Contrary to the Agency's Regulations and Practice**

In the Draft Remand, Defendant acknowledged that because the Commerce Department's supplemental questionnaire issued to Assan did not request information on any IPC other than IPC **[      ]**, Assan's submission of factual information relating to IPCs **[**

**]** was unsolicited factual information.  In particular, the Draft Remand states: "Assan also submitted additional factual information outside of the scope of Commerce's supplemental questionnaire."  Draft Remand at 5-6 (2nd Remand PR 8).  Defendant, however, abandoned this explanation in the final remand contrary to the agency's regulations.

> **1.     The Department's Acceptance of Unsolicited Information In Assan's June 6 Supplemental Questionnaire Response Is Unlawful**

Defendant's regulations provide that the agency "will not consider or retain in the official record of the proceeding . . . {u}nsolicited questionnaire responses."    19 C.F.R. § 351.302(d)(1)(ii).  Defendant, however, failed to comply with its own regulations in accepting and relying on the unsolicited new factual information submitted by Assan.

Defendant's supplemental questionnaire instructed Assan to:

(1) Indicate which sales in the U.S. sales listing were made pursuant to IPC **[      ]**,

(2) Identify the quantity and value of in-scope merchandise in the export list for IPC **[      ]**, and

6

(3) Reconcile the quantity and value of in-scope merchandise in the export list for IPC **[        ]** with the quantity of value of sales in the U.S. sales listing that were exported pursuant to this same IPC.

Letter from USDOC to Arent Fox Pertaining to Assan Duty Drawback Supp Qnaire at 3 (2nd Remand CR 1) (2nd Remand PR 1).

In responding to Defendant's supplemental questionnaire, however, Assan claimed that IPCs **[                    ]** have closed, and it provided new factual information purporting to demonstrate those closures. *See* Assan's June 6, 2024 SQR at 1-2, Exh. 2A (pdf pg. 196) and Exh. 2B (pdf pgs. 198-235) (2nd Remand CR 2-4) (2nd Remand PR 4). Because the Department's supplemental questionnaire did not request information from Assan on any IPC other than IPC **[     ]**, Assan's submission of factual information relating to the other IPCs was unsolicited factual information and should "not {have been} consider{ed} or retain{ed} in the official record of the proceeding." 19 C.F.R. § 351.302(d)(1)(ii).

In its Draft Remand, Defendant interpreted its own supplemental questionnaire as requesting only information on IPC **[     ]** – stating that "Assan also submitted additional factual information *outside of the scope of Commerce's supplemental questionnaire*." Draft Remand at 5-6 (2nd Remand PR 8) (emphasis added). In the 2nd Remand Results, Defendant states that "{a}lthough the focus of the questionnaire was directed on this sole closed IPC found during the investigation, we *did* request that Assan identify in the U.S. sales database which sales were made under an open IPC." 2nd Remand Results, at 12-13 (emphasis in original). Defendant states that this information "was not only responsive and relevant to Commerce's remand questionnaire, but also the Court's instructions." Id. at 13. Contrary to Defendant's assertion in the 2nd Remand Results, this Court did not instruct Defendant to collect additional information on remand, so the latter part of Defendant's explanation is wrong.

7

Further, even if Defendant's re-interpretation of its own supplemental questionnaire is reasonable and supported by the record, the information submitted in Assan's June 6, 2024 questionnaire response is inadequate for calculating a duty drawback adjustment. Specifically, [                    ] of Assan's reported U.S. sales of subject merchandise were exported pursuant to IPCs [                ] and, as the Department correctly found in the 2nd Remand Results, these IPCs do not bestow any duty drawback benefit. See 2nd Remand Results at 13; see also Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts on Assan Supp QR at 3-5 (2nd Remand CR 8) (2nd Remand PR 5). In addition, for IPC [        ], Assan omitted closure documents, as well as export and import lists – information Defendant requires to determine if a Turkish respondent is eligible for a duty drawback adjustment and to calculate the amount of the duty drawback adjustment. See id. at 5-8 (2nd Remand CR 8) (2nd Remand PR 5). Thus, based on the information Assan submitted as part of its June 6, 2024 supplemental questionnaire response, Assan was not eligible for a drawback adjustment in connection with any of the additional IPCs identified in its response, nor was it possible for Commerce to calculate a per-unit drawback adjustment for those IPCs. As discussed below in Section I.B.2., the information contained in Assan's June 20, 2024 submission is untimely, unsolicited, and as discussed in Section I.C., the Commerce Department has not verified any of the new information submitted by Assan, as required by the statute. Defendant's determination to grant Assan a duty drawback adjustment based on IPC [        ], therefore, is unlawful.

