**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., ) | |
| ) | |
| ) | **NON-CONFIDENTIAL VERSION** |
| *Plaintiff,* ) | |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | Consol. Court No. 21-00246 |
| ) | |
| *Defendant,* ) | **Confidential Business Proprietary** |
| ) | **Information Deleted from Pages: 4 - 6,** |
| ALUMINUM ASSOCIATION COMMON ) | **9 & 11.** |
| ALLOY ALUMINUM SHEET TRADE ) | |
| ENFORCEMENT WORKING GROUP, et al., ) | |
| ) | |
| *Defendant-Intervenors.* ) | |
| ) | |

**PLAINTIFF ASSAN ALUMINYUM SANAYI VE TICARET A.S.'S**
**RESPONSE TO COMMENTS ON SECOND REMAND REDETERMINATION**

Leah N. Scarpelli
Matthew M. Nolan
Kimia Pourshadi

ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, D.C. 20006
Tel: (202) 857-6013
Fax: (202) 857-6395
Email: leah.scarpelli@afslaw.com

October 7, 2024

**TABLE OF CONTENTS**

**Page**

I.    ARGUMENT ...................................................................................................... 2

    A.    THE SECOND REMAND REDETERMINATION IS CONSISTENT
         WITH THE SECOND REMAND ORDER AND PETITIONERS
         ARGUMENTS IN THE FIRST REMAND REDETERMINATION ................... 2

    B.    COMMERCE PROPERLY ACCEPTED ASSAN'S TIMELY AND
         RESPONSIVE SUBMISSIONS ........................................................................ 4

    C.    COMMERCE VERIFIED ASSAN'S USE OF THE TURKISH
         DRAWBACK SYSTEM ..................................................................................... 7

    D.    FUNDAMENTAL FAIRNESS REQUIRES COMMERCE TO
         CONSIDER THE TIMELY AND RELEVANT INFORMATION
         SUBMITTED BY ASSAN ............................................................................... 10

II.   CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Alloys, Inc. v. United States*,
    30 F.3d 1469 (Fed. Cir. 1994).................................................................................7

*Am. Farm Lines v. Black Ball Freight Serv.*,
    397 U.S. 532 (1970)..............................................................................................6

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,
    701 F. Supp. 3d 1321 (Ct. Int'l Trade 2024) ....................................................2, 3

*Coal. for Pres. of Am. Brake Drum & Rotor Aftermarket Mfrs. v. United States*,
    23 C.I.T. 88 (1999) ...............................................................................................4

*CS Wind Viet. Co. v. United States*,
    219 F. Supp. 3d 1273 (Ct. Int'l Trade 2017), *aff'd*, 721 F. App'x 993 (Fed. Cir.
    2018) ....................................................................................................................11

*De Samo v. Dep't of Commerce*,
    761 F.2d 657 (Fed. Cir. 1985)...............................................................................8

*Içdaş Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*,
    498 F. Supp. 3d 1345 (Ct. Int'l Trade 2021) ........................................................9

*Jinko Solar Co. v. United States*,
    229 F. Supp. 3d 1333 (Ct. Int'l Trade 2017) ........................................................8

*Micron Tech., Inc. v. United States*,
    117 F.3d 1386 (Fed. Cir. 1997).........................................................................7, 8

*PSC VSMPO-Avisma Corp. v. United States*,
    688 F.3d 751 (Fed. Cir. 2012)...............................................................................7

*Stupp Corp. v. United States*,
    5 F.4th 1341 (Fed. Cir. 2021) ............................................................................6, 7

*Tosçelik Profil ve Sac Endüstrisi A.Ş. v. United States*,
    348 F.Supp.3d 1321 (Ct. Int'l Trade 2018) ........................................................10

