**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Consol. Court No. 21-00246 |
| UNITED STATES, | ) ) | |
| *Defendant,* | ) ) | |
| and | ) ) | |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, *et al.,* | ) ) ) ) | |
| *Defendant-Intervenors.* | ) ) | |

**DEFENDANT'S RESPONSE TO COMMENTS**
**ON COMMERCE'S SECOND REMAND REDETERMINATION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

KYLE S. BECKRICH
Trial Attorney
ASHLANDE GELIN
U.S. Dept. of Justice
Attorney
Civil Division/National Courts
Office of the Chief Counsel
P.O. Box 480
    for Trade Enforcement and Compliance
Ben Franklin Station
U.S. Department of Commerce
Washington, D.C. 20044
Washington, D.C.

October 7, 2024
Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES..................................................................................................ii

BACKGROUND. ...............................................................................................................2

    I.     The Antidumping Duty Investigation ...................................................2

    II.    The Court's First Remand Order...........................................................3

    III.   Commerce's First Remand Redetermination.........................................5

    IV.   The Court's Second Remand Order........................................................6

    V.    Commerce's Second Remand Redetermination.....................................8

ARGUMENT.......................................................................................................................2

    I.     Standard Of Review.............................................................................11

    II.    Commerce's Second Remand Redetermination Should Be Sustained.................12

        A.    Commerce's Recalculation Of Assan's Duty Drawback Adjustment Is Supported By Substantial Evidence And In Accordance With Law.........13

        B.    The Aluminum Association's Arguments Provide No Basis To Set Aside Commerce's Second Remand Redetermination .......................................16

CONCLUSION..................................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alloy Piping Products, Inc. v. United States,*
    201 F. Supp. 2d 1267 (Ct. Int'l Trade 2002)...........................................................................22

*Assan Aluminyum Sanayi v. Ticaret A.S. v. United States,*
    624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) ..................................................................3, 4, 5

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States,*
    701 F. Supp. 3d 1321 (Ct. Int'l Trade April 11, 2024).....................................................passim

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States,*
    63 F.4th 25 (Fed. Cir. 2023)...................................................................................................6, 7

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938)..................................................................................................................11

*CS Wind Vietnam Co. v. United States,*
    219 F. Supp. 3d 1273 (Ct. Int'l Trade 2017)...........................................................................22

*Essar Steel Ltd. v. United States,*
    678 F.3d 1268 (Fed. Cir. 2012) ...............................................................................................22

*Grobest & I–Mei Indus. (Vietnam) Co. v. United States,*
    36 C.I.T. 98 (2012) ..................................................................................................................21

*Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States,*
    439 F. Supp. 3d 1342 (Ct. Int'l Trade 2020)...........................................................................13

*Husteel Co. v. United States,*
    180 F. Supp. 3d 1330 (Ct. Int'l Trade 2016)...........................................................................18

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015)...........................................................................11

*Marmen Inc. v. United States,*
    545 F. Supp. 3d 1305 (Ct. Int'l Trade 2021)...........................................................................19

*Noksel Celik Boru Sanayi A.S. v. United States,*
    No. 21-00140, 2023 WL 5426585 (Ct. Int'l Trade Aug. 23, 2023) ...................................13, 20

*Parkdale Int'l v. United States,*
    475 F. Supp. 1375 (Fed. Cir. 2007) ....................................................................................12, 19

*Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States,*
    102 F. Supp. 2d 486 (Ct. Int'l Trade 2000).............................................................................22

*Shandong Rongxin Imp. & Exp. Co. v. United States,*
   203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) ...........................................................17

*SMA Surfaces, Inc. v. United States,*
   658 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) ...........................................................13

*Toscelik Profil v. Sac Endustrisi A.S. v. United States,*
   348 F. Supp. 3d 1321 (Ct. Int'l Trade 2018)................................................................passim

*Ulasim Sanayi A.S. v. United States,*
   654 F. Supp. 3d 1311 (Ct. Int'l Trade 2023)...........................................................20

## Statutes

19 U.S.C. § 1677a .................................................................................................... 5, 7, 12, 15

19 U.S.C. § 1677e ....................................................................................................................5

## Other Authorities

*Light-Walled Rectangular Pipe and Tube: Final Results of Antidumping Duty Administrative
   Review and Final Determination of No Shipments; 2015-2016,* 82 Fed. Reg. 47,477 (Dep't of
   Commerce Oct. 12, 2017) .........................................................................................................3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S.,    ) | |
| ) | |
| *Plaintiffs*,    ) | |
| ) | |
| v.    ) | Consol. Court No. 21-00246 |
| ) | |
| UNITED STATES,    ) | |
| ) | |
| *Defendant*,    ) | |
| ) | |
| and    ) | |
| ) | |
| ALUMINUM ASSOCIATION COMMON ALLOY    ) | |
| ALUMINUM SHEET TRADE ENFORCEMENT    ) | |
| WORKING GROUP AND ITS INDIVIDUAL    ) | |
| MEMBERS, ET AL.,    ) | |
| ) | |
| *Defendant-Intervenors*.    ) | |
| ) | |

**DEFENDANT'S RESPONSE TO
COMMENTS ON COMMERCE'S SECOND REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to comments filed by plaintiff, Assan Aluminyum Sanayi ve Ticaret A.S. (Assan), and consolidated plaintiffs Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its working members (Aluminum Association).  *See* ECF No. 125 (Assan Cmts); ECF Nos. 124, 126 (Al. Cmts).  The parties' comments address the second remand redetermination issued by the Department of Commerce (Commerce), *see* Final Results of Redetermination Pursuant to Court Remand, July 31, 2024 (Second Remand Redetermination), ECF No. 122, pursuant to this Court's opinion and remand order, *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 701 F. Supp. 3d 1321 (Ct. Int'l Trade April 11, 2024) (Second Remand Order), ECF No. 119.  For

the reasons explained below, we respectfully request that the Court sustain Commerce's second remand redetermination and enter final judgment for the United States.

