Slip Op. 25-63

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ASSAN ALUMINYUM SANAYI VE TICARET A.S.,**<br><br>       **Plaintiff and Consolidated Defendant-Intervenor,**<br><br>   **v.**<br><br>**UNITED STATES,**<br><br>       **Defendant,**<br><br>   **and**<br><br>**ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, ALERIS ROLLED PRODUCTS, INC.; ARCONIC CORPORATION; COMMONWEALTH ROLLED PRODUCTS INC.; CONSTELLIUM ROLLED PRODUCTS RAVENSWOOD, LLC; JW ALUMINUM COMPANY; NOVELIS CORPORATION; AND TEXARKANA ALUMINUM, INC.,**<br><br>       **Defendant-Intervenors and Consolidated Plaintiffs.** | **Before: Gary S. Katzmann, Judge**<br>**Consol. Court No. 21-00246** |

## <u>OPINION</u>

[ The court remands Commerce's <u>Second Remand Results</u>. ]

<u>Dated: May 21, 2025</u>

<u>Leah Scarpelli</u>, <u>Matthew M. Nolan</u>, <u>Jessica R. DiPietro</u>, <u>Kimia Pourshadi</u>, and <u>Christian Bush</u>, Arent Fox LLP, of Washington, D.C., for Plaintiff and Consolidated Defendant-Intervenor Assan Aluminyum Sanayi ve Ticaret A.S.

<u>Kyle S. Beckrich</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, <u>Brian M.</u>

Consol. Court No. 21-00246                                                                    Page 2

Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director, U.S. Department of Justice, of Washington, D.C., for Defendant the United States.  Of counsel was Ashlande Gelin, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

John M. Herrmann and Joshua R. Morey, Kelley Drye & Warren LLP, of Washington, D.C., for Defendant-Intervenors and Consolidated Plaintiffs Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its Individual Members, Aleris Rolled Products, Inc., Arconic Corporation, Commonwealth Rolled Products Inc., Constellium Rolled Products Ravenswood, LLC, JW Aluminum Company, Novelis Corporation, and Texarkana Aluminum, Inc.

     Katzmann, Judge:  This consolidated challenge to an antidumping determination has now spanned two successive remands.  See generally Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 47 CIT __, 624 F. Supp. 3d 1343 (2023) ("Assan I"); Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 48 CIT __, 701 F. Supp. 3d 1321 (2024) ("Assan II").[1]  It is not over yet.  Some procedural and substantive issues have been resolved, but others have sprouted in their place.  For now, though, the dispute before the court turns on just one basic point:  An agency must explain its decisionmaking in the face of cogent objections by interested parties.

     The U.S. Department of Commerce ("Commerce") did not do so with respect to two arguments raised during the latest remand proceeding.  See Redetermination Pursuant to Court Remand Order (Dep't Com. July 31, 2024), July 31, 2024, ECF No. 122 ("Second Remand Results").  A third remand proceeding will accordingly ensue.

## BACKGROUND

     The parties before the court are the same as in Assan I and II.  They are the United States ("the Government"), Turkish aluminum producer Assan Aluminyum Sanayi ve Ticaret A.S.

---

[1] The court refers the reader to the preceding opinion in this matter for a discussion of the treatment of Turkish-language orthography.  See Assan II, 48 CIT at __ n.1, 701 F. Supp. 3d at 1323 n.1.

("Assan"), and a consortium of U.S. aluminum producers called the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group ("the Aluminum Association," or "the Association"). The procedural posture is the same as before: the Association challenges Commerce's Second Remand Results, and Assan and the Government oppose that challenge. See Assan II, 48 CIT at __, 701 F. Supp. 3d at 1323. The underlying substantive issue here is also the same as in Assan II: Commerce's treatment of "the Turkish government's system for exempting import duties." Id.

Because of these similarities, the court presumes familiarity with the general legal and factual background of this litigation, including the interaction between the Turkish government's issuance of Inward Processing Certificates ("IPCs") and Commerce's methodology for basing duty drawback adjustments on IPCs under 19 U.S.C. § 1677a(c)(1)(B). See Assan I; 47 CIT at __, 624 F. Supp. 3d at 1357; Assan II, 48 CIT at __, 701 F. Supp. 3d at 1324. The discussion below addresses only the specific elements that are relevant to the Association's challenge to the Second Remand Results.

## I.    *Legal and Regulatory Background*

The governing law here is a set of statutes and implementing regulations that Commerce "must abide by." Fort Stewart Schs. v. FLRA, 495 U.S. 641, 654 (1990).[2]

---

[2] These procedural requirements apply to remand proceedings even though their associated statutes and regulations do not specifically refer to remands. An agency that undertakes an action on remand "is not limited to its prior reasons but must comply with the procedural requirements for new agency action." DHS v. Regents of the Univ. of Cal., 591 U.S. 1, 21 (2020). "Certainly neither [Commerce] nor the courts are free to abandon the statutory framework when a case is remanded," Freeport Mins. Co. v. United States, 758 F.2d 629, 636 (Fed. Cir. 1985), and "Commerce's own remand determination, as a matter of law, replaces Commerce's original, final determination," Decca Hosp. Furnishings, LLC v. United States, 30 CIT 357, 363 n.11, 427 F. Supp. 2d 1249, 1255 n.11 (2006).

Commerce "obtains most of its factual information in antidumping and countervailing duty proceedings from submissions made by interested parties during the course of the proceeding." 19 C.F.R. § 351.301(a).  Commerce often solicits this information through questionnaires, and "will reject any untimely filed or unsolicited questionnaire response." Id. § 351.301(c)(1).  After a party submits a response, "an interested party other than the original submitter is permitted one opportunity to submit factual information to rebut, clarify, or correct factual information contained in the questionnaire response." Id. § 351.301(c)(1)(v).  Then, "[w]ithin seven days of the filing of such rebuttal, clarification, or correction to a questionnaire response, the original submitter of the questionnaire response is permitted one opportunity to submit factual information to rebut, clarify, or correct factual information submitted in the interested party's rebuttal, clarification or correction." Id.  Commerce "will reject any untimely filed rebuttal, clarification, or correction submission." Id.  Commerce will also not consider "[u]ntimely filed factual information" or "written argument," and "will reject such information, argument, or other material, or unsolicited questionnaire response." Id. § 351.302(d)(1)(i), (2).