## 2. The Department's Failure to Reject Assan's Untimely and Unsolicited Information in Its June 20 Letter Is Unlawful

On June 20, 2024, Assan submitted new factual information in response to Consolidated Plaintiffs' comments on Assan's June 6, 2024 supplemental questionnaire response, claiming the

new factual information was timely under the Department's regulation granting the original

submitter of a questionnaire response an opportunity for sur-rebuttal. <u>See</u> Letter from ArentFox

Schiff LLP to Sec of Commerce Pertaining to Assan Rebuttal Cmts on Supp QR at 1-2 (2nd

Remand CR 9) (2nd Remand PR 6). The relevant provision of the Department's regulation

provides that:

> Within seven days of the filing of such rebuttal, clarification, or
> correction to a questionnaire response, the original submitter of the
> questionnaire response is permitted one opportunity to submit
> factual information to ***rebut, clarify, or correct factual
> information submitted in the interested party's rebuttal,
> clarification or correction***.

19 C.F.R. § 351.301(c)(1)(v) (emphasis added).

Consolidated Plaintiffs' rebuttal letter included the following new factual information:

(1) Assan's descriptions of the duty drawback regime in Turkey, the different
types of IPCs, and its methodology for calculating a per-unit duty drawback
adjustment in the original investigation and first administrative review of the
antidumping duty order on Certain Aluminum Foil ("CAF") from Turkey, and

(2) [                                                                                    ]

<u>See</u> Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts

on Assan Supp QR at Atts. 1-3 (pdf pgs. 16-47) (2nd Remand CR 8) (2nd Remand PR 5). The

factual information that Assan submitted on June 20, 2024 does not rebut, clarify, or correct

Consolidated Plaintiffs' rebuttal factual information.

Instead of rebutting, clarifying, or correcting the factual information that Consolidated

Plaintiffs submitted on June 13, 2024, the factual information Assan submitted on June 20, 2024

*supplemented* Assan's June 6, 2024 questionnaire response. The Department's regulations,

however, provide Assan no such opportunity. <u>See</u> 19 C.F.R. § 351.301(c)(1). Accordingly,

because the factual information Assan submitted on June 20, 2024 does not rebut, clarify, or

NONCONFIDENTIAL
VERSION

correct – or in any way relate to -- the factual information Consolidated Plaintiffs submitted on
June 13, 2024, the factual information in Assan's submission dated June 20, 2024 is untimely
and Defendant should have rejected it.  See 19 C.F.R. § 351.301(c)(1)(v) ("The Secretary will
reject any untimely filed rebuttal, clarification, or correction submission and provide, to the
extent practicable, written notice stating the reasons for rejection."); 19 C.F.R. § 351.302(d)(1)(i)
("{T}he Secretary will not consider or retain in the official record of the proceeding: (i)
Untimely filed factual information, written argument, or other material that the Secretary rejects .
. . ").

Defendant did not address Consolidated Plaintiffs' arguments in the 2nd Remand Results
other than to lump the issue with Assan's submission of unsolicited information on June 6, 2024.
See 2nd Remand Results at 13 ("The information submitted by Assan regarding the status of any
open IPCs was not only responsive and relevant to Commerce's remand questionnaire, but also
the Court's instructions; the Association's argument to the contrary (i.e., information is
unsolicited *and untimely*) is, therefore, without merit.").  To the contrary, the new information
contained in Assan's June 20 letter was not in response to Commerce's remand questionnaire as
Defendant stated in the 2nd Remand Results.  Rather, as Assan stated, the information was
submitted to rebut, clarify, or correct Consolidated Plaintiffs' June 13 comments.  See Letter
from ArentFox Schiff LLP to Sec of Commerce Pertaining to Assan Rebuttal Cmts on Supp QR
at 1-2 (2nd Remand CR 9) (2nd Remand PR 6).  This untimely-filed information, further, was a
critical part of Commerce's margin calculations accompanying the 2nd Remand Results.
Specifically, to calculate the per-unit drawback adjustment associated with Assan's sales under
IPC [        ], Commerce relied on the untimely-filed information in "Attachment 1 of Assan's
Rebuttal Factual Information Response, dated June 20, 2024," not on information in Assan's