**Federal Statutes**

19 U.S.C. § 1677a(c)(1)(B)...............................................................................2, 11

19 U.S.C. § 1677m(i)(1) ........................................................................................7

**Regulations**

19 C.F.R. § 351.301(c)(1)(v) ........................................................................................5

19 C.F.R. § 351.307(d) ................................................................................................8

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) <br> ) <br> ) |
| *Plaintiff,* | ) <br> ) |
| v. | ) <br> ) |
| THE UNITED STATES, | ) <br> ) |
| *Defendant,* | ) <br> ) |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, et al., | ) <br> ) <br> ) <br> ) <br> ) |
| *Defendant-Intervenors.* | ) <br> ) |

**NON-CONFIDENTIAL VERSION**

Consol. Court No. 21-00246

**Confidential Business Proprietary Information Deleted from Pages: 4-6, 9 & 11.**

**PLAINTIFF ASSAN ALUMINYUM SANAYI VE TICARET A.S.'S RESPONSE TO COMMENTS ON SECOND REMAND REDETERMINATION**

Plaintiff Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan") provides the following response to the comments on second remand redetermination filed on behalf the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members[1] (collectively, "Petitioners" or the "Association"), Consolidated Plaintiffs' Comments on Remand (Aug. 30, 2024), ECF No. 124 ("Pet. Cmts"). These comments are timely filed pursuant to the Court's September 23, 2024 order extending the remand deadlines, ECF No. 128.

For the reasons set forth below, as well as the Department of Commerce's ("Commerce's") Final Results of Second Redetermination Pursuant to Court Remand (July 31,

---

[1] Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc.

AFSDOCS:300294933.1

2024), ECF No. 122 ("Second Remand Redetermination") and 2nd Remand-P.R. 16, and Assan's

Comments on Second Remand Redetermination (Aug. 30, 2024), ECF No. 125, the Court should

sustain Commerce's duty drawback calculation in the Second Remand Redetermination.

Commerce's calculation is consistent with the Court's instructions in *Assan Aluminyum Sanayi*

*ve Ticaret A.S. v. United States*, 701 F. Supp. 3d 1321 (Ct. Int'l Trade 2024) ("*Second Remand*

*Order*") and its determination to reopen the record to accurately calculate Assan's duty drawback

adjustment.

## I.    ARGUMENT

### A.    The Second Remand Redetermination Is Consistent with the Second Remand Order and Petitioners Arguments in the First Remand Redetermination

Commerce's Second Remand Redetermination directly addresses the calculation of

Assan's duty drawback adjustment. In *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,

the Court remanded for a second time Commerce's Final Determination in the underlying

antidumping duty investigation of Common Alloy Aluminum Sheet ("CAAS") from Turkey

("AD order") to "reconsider or further explain" its methodology calculating duty drawback "in

light of the statutory constraints imposed by 19 U.S.C. § 1677a(c)(1)(B)," and to respond to

arguments raised by the Association. 701 F. Supp. 3d at 1333.

In its Second Remand Redetermination, Commerce complied with the *Second Remand*

*Order* by recalculating the duty drawback adjustment granted to Assan. Specifically, based on

the Court's finding that section 772(c)(1)(B) of Tariff Act of 1930 (19 U.S.C. § 1677a(c)(1)(B))

limits the duty drawback benefit, Commerce decreased Assan's duty drawback benefit by

applying the adjustment only to Assan's U.S. sales of subject merchandise associated with a

closed Inward Processing Certificate ("IPC"). Second Remand Redetermination at 5-6, Remand-

P.R. 16.  Petitioners misleadingly claim that the "Court did not instruct {Commerce} to collect

2

additional information on remand." Pet. Cmts at 7. While Petitioners are correct that the Court

did "not direct a result on remand," it *did* instruct Commerce to "reconsider . . . its duty

drawback calculation methodology in light of the statutory constraints" limiting application of

the adjustment to closed IPC sales. *Assan*, 701 F. Supp. 3d at 1333. The Court specifically

questioned whether Commerce and the parties were "capable" of "linking U.S. sales to

corresponding IPCs." *Id.* at 1332. In reopening the record and accepting the information

provided by Assan, which links each sale in the U.S. sales database to an IPC, Commerce's

Second Remand Redetermination is consistent with the *Second Remand Order*.