## BACKGROUND

### I.    The Antidumping Duty Investigation

On October 6, 2020, Commerce issued its preliminary determination in the antidumping duty investigation on common alloy aluminum sheet from Turkey. S*ee Common Alloy Aluminum Sheet From Turkey: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 65,346 (Dep't of Commerce Oct. 15, 2020) (Preliminary Determination) (P.R. 264), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 247).  In the Preliminary Determination, Commerce granted and denied Assan (one of two mandatory respondents) certain adjustments to its constructed export price.  Commerce increased the constructed export price by granting a duty drawback adjustment to Assan for import duties not collected.  *See* PDM at 10-11.  Commerce also reduced Assan's constructed export price by (1) denying billing adjustments claimed by Assan to correct certain errors, (2) reducing the freight expenses Assan paid to an affiliated service provider, and (3) deducting tariffs imposed on Assan's subject merchandise under Section 232 of the Trade Expansion Act of 1962.  *See* PDM at 9; Assan Cost Memo at 5-6 (P.R. 249) (C.R. 324) (Prelim. Calc. Memo).  Commerce also declined to grant Assan a home market rebate adjustment, which would have reduced Assan's normal value and dumping margin.  *Id*.

On March 8, 2021, Commerce issued its final determination. *Common Alloy Aluminum Sheet From Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 13,326 (Dep't of Commerce March 8, 2021) (Final Determination) (P.R. 358), and the

accompanying Issues and Decision Memorandum (IDM) (P.R. 330). After reviewing case briefs from the parties, Commerce made no changes to its adjustments to Assan's duty drawback adjustment, Section 232 tariffs, home market rebates, or affiliated freight charges. However, Commerce modified its billing adjustments by using Assan's reported information on the record–rather than the lowest reported value, as in the Preliminary Determination–to lower the constructed export price. As a result, Commerce assigned Assan a final dumping margin of 2.02 percent. *See* Final Determination, 86 Fed. Reg. at 13,327.

## II.    **The Court's First Remand Order**

On March 1, 2023, the Court issued an opinion sustaining in part and remanding in part the final determination. *Assan Aluminyum Sanayi v. Ticaret A.S. v. United States,* 624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) (*Assan I*). The Court sustained Commerce's treatment of Assan's home market rebates and affiliated freight expense but held that it could not discern what evidence Commerce relied on to modify its calculation of Assan's billing adjustment when Assan failed to provide supported documentation. *Id.*

Instead of continuing to affect Assan adversely by using the lowest reported value, Commerce changed course and relied on all of Assan's reported values at the final determination. *Id.* at 1376-78. The Court held that Commerce denied applying an adverse inference to Assan's billing adjustment reporting yet failed to explain the change that resulted in a lower margin from the preliminary determination. *Id.* As for the duty drawback adjustment, the Court sustained Commerce's general grant of Assan's duty drawback adjustment but explained that the implementation of that adjustment contravened current Federal Circuit precedent in *Uttam Galva Steels Ltd. v. United States. Id.* at 1361-63.

The Court held that Commerce's determination to grant Assan a duty drawback

adjustment was consistent with law because (1) the exemption that Assan received under Turkey's duty drawback regime was linked to the exportation of the subject merchandise, and (2) there were sufficient imports of the raw material to account for the duty drawback on the export of subject merchandise. *Id*. at 1361. Moreover, evidence suggested that at least one imported input under the closed Inward Processing Certificate (IPC) was capable of being used in the production of subject merchandise. *Id*.

However, as Commerce acknowledged, its "duty neutral" methodology, which allocated exempted duties over total production (*i.e.*, by both exports and home-market sales of subject merchandise), conflicted with precedent, and Commerce requested a voluntary remand to recalculate the granted adjustment. *Id*. at 1362-1363. The Court granted Commerce's request for a voluntary remand so that Commerce may recalculate Assan's duty drawback adjustment in accordance with the latest Federal Circuit precedent. *Id*. ("{T}he Federal Circuit has ruled that a "duty neutral methodology" is incompatible with the plain language of section 1677a(c)(1)(B)"); *see also Assan Aluminyum*, 701 F. Supp. 3d at 1325 (*Assan II*) ("{T}he Federal Circuit held that '{t}here is no basis' in 19 U.S.C. § 1677a(c)(1)(B) for dividing exempted duties by both exports and home-market sales of subject merchandise.").