Overlying this information-gathering procedure is the verification process mandated by 19 U.S.C. § 1677m(i), which provides that Commerce "shall verify all information relied upon in making . . . a final determination in an investigation."  Verification "is not intended to be an exhaustive examination of the respondent's business," and its purpose "is to test information provided by a party for accuracy and completeness." Micron Tech., Inc. v. United States, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (first quoting Monsanto Co. v. United States, 12 CIT 937, 944, 698 F. Supp. 275, 281 (1988), and then quoting Bomont Indus. v. United States, 14 CIT 208, 209, 733 F. Supp. 1507, 1508 (1990)).  Verification typically happens in the "affected country" where the

"accuracy and completeness of submitted factual information" can be verified, see 19 C.F.R. § 351.307(d), but Commerce has occasionally departed from this norm over the years in response to travel restrictions, see Bonney Forge Corp. v. United States, 46 CIT __, __, 560 F. Supp. 3d 1303, 1315–16 (2022).

## II.    History of Relevant Administrative Proceedings

Commerce determined over five years ago that Assan was selling aluminum sheet at less than its fair value—that is, "dumping" it—in the U.S. market.  See Common Alloy Aluminum Sheet from Turkey: Final Affirmative Determination of Sales at Less Than Fair Value, 86 Fed. Reg. 13326 (Dep't Com. Mar. 8, 2021), P.R. 358 ("Final Determination").  Commerce accordingly imposed "antidumping" duties on Assan's aluminum sheet imports at a rate of 2.02 percent ad valorem, equal to what Commerce calculated was "the amount by which the normal value exceeds the export price . . . for the merchandise."  19 U.S.C. § 1673; see Common Alloy Aluminum Sheet from Bahrain, Brazil, Croatia, Egypt, Germany, India, Indonesia, Italy, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan, and the Republic of Turkey: Antidumping Duty Orders, 86 Fed. Reg. 22139, 22141 (Dep't Com. Apr. 27, 2021).  This rate only slightly exceeded the statutory de minimis rate of 2 percent, under which Assan would have owed no antidumping duties at all.  See 19 U.S.C. § 1673d(a)(4).

Assan brought an action in the U.S. Court of International Trade ("USCIT"), challenging the Final Determination on a number of legal grounds.  See Compl. ¶¶ 23–28, May 21, 2021, ECF No. 4.  This action was consolidated with a separate action brought by the Aluminum Association, see Order Granting Mot. to Consolidate Cases, July 27, 2021, ECF No. 18, and the court proceeded to remand the Final Determination for Commerce's immediate reconsideration of two issues, only

one of which is now live: the proper amount of an upward "duty drawback adjustment" to Assan's calculated export price under 19 U.S.C. § 1677a(c)(1)(B). See Assan I, 47 CIT at __, 624 F. Supp. 3d at 1343. Assan filed the results of its redetermination in compliance with the court's order. See Redetermination Pursuant to Court Remand Order at 16 (Dep't Com. May 31, 2023), May 31, 2023, ECF No. 94 ("First Remand Results"). Commerce's recalculation of Assan's duty drawback adjustment left Assan with a dumping margin below the de minimis level. See id. The Association challenged the First Remand Results, and on the basis of this challenge the court again remanded for Commerce's reconsideration of the drawback adjustment issue. See Assan II, 48 CIT at __, 701 F. Supp. 3d at 1333.

The court observed in Assan II that Commerce had "calculated a per-unit duty drawback adjustment on the basis of a single closed IPC and applied that adjustment to all of Assan's U.S. sales of subject merchandise, including to sales of merchandise exported under open IPCs." Id. at 1328. (The court in this opinion refers to that IPC, whose actual certificate number is business proprietary information, as IPC $\alpha$). The court further observed that "[e]ven though certain open-IPC sales did not earn benefits of the exempted duties, Commerce adjusted its calculation of their U.S. prices as though they did," and held that "[t]here was no clear statutory basis for doing so." Id. (internal quotation marks and citation omitted). The court therefore instructed Commerce to "reconsider or further explain its duty drawback calculation methodology in light of the statutory constraints imposed by 19 U.S.C. § 1677a(c)(1)(B)." Id. at 1333. The court did not "direct a result on remand," and left open the possibility that "Commerce could adopt an altogether different methodology" for calculating a drawback adjustment based on IPC $\alpha$. Id.

Commerce began its second remand proceeding by asking Assan to provide "additional

information . . . in order to properly allocate the benefit associated with the Turkish duty drawback program to only the reported U.S. sales that are associated with only closed-IPCs."  Letter from M. Hoadley, Program Manager, AD/CVD Operations, to L. Scarpelli, ArentFox Schiff LLP, re: Req. for Additional Info. to Calculate Duty Drawback at 1 (May 23, 2024), P.R.R.2d 1, C.R.R.2d 1 ("May 23 Letter").[3]  In an attached questionnaire, Commerce asked Assan to "[p]lease submit a revised U.S. sales database by adding an additional field (e.g., 'IPCNOU') to [the] database . . . submitted under the ACCESS barcode 4067209-26, that identifies those reported U.S. sales that are included in the . . . reported closed IPC [$\alpha$]."  Id. at Attach. 1 ("May 23 Questionnaire").  Commerce further instructed under the same question heading that "[f]or those reported U.S. sales with open IPCs, please notate with a '.' to indicate that it was not a closed IPC."  Id.  Commerce gave Assan a deadline of May 30, 2024 to submit this information, and warned that "[p]ursuant to 19 CFR [§] 351.302(d), and subject to 19 CFR [§] 351.302(c), any information submitted after the applicable deadlines will be untimely filed and rejected."  May 23 Letter at 1–2.  Commerce then extended the deadline by one week at Assan's request.  See Mem. from S. Carey to the File re: Extension of Deadline, Case No. A-489-839, Bar Code: 4566784-01 (Dep't Com. May 29, 2024).

In its timely response, Assan identified three more IPCs (in addition to IPC $\alpha$) that it asserted had closed in time for their corresponding sales to receive drawback adjustments.  (The court labels these IPCs "$\beta$, $\gamma$, and $\delta$").  Assan stated as follows:

---

[3] "P.R.R.2d" and "C.R.R.2d" refer to the index numbers of what are respectively public and confidential documents in the joint appendices for the Second Remand Results.  See Conf. J.A., Oct. 21, 2024, ECF No. 133; Pub. J.A., Oct. 21, 2024, ECF No. 134.