June 6, 2024 response.  Data From USDOC To File Pertaining To Interested Parties Attachment

6: Calc Worksheet Assan Second Closed IPC (Aug. 1, 2024) (2nd Remand CR 33) (emphasis

added).  As a result, this Court should again remand this matter to the Commerce Department

with instructions for the agency to address why Defendant departed from its regulations in

accepting the unsolicited new factual information that Assan <u>untimely</u> filed on June 20, 2024.

<u>See</u> <u>e.g.</u>, <u>Assan II</u>, Slip Op. 24-44 at 16-19, 2024 Ct. Intl. Trade LEXIS 42, at *21-26 (remanding

in part for Commerce's failure to address two of the Association's "relevant arguments");

<u>Clearon Corp. v. United States</u>, Slip Op. 15-91 at 56-57, 2015 Ct. Intl. Trade LEXIS 91, at *92

(Aug. 20, 2015) ("Arch raised this last point in its comments on the Draft Remand, and it is an

argument of cogent materiality that Commerce failed to address, requiring remand for that reason

as well.") (citing <u>Altx, Inc. v. United States</u>, 167 F. Supp. 2d 1353, 1359 (Ct. Int'l Trade 2001)

quoting <u>United States v. Nova Scotia Food Products Corp.</u>, 568 F.2d 240, 252 (2d Cir. 1977)

("{i}t is not in keeping with the rational {agency} process to leave vital questions, raised by

comments which are of cogent materiality, completely unanswered")); <u>Jinan Yipin Corp. v.</u>

<u>United States</u>, 637 F. Supp. 2d 1183, 1191 (Ct. Int'l Trade 2009).

       In <u>ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States</u>, 654 F. Supp. 3d

1311, 1317-22 (Ct. Int'l Trade 2023) (hereinafter, "<u>Icdas</u>"), the Court issued an instructive

decision sustaining the Department's denial of a duty drawback adjustment involving a number

of IPCs.  The Court examined the Department's definition of, and the evidentiary burden

imposed on Turkish respondents to demonstrate, "closure" of an IPC.  After analyzing these

issues, the Court sustained as reasonable the Department's requirement that a respondent

demonstrate the Government of Turkey has closed an IPC, not that a respondent has merely

applied for closure.  <u>See</u> <u>Icdas</u>, 654 F. Supp. 3d at 1320-22.  The Court also sustained the

Department's rejection of unsolicited and untimely information allegedly concerning closure of one of the respondent's IPCs. See id., 654 F. Supp. 3d at 1321-22. Despite Consolidated Plaintiffs raising this precedent in their comments on the Draft Remand,[4] Defendant did not address this decision – or how it differs from the circumstances at issue in this action – making Defendant's 2nd Remand Results unlawful. See e.g., Assan II, Slip Op. 24-44 at 16-19, 2024 Ct. Intl. Trade LEXIS 42, at *21-26 (remanding in part for Commerce's failure to address two of the Association's "relevant arguments"); Clearon Corp. v. United States, Slip Op. 15-91 at 56-57, 2015 Ct. Intl. Trade LEXIS 91, at *92 (Aug. 20, 2015) ("Arch raised this last point in its comments on the Draft Remand, and it is an argument of cogent materiality that Commerce failed to address, requiring remand for that reason as well.") (citing Altx, Inc. v. United States, 167 F. Supp. 2d 1353, 1359 (Ct. Int'l Trade 2001) quoting United States v. Nova Scotia Food Products Corp., 568 F.2d 240, 252 (2d Cir. 1977) ("{i}t is not in keeping with the rational {agency} process to leave vital questions, raised by comments which are of cogent materiality, completely unanswered")); Jinan Yipin Corp. v. United States, 637 F. Supp. 2d 1183, 1191 (Ct. Int'l Trade 2009).