　　Notably, Commerce's calculation is also consistent with Petitioners' comments dated

June 30, 2023, at 7, ECF No. 100, on the First Remand Redetermination, ECF No. 94, which

advocated for, amongst other things, the "linking {of} U.S. sales to corresponding IPCs" to apply

the duty drawback adjustment to only closed IPCs. *Assan*, 701 F. Supp. 3d at 1332. As the Court

noted, "{w}hat the Association recommends 'tracing' is the link between the exemption of a duty

and the U.S. sale that earns a corresponding drawback adjustment." *Id.* It is odd that Petitioners

now take issue with Commerce's decision to reopen the record when their "recommend{ation}"

required Commerce to do exactly that. *See* Consolidated Plaintiffs' Post-Argument Written

Submission at 3-4, 6 (Jan. 31, 2024), ECF 116 ("Pet. Post-Arg.").

　　Indeed, because the information linking individual sales in Assan's U.S. sales database to

a specific IPC was not previously requested by Commerce, and thus not on the record of the

underlying investigation, Commerce had no choice but to re-open the record on remand to re-

calculate Assan's duty drawback adjustment in the manner contemplated by the Court and

Petitioners. *Id.*; *see also* Letter to Assan Aluminyum Sanayi ve Ticaret A.S., re: Request for

Additional Information to Calculate Duty Drawback (May 23, 2024), 2nd Remand-C.R. 1, 2nd

Remand-P.R. 1 ("Drawback Questionnaire"). Petitioners were well aware that their suggested methodology whereby "Commerce spreads the total exempted duties (the numerator) over only exports made pursuant to a closed IPC (the denominator)," and then "appl{ies} the resulting per-unit adjustment *only* to that set of shipments" required Commerce to reopen the record. Pet. Post-Arg. at 6 (emphasis in original). As such, they have no basis to oppose the results of that reopening as inconsistent with the Court's instructions here. Pet. Cmts at 7.

### B.   Commerce Properly Accepted Assan's Timely and Responsive Submissions

As Commerce noted, the record was reopened "{i}n order to address the issues raised by the Court," *i.e.* to "properly allocate the benefit associated with the Turkish duty drawback program to only the reported U.S. sales that are associated with only closed-IPCs." Drawback Questionnaire, Cover Letter at 1, 2nd Remand-C.R. 1, 2nd Remand-P.R. 1. The court has confirmed that "the regulations plainly permit Commerce to request factual information *at any time*" and that the "statute clearly permits Commerce to obtain information on its own initiative rather than just relying on information submitted to it." *Coal. for Pres. of Am. Brake Drum & Rotor Aftermarket Mfrs. v. United States*, 23 C.I.T. 88, 96 (1999) (emphasis in original) (internal citations omitted).

Consistent with the Court's directive, and Petitioners' arguments, Commerce specifically requested that Assan add a field – "IPCNOU" – to the U.S. sales database with the closed IPC number, identify "those reported U.S. sales with open IPCs," and "provide an explanation for any specific exports in the database that cannot be directly tied to the closed IPC." Drawback Questionnaire at 3, 2nd Remand-C.R. 1, 2nd Remand-P.R. 1. Given these explicit instructions for reporting on *open* IPCs and exports not tied to the closed IPC, Petitioners' statements that Commerce "did not request information from Assan on any IPC other than IPC [       ]," and

AFSDOCS:300294933.1

that "new factual information concerning IPCs [                    ] was not solicited by the

Commerce Department" are without merit. Pet. Cmts at 4 and 6.