Finally, the Court suspended proceedings on the issue regarding Section 232 tariffs, pending the final resolution of *Borusan Mannesmann Boru Sanayi Ve Ticaret v. United States*. *Assan I*, 624 F. Supp. 3d at 1380. Nevertheless, the Court requested that on remand, Commerce assume *arguendo* the proper deduction of Section 232 tariffs from U.S. price in assessing the remaining issues. *Id*. at 1381. The Court instructed Commerce to determine whether there will be a *de minimis* margin following the proper allocation of Assan's duty drawback adjustment, and if Commerce is unable to make such an assessment at that time, it

must explain why.  *Id.*

### III.  <u>Commerce's First Remand Redetermination</u>

On May 10, 2023, Commerce issued its first draft remand results.  Commerce revised its duty drawback calculation by (1) dividing the amount of total duties exempted on the IPC closed during the period of investigation by the total quantity of exports made under that closed IPC to calculate a per-unit duty drawback adjustment, and (2) applied that adjustment to all of Assan's sales of subject merchandise.  *See* Draft Remand (1st Remand P.R. 1, 2) at 3.  In response, the Association argued that Commerce's duty drawback methodology improperly applied a closed IPC-derived adjustment to open-IPC sales because there is no record evidence that Assan exported all its U.S. sales pursuant to the closed IPC.  *See* Al. Cmts on Draft Remand (1st Remand P.R. 8) at 4.  The Association further argued that the duty exemptions pursuant to the closed IPC did not all constitute exemptions by reason of "the exportation of the subject merchandise to the United States," under 19 U.S.C. § 1677a(c)(1)(B) because the closed IPC includes export destinations other than the United States as well as exports made outside of the period of investigation.  *See* Al. Cmts on Draft Remand at 4-5.

On remand, Commerce also revisited and acknowledged that Assan withheld information and provided incomplete supporting documentation needed to corroborate and to verify the proper billing adjustment for its reported quality errors (*i.e.*, BILLADJ2U).  *See* Draft Remand at 4-7.  Therefore, Commerce relied on 19 U.S.C. §§ 1677e(a)(2)(A), (B), and (D) to determine that the application of facts available was warranted.  *Id.*  Moreover, Assan's failure to provide supporting documentation after multiple requests constituted a failure by Assan to act to the best of its ability under 19 U.S.C § 1677e(b)(1).  *Id.*  Therefore, Commerce determined that an adverse inference was warranted and determined that the correct billing adjustment was the

lowest value that Assan reported as a billing adjustment for quality errors. *Id*. In response, Assan argued that there was no basis for Commerce to find that adverse facts available was appropriate. *See* Assan Cmts on Draft Remand (1st Remand P.R. 7) at 3-4.

On May 31, 2023, Commerce issued its First Remand Redetermination. *See* ECF No. 94 (First Remand Redetermination). Commerce made no changes from its first draft remand redetermination. The net effect of the two issues on remand resulted in a *de minimis* margin for Assan. *See* First Remand Redetermination (1st Remand P.R. 11) at 16.

## IV.  The Court's Second Remand Order

The Court issued its second decision on April 11, 2024, remanding Commerce's recalculation of Assan's duty drawback adjustment. *Assan II*, 701 F. Supp. 3d at 1321. As an initial matter, the Court recognized that because Commerce announced a *de minimis* dumping margin for Assan, the other unrelated issues discussed in the first remand opinion were no longer live (that is, the Court's decisions (1) to sustain Commerce's denial to Assan of a home market rebate adjustment, (2) to sustain Commerce's deduction of Assan's affiliated freight costs from its calculation of Assan's constructed export price, (3) to remand for further explanation Commerce's determination not to apply an adverse inference as to Assan's reporting of certain billing adjustments,[1] and (4) to stay consideration of Assan's challenge to Commerce's deduction of certain tariffs until the Federal Circuit's then-pending decision in *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 63 F.4th 25 (Fed. Cir. 2023)). *Id*. at n.3. Therefore, the sole live issue on remand concerned Commerce's calculation of Assan's duty

---

[1] Assan supported the Final Remand Redetermination and did not "request a second remand to the agency on . . . {the adverse inference} issue solely in the interest of expediency." *See* Assan Cmts on Remand Redetermination at 9, ECF No. 99.

drawback adjustment.  *Id*.

In its second decision, the Court held that Commerce's revised duty drawback methodology was not consistent with 19 U.S.C. § 1677a(c)(1)(B).  *See Assan II*, 701 F. Supp. 3d at 1331.  More specifically, the Court explained that,

> Commerce's revised methodology impermissibly increased Assan's export price by more than "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." 19 U.S.C. § 1677a(c)(1)(B). This is because Commerce calculated a per-unit duty drawback adjustment on the basis of a single closed IPC and applied that adjustment to all of Assan's U.S. sales of subject merchandise, including to sales of merchandise exported under open IPCs.  Even though certain open-IPC sales did not earn "benefits of the exempted duties," Commerce adjusted its calculation of their U.S. prices as though they did.

*See Assan II*, 701 F. Supp. 3d at 1328 (citations omitted).  In other words, Commerce increased Assan's constructed export price by an amount that includes duties which have been collected and *not* rebated (open IPCs), thus exceeding "'the amount' of duties exempted by the Turkish government 'by reason of' the open-IPC exports of subject merchandise to the United States." *Id.* (quoting 19 U.S.C. § 1677a(c)(1)(B)).  The Court explained that there was no statutory basis to treat open- IPC sales as though they were closed.  *Id*.  Thus, the Court remanded for Commerce to further explain or to reconsider its remand redetermination in light of the statutory limitations of a duty drawback adjustment.