> Please see Exhibit 1 for the revised U.S. sales database, which includes an additional "IPCNOU" identifying the IPC number for each U.S. sale. <u>There are no reported U.S. sales with open IPCs.</u>  As shown in Exhibit 2, <u>all of Assan's U.S. sales were made pursuant to a closed IPC.</u> . . . A screenshot from the Turkish drawback system's e-portal provided in Exhibit 2A demonstrates that IPCs [ $\alpha$, $\beta$, $\gamma$, and $\delta$ ] each have the same status – "KAPALI", <u>i.e.</u> closed.

Letter from L. Scarpelli, ArentFox Schiff LLP, to G. Raimondo, Sec'y of Com., re: Assan's Resp. to Req. for Additional Info. at 1 (June 6, 2024), P.R.R.2d 4, C.R.R.2d 2–7 ("Assan's June 6 Resp.") (emphasis added).

The Aluminum Association then responded to this submission.  <u>See</u> Letter from J. Morey, Kelley Drye & Warren LLP, to G. Raimondo, Sec'y of Com., re: Aluminum Ass'n's Cmts. & Rebuttal of Factual Info. Concerning Assan's June 6 Resp. (June 13, 2024), P.R.R.2d 5, C.R.R.2d 8 ("Association's Rebuttal").  The Association argued that as a legal matter, IPCs $\gamma$ and $\delta$ "do <u>not</u> bestow <u>any</u> duty drawback benefit" and thus should not be considered as a bases for drawback adjustments.  <u>Id.</u> at 4.  The Association did not make the same argument with respect to IPC $\beta$, but argued that "the documents Assan submitted concerning IPC [$\beta$] should be rejected from the record as unsolicited new factual information."  <u>Id.</u> at 5.  This, the Association averred, was because Commerce's May 23 Questionnaire "did not request information on any IPC other than IPC [$\alpha$]," and also because "Assan failed to provide closure documentation for IPC [$\beta$]."  <u>Id.</u> at 5–6.  The Association cited an absence of supporting information that it asserted was necessary for Commerce to treat IPC $\beta$ as a basis for a drawback adjustment, <u>see id.</u> at 6–7, which included "any information concerning the amount of exempted duties associated with" that IPC, <u>id.</u> at 7.  Finally, the Association argued that "Assan should not be afforded any further opportunities to submit factual information."  <u>Id.</u> at 9.

On June 20, 2024, Assan filed what it termed its "Submission of Comments and Rebuttal

Factual Information in Response to Petitioners' June 13, 2024 Submission."  See Letter from

L. Scarpelli, ArentFox Schiff LLP, to G. Raimondo, Sec'y of Com., re: Assan's Cmts. and Rebuttal

(June 20, 2024), P.R.R.2d 6, C.R.R.2d 9–11 ("June 20 Submission").   Assan framed this

submission as one that "contains new factual information to rebut, clarify, or correct information

contained in Petitioners' Comments and is timely submitted pursuant to the Department's

regulations, 19 C.F.R. § 351.301(c)(1)(v)."  Id. at 2.  In response to the Association's assertion that

IPC $\beta$ lacked sufficient closure documentation, Assan provided an attachment that contained "the

closure certification from the Government of Turkey" and "the import and export list under IPC

[$\beta$]."  Id.; see also id. at Attach. 1.

Five days later, the Association asked Commerce to reject the June 20 Submission on

regulatory timeliness grounds.  See Letter from J. Morey, Kelley Drye & Warren LLP, to

G. Raimondo, Sec'y of Com., re: Aluminum Ass'n's Rejection Request (June 25, 2024),

P.R.R.2d 7, C.R.R.2d 12 ("Rejection Request").  The Association argued that "[i]nstead of

rebutting, clarifying, or correcting Petitioners' submission of new factual information on June 13,

2024, Assan's June 20, 2024 submission seeks to correct its June 6, 2024 supplemental

questionnaire response."  Id. at 5.  The Association further argued that Commerce's "regulations

do not permit[] a respondent to submit new factual information to remedy or supplement

deficiencies or omissions in their own questionnaire responses, regardless of whether or not

another interested party pointed out those deficiencies or omissions."  Id.

Commerce did not initially rule on the Association's Rejection Request.  See Draft Results

of Redetermination Pursuant to Court Remand at 8 (Dep't Com. June 27, 2024), P.R.R.2d 8 ("Draft

Second Remand Results").  In its Draft Second Remand Results, Commerce instead denied

drawback adjustments for IPCs $\beta$, $\gamma$ and $\delta$ on the separate ground that those IPCs "remained open during the POI [("Period of Investigation")]," id. at 7, and thus could not support adjustments even if the attachments to Assan's June 20 Submission might establish post-POI closure, see id. at 8–9.

Assan and the Association then submitted administrative comments on the Draft Second Remand Results. Assan argued that Commerce should have awarded drawback adjustments on the basis of IPCs that closed after the Period of Investigation. See Letter from L. Scarpelli, ArentFox Schiff LLP, to G. Raimondo, Sec'y of Com., re: Assan's Cmts. on Draft Second Remand Results at 6–9 (July 5, 2024), P.R.R.2d 14, C.R.R.2d 24 ("Assan's Cmts.").

The Association naturally supported the outcome of the Draft Second Remand Results, but argued that Commerce "should provide additional reasons for denying Assan's request for a duty drawback adjustment based on IPCs [$\beta$, $\gamma$ and $\delta$]." Letter from J. Morey, Kelley Drye & Warren LLP, to G. Raimondo, Sec'y of Com., re: Pet'r's Cmts. on Draft Second Remand Results at 9 (July 5, 2024), P.R.R.2d 15, C.R.R.2d 26 ("Association's Cmts."). These suggested reasons included (1) the applicability of recent USCIT precedent tying drawback adjustment eligibility to documentation of IPC closure, see Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. v. United States, 47 CIT __, __, 654 F Supp. 3d 1311, 1317–22 (2023); (2) the inclusion of unsolicited material in Assan's June 6 Response to Commerce's May 23 Questionnaire; (3) the timeliness concerns that the Association initially expressed in its Rejection Request of June 25; and (4) the unverified nature of factual information in both Assan's June 6 Response and June 20 Submission. See Association's Cmts. at 4, 9–17.