### C.    The Department's Reliance on Unverified Information Is Unlawful

The 2nd Remand Results also fail to address the arguments raised in Consolidated Plaintiffs' comments on the Draft Remand that Assan's new information is unverified and, therefore, cannot be relied on in the agency's final determination. See Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts on 2nd Draft Remand at 16-17 (2nd Remand CR 26) (2nd Remand PR at 15); see also 2nd Remand Results at 12-14. As such,

---

[4]    See Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts on 2nd Draft Remand Results at 4, 10 (2nd Remand CR 26) (2nd Remand PR 15).

NONCONFIDENTIAL
VERSION

Defendant's 2nd Remand Results are unlawful in two respects: (1) Defendant's failure to address Consolidated Plaintiffs' argument is unlawful; *and* (2) Defendant's reliance on unverified information in an investigation is contrary to the statute's plain language.

The statute explicitly requires that the Department "***shall*** verify ***all*** information relied upon in making . . . a final determination in an investigation." 19 U.S.C. § 1677m(i)(1) (emphases added). The statute's plain language can only be interpreted in one way – any information that the Commerce Department relies on in reaching a final determination in an investigation must be verified. See Wilmar Trading PTE Ltd. v. United States, 675 F. Supp. 3d 1215, 1252 (Ct. Int'l Trade 2023) ("Under the statute, 'Commerce is required to verify all information it relies upon in making a final determination in an investigation, 19 U.S.C. § 1677m(i), and *is prohibited from relying on unverified information.*'") (emphasis added) (quoting İçdaş Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States, 498 F. Supp. 3d 1345, 1360 (Ct. Int'l Trade 2021)). Indeed, multiple decisions by the U.S. Court of International Trade have explained that verification of "all information relied upon" for mandatory respondents is "{a} critical aspect of Commerce's antidumping investigation." Brooklyn Bedding, LLC v. United States, Slip Op. 23-107 at 9, 2023 WL 4637146, at *4 (Ct. Int'l Trade July 20, 2023) ("In arguing that the Department acted contrary to law in failing to conduct verification, Plaintiffs focus on the statutory text, which is unambiguous and provides that Commerce '*shall verify* all information relied upon in making . . . a final determination in an investigation.'") (emphasis in original) (quoting 19 U.S.C. § 1677m(i)(1)); see also Dalian Meisen Woodworking Co. v. United States, Slip Op. 24-83 at 18-19, 2024 WL 3580510, at *10 (Ct. Int'l Trade July 22, 2024) (stating that "in investigations Commerce is directed by statute to

verify 'all information relied upon in making . . . a final determination'") (quoting 19 U.S.C. § 1677m(i)(1)).

Consistent with the statute's plain language, the Commerce Department's regulations state explicitly that the agency "will verify" information relied on in a final determination in a less-than-fair-value investigation.  See 19 C.F.R. § 351.307(b)(i) (providing that the Secretary "will verify factual information upon which the Secretary relies" in a final determination in an antidumping investigation); see also Since Hardware (Guangzhou) Co. v. United States, 35 C.I.T. 1670, 1682 (2011) (rejecting Commerce's reliance on its verification report in a prior administrative review to justify its not verifying in a subsequent review and ordering Commerce to "conduct verification and prepare a report explaining its verification methods, procedures, and findings, in accordance with 19 C.F.R. § 351.307(c)."); Fort Stewart Sch. v. Fed. Lab. Rels. Auth., 495 U.S. 641, 654 (1990) ("{i}t is a familiar rule of administrative law than an agency must abide by its own regulations").

Neither the unsolicited factual information Assan submitted concerning IPCs [

] on June 6, 2024, nor the untimely factual information Assan submitted concerning IPC [        ] on June 20, 2024, has been verified by Defendant.  As a result, Defendant's reliance on this information is unlawful and contrary to the statute's plain language.