   In response to Commerce's Drawback Questionnaire, Assan added the field "IPCNOU"

as requested, but clarified that "{t}here are no reported U.S. sales with open IPCs" and "all of

Assan's U.S. sales were made pursuant to a closed IPC." Assan Group's Response to Remand

Request for Additional Information to Calculate Duty Drawback at 1 (Jun. 6, 2024), 2nd

Remand-C.R. 2, 2nd Remand-P.R. 4 ("Assan Drawback QR"). As support, Assan provided a

screenshot from the Turkish drawback system's e-portal showing the IPC-status as "closed," as

well as the closure documentation from the Government of Turkey ("GOT") for each of the four

IPCs used during the period of investigation ("POI"). *Id.* at Exhs. 2-A and 2-B, 2nd Remand-

C.R. 3, 4, 2nd Remand-P.R. 4. The documents provided establish that "{t}here are no exports in

Assan's U.S. database that cannot be tied to a closed IPC." *Id.* at 3. As Commerce found, this

information was "timely and responsive to its questionnaire," Second Remand Redetermination

at 8, Remand-P.R. 16, which, again, explicitly requested that Assan indicate "those reported U.S.

sales with open IPCs." Drawback Questionnaire at 1, 2nd Remand-C.R. 1, 2nd Remand-P.R. 1.

   Petitioners' contend that "Assan submitted even further untimely and unsolicited

information to the Commerce Department" in response to Petitioners' Comments and Rebuttal

Factual Information Concerning Assan's June 6, 2024 Response to the Department's Request for

Information (June 13, 2024) ("Pet. RFI"), 2nd Remand-C.R. 8, 2nd Remand-P.R. 5. Pet. Cmts at

4 (citing Pet. RFI at 5-8 (Jun 13, 2024). Commerce's regulations at 19 C.F.R. § 351.301(c)(1)(v)

provide "one opportunity to submit factual information to rebut, clarify, or correct factual

information submitted in the interested party's rebuttal, clarification or correction." Though

Petitioners' characterize the RFI they provided as limited to only two points, neither of which is

5

"rebut{ted}, clarif{ied}, or correct{ed}" by Assan's rebuttal factual information submitted on

June 20, 2024, Pet. Cmts at 9, Petitioners submission specifically challenged the closure,

beginning, and ending date of IPC [        ], as well as "the extent to which IPC [        ]

resembles IPC [        ]." Pet. RFI at 6-7, citing Assan Group's Submission of Comments and

Rebuttal Factual Information in Response to Petitioners' June 13, 2024 Submission (June 20,

2024) ("Assan RFI"), 2nd Remand-C.R. 9, 2nd Remand-P.R. 6. Assan's submission rebuts and

clarifies those claims by substantiating the dates provided in Exhibit 2A of Assan's Drawback

Questionnaire, the validity of which Petitioners challenge, as well as the standardization of

closure documents issued by the GOT and the fact that Assan's duty liability was released. Assan

RFI at 2 and Attach. 1, 2nd Remand-C.R. 9, 2nd Remand-P.R. 6.

Petitioners' suggested interpretation of Commerce's regulations is overly restrictive and

unreasonable. By way of example, given that Assan did not explicitly reference the "suspension

system" or the proceeding involving aluminum foil from Turkey in its response to the Drawback

Questionnaire, by Petitioners' rationale its RFI submission those documents should also be

rejected. *See* Pet. RFI, 2nd Remand-C.R. 8, 2nd Remand-P.R. 5; Pet. Cmts at 9. Clearly,

Commerce does not interpret its regulations so narrowly as to render them ineffective. As the

U.S. Supreme Court has found, Commerce is "entitled to a measure of discretion in

administering its own procedural rules" and "Commerce's failure to apply those rules with

Procrustean consistency in every case does not deprive it of the authority to enforce those rules

in any case." *Stupp Corp. v. United States*, 5 F.4th 1341, 1350-51 (Fed. Cir. 2021) (citing *Am.

Farm Lines v. Black Ball Freight Serv*., 397 U.S. 532, 538–39 (1970)). To the contrary,

"Commerce is entitled to broad discretion regarding the manner in which it develops the record

in an antidumping investigation" and the reviewing courts have declined to "second-guess

Commerce's application of the procedural requirements governing the submission of factual information{.}" *Stupp*, 5 F.4th at 1350. Commerce established a mechanism and deadlines for parties to "rebut, clarify or correct" the record, and reasonably found both Assan and Petitioners to have complied with those requirements in their RFI submissions in this case.