Assan's receipt of exemptions under Turkish law occurred only when IPCs were closed. Under the Turkish duty drawback program, Commerce's practice is to consider the benefits of the exempted duties once an IPC is closed.  *See, e.g., Light-Walled Rectangular Pipe and Tube: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016*, 82 Fed. Reg. 47,477 (Dep't of Commerce Oct. 12, 2017), and

accompanying IDM (explaining that Commerce "cannot be certain that a company has satisfied the export requirements under a {IPC} until the {IPC} is closed.")). Therefore, under Commerce's practice, the amount of exempted duties under an open IPC is zero, and thus Commerce needed to adequately explain why it applied a closed IPC–derived adjustment to open-IPC sales. *See Assan II*, 701 F. Supp. 3d at 1328.

The Court also held that Commerce failed to substantively address two of the Association's arguments. First, Commerce did not address the Association's argument that Commerce's drawback methodology improperly applied a closed IPC–derived adjustment to open-IPC sales. *See id.* at 1331-1332. Specifically, the Association challenged whether Commerce's methodology established a link between the duties exempted and the U.S. sale that earned the corresponding drawback adjustment. *Id.* Commerce also did not address the Association's argument that Commerce's methodology was inconsistent with the statute "because, as summarized by Commerce, 'the closed IPC . . . includes export destinations other than the United States as well as exports made outside of the {period of investigation}.'" *See id.* at 1333. Therefore, the Court instructed Commerce, on remand, to respond to these two arguments to adequately explain its determination. *Id.*

**V.     Commerce's Second Remand Redetermination**

On remand, because information on the record regarding Assan's closed-IPC and reported U.S. sales was inadequate for purposes of allocating the duty drawback benefit to only those reported U.S. sales associated with the closed-IPC, Commerce re-opened the record to request additional necessary information. *See* Second Draft Remand (2nd Remand P.R. 8) at 5-7. Therefore, Commerce re-opened the record to request that Assan identify the relevant in-scope merchandise exported to the United States associated with the IPC that was closed during

the period of investigation, and to tie these sales to the company's U.S. sales database.  *See*

*generally* Supplemental Questionnaire (2nd Remand P.R. 1) (2nd Remand C.R. 1).  Commerce

requested that Assan

> {S}ubmit a revised U.S. sales database by adding an additional
> field (e.g., "IPCNOU") to database {} submitted under the
> ACCESS barcode 4067209-26, that identifies those reported U.S.
> sales that are included in the {} reported closed IPC{}.  *For those
> reported U.S. sales with open IPCs, please notate with a "." to
> indicate that it was not a closed IPC.*

*See id.* at Attachment (emphasis added).

On June 6, 2024, Assan responded to Commerce's duty drawback questionnaire with

information to reconcile the total quantity and value of in-scope merchandise under the relevant

closed-IPC to a now revised U.S. sales database.  Assan's Supplemental Questionnaire Response

(2nd Remand P.R. 4) (2nd Remand C.R. 2-4).  Assan also reported that all its reported U.S. sales

in the period of investigation can be tied to a closed-IPC, including IPCs that were closed outside

of the period of investigation.  *Id.* at 1.  However, Assan also maintained that "it is reasonable to

treat all IPCs, open or closed, as closed for the purpose of calculating drawback adjustments."

*Id.* at 3.

On June 13, 2024, the Association submitted comments and rebuttal factual information

arguing that Assan submitted unsolicited new factual information, regarding information not

related to the IPC that was closed during the period of investigation.  *See* Al. Rebuttal for Second

Remand (2nd Remand P.R. 5) (2nd Remand C.R. 8).  The Association argued that Commerce

did not request information on any IPC other than the IPC that was closed during the period of

investigation.  *Id.* at 5.  The Association also argued that Assan failed to establish that any of the

other IPCs it claimed have since closed are related to the Turkish duty drawback system, nor has

Assan provided documentation, such as closure documentation and an import list and export list,

to demonstrate its entitlement to a duty drawback adjustment and the appropriate calculation. *Id*. at 3, 5-8. The Association further argued that Commerce should deny Assan any further opportunity to supplement the record, following its response. *Id*. at 9-10. On June 20, 2024, Assan submitted comments and rebuttal factual information in response to the Association's submission. *See* Assan's Additional Response (2nd Remand P.R. 6) (2nd Remand C.R. 9-11).

On June 27, 2024, Commerce issued its second draft results of redetermination and agreed with the Association, in part, that Assan had unnecessarily provided information associated with IPCs that remained open during the period of investigation. In the second draft results, Commerce calculated a per-unit duty drawback adjustment on the basis of a single closed IPC, observing that Assan exported subject merchandise during the period of investigation under four distinct Turkish IPCs but only "one of these IPCs closed during the period of investigation; the other three remained open." *See* Second Draft Remand (2nd Remand P.R. 8) at 7. Commerce explained that this followed its practice at the time of the investigation to decline to calculate a duty drawback adjustment on the basis of an IPC until that IPC is closed, requiring evidence of official approval by the Turkish government during the period of investigation. *Id*. at 8. Thus, although Commerce accepted Assan's submission as timely and responsive to its questionnaire, Commerce considered all other issues regarding the other three IPCs that remained open during the period of investigation moot.