Assan got most of what it wanted in the final version of the Second Remand Results. Commerce first explained that "we have revised our analysis . . . to use IPCs that are closed outside

the period of investigation . . . for purposes of calculating duty drawback adjustments when sufficient evidence exists on the record to demonstrate their closure." Second Remand Results at 8. Within this revised methodology, Commerce applied an upward drawback adjustment to its calculation of Assan's export price for sales made pursuant to IPC *β*. See id. at 9. Commerce noted that "the record contains documentation (e.g., associated import and export lists and official government closure documentation) to support [IPC *β*]'s use, closure, and association with subject merchandise sold to the United States during the POI." Id. At the same time, Commerce did not apply drawback adjustments for IPCs *γ* and *δ*, explaining that they "lack the necessary information in the closure documentation to show that [they] are related to either import duty exemptions or reimbursements." Id. at 13. Commerce did not prepare any aspect of the Second Remand Results under protest. See generally id.

Commerce's application of drawback adjustments for sales made under both IPCs *α* and *β* raised Assan's calculated export price by enough to give Assan a de minimis dumping margin—the same outcome as in the First Remand Results. See Second Remand Results at 17.

### III.    Procedural History

Commerce filed the Second Remand Results with the court on July 31, 2024 under ECF Number 122. The Association and Assan each filed their respective comments on the Second Remand Results one month later. See Aluminum Ass'n's Cmts. on Second Remand Results, Aug. 30, 2024, ECF No. 124 ("Association's Br."); Assan's Cmts. on Second Remand Results, Aug. 30, 2024, ECF No. 125 ("Assan's Br."). The Government responded to both sets of comments on October 7, 2024, see Def.'s Resp. to Cmts. on Second Remand Results, Oct. 7, 2024, ECF No. 132 ("Gov't Br."), and the Association and Assan filed replies to each other's comments

on the same day, see Aluminum Ass'n's Reply to Cmts. on Second Remand Results, Oct. 7, 2024,

ECF No. 129 ("Association's Reply"); Assan's Reply to Cmts. on Second Remand Results, Oct. 7,

2024, ECF No. 130 ("Assan's Reply").

 The court considered these filings and issued a letter containing both (1) substantive

questions for all parties and (2) an inquiry into whether it would be helpful to hold oral argument.

See Ct.'s Letter to the Parties, Dec. 5, 2024, ECF No. 135.  Each party timely filed a written

response; none requested oral argument.  See Aluminum Ass'n's Resp. to Ct.'s Qs., Jan. 8, 2025,

ECF No. 137; Def.'s Resp. to Ct.'s Qs., Jan. 8, 2025, ECF No. 138 ("Gov't Resp. to Qs."); Assan's

Resp. to Ct.'s Qs., Jan. 8, 2025, ECF No. 140 ("Assan's Resp. to Qs."); Aluminum Ass'n's Final

Resp. to Ct.'s Qs., Jan. 9, 2025, ECF No. 142 ("Association's Resp. to Qs.").  The court then issued

a supplemental round of written questions in lieu of oral argument, see Ct.'s Suppl. Qs., Feb. 6,

2025, ECF No. 144, and the parties responded in turn, see Aluminum Ass'n's Resp. to Suppl. Qs.,

Feb. 27, 2025, ECF No. 145 ("Association's Suppl. Resp."); Def.'s Resp. to Suppl. Qs., Feb. 27,

2025, ECF No. 146 ("Gov't Suppl. Resp."); Assan's Resp. to Suppl. Qs., Feb. 27, 2025, ECF

No. 147 ("Assan's Suppl. Resp.").

 All relevant filings are now before the court.

<strong>JURISDICTION AND STANDARD OF REVIEW</strong>

 The court has jurisdiction over this action, which challenges Commerce's final

determination of sales at less than fair value, pursuant 28 U.S.C. § 1581(c) and 19 U.S.C.

§ 1516a(a)(2).  19 U.S.C. § 1516a(b)(l)(B)(i) provides the standard of review:  "The court shall

hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial

evidence on the record, or otherwise not in accordance with law," id.; see also Huaiyin Foreign

Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003), "which includes compliance with the court's remand order," SMA Surfaces, Inc. v. United States, 47 CIT __, __, 658 F. Supp. 3d 1325, 1328 (2023).

Commerce acts contrary to law if it does not provide "an explanation of the basis for its determination that addresses relevant arguments, made by interested parties who are parties to the investigation or review (as the case may be), concerning the establishment of dumping." 19 U.S.C. § 1677f(i)(3)(A). Commerce must also comply with the general requirement that agencies establish and articulate a "rational connection between the facts found and the choice[s] made," Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962), with the caveat that the court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974); see also Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1378 (Fed. Cir. 2013).

As a separate matter, "Commerce is entitled to broad discretion regarding the manner in which it develops the record in an antidumping investigation." Stupp Corp. v. United States, 5 F.4th 1341, 1350 (Fed. Cir. 2021).

## DISCUSSION

The Aluminum Association challenges three aspects of the Second Remand Results, arguing that (1) Commerce unlawfully accepted Assan's June 6 Response even though it contained information that Commerce did not solicit in its May 23 Letter; that (2) Commerce unlawfully accepted Assan's June 20 Submission even though it contained new factual information that did not "rebut, clarify, or correct factual information submitted in" the Association's Rebuttal, 19 C.F.R. § 351.301(c)(1)(v); and that (3) Commerce unlawfully relied on unverified information in

Assan's June 6 Response and June 20 Submission, and then unlawfully failed to explain why it did not verify that information.  <u>See</u> Association's Br. at 2–18.

Although Assan disagrees with Commerce's non-application of drawback adjustments for entries made under IPCs $\gamma$ and $\delta$, it does not seek a further remand on that ground.  <u>See</u> Assan's Br. at 2, 4.  Assan attributes this strategic choice to the fact that Commerce's drawback adjustment for IPC $\beta$-associated entries is enough on its own to give Assan a <u>de minimis</u> dumping margin. <u>See</u> <u>id.</u> at 2.

The court considers Association's three challenges in sequence and concludes that (1) Commerce lawfully accepted Assan's June 6 Response and lawfully explained its reasons for doing so; that (2) Commerce unlawfully omitted to respond to the Association's supportable objection to Commerce's acceptance of Assan's June 20 Submission; and that (3) Commerce unlawfully omitted to respond to the Association's supportable objection to Commerce's reliance on unverified information in Assan's June 6 Response and June 20 Submission.  The court accordingly remands the <u>Second Remand Results</u> for Commerce to (1) consider the Association's unaddressed arguments; and (2) upon that consideration, to redetermine Assan's eligibility for a duty drawback based on IPC $\beta$.