In Tosçelik Profil ve Sac Endüstrisi A.S. v. United States, 348 F. Supp. 3d 1321 (Ct. Int'l Trade 2018) (hereinafter, "Tosçelik"), the Court described as "{c}ritical{}" the Department's verification of information on all certificates, including the certificates that closed after the period of investigation (i.e., certificates 6794 and 2794).  See Tosçelik, 348 F. Supp. 3d at 1325. The Court found the Department's limitation of the duty drawback adjustment to only IPCs that closed during the POI unreasonable in that case because it led the Department to ignore "*verified*

14

NONCONFIDENTIAL
VERSION

record information," the CIT ordered the Department to incorporate "*verified* information on the record" concerning certificates that closed after the period of investigation.  <u>Id.</u>, 348 F. Supp. 3d at 1328 (emphasis added).  That is, because the Department had verified both the closure and the duty drawback amounts associated with certificates that closed after the period of investigation, the Court ruled that the Department should consider that verified information in its deliberations.  In contrast, in the instant case, the record does not contain *verified* factual information for IPCs

[                              ]  Thus, in contrast to the circumstances in <u>Toşçelik</u>, Defendant's reliance on unverified information to calculate Assan's duty drawback adjustment is unlawful.

**D.     <u>The Compelling Interests of Finality, Efficiency, and Fundamental Fairness Outweigh Any Need for Considering the Untimely Information Submitted by Assan</u>**

At this late stage in this proceeding, more than three years after Defendant issued its final determination and while the third annual review of this antidumping duty order is underway, Assan should not be permitted to benefit unfairly from the significant passage of time.  As explained above, Assan's submission of new factual information introduces untimely and unverified data beyond the scope of Defendant's limited request for information on remand.  Permitting Assan's information concerning IPCs that closed long after the end of the agency's investigation to inform Defendant's second remand redetermination will only encourage protracted litigation of every antidumping proceeding involving IPCs.  Defendant, this Court, and interested parties, have a strong interest in preventing this sort of gamesmanship and limitless supplementation of the agency record.

The courts have held that there is a strong interest in finality of agency decisions that may only be overcome in certain unique circumstances, such as when Defendant's consideration of new information on remand would protect the integrity of the proceeding from fraud or material

inaccuracy.  See Essar Steel Ltd. v. United States, 678 F.3d 1268, 1278 (Fed. Cir. 2012); Alloy

Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284, 1292 (Fed. Cir. 2003) ("There is a

strong interest in the finality of Commerce's decisions."); CS Wind Viet. Co. v. United States,

219 F. Supp. 1273, 1284-86 (Ct. Int'l Trade 2017), aff'd per curiam, 721 F. App'x 993 (Fed. Cir.

2018).  Absent those narrow circumstances, the "{i}mportant principles of timeliness and finality

undergird all aspects of litigation."    Essar Steel, 678 F.3d at 1278; see also Fischer S.A.

Comercio, Industria & Agricultura v. United States, 700 F. Supp. 2d 1364, 1375-76 (Ct. Int'l

Trade 2010) ("Finality concerns . . . begin to counterbalance accuracy concerns" after the

preliminary stage of the Department's antidumping proceedings).  As explained by the United

States Court of Appeals for the Federal Circuit, "{t}o allow constant reopening and

supplementation of the record would lead to inefficiency and delay in finality." Essar Steel, 678

F.3d at 1277.  Indeed, if litigants are permitted to submit new information belatedly, "'there

would be little hope that the administrative process could ever be consummated in an order that

would not be subject to reopening.'"  Id. (quoting Vermont Yankee Nuclear Power Corp. v. Nat.

Res. Def. Council, Inc., 435 U.S. 519, 554-55 (1978)).

Consistent with the "important principles of timeliness and finality," the courts have

resisted attempts by interested parties to urge the Department's consideration of untimely factual

information.  For example, in CS Wind Vietnam, the court sustained the Department's third

remand results upon concluding that the Department appropriately declined to consider

"unsolicited new factual information" contained in comments on its draft remand results

pursuant to the agency's regulations (i.e., 19 C.F.R. § 351.302(d)).  See CS Wind Vietnam, 219

F. Supp. 3d at 1284-86; see also 19 C.F.R. § 351.302(d) (providing that "the Secretary will not

consider" untimely filed factual information or unsolicited information, unless the Department

extends the time limit for providing such information).  The court reasoned that the Department rightfully considered finality interests in rejecting unsolicited information in its remand determination.  See CS Wind Vietnam, 219 F. Supp. 3d at 1285.