As Commerce concluded, the documentation timely provided by Assan was "*both* reasonable and relevant" and "accepting Assan's submissions provides Commerce with a complete record from which to redetermine the respondent's duty drawback adjustment." Second Remand Redetermination at 13 (emphasis in original), 2nd Remand-P.R. 16. As in previous cases, the Court should "defer to the judgment of an agency regarding the development of the agency record." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012).

### C.    Commerce Verified Assan's Use of the Turkish Drawback System

As Petitioners' note, that statute requires Commerce to "verify all information relied upon in making . . . a final determination in an investigation." 19 U.S.C. § 1677m(i)(1); Pet. Cmts at 12. However, Petitioners' arguments ignore that "the statute gives Commerce wide latitude in its verification procedures." *Am. Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994); *see also Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) ("Congress has implicitly delegated to Commerce the latitude to derive verification procedures ad hoc."). Such procedures frequently involve "a spot check" of information provided, which the Court of Appeals for the Federal Circuit ("CAFC") has found to be reasonable given that it would be "unrealistic to require a full-scale audit of the foreign entity. . . . {within} the statutory time constraints imposed on Commerce." *Micron*, 117 F.3d at 1396.

Despite Petitioners' assertions, the CAFC has recognized:

> While the anti-dumping statute unambiguously requires the ITA to verify "all" information processed by the constructed value calculations that are relied upon in making a final determination, this

7

> does not actually happen. Owing to the number of relevant issues and data points, the ITA does not, and cannot, perform the equivalent of a full-scale accounting audit of foreign respondents subject to verification. Instead, **samples of suspicious data** are verified until ITA accountants get a "feel" for whether data supplied by the U.S. complain{}ant or the foreign respondent is more accurate.

*Id.* (citation omitted) (emphasis added). The flexibility of Commerce's verification procedures is evidenced by the fact that Commerce did not conduct an on-site verification of Assan in this investigation, as is its standard practice, due to the COVID-19 pandemic. Instead, Commerce issued a "request for documentation, in lieu of performing an on-site verification, to collect additional or supporting documentation related to information that {Assan had} already submitted in this investigation." Letter to Assan Aluminyum Sanayi ve Ticaret A.S at 1 (Dec. 10, 2020), C.R. 372, P.R. 301 ("Verification Questionnaire"). This alternative methodology occurred despite the fact that the procedures governing verification in Commerce's regulations provide that Commerce employees will "visit with" company officials "to verify the accuracy and completeness of submitted factual information," including via "access to all files, records, and personnel . . . consider{ed} relevant." 19 C.F.R. § 351.307(d).

As an initial matter, we note that on site verification enables respondents to fully explain and provide additional documentation to support its reporting, including to address outstanding questions or confusion Commerce may have. *See, e.g., Jinko Solar Co. v. United States*, 229 F. Supp. 3d 1333, 1358 (Ct. Int'l Trade 2017). Physical meetings between company and Commerce officials enables Commerce to make "credibility determinations in person during the verification procedure," which frequently support "Commerce's determination to accept the new information provided" at verification to resolve minor reporting discrepancies. *Id*. These same credibility determinations cannot be made "based on a cold paper record," *Id*. (quoting *De Samo v. Dep't of Commerce*, 761 F.2d 657, 661 (Fed. Cir. 1985)), as Assan, by no fault of its own, had in this

8

investigation. Assan was deprived of the opportunity it otherwise would have had to describe the documents page by page to Commerce officials, answer any questions, and provide access to the systems to clarify any information had Commerce completed an on-site verification.