Nevertheless, in the final second remand redetermination, after reviewing both Assan's and the Association's second draft remand comments, Commerce revised Assan's duty drawback calculation to include IPCs that were also closed outside the period of investigation but associated with reported U.S. exports of subject merchandise during the period of investigation. Second Remand Redetermination at 8-10. Both Assan and the Association agreed that

Commerce's IPC closure practice does not include a period of investigation limitation in calculating duty drawback adjustments, and both parties notified Commerce that courts have held unlawful such determinations to confine margin calculation to only IPCs closed during the period of investigation. *See* Assan Cmts on Draft Remand (2nd Remand P.R. 14) at 6-9; Al. Cmts on Draft Remand (2nd Remand P.R. 15) at 4. Therefore, Commerce reconsidered its draft results and found that for purposes of calculating a dumping margin, the evaluation of Assan's other three IPCs was necessary and no longer moot. *See* Second Remand Redetermination at 8-14. As such, Commerce made the change to include the one additional IPC that closed after the period of investigation. *Id.* Commerce also made certain methodological corrections, as identified by the Association, that were in line with Commerce's intended rationale to calculate a duty drawback benefit associated with only U.S. exports made during the period of investigation. *Id.* at 15-16. Both proposals by the parties regarding Commerce's intended methodology resulted in the same per-unit duty drawback adjustment. *Id.* Regardless, the net effect of Assan's duty drawback adjustment resulted in a *de minimis* margin for Assan.

## **ARGUMENT**

### I.    **Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

II.    **Commerce's Second Remand Redetermination Should Be Sustained**

In the Second Remand Redetermination, Commerce reasonably calculated Assan's duty drawback adjustment using both the IPC that closed during the period of investigation and the additional IPC that closed after the period of investigation and whose duty drawback adjustment was related to sales reported during the period of investigation. *See Toscelik Profil v. Sac Endustrisi A.S. v. United States*, 348 F. Supp. 3d 1321, 1327 (Ct. Int'l Trade 2018) ("Two exports that are in different administrative review periods that occur on the same {duty exemption certificate/IPC} are entitled to the same adjustment."). Both IPCs were accompanied by the appropriate closure documentation and included the relevant import and export lists needed to calculate the duty drawback adjustments associated with each closed IPC. *See* Second Remand Redetermination at 13. Based on the record before it, this fulfilled Commerce's statutory requirement to calculate accurate dumping margins. *See Parkdale Int'l v. United States,* 475 F.3d 1375, 1380 (Fed. Cir. 2007) ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible").

Assan's duty drawback adjustment is now limited to reported U.S. sales of subject merchandise that were exported under closed IPCs. *See* Second Remand Redetermination at 8-10. Therefore, consistent with the Court's Second Remand Order, Assan's duty drawback adjustment now aligns with the statutory constraints of 19 U.S.C. § 1677a(c)(1)(B), as well as with Commerce's practice to consider only closed IPCs that include exports of in-scope merchandise to the United States (that is, subject merchandise) during the period of investigation, and accounts for the Association's prior draft remand arguments that Commerce failed to establish a reasonable link between duties exempted and adjustments applied and increased Assan's export price by more than what was permissible under the statute. *Id.*

A.    **Commerce's Recalculation of Assan's Duty Drawback Adjustment Is**
    **Supported By Substantial Evidence And In Accordance With Law**

Commerce's calculation of Assan's duty drawback adjustment is supported by substantial

evidence and is in accordance with law.  *See SMA Surfaces, Inc. v. United States*, 658 F. Supp.

3d 1325, 1328 (Ct. Int'l Trade 2023) ("The court will sustain Commerce's redetermination on

remand if it is supported by substantial evidence on the record and is otherwise in accordance

with law, {} which includes compliance with the court's remand order …" (citations omitted)).

Based on the record, Commerce determined that Assan provided two closed IPCs related

to import duty exemptions (one IPC that closed during the period of investigation, and another

IPC that closed after the period of investigation but was associated with the sales of subject

merchandise that occurred during the period of investigation) to calculate Assan's duty drawback

adjustment.  *See* Assan's Additional Response at Attachment 1.  Indeed, the record contains

documentation (associated import and export lists and official government closure

documentation) to support using the IPCs, closure, and association with subject merchandise sold

into the United States during the period of investigation.  *See Noksel Celik Boru Sanayi A.S. v.*

*United States*, No. 21-00140, 2023 WL 5426585, at *5 (Ct. Int'l Trade Aug. 23, 2023) (affirming

Commerce's requirement that respondents provide sufficient evidence establishing that an IPC

was closed by the Government of Turkey).  This is consistent with Commerce's practice that

allows for the consideration of IPCs that close outside the period of investigation when evidence

shows that, during the course of a proceeding, the IPC closure has been fully documented, and

the relevant information is available to calculate a duty drawback adjustment.  *See Toscelik*

*Profil*, 348 F. Supp. 3d at 1327 (agreeing that "there is no 'element of predictability or

transparency served by denying a drawback adjustment{,} the accuracy of which is not in

question.'");  *Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States*, 439 F. Supp.