## I.    *Commerce's Acceptance of Assan's June 6 Response Is in Accordance with Law*

Commerce treated information in Assan's June 6 Response regarding the asserted closures of IPCs $\beta$, $\gamma$, and $\delta$ as "timely and responsive to [the May 23] questionnaire."  <u>Second Remand Results</u> at 8.  Commerce explained that "[w]e find Assan's response to Commerce's inquiry to be <u>both</u> reasonable and relevant for purposes of complying with the Court's order."  <u>Id.</u> at 13.  The court sustains this particular element of Commerce's redetermination.

The Association first argues that Commerce violated its own regulation when it considered the "unsolicited" information in the June 6 Response.  See Association's Br. at 6–7 (citing 19 C.F.R. § 351.302(d)(1)(ii)).  The Association contends that "the [May 23 Questionnaire] did not request information from Assan on any IPC other than IPC [$\alpha$]," meaning that "Assan's submission of factual information relating to the other IPCs was unsolicited factual information."  Id. at 7.

There is some logic in this point.  As noted above, Commerce requested that Assan "identif[y] those reported U.S. sales that are included in the . . . reported closed IPC [$\alpha$]," May 23 Questionnaire, to which Assan responded that IPCs $\beta$, $\gamma$, and $\delta$ had closed as well, see June 6 Resp. at 6.  This response was not entirely congruous—it appears from context that Commerce meant to solicit information about IPC $\alpha$ alone.  Commerce's first question referred singularly to "the . . . reported closed IPC [$\alpha$]," and Questions 2 and 3 referred only to "closed IPC [$\alpha$]" and to "the closed IPC."  May 23 Questionnaire.  Commerce did not elsewhere reference the possibility that other IPCs might have closed.  See id.  The court thus infers that when Commerce requested that "[f]or those reported U.S. sales with open IPCs, please notate with a '.' to indicate that it was not a closed IPC," id., it did not mean to ask Assan about the open or closed status of non-$\alpha$ IPCs.  Id.  But Assan took advantage of Commerce's open-ended phrasing to supply information about the closure of three such IPCs.  See June 6 Resp. at 6; Assan's Reply at 4–5.

In doing so, Assan complied with the letter but not the spirit of Commerce's May 23 Questionnaire.  Commerce likely would been entitled to disregard the closure information in Assan's June 6 Response on the ground that it went beyond a simple delineation of IPC-$\alpha$ sales from non-IPC-$\alpha$ sales.  See 19 C.F.R. § 351.302(d)(1)(ii); Stupp, 5 F.4th at 1350 ("Commerce is entitled to broad discretion regarding the manner in which it develops the record in an antidumping

investigation.").[4]  This was in fact the outcome that Commerce provisionally reached in the Draft Second Remand Results, where it noted that "Assan also submitted additional factual information outside of the scope of Commerce's . . . questionnaire."  Id. at 6–7.

By the same token, however, Commerce acted within its discretion in accepting the closure information.  Commerce emphasized that "[a]lthough the focus of the questionnaire was directed on this sole closed IPC [α] found during the investigation, we did request that Assan identify in the U.S. sales database which sales were made under an open IPC, and Assan indicated that they had none."  Second Remand Results at 12–13 (footnote omitted).  A literalism, maybe, but not an impermissible one.  Commerce could have written, "for those reported U.S. sales with IPCs other than IPC α, please notate with a '.'," but chose instead to refer to the broader category "open IPCs." May 23 Questionnaire.  Assan believed that there were no "open IPCs," responded accordingly, and attempted to substantiate that response with additional documentation.  See June 6 Response.

Commerce's acceptance of this response does not compel remand.  While 19 C.F.R. § 351.302(d)(1)(ii) bars "unsolicited questionnaire responses," it does not require Commerce to narrowly parse its own solicitation.  "Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to . . . pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."  Vt. Yankee Nuclear Power Corp. v.

---

[4] That is substantially what the court held in Dorbest Ltd. v. United States, where Commerce permissibly declined to rely on "later-discovered evidence" on remand.  35 CIT 136, 146, 755 F. Supp. 2d 1291, 1301 (2011).  The court explained that "Commerce reopened the record to admit new data because it needed a new type of data to comply with our remand order; that order, however, did not require data from a different time period.  The error in Commerce's original determination arose not from the time period for which the . . . data were selected, but rather from the methodology applied to select the data."  Id. at 145–46.

Nat. Res. Def. Council, Inc., 435 U.S. 519, 543, (1978) (internal quotation marks and citations omitted).  In accepting this submission and explaining its reasons for doing so, Commerce used its allotted "discretion to determine whether a respondent has complied with an information request." Helmerich & Payne, Inc. v. United States, 22 CIT 928, 931, 24 F. Supp. 2d 304, 308 (1998) (quoting Daido Corp. v. United States, 19 CIT 853, 861, 893 F. Supp. 43, 49–50 (1995)).

      The Association also challenges the connection between the May 23 Questionnaire and the court's remand instructions in Assan II, which did not explicitly direct Commerce to request information on the attribution of POI sales to IPCs.  See Association's Br. at 7.  Here too, Commerce reasonably interpreted the broad language of an instruction—this time the court's—to permit inclusion.  The court did not direct a result or even a particular methodology on remand. See Assan II, 48 CIT at __, 701 F. Supp. at 1333.  Gathering evidence of IPC closure is at the very least relevant to the task of correcting an erroneous "adjustment based on . . . closed-IPC exempted duties to increase anything more than the calculated price of closed-IPC U.S. sales."  Id. at 1329. And "[a]s long as the Court does not forbid Commerce from considering new information, it remains within Commerce's discretion to request and evaluate new data."  NTN Bearing Corp. of Am. v. United States, 25 CIT 118, 124, 132 F. Supp. 2d 1102, 1107 (2001), aff'd, 295 F.3d 1263 (Fed. Cir. 2002).  Commerce's consideration of Assan's June 6 Response is thus in accordance with law, see 19 U.S.C. § 1516a(b)(l)(B)(i); 19 C.F.R. § 351.302(d)(1)(ii), and with the court's remand instructions, see SMA Surfaces, 47 CIT at __, 658 F.  Supp. 3d at 1328.

## II.    *Commerce's Acceptance of the Assan's June 20 Submission Is Not in Accordance with Law*

The same cannot be said of Commerce's acceptance of Assan's June 20 Submission.