In Alloy Piping Products, the court similarly sustained the Department's final determination in which the Department rejected untimely factual information presented as ministerial errors to its final determination.  See Alloy Pipe Prods., Inc. v. United States, 210 F. Supp. 2d 1267, 1270, 1284-87 (Ct. Int'l Trade 2002), aff'd sub nom., Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284 (Fed. Cir. 2003).  The court noted that not only did the respondent bear "the burden and responsibility of creating an accurate record within the statutory timeline," but also that any tension between finality and correctness did not warrant awarding the respondent with additional time in which to submit information.  See id., 201 F. Supp. 2d at 1284-86.  The court also recognized that the introduction of untimely new factual information at a late stage in a proceeding imposes a burden on the Department to analyze, corroborate, and verify the information.  See id., 201 F. Supp. 2d at 1286.  Thus, the court reasoned that the respondent's failure to follow the procedures in place to submit data and to correct submitted data was "fatal to its position" in arguing that the interest of "accuracy" outweighed any burden to the Department or the interest of finality.  See id., 201 F. Supp. 2d at 1281, 1286.

In this case, the importance of timeliness and finality similarly weigh strongly in favor of disregarding Assan's untimely, unsolicited, and unverified information submitted more than three years after the Department's final determination.  The Department appropriately disregarded "unsolicited new factual information" submitted during its third remand proceeding in CS Wind Vietnam, and it should similarly disregard the unsolicited and untimely new factual information submitted by Assan during the Department's second remand proceeding here.  See

17

CS Wind Vietnam, 219 F. Supp. 3d at 1284-86.  Further, as in CS Wind Vietnam and Alloy Piping Products, Assan submitted new factual information at a very late stage in this proceeding. See CS Wind Vietnam, 219 F. Supp. 3d at 1284-86; Alloy Piping Products, 210 F. Supp. 2d at 1270.  Indeed, Assan submitted this new information at a much later point in time (during the Department's second remand proceeding) than the respondent in Alloy Piping Products.  See id., 210 F. Supp. 2d at 1270.  In addition, the court in CS Wind Vietnam recognized that even the submission of new information filed in response to the Department's final determination – a point in time much earlier than Assan's submissions at issue here – could implicate "the need for finality in administrative proceedings."  CS Wind Vietnam, 219 F. Supp. 3d at 1286.

Accordingly, consistent with the "{i}mportant principles of timeliness and finality," (Essar Steel, 678 F.3d 1278), and to prevent Defendant from establishing a precedent that would encourage inefficient, protracted litigation and delayed submissions of information, this Court should instruct Defendant to disregard the information submitted by Assan on remand pertaining to IPCs other than the sole IPC that Assan reported as closed as of June 29, 2020.

## II.    CONCLUSION

For the reasons above, Consolidated Plaintiffs respectfully urge this Court to determine that Defendant's 2nd Remand Results are not supported by substantial evidence and are otherwise not in accordance with law.  Consolidated Plaintiffs, therefore, urge this Court to remand the 2nd Remand Results to the Department with instructions to reject Assan's untimely and unverified information and to calculate a duty drawback adjustment that is based on timely filed information submitted during the underlying agency proceedings that resulted in the determination that has been subject to challenge before this Court for more than three years.

18

**NONCONFIDENTIAL
VERSION**

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400
jherrmann@kelleydrye.com
jmorey@kelleydrye.com


Counsel to Consolidated Plaintiffs

Dated:  August 30, 2024

**CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, counsel for Consolidated Plaintiffs certifies that these comments challenging the U.S. Department of Commerce's final results of second redetermination pursuant to Court remand contain 5,630 words, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft 365 - Enterprise.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400
jherrmann@kelleydrye.com
jmorey@kelleydrye.com

Counsel to Consolidated Plaintiffs

Dated:  August 30, 2024