In any event, the Verification Questionnaire issued to Assan addressed duty drawback and required Assan to provide additional documentation supporting IPCs used during the POI, which Assan timely provided. Response to Request for Documents in Lieu of Verification at 14-15 and Exhs. V-20-21 (Dec. 18, 2020), C.R. 373, 379, P.R. 301 ("Verification QR"). Though the requested documents involved IPC [      ], the documents provided are representative for all of Assan's IPCs and Commerce requested similar "sample documentation" related to specific sales or products in many other sections of the Verification Questionnaire. *See, e.g.*, *id.* at 2, 6, 8-11, 17-18, C.R. 373, P.R. 301. As the samples provided demonstrate, all IPC documents extracted from the IPR e-portal system follow the same format and all closure documentation from the GOT provides the same release of duty liability – both of which have been verified by Commerce. *Compare* Assan Section C Questionnaire Response at Exh. C-9 (June 29, 2020), C.R. 52, P.R. 143 *with* Assan RFI at Attachment 1, 2nd Remand-C.R. 9, 2nd Remand-P.R. 6.

Finally, Petitioners' reliance on *Içdaş Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*, 498 F. Supp. 3d 1345 (Ct. Int'l Trade 2021) to argue that Commerce cannot rely on unverified information is misplaced. In *Içdaş,* the Court upheld the application of partial adverse facts available where a respondent "inadvertently failed to include several product categories when attempting to derive a total FOB sales figure," an omission that was *discovered* at verification. *Id.* at 1357-58. As a result, "Commerce *could not* verify the validity of the reported numbers," and thus was "prohibited from relying on {that} unverified information" in its determination. *Id.* at 1359-60 (citation omitted) (emphasis added). Those circumstances are

inapposite to the situation here, where Commerce successfully verified representative documents for Assan's duty drawback reporting, Verification QR at 14-15 and Exhs. V-20-21, C.R. 373, 379, P.R. 301, but subsequently reopened the record to request additional documentation. Drawback Questionnaire at 1, 2nd Remand-C.R. 1, 2nd Remand-P.R. 1. The absence of an opportunity to verify additional samples of documentation that has already been verified is clearly distinguishable from Commerce's attempt and failure to verify documentation in the first instance.

Contrary to Petitioners' claims, Pet. Cmts at 14-15, the record in this investigation contains verified factual information regarding Assan's use of the Turkish drawback system, use of the IPR e-portal, and procedures for IPC closure, which are representative of *all* of Assan's IPCs used during the POI. The structure of Assan's IPCs are consistent across POI and review periods, as evidenced by the fact that the closed-IPC at issue has been accepted and granted a drawback adjustment by Commerce in the first administrative review of the instant order. Assan RFI at 2 and Attach. 1, 2nd Remand-C.R. 9, 2nd Remand-P.R. 6. As this Court has found, "exports that are in different administrative review periods that occur on the same {IPC} are entitled to the same adjustment." Second Remand Redetermination at 14, 2nd Remand-P.R. 16, further justifying Commerce's acceptance of the closed IPC in this case (quoting *Tosçelik Profil ve Sac Endüstrisi A.Ş. v. United States*, 348 F.Supp.3d 1321, 1327 (Ct. Int'l Trade 2018)).

### D. Fundamental Fairness Requires Commerce to Consider the Timely and Relevant Information Submitted by Assan

Petitioners argue that in the interest of "fundamental fairness" is served by rejecting the evidence properly submitted by Assan, which unequivocally show that Assan was entitled to a duty drawback adjustment resulting in the calculation of a *de minimis* margin. Pet. Cmts. at 15. The statute unambiguously provides:

AFSDOCS:300294933.1

> The price used to establish export price and constructed export price shall be . . . increased by . . . the amount of any import duties imposed by the country of exportation which have been rebated, or **which have not been collected, by reason of the exportation of the subject merchandise to the United States**{.}

19 U.S.C. § 1677a(c)(1)(B) (emphasis added). Despite clear evidence now establishing that Assan's import duties have not been collected by reason of the exportation of subject merchandise under IPC [      ] to the United States, Petitioners maintain that there is nevertheless a "strong interest" in disregarding this information. *See* Pet. Cmts at 15-18.