13

3d 1342, 1349 (Ct. Int'l Trade 2020) (explaining "that eligibility for inclusion in the adjustment is based on the existence of record evidence establishing that the IPC has closed, which demonstrates that 'the Turkish government has forgiven the duty liability'").

As both Assan and the Association agree, there is no period of investigation limitation when considering closed IPCs attributed to U.S. sales reported during the period of investigation for purposes of calculating a duty drawback adjustment. *See* Assan Cmts on Draft Remand at 8 ("{T}he CIT held that less extreme versions of such a 'POI limitation has always been a result in search of a rationale' and that 'Commerce failed to identify a reasonable explanation supported by the record' for such a limitation"); *see also* the Al. Cmts on Draft Remand at 3-4 ("{T}he Department's practice is to require IPCs to be closed 'during the POI,' has previously been remanded as unlawful by the U.S. Court of International Trade) (citing *Tosçelik Profil ve Sac Endüstrisi A.S. v. United States*, 348 F. Supp. 3d 1321 (Ct. Int'l Trade 2018)). Therefore, Commerce calculated Assan's duty drawback adjustment using both the one IPC that closed during the period of investigation and another IPC that closed after the period of investigation but whose duty drawback adjustment was related to sales reported during the period of investigation. *See* Second Remand Redetermination at 12-14.

Moreover, Commerce departed from the duty drawback methodology that was used in its First Remand Redetermination in accordance with the Court's remand instructions. In the First Remand Redetermination, Commerce calculated Assan's duty drawback adjustment by taking the total amount of all exemptions pursuant to a single closed IPC and dividing by all sales exported pursuant to the closed IPC–regardless of whether the exports were of in-scope merchandise, to the United States, or during the period of investigation. *See* First Remand Redetermination at 3. This per-unit amount was deemed reflective of the duties exempted for

14

exports of the subject merchandise and thus applied to all of Assan's U.S. sales, regardless of whether such sales were made pursuant to closed or open IPCs. *Id*. The Court held that Commerce erred in applying a duty drawback adjustment to all of Assan's U.S. sales of merchandise when only one of the IPCs at issue had been closed and that some of the U.S. sales were associated with open IPCs (that is, did not earn duty exemption). *See Assan II*, 701 F. Supp. 3d at 1328. The Court ruled that this impermissibly increased Assan's export price by more than what was allotted under 19 U.S.C. § 1677a(c)(1)(B) and was inconsistent with Commerce's practice to consider the benefit of exempted duties once an IPC is closed. A*ssan II*, 701 F. Supp. 3d at 1329 ("An open IPC yields no duty exemptions during the period of investigation—and indeed may never close at all.")*.*

In the Second Remand Redetermination, Commerce calculated Assan's per-unit duty drawback by using "the estimated amount of the duty drawback benefit for exempted import duties realized by each respondent for exports to the United States during the period of investigation of merchandise similar to scope merchandise as documented on the closed IPC" as the numerator. *See* Second Remand Redetermination at 7. For the denominator, Commerce includes only the total U.S. sales associated with a closed-IPC. *Id*. Commerce then applied the resulting per-unit benefit to U.S. sales associated with the closed IPC in the U.S. sales database. *Id*. This methodology ensures that Commerce calculates a duty drawback benefit based on the amount of duties rebated on a closed IPC that are associated with only reported U.S. exports of subject merchandise during the period of investigation. Further, by revising its calculations to use as the denominator the quantity of U.S. database sales associated with the closed IPC and applying that per-unit amount to only U.S. database sales associated with the closed IPC,

Commerce ensured that the duty drawback adjustment applied to only the U.S. sales that were entitled to the benefit.

In short, Commerce's revised methodology now captures exempted import duties associated with only exports of subject merchandise during the period of investigation. This calculation methodology best meets the plain language of the statute, establishes a reasonable link between the duties exempted and the U.S. sale that earned the corresponding drawback adjustment, and is consistent with Commerce's practice. Accordingly, Assan's duty drawback adjustment, as recalculated in the Second Remand Redetermination, is supported by substantial evidence and in accordance with law.

**B.    The Aluminum Association's Arguments Provide No Basis To Set Aside Commerce's Second Remand Redetermination**

In the Second Remand Redetermination, all parties agreed that Commerce's practice allows for the consideration of IPCs that close outside the period of investigation when evidence shows that, during the course of a proceeding, the IPC closure has been fully documented and the relevant information is available to calculate a duty drawback adjustment. *See* Second Remand Redetermination at 12-14. Given that Commerce's practice is to allow the use of IPCs closed outside of the period of investigation, the Association instead argues that Commerce should have disregarded the evidence submitted by Assan that IPCs closed outside the period of investigation. Each of the Association's arguments fail.