Recall that the Association argued on June 25, 2024 that "[i]nstead of rebutting, clarifying,

or correcting [the Association's] submission of new factual information on June 13, 2024, Assan's June 20, 2024 submission seeks to correct its June 6, 2024 supplemental questionnaire response." Rejection Request at 5.  Recall as well that the Association repeated this argument in its comments on the <u>Draft Second Remand Results</u>.  <u>See</u> Association's Cmts. at 4, 14–16.  Commerce demonstrated its actual knowledge of this argument's existence through its "verbatim summary" of the Association's position that "the factual information Assan submitted on June 20, 2024 was untimely and, therefore, should be struck from the record."  <u>Second Remand Results</u> at 12 (quoting Association's Cmts. at 4).[5]

Commerce did not address the Association's untimeliness argument at all.  Commerce explained its treatment of Assan's document submissions as follows:

> We find Assan's response to Commerce's inquiry to be <u>both</u> reasonable and relevant for purposes of complying with the Court's order.  Specifically, the Court held that Commerce cannot impermissibly increase Assan's export price by applying the duty drawback adjustment to all of Assan's U.S. sales of subject merchandise, including certain open-IPC sales that did not earn the benefits of the exempted duties.  The information submitted by Assan regarding the status of any open IPCs was not only responsive and relevant to Commerce's remand questionnaire, but also the Court's instructions; the Association's argument to the

---

[5] In November 2023, in response to a concern that "Commerce officials [were] spending considerable time paraphrasing interested parties' briefs and arguments in shorter summation for use in final decision memoranda," Commerce began to require that "interested parties provide at the beginning of their [case] briefs a public executive summary for each issue raised in those submissions."  <u>Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws</u>, 89 Fed. Reg. 57286, 57304 (July 12, 2024) (to be codified at 19 C.F.R. pt. 351).  Commerce no longer paraphrases parties' arguments in its issues and decision memoranda, and instead reproduces the parties' summaries of their own arguments verbatim.  <u>Id.</u>; <u>compare, e.g.</u>, <u>Second Remand Results</u> at 11–12 <u>with</u> <u>First Remand Results</u> at 10–11.  This new practice extends to remand proceedings; Commerce instructed the parties here to "provide at the beginning of their comments a public, executive summary for each issue raised in their submission," and stated that "[w]e intend to use the public executive summaries as the basis of the comment summaries included in the final results of redetermination."  <u>Draft Second Remand Results</u> at 10; <u>see also</u> <u>Regents of the Univ. of Cali.</u>, 591 U.S. at 21.

> contrary (i.e., information is unsolicited and untimely) is, therefore, without merit. Indeed, accepting Assan's submissions provides Commerce with a complete record from which to redetermine the respondent's duty drawback adjustment.

Second Remand Results at 13 (footnote omitted).  As the Association points out, see Association's Br. at 10, this responds only to the Association's rebuttal argument that Commerce should not have considered unsolicited information in Assan's June 5 Response, see Association's Rebuttal at 5–6. Even if Assan's June 5 Response "was not only responsive and relevant to Commerce's remand questionnaire, but also the Court's instructions," that does not answer the separate question of whether the documents appended to Assan's June 20 Submission comprised "factual information to rebut, clarify, or correct factual information submitted in" the Association's Rebuttal of June 13.  19 C.F.R. § 351.301(c)(1)(v).  The remand record offers no hint from which an answer could "reasonably be discerned."  Bowman, 419 U.S. at 286.  Commerce simply did not explain why it considered the closure documents in Assan's June 20 Submission over the Association's repeated procedural objections.  While the court "will not second-guess Commerce's choice" on a procedural matter of this general type, SeAH Steel VINA Corp. v. United States, 950 F.3d 833, 842 (Fed. Cir. 2020) (quoting Mittal Steel Galati S.A. v. United States, 31 CIT 1121, 1141, 502 F. Supp. 2d 1295, 1313 (2007)), that deferential standard presupposes a choice to be second-guessed.

The Government argues that Commerce provided a sufficient explanation when it "reasoned that the submission should be accepted given that the evaluation of IPCs that closed outside of the period of investigation was no longer a moot issue and the information submitted by Assan regarding the status of any open IPCs was responsive and relevant to both Commerce's remand questionnaire and the Court's instructions."  Gov't Br. at 19.  This argument is

unpersuasive.  Even if the above-quoted passage in the <u>Second Remand Results</u> could be read as addressing both the June 5 Response to Commerce's May 23 Letter <u>and</u> the June 20 Submission—and the Commerce's reference to "responsive[ness] and relevan[ce] to Commerce's remand questionnaire" makes that a generous reading, <u>Second Remand Results</u> at 13—the passage does not address the Association's basic objection that "[i]nstead of rebutting, clarifying, or correcting the factual information [the Association] submitted on June 13, 2024, the factual information Assan submitted on June 20, 2024 <u>supplements</u> Assan's June 6, 2024 questionnaire response."  Association's Cmts. at 15.

This objection warranted a response not only because it was a "relevant argument[] made by [an] interested part[y]," 19 U.S.C. § 1677f(i)(3)(A), but also because it was particularly cogent. Recall that after an interested party rebuts a respondent's questionnaire response, the respondent may only "submit factual information to rebut, clarify, or correct factual information submitted in the interested party's rebuttal, clarification or correction." <u>Id.</u> § 351.301(c)(1)(v).  Assan reasoned that the factual information in its June 20 Submission met this description because it was a "response" to "Petitioners['] alleg[ation] that the record does not contain closure documents concerning IPC [β]." June 20 Submission at 1–2.

This was not a true rebuttal to the Association's rebuttal.  An assertion that an IPC is not closed is not on the same level of abstraction as an assertion that a submission does not include sufficient information. <u>See</u> Association's Rebuttal at 5–9.  While it may be possible to rebut the first type of assertion by providing information establishing closure, it is possible to rebut the second only by providing information that the original submission <u>did</u> in fact include sufficient information.  (When a teacher asks a student why his homework is late, the student gives no answer

by turning in his homework). If the rule were otherwise, a petitioner could not allege a failure to submit documents by a deadline imposed under 19 C.F.R. § 351.302 without opening the door to the introduction of the missing documents. Commerce clearly explained when issuing its questionnaire that "any information submitted after the applicable deadlines will be untimely filed and rejected." May 23 Letter at 1. Assan was not entitled to get around this requirement by exploiting the Association's attempt to enforce it.