However, Petitioners' arguments regarding "gamesmanship and limitless supplementation of the agency record," Pet. Cmts at 15, have no merit where, as here, Commerce made the independent decision to reopen the record to solicit additional information regarding Assan's IPCs. *See* Drawback Questionnaire, 2nd Remand-C.R. 1, 2nd Remand-P.R. 1. The submitted information was responsive to Commerce's requests and filed in in accordance with its regulations. While there is "no statutory basis for treating . . . open-IPC sales that did not earn 'benefits of the exempted duties' as though they did," *Id.* at 1, there is likewise no statutory basis to exclude closed-IPC sales from Commerce's drawback calculation. Despite Petitioners' claims, Commerce cannot just ignore this properly submitted record evidence of closed-IPC sales.

None of the many cases cited by Petitioners involve Commerce reopening the record to request additional information on remand and a respondent timely providing relevant information in response to Commerce's request. For example, in *CS Wind Vietnam*, the court held that Commerce cannot consider untimely filed factual information or unsolicited information unless the Department provides an extension with respect to the time limit for providing such information. *CS Wind Viet. Co. v. United States*, 219 F. Supp. 3d 1273, 1284 (Ct. Int'l Trade 2017), *aff'd*, 721 F. App'x 993 (Fed. Cir. 2018). Here, the timeliness of Assan's submissions is not in dispute and the information provided was solicited by Commerce in its

Drawback Questionnaire. There are no other overriding considerations that would support or justify the intentional miscalculation of an inaccurate margin, as Petitioners advocate for here.

Finally, it is Petitioners, not Assan, that have delayed the finality of this case. Pets. Cmts at 15-16. Assan has repeatedly urged the Court to expediently resolve the proceeding, which has now been pending for nearly 3 ½ years. Plaintiff Assan's Comments on {First} Remand Redetermination at 2 (June 30, 2023), ECF No. 99; Assan's Comments on Second Remand Redetermination at 2, ECF No. 125. Petitioners on the other hand, have criticized Assan's desire for "swift affirmance," Consolidated Plaintiffs' Post-Argument Written Submission at 7, ECF No. 117, instead delaying the proceeding by, amongst other things, filing a motion for leave to request oral argument on remand over the opposition of Assan. Consolidated Plaintiffs' Request for Leave to File and Motion for Oral Argument (Aug. 14, 2023), ECF No. 109. Petitioners' will almost certainly file the same motion on this Second Remand Redetermination, further delaying the final resolution of this case as it enters its fourth year. Petitioners' rejection of the "important principles of timeliness and finality" in this very proceeding has forced Assan's participation in Commerce's first, second, and now third administrative review. Pet. Cmts at 16. Meanwhile, this costly and burdensome exercise will have all been futile if Assan receives a *de minimis* calculated margin and is ultimately excluded from the *Order*.

AFSDOCS:300294933.1

## II.    CONCLUSION

Assan agrees with the outcome of Commerce's Second Remand Redetermination, which results in the calculation of a *de minimis* margin and excludes Assan from the *Order*. Assan respectfully requests that the Court sustain Commerce's Second Remand Determination, and order Commerce to promptly publish an amended final determination and *Order* assigning a *de minimis* margin to Assan.


Respectfully submitted,

**/s/ Leah N. Scarpelli**
Leah N. Scarpelli
Matthew M. Nolan
Kimia Pourshadi

October 7, 2024                    *Counsel for Assan Aluminyum Sanayi ve Ticaret A.S.*

13

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Plaintiff's Response to Comments on the Second Remand Redetermination filed on October 7, 2024, complies with the word limitation requirement. The word count for Plaintiff's Comments, as computed by ArentFox Schiff LLP's word processing system is 3,603.


  <u>**/s/ Leah N. Scarpelli**</u>
Leah N. Scarpelli