First, the Association incorrectly argues that Commerce accepted Assan's June 6, 2024 supplemental questionnaire notwithstanding Commerce's own acknowledgement in the second draft remand that "Assan also submitted additional factual information outside of the scope of Commerce's supplemental questionnaire." *See* Al. Cmts at 6. For context, Commerce was referring to whether the information was relevant to Commerce's duty drawback analysis, given

16

that the information included IPCs that closed outside the period of investigation. *See* Second Draft Remand at 7. The following sentence is indicative of Commerce's intention in specifically recognizing that "Assan reported that all its reported U.S. sales in the {period of investigation} can be tied to a closed-IPC, including IPCs that were closed outside of the {period of investigation}." *Id.*

In the Second Draft Remand, Commerce determined that such information was moot given that the information proves only that the government of Turkey did not officially close a certain IPC until after the period of investigation. *Id.* ("{I}nformation concerning IPCs that remained open during the {period of investigation} is moot"). But as both parties articulated in their respective briefs to the agency, there is no period of investigation limitation with respect to closed IPC related to sales reported during the period of investigation. *See* Second Remand Redetermination at 8. Therefore, when Commerce issued the second remand redetermination, information related to IPCs that closed after the period of investigation was relevant. *Id.*

Next, the Association argues that Commerce did not request information from Assan on any IPC other than the IPC that closed during the period of investigation. *See* Al. Cmts at 7. The Association further argues that the "Court did not instruct Defendant to collect additional information on remand, so the latter part of Defendant's explanation is wrong." *Id.* The Association too narrowly interprets the Court's second remand order. *See Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) (holding that specific language in a remand order directing Commerce to decide whether to open record on remand was not required for Commerce to exercise its discretion.). Further, it is well-established that "{r}eopening the record on remand is a matter largely left up to Commerce's discretion." *Fresh Garlic Producers Ass'n v United States*, 2017 Ct. Int'l Trade LEXIS 128, at *9 (Ct. Int'l

Trade 2017) (citations omitted); *Husteel Co. v. United States*, 180 F. Supp. 3d 1330, 1340 (Ct. Int'l Trade 2016) ("It was well within Commerce's discretion to reopen the record on remand."). In this case, reopening the record was particularly appropriate because the additional information was necessary to comply with the remand instructions and advanced the purpose of the remand.

As an initial matter, Commerce additional information was necessary to accurately calculate the duty drawback adjustment for the one IPC found closed during the period of investigation, which was the subject of the Court's Second Remand Order. Although the focus of the questionnaire was directed to the closed IPC found during the investigation, Commerce requested that Assan identify in the U.S. sales database which sales were made under an open IPC, and Assan indicated that they had none. Assan's Supplemental Questionnaire Response at 1. Assan reported that to date, there are no reported U.S. sales in the period of investigation with open IPCs and provided documentation in support of its claims. *Id.* Therefore, Commerce found Assan's response to its inquiry to be both reasonable and relevant for purposes of complying with the Court's order. Second Remand Redetermination at 13.

Next, the Association argues that Assan's June 6, 2024 submission was inadequate for calculating a duty drawback adjustment because "Assan omitted closure documents, as well as export and import lists." *See* Al. Cmts at 8. However, Assan provided this information in its June 20, 2024 submission before Commerce issued its draft results. *See* Assan's Additional Response at Attachment 1. Assan reported no U.S. sales in the period of investigation were associated with open IPCs and later provided closure and import/export list documentation to demonstrate its entitlement to a duty drawback adjustment. This is the same documentation that was submitted in the first administrative review of the order. *See* Assan's Additional Response at 2.

Although the Association argues that Assan's June 20, 2024 submission was untimely and should have been rejected, "there is no 'element of predictability or transparency served by denying a drawback adjustment{,} the accuracy of which is not in question.'" *See Toscelikl*, 348 F. Supp. 3d at 1328.   Moreover, this information directly corresponded with the Assan's June 6, 2024 submission, rebutted the Association's June 13, 2024 submission, and did not conflict with other information provided on the record.  *See e.g., Marmen Inc. v. United States*, 545 F. Supp. 3d 1305, 1316–17 (Ct. Int'l Trade 2021) ("Because of Commerce's own characterization of the submission, and because the information directly corresponds to a prior submission, the Court concludes that Marmen's submission is a correction and reviews whether Commerce abused its discretion when rejecting Marmen's submission.").

Relatedly, the Association argues that Commerce's determination to accept the additional closed IPC should be remanded because Commerce failed to explain why it accepted Assan's submission.  *See* Al. Cmts at 11.  However, Commerce explained its decision to accept Assan's submission.  Commerce reasoned that the submission should be accepted given that the evaluation of IPCs that closed outside of the period of investigation was no longer a moot issue and the information submitted by Assan regarding the status of any open IPCs was responsive and relevant to both Commerce's remand questionnaire and the Court's instructions.  Second Remand Redetermination at 12-13.  Commerce exercised reasonable discretion in accepting the information regarding closed IPCs attributable to Assan's sales of subject merchandise during the period of review.  Indeed, accepting Assan's submissions provided Commerce with a complete record from which to redetermine the respondent's duty drawback adjustment and Commerce articulated this importance in its second remand redetermination.  *See Parkdale Int'l*

*v. United States*, 475 F.3d 1375, 1380 (Fed. Cir. 2007). ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible").

Next, the Association relies on *Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States*, 654 F. Supp. 3d 1311 (Ct. Int'l Trade 2023), for the proposition that this Court has previously rejected unsolicited and untimely information. Al. Cmts at 11-12. The Association argues that Commerce's failure to address *Icdas* specifically renders its decision unlawful. Al. Cmts at 12. However, nothing in *Icdas* requires Commerce to reject a timely response to information that Commerce requested. Further, even if Commerce did not cite *Icdas* specifically, Commerce certainly explained that the Association's argument was meritless. Second Remand Redetermination at 13.