In any event, Assan did not (and does not) explain why it did not submit documents establishing IPC $\beta$'s closure as part of its June 6 Response. See June 20 Submission at 1–2. Assan instead argues that Commerce's non-acceptance of the closure documents in the June 20 Submission would have constituted an "intentional miscalculation of an inaccurate margin," and an unlawful disregard of "clear evidence now establishing that Assan's import duties have not been collected by reason of the exportation of subject merchandise under IPC [$\beta$] to the United States." Assan's Reply at 11–12. But if any party bore the burden of forestalling Commerce's disregard of this information, that party was Assan. See QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("Although Commerce has authority to place documents in the administrative record that it deems relevant, the burden of creating an adequate record lies with interested parties and not with Commerce." (internal quotation marks, citation, and alterations omitted)). And this burden included a timeliness requirement. See Asociacion Colombiana de Exportadores de Flores v. United States, 13 CIT 13, 22, 704 F. Supp. 1114, 1122 (1989), aff'd, 901 F.2d 1089 (Fed. Cir. 1990) ("As much as the court would like determinations to reflect reality, those determinations should not be judged on the basis of later acquired information about reality.").

Consol. Court No. 21-00246                                                    Page 22

While calculating an accurate dumping margin is Commerce's chief goal in an antidumping proceeding, see NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995), it does not follow that Commerce must pursue that goal by systematically accepting information without regard for procedural constraints. Far from it. By Commerce's own description, regulations like 19 C.F.R. §§ 351.301 and 351.302 promote accuracy by incentivizing interested parties to present all relevant facts in a form that Commerce can readily consider. See, e.g., Definition of Factual Information and Time Limits for Submission of Factual Information, 78 Fed. Reg. 21246, 21247 (Dep't Com. Apr. 10, 2013) (citing Commerce's "experience in administering the [antidumping and countervailing duty] laws" as a basis for modifying 19 C.F.R. § 351.301 to enable Commerce "to review and analyze the factual information at the appropriate stage in the proceeding . . . rather than being required to review large amounts of factual information on the record of a proceeding when it is too late to adequately examine, analyze, conduct follow-up inquiries regarding and, if necessary, verify the information."); see also Exportadores de Flores, 13 CIT at 24, 704 F. Supp. at 1124 ("The court realizes it is perpetuating an 'error,' but if these investigations are to be successful, parties must submit data promptly, and be very clear as to what the data indicates.").

The Government next argues that the June 20 Submission "directly corresponded with the Assan's June 6, 2024 submission, rebutted the Association's June 13, 2024 submission, and did not conflict with other information provided on the record." Gov't Br. at 19. This retroactive explanation appears nowhere in the Second Remand Results, and the court cannot consider it. "[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." SEC v. Chenery Corp.,

318 U.S. 80, 95 (1943).

The upshot here is that Commerce has once again omitted to provide "an explanation of the basis for its determination that addresses relevant arguments, made by interested parties who are parties to the investigation or review." 19 U.S.C. § 1677f(i)(3)(A); see also Assan II, 48 CIT at __, 701 F. Supp. 3d at 1331 ("Remand is also warranted for the separate reason that Commerce failed to adequately explain its redetermination."); Chenery, 318 U.S. at 94 ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted by clearly disclosed and adequately sustained."). The Second Remand Results are therefore not in accordance with law; they cannot be sustained.

Remand is the necessary outcome. While such a remedy "would be pointless" in a case where "it is clear that the agency's error 'had no bearing on the procedure used or the substance of [the] decision reached,'" FDA v. Wages & White Lion Invs., LLC, 604 U.S. __, __, 145 S. Ct. 898, 930 (2025) (quoting Mass. Trs. of E. Gas & Fuel Assocs. v. United States, 377 U.S. 235, 248 (1964)), no such clarity exists here.

This is because the Association's unanswered timeliness argument cut to the heart of Assan's eligibility for a drawback adjustment based on IPC $\beta$. Eligibility for an IPC-based drawback adjustment is necessarily a function of time. As the court explained in Assan II, "an export under an open IPC does not result in a duty exemption (or drawback) until additional exports reach the amount required to close the IPC." 48 CIT at __, 701 F. Supp. 3d at 1327 (citing Assan I, 47 CIT at __, 624 F. Supp. 3d at 1357). The exact time at which eligibility for a drawback adjustment kicks in may still be an open question, see Icdas, 47 CIT at __, 654 F. Supp. 3d at 1321, but all parties agree with the basic premise that an IPC cannot support a drawback adjustment

unless some sign of the IPC's closure appears on the record.  See Assan's Br. at 4; Gov't Br. at 12; Association's Resp. to Qs. at 4.  By Commerce's own description, adjustments can be applied to entries made under "IPCs that close outside the . . . period of review [only] where evidence shows that during the course of a proceeding, the IPC closure has been fully documented and the relevant information is available to calculate a duty drawback adjustment."  Second Remand Results at 12 (footnote omitted).

This means that the timeliness of a submission of closure documents can be the sole determinant of whether the entries under a given IPC are eligible for a drawback adjustment.[6]  It accordingly behooves Commerce to take an exacting approach to determining whether an IPC-related submission is timely.  The need for exactitude is all the direr when evidence related to IPC closure accrues during litigation over drawback adjustment eligibility.  While successive remand proceedings give respondents time to collect and present closure documents, the fact of the proceedings themselves "do not grant the parties the right to a new antidumping investigation from the current date."  Dorbest, 35 CIT at 145, 755 F. Supp. 2d at 1300.  Commerce, in other words, "cannot complete its work unless it is able at some point to 'freeze' the record and make calculations and findings based on that fixed and certain body of information."  Bowe-Passat v. United States, 17 CIT 335, 339 (1993); see also Essar Steel Ltd. v. United States, 678 F.3d 1268, 1278 (Fed. Cir. 2012) ("Important principles of timeliness and finality undergird all aspects of litigation.").

---

[6] That seems to be what happened here.  Commerce implies that without the documents in the June 20 Submission, IPC $\beta$ would not "be fully documented with the inclusion of the relevant import and export lists that are needed in calculating the duty drawback adjustment."  Second Remand Results at 13.

Consol. Court No. 21-00246                                                                 Page 25

Here, Commerce did not just fail to strictly adhere to its own timeliness regulation and explanation thereof in the May 23 Letter; it also failed to address the Association's point about the enforcement of that regulation. Commerce must accordingly reconsider Assan's eligibility for an IPC $\beta$-based drawback adjustment. In doing so, it must consider the full extent of the Association's concerns regarding the closure documents that Assan submitted on June 20.