The Association also claims that Commerce erred by failing to respond to the Association's allegation that Commerce unlawfully relied on unverified information. However, Commerce explained that sufficient evidence on the record demonstrates closure of the additional IPC relied upon for purposes of calculating Assan's duty drawback adjustment. Second Remand Redetermination at 13-14. Commerce's practice is to provide credit for exempted duties in the form of a duty drawback adjustment upon evidence that the subject country's government has forgiven those duties, and Assan has provided such documentation. *See Noksel Celik Boru Sanayi A.S. v. United States*, No. 21-00140, 2023 WL 5426585, at *5 (Ct. Int'l Trade Aug. 23, 2023) (affirming Commerce's requirement that respondents provide sufficient evidence establishing that an IPC was closed by the Government of Turkey.). Accordingly, Commerce found that the record, on remand, contained substantial evidence sufficient to support Commerce's calculation of Assan's duty drawback. The Association has not citied to any information on the record that calls into question the reliability of the two closed

IPCs used to demonstrate Assan's entitlement to a duty drawback adjustment. Moreover, the information provided by Assan is corroborated by the information Assan submitted in the first administrative review, which was subject to verification. *See* Assan Additional Response at 2.

The Association's last argument regarding Assan's submissions as purported "gamesmanship" and "limitless supplementation" of the record does not support the notion that Commerce's interests in finality were compromised. *See Grobest & I–Mei Indus. (Vietnam) Co. v. United States*, 36 C.I.T. 98, 123 (2012) ("{T}he court will review on a case-by-case basis whether the interests of accuracy and fairness outweigh the burden placed on the Department and the interest in finality."). The Association mischaracterizes the events leading to the compilation of the record before Commerce and inappropriately narrows Commerce's discretion as a fact finder. *See* Al. Cmts at 15-18.

Assan's submission did not inhibit Commerce's ability to carry out and to complete its Second Remand Redetermination. As explained above, Commerce reopened the record to obtain new factual information necessary to calculate Assan's duty drawback adjustment in accordance with the Court's Second Remand Order. In response to Commerce's supplemental questionnaire response, Assan provided information to demonstrate that all its reported U.S. sales in the period of investigation can be tied to a closed-IPC, including IPCs that were closed outside of the period of investigation. Later, Assan responded to the Association's submission to demonstrate that the information in Assan's duty drawback questionnaire response is accurate by including the same documentation that was submitted to Commerce in the first administrative review of the order. The Association's contrary characterizations of Assan's submissions as untimely and unsolicited is inaccurate, and its concerns about finality are overstated in the context of this case.

Likewise, none of the cases relied on by the Association require Commerce to reject in the interest of finality information that Commerce requested.  For example, in *Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012), the Federal Circuit held that the trial court exceeded its authority when it ordered Commerce to reopen the record on remand.  678 F.3d at 1277.  However, the court recognized that "Commerce {certainly} could have requested that the trial court remand to allow them to reopen the record if it believed that was warranted."  *Id.* at 1278.  In this case, Commerce determined that reopening the record was necessary to calculate Assan's duty drawback adjustment, and thus *Essar* is inapplicable.  Likewise, in *CS Wind Vietnam Co. v. United States*, 219 F. Supp. 3d 1273 (Ct. Int'l Trade 2017), this Court sustained Commerce's rejection of *unsolicited* factual information.  219 F. Supp. 3d at 1285.  Critically, notwithstanding the Association's mischaracterization to the contrary, Assan submitted documentation that was specifically solicited by Commerce in this case.  Finally, *Alloy Piping Products, Inc. v. United States* involved the attempted correction of clerical errors and is simply not applicable in this case.  201 F. Supp. 2d 1267, 1285-86 (Ct. Int'l Trade 2002).

In short, Commerce accurately calculated the duty drawback adjustment using both Assan's one IPC that closed during the period of investigation and one additional IPC that closed after the period of investigation but whose duty drawback adjustment is related to sales reported during the period of investigation.  This fulfilled Commerce's statutory requirement to calculate fair and accurate dumping margins.  *See Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 102 F. Supp. 2d 486, 495 (Ct. Int'l Trade 2000) (stating that "any given methodology must always seek to effectuate the statutory purpose--calculating accurate dumping margins").  Indeed, the Association does not contend otherwise and instead resorts to procedural challenges to the information relied on by Commerce to make its determination.

22

Although the Association does not argue the information is incorrect in any way, the Association

mischaracterizes Assan's submissions as unsolicited and untimely. Because they were neither,

the remand results should be sustained.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's Second

Remand Redetermination and enter final judgment in favor of the United States.

<div style="margin-left:50%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

/s/Kyle S. Beckrich
KYLE S. BECKRICH
Trial Attorney
U.S. Dept. of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-9322
E-mail: kyle.beckrich@usdoj.gov

</div>

OF COUNSEL:
ASHLANDE GELIN
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

October 7, 2024                        *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's word limitation requirement in that it contains 6,547 words, including text, footnotes, and headings.

<div align="center">

/s/Kyle S. Beckrich
Kyle S. Beckrich

</div>