### III.    Commerce's Reliance on Unverified Information Requires Further Explanation

The Aluminum Association challenges one more aspect of the Second Remand Results, which is Commerce's non-verification of the information Assan provided in its June 6 Response and June 20 Submission. See Association's Br. at 12–15. The Association argues that Commerce relied on this unverified information in contravention of 19 U.S.C. § 1677m(i), which provides that Commerce "shall verify all information relied upon in making . . . a final determination in an investigation." See id. at 13. The Association further argues that Commerce unlawfully failed to respond to the Association's objection to non-verification. See id. at 12 (citing Association's Cmts. at 16–17).

The Government appears to concede that Commerce did not verify the information in question, see Gov't Br. at 20–21, and argues instead that other guarantors of reliability—such as the actual verification of other closure documents, and the verification of the same closure documents (for IPCs $\beta$, $\gamma$, and $\delta$) in a separate administrative review proceeding—are in some sense "sufficient." Id. at 20; see Gov't Resp. to Qs. at 6–7. But unlike Assan, which agrees with the Government's position, see Assan's Reply at 7–8, the Government does not anywhere mention 19 U.S.C. § 1677m(i). Neither, for that matter, did Commerce. See generally Second Remand Results.

Here too, Commerce did not provide "an explanation of the basis for its determination that addresses relevant arguments, made by interested parties who are parties to the investigation or review." 19 U.S.C. § 1677f(i)(3)(A). Remand is required on this issue as well.

The Association advanced a cogent and relevant argument below that "the record does not contain <u>verified</u> factual information for IPCs [$\beta$, $\gamma$, and $\delta$]," as required by 19 U.S.C. § 1677m(i). Association's Cmts. at 16–17. The Association also cited a case where the court explained that it was "critical[]" that "Commerce collected and verified information on all of the [IPC]s submitted by Plaintiffs (regardless of whether the [IPC]s closed within the POI or not) for the amount of Plaintiffs' uncollected import duties." <u>Toscelik Profil ve Sac Endustrisi A.S. v. United States</u> explained that it was "critical[]" 42 CIT __, __, 348 F. Supp. 3d 1321, 1325 (2018); <u>see</u> Association's Cmts. at 16–17. These points at least warranted a response: How, after all, would Commerce's consideration of the June 6 Response and June 20 Submission comport with 19 U.S.C. § 1677m(i)'s requirement that Commerce "shall verify all information relied upon in making . . . a final determination in an investigation"?

But Commerce, despite reproducing a "verbatim summary" of the Association's argument that "Commerce has not verified any factual information concerning these other IPCs [$\beta$, $\gamma$, and $\delta$]," gave no answer at all. <u>Second Remand Results</u> at 12 (quoting Association's Cmts. at 4). Commerce mentioned verification only once, in a parenthetical within a footnote citation to <u>Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi, A.S. v. United States</u>, 44 CIT __, __, 439 F. Supp. 3d 1342, 1348 (2020). The parenthetical stated, "(affirming Commerce's decision to include an IPC upon evidence of closure, despite parties arguing that there is insufficient evidence that Commerce verified the relevant IPC.[])." <u>Second Remand Results</u> at 8 n.46. This is not construable as a

response to the Association's specific argument on verification. The issue in Habas Sinai was not whether verification of a certain IPC was necessary under 19 U.S.C. § 1677m(i); it was whether a certain IPC was verified at all. See 44 CIT at __, 439 F. Supp. 3d at 1348.

Without any response from Commerce on the verification issue raised by the Association, the court has nothing to review. See Chenery, 318 U.S. at 95 ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.").[7] Commerce must address the verification issue in the first instance before the court's work can begin.

## CONCLUSION

The court remands for Commerce to (1) consider the Association's unaddressed arguments regarding timeliness and verification; and (2) upon that consideration, to redetermine Assan's eligibility for a duty drawback based on IPC $\beta$.

Chenery may not "require that we convert judicial review of agency action into a ping-pong game," NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969), but the Second Remand Results must go back to Commerce. The court regrets the necessity of this third remand order, which takes a scythe to what is assuredly the product of Commerce's conscientious and skillful efforts. The court does not remand for Commerce to reconsider a matter of substantive law, or even to complete an unsatisfactory explanation. The basis for remand is a simpler one: The Association raised two significant arguments below that Commerce quoted in the Second Remand

---

[7] For this reason, the court cannot sustain this element of the Second Remand Results on the basis of Assan's arguments about (1) Commerce's discretion to perform a "spot check" instead of complete verification, see Assan's Reply at 7, or (2) Commerce's performance of a non-"traditional" off-site verification during the original investigation that was restricted by COVID-19, see Assan's Resp. to Qs. at 7–8.

Consol. Court No. 21-00246                                          Page 28

Results but did not address.  The remand proceeding itself was essentially incomplete.  As a result,

the parties and the court have spent time and resources on matters that should have been resolved

at the agency level.  And worse things may yet remain—all parties can also expect to bear future

costs of uncertain magnitude.  Assan must undergo a costly fourth round of proceedings before

Commerce and the court, knowing all the while that a tiny shift across the de minimis boundary

could spell the difference between significant liability and none at all.  The Association must once

again press the arguments that did not elicit a response during the second remand proceeding.  The

Department of Justice and Commerce must place major demands on the time of their talented

workforces, and must stem the attrition of institutional knowledge built up during earlier stages of

litigation.  Looming in the distance, finally, are the possibilities of appeal and the reawakening of

dormant issues that the court declined to address in Assan I.  See Second Remand Results at 1 n.2.

　　　　The court appreciates that a "verbatim summary" saves time over an in-house paraphrase,

see supra n.5, but Commerce must still take care to respond to all the relevant arguments it quotes.

Finality will otherwise prove elusive.

　　　　It is hereby:

　　　　**ORDERED** that Commerce shall prepare a third remand redetermination that is consistent

with this opinion.  Commerce shall file the results of its third remand redetermination with the

court within ninety days of the date of this opinion.  The timeline for filings and comments

regarding the third remand redetermination will proceed according to USCIT Rule 56.2(h).

　　　　**SO ORDERED.**

                                                      /s/      _Gary S. Katzmann_
                                                      Gary S. Katzmann, Judge

Dated: May 21, 2025
　　　　New York, New York