A-489-839
Remand
Slip Op. 25-63
POI:  01/01/2019 – 12/31/2019
~~Business Proprietary Document~~
**Public Version**
E&C/OII:  OP

***Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,**
**Consol. Court No. 21-00246, Slip Op. 25-63 (CIT May 21, 2025)**
**Common Alloy Aluminum Sheet from the Republic of Türkiye**

**FINAL RESULTS OF THIRD REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of

redetermination pursuant to the remand opinion and order of the U.S. Court of International

Trade (Court or CIT) in *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, Slip Op. 25-

63 (CIT May 21, 2025) (*Third Remand Order*).  These final results of redetermination concern

the investigation of sales at less than fair value of common alloy aluminum sheet from the

Republic of Türkiye (Türkiye) covering the period of investigation (POI) January 1, 2019,

through December 31, 2019.[1]  The petitioner is the Aluminum Association Common Alloy

Aluminum Sheet Trade Enforcement Working Group & Individual Members (the Association).

The respondents in this investigation are the following companies:  Assan Aluminyum Sanayi ve

Ticaret A.S. (Assan); and Teknik Aluminyum Sanayi A.S.

In this *Third Remand Order*, the Court remanded Commerce's second remand

redetermination regarding two issues:  (1) to consider the Association's unaddressed arguments

regarding timeliness and verification; and (2) upon that consideration, to redetermine Assan's

---

[1] *See Common Alloy Aluminum Sheet from Turkey:  Final Affirmative Determination of Sales at Less Than Fair Value*, 86 FR 13326 (March 8, 2021) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

eligibility for a duty drawback based on {Inward Processing Certificate} IPC $\beta$.[2]  In addition, the Court held that Commerce, "must consider the full extent of the Association's concerns regarding the closure documents that Assan submitted on June 20"[3] in reconsidering Assan's eligibility for an IPC $\beta$-based drawback adjustment.

Pursuant to the Court's instructions, we reconsidered Assan's June 20 Submission[4] that contained new factual information that did not rebut, clarify, or correct factual information submitted in response to the Association's Rebuttal Submission[5] and rejected the submission as untimely new factual information.  As a result, we found the record does not contain sufficient information to find that Assan is eligible for a duty drawback adjustment regarding IPC [    ]. Finally, we considered and addressed the request for verification arguments from the Association.  Consequently, the net effect of Assan's duty drawback results has increased Assan's margin from *de minimis* from the *Second Remand Redetermination*,[6] to 2.14 percent.[7] Further, as a result, the all-others *ad valorem* weighted-average rate decreases from 13.56 percent calculated in the *Second Remand Redetermination* to 4.94 percent.[8]

---

[2] *See Third Remand Order* at 27.  For purposes of this draft remand redetermination, we will refer to IPC $\beta$ as IPC [    ].

[3] *Id*., at 25.

[4] *See* Assan's Letter, "Submission of Comments and Rebuttal Factual Information in Response to Petitioners' June 13, 2024 Submission," dated June 20, 2024 (Assan's June 20 Submission).

[5] *See* Petitioners' Letter, "Comments and Rebuttal Factual Information Concerning Assan Aluminyum Sanayi ve Ticaret A.S.'s June 6, 2024 Response to the Department's Request for Information" dated June 13, 2024 (Association's Rebuttal Submission).

[6] *See Final Results of Redetermination Pursuant to Court Remand, Assan Aluminyum Sanayi v. United States*, Court No. 21-00246, Slip Op. 24-44 (CIT April 11, 2024), dated August 1, 2024 (*Second Remand Redetermination*).

[7] *See* Memorandum, "Final Results of Third Revised Margin Calculation for Assan Aluminyum Sanayi ve Ticaret A.S." dated concurrently with these final results of third redetermination (Third Final Remand Calculation Memorandum).

[8] *Id*.

## II.     BACKGROUND

Commerce published in the *Federal Register* its *Final Determination* on March 8, 2021.[9]
In the first remand, the Court sustained Commerce's decision to grant a duty drawback
adjustment to Assan but ordered Commerce to revise its methodology in accordance with the
U.S. Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Uttam Galva
Steels*.[10]  Commerce revised the duty drawback adjustment in the *First Remand Final Results*,
resulting in a calculated *de minimis* weighted-average margin for Assan.[11]  The Association
challenged that redetermination, and the Court remanded the matter a second time, directing
Commerce:  (1) to reconsider or further explain its allocation of the drawback calculation
methodology in light of the statutory constraints imposed by section 772(c)(1)(B) of Tariff Act
of 1930, as amended (the Act); and (2) respond to the arguments raised by the Association in its
comments on the first draft remand results.[12]

In the *Second Remand Redetermination*, Commerce reopened the record and revised its
methodology to allocate the duty drawback benefit only to U.S. sales associated with closed
IPCs.  Specifically, based on new information from Assan, including information identifying
sales tied to IPCs that Assan claimed had closed after the POI, Commerce ultimately continued
to find a *de minimis* weighted-average margin for Assan.[13]  The Association challenged that

---

[9] *See Final Determination*, 86 FR at 13326.
[10] *See Assan Aluminyum Sanayi v. Ticaret A.S.,* 624 F.Supp.3d 1343, 1349 (CIT 2023) (*First Remand Order*); *see also Uttam Galva Steels Ltd. v. United States*, 997 F.3d 1192, 1197 (Fed. Cir. 2021) (*Uttam Galva Steels*).
[11] *See Final Results of Redetermination Pursuant to Court Remand, Assan Aluminyum Sanayi v. United States*, Court No. 21-00246, Slip Op. 23-26 (CIT March 1, 2023) dated May 30, 2023 (*First Remand Final Results*) at 16, available at https://access.trade.gov/resources/remands/23-26.pdf.
[12] *See Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 701 F.Supp.3d 1321 (CIT April 11, 2024) (*Second Remand Order*).
[13] *See Second Remand Redetermination*.

result, raising several procedural objections related to Commerce's acceptance of Assan's new factual submissions and its reliance on unverified information.[14]

Accordingly, the Court remanded the *Second Remand Redetermination* for Commerce to consider the Association's concerns regarding timeliness and verification of Assan's submissions and based on that reconsideration, to redetermine Assan's eligibility for a duty drawback adjustment related to the IPCs addressed in the *Second Remand Redetermination*.[15]

## III.    ANALYSIS OF ISSUES IN THE FINAL REMAND REDETERMINATION

### A.  Assan's June 20 Submission

In the *Second Remand Order*, the Court directed Commerce to reconsider or further explain its allocation of the duty drawback methodology, particularly in light of section 772(c)(1)(B) of the Act.[16]  On remand, Commerce re-opened the record to request additional information necessary for purposes of calculating Assan's duty drawback adjustment.[17]

During the second remand, after Assan submitted additional information on June 6, 2024, showing all four IPCs were closed, the Association, in response, submitted rebuttal comments on June 13, 2024, asserting that the IPCs [     ] and [     ][18] did not confer a duty drawback benefit as a legal matter, and argued that the supporting documentation for IPC [      ] should be excluded from the record as unsolicited and untimely new factual information.[19]  The Association contended that Commerce's May 23 Questionnaire[20] did not request information on

---

[14] *See Remand Order* at 25-27.
[15] *Id.*, at 27.
[16] *See Second Remand Order*.
[17] *See* Commerce's Letter, "Request for Additional Information to Calculate Duty Drawback," dated May 23, 2024 (May 23 Questionnaire).
[18] The Court refers to these IPCs as γ and δ, respectively, in the *Third Remand Order*, *see* page 7.
[19] *See* Association's Rebuttal Submission at 2-12.
[20] *See* May 23 Questionnaire.

IPC [     ] and further argued that the record lacked closure documentation necessary for Commerce to determine eligibility for a duty drawback adjustment with respect to that IPC.[21]

On June 20, 2024, Assan provided additional documentation for IPC [     ].[22]  This included, for the first time, a closure certification from the Government of Türkiye and supporting import and export records.[23]  Assan characterized this submission as timely rebuttal information under CFR 351.301(c)(1)(v), asserting that it was submitted to rebut the Association's argument that closure documentation was missing from the record.[24]

The Association responded on June 25, 2024, and requested that Commerce reject Assan's June 20 Submission.[25]  The Association argued that Assan's June 20 Submission was untimely because it did not rebut new factual information submitted in the Association's Rebuttal Submission but rather attempted to supplement Assan's June 6 Submission.[26]

As noted by the Court, Commerce did not immediately rule on the Association's rejection request.  Instead, in the Second Remand Draft Results, Commerce denied duty drawback adjustments for the other three IPCs [                    ] on the grounds that the IPCs remained open during the POI and, therefore, could not support a duty drawback adjustment, despite the documentation submitted on June 20.[27]  Assan and the Association both commented on the Second Remand Draft Results.  While Assan argued that drawback adjustments should be

---

[21] *Id.*, at 8.
[22] *See* Assan's June 20 Submission at 3-4, Attachment 1.
[23] *Id.*
[24] *Id.*, at 2.
[25] *See* Petitioners' Letter, "Request for the Department to Reject from the Record the Untimely New Factual Information Filed by Assan Aluminyum Sanayi Ticaret S.A. on June 20 2024," dated June 25, 2024 (Association's Rejection Request).
[26] *Id.* at 4-6.
[27] *See* Draft Results of Redetermination Pursuant to Court Remand, *Assan Aluminyum Sanayi v. United States*, Court No. 21-00246, Slip Op. 24-44 (CIT April 11, 2024), dated June 27, 2024 (Second Remand Draft Results).

granted for IPCs that closed after the POI, the Association reiterated its view that Assan's June

20 Submission was untimely and should have been excluded from the record.

In the *Second Remand Redetermination*, Commerce ultimately accepted Assan's June 20

Submission.  Commerce reasoned that the information submitted was responsive to both its

remand inquiry and the Court's prior instructions, and thus necessary to ensure an accurate

calculation of Assan's duty drawback adjustment.[28]  Specifically, Commerce stated that the June

20 Submission allowed for a complete and accurate administrative record.[29]  As a result,

Commerce issued a duty drawback adjustment for IPC [    ] and [    ].[30]

In the *Third Remand Order*, the Court ordered Commerce to reconsider the timeliness of

Assan's June 20 Submission, in light of the Association's arguments, and reconsider Assan's

eligibility for an IPC $\beta$-based duty drawback adjustment.[31]  The Court found that Commerce did

not explicitly address the Association's argument that the submission was untimely under 19

CFR 351.301(c)(1)(v).[32]

Consistent with the CIT's *Third Remand Order*, on August 14, 2025, Commerce issued

its Third Draft Remand Results.[33]  In the Third Draft Remand Results, Commerce reconsidered

its acceptance of Assan's June 20 Submission and the related duty drawback claim based on the

IPC information contained in the June 20 Submission.  Upon review of the record, and pursuant

to 19 CFR 351.301(c)(1)(v), Commerce determined that Assan's June 20 Submission did not

constitute timely factual information submitted to rebut, clarify, or correct information placed on

---

[28] *See Second Remand Redetermination* at 12-13.
[29] *Id*.
[30] *Id*. at 16-17.
[31] *See Remand Order* at 19.
[32] *See Third Remand Order* at 19.
[33] *See* Draft Results of Redetermination Pursuant to Court Order, Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, Consol. Court No. 21-00246, Slip Op. 25-63 (CIT May 21, 2025), dated August 14, 2025 (Third Draft Remand Results).

the record by another interested party. Rather, it represented an untimely effort by Assan to supplement its own prior questionnaire response. Therefore, pursuant to 19 CFR 351.302(d), Commerce rejected Assan's June 20 Submission in its entirety.[34]

Accordingly, in the Third Draft Remand Results, Commerce continued to grant a duty drawback adjustment for [    ] and [    ], as evidence establishing that these IPCs were closed was submitted in Assan June 6 Submission. However, after parties submitted comments on the Third Draft Remand Results, while upholding the rejection of Assan's June 20 Submission, Commerce acknowledges that upon closer examination of the underlying calculation, the Third Draft Remand Results inadvertently relied on certain quantitative information contained only in Assan's June 20 Submission to calculate the duty drawback adjustment. Based on the comments addressed below, we have revised our analysis and conclude that there is not sufficient information on the record to calculate the duty drawback adjustment for IPC [    ].

B. Assan's Duty Drawback Adjustment

To comply with the Court's instructions in the *Second Remand Order*, Commerce sought additional information necessary to accurately calculate the duty drawback adjustment for the one IPC found closed during the investigation and within the POI.[35] In the *Second Remand Redetermination*, we relied on all record information to determine the IPCs that were closed, including information contained in Assan's June 20 Submission.[36] However, as noted in the Third Draft Remand Results, we have now found that Assan's June 20 Submission contained new factual information and, therefore, was untimely pursuant to 19 CFR 351.301(c)(1)(v). As a

---

[34] *Id.*; *see also* Commerce's Letter, "Rejection of Assan's June 20, 2024 Submission," dated August 13, 2025 (Rejection Letter).
[35] *See* May 23 Questionnaire.
[36] *See Second Remand Redetermination* at 12-14.

result, Assan's June 20 Submission was rejected in accordance with 19 CFR 351.302(d)[37] and the information contained therein is no longer on the record of the proceeding.

Pursuant to the *Second Remand Order*, Commerce issued Assan a questionnaire on May 23, 2024, requesting that Assan submit additional information for Commerce to "properly allocate the benefit associated with Turkish duty drawback program to only reported U.S. sales that are associated with only closed-IPCs."[38]  Specifically, Commerce requested certain information and that an additional field be added to the U.S. sales database identifying the reported U.S. sales that are included in the [          ] reported closed IPC [     ] and for those reported U.S. sales with an IPC, adding a "." to indicate that it was not a closed IPC."[39]  In Assan's June 6 Submission, Assan stated that it provided a database "identifying the IPC number for each U.S. sale and there were no reported U.S. sales with open IPCs.  Further, Assan stated that all its U.S. sales were made pursuant to a closed IPC."[40]  In addition, Assan stated that "holders of an IPC can query the Turkish Customs database via an internet e-portal (IPR eportal) to ascertain the status of an IPC.  A screenshot from the Turkish drawback system's e-portal provided in Exhibit 2A of Assan's June 6 Submission demonstrates that IPCs [

] each have the same status – "KAPALI", i.e. closed."[41]  Finally, Assan provided more detailed information supporting the closure of IPC [     ], specifically addressed in questions 2 and 3 of the May 23 Questionnaire.[42]

In Exhibit 2A of Assan's June 6 Submission, Assan attached a screenshot of the Turkish Ministry of Trade's Online IPR Portal (e-portal) to its response that contains various fields of

---

[37] *See* Rejection Letter.
[38] *See* May 23 Questionnaire at Cover Letter.
[39] *Id.*, at Attachment, page 1 (citing Exhibits 1-2).
[40] *Id.*
[41] *Id.*
[42] *Id.*, at Attachment, page 2 (citing Exhibits 2-5).

data, including the IPC holder name, taxpayer number, IPC number, IPC application date, the

beginning and ending date of the IPC, the status of the IPC and the closure date for each IPC.[43]

The screenshot shows several IPCs as being closed (Kapali).  In addition, Assan's June 6

Submission also contained the original and translated version of the [


                                ] that contained much of the supporting data on the screen shot from the

IPC portal, such as the IPC number, IPC application date, IPC holder name and the taxpayer

number.[44]  Further, it contained a list of articles imported and exported that are associated with

each certificate.[45]  Exhibit 5 of Assan's June 6 Submission contains a table calculating the

average number of days for each certificate's closure.[46]  Finally, for IPC [    ], Assan provided a

letter from the Turkish Ministry of Trade, Customs and Foreign Trade Regional Office, that

certificate [    ] has been closed:

> It has been determined that all of the raw materials, auxiliary materials and
> packaging materials imported as customs within the scope of Inward Processing
> Permit Certificate dated 28.12.2017 and numbered 2017 / D1-07905 registered on
> behalf of Assan Aluminyum San. ve Tic.. (Tax No: 0860018306) are used within
> the exported products and the commitment account of the document in question has
> been closed over the realization values stated below, pursuant to Article 12 of the
> Communiqué on Transactions Regarding Inward Processing Regime 2007-02 dated
> 01.04.2007.[47]

The record now does not contain a similar letter for IPC [    ].  However, in the Third Draft

Remand Results, Commerce weighed the information on the record and concluded that IPC [    ]

is also closed.    As such, in the Third Draft Remand Results we determined that IPC

---

[43] *Id.*, at Exhibit 2A.
[44] *Id.*
[45] *Id.*
[46] *Id.*, at Exhibit 5.
[47] *See* Assan's June 6 Submission at Exhibit 2B.

[    ] closed and did not revise the weighted-average dumping margin calculated for Assan in the *Second Remand Redetermination*.

However, based on the comments addressed below, we have now revised our analysis and find that there is not sufficient information on the record to calculate a duty drawback adjustment for IPC [    ]. Specifically, while the record does contain sufficient information to establish that IPC [    ] is closed, the record does not contain the values necessary to calculate or allocate a duty drawback adjustment for IPC [    ] to the reported sales.[48] Thus, we have adjusted Assan's weighted-average dumping margin because of our inability to calculate an accurate duty drawback adjustment for IPC [    ].[49]

### C. Commerce's Reliance on Unverified Information

In its *Third Remand Order*, the Court held that "Commerce did not provide an explanation of the basis for its determination that addresses relevant arguments, made by interested parties who are parties to the investigation or review."[50] In its comments on Commerce's Second Remand Draft Results, the Association made arguments with respect to relying on unverified information contained in Assan's June 6 and June 20 Submissions.[51] Specifically, as the Court noted in its *Third Remand Order*, the Association argued that the record does not contain verified information with respect to IPCs [            ], as required by section 777(i) of the Act.[52] Additionally, the Court highlighted a case that the

---

[48] For IPC [    ], Commerce has access to export and import data, the applicable customs duty rate, and total IPC exports of subject merchandise to the U.S.. *See* Assan's Letter, "Common Alloy Aluminum Sheet from Turkey: Section C Questionnaire Response," dated June 29, 2020 (Section C IQR) at Exhibit C-12; *see also* Assan's June 6 Submission at Exhibit 2B. These details are not contained Section C IQR nor Assan's June 6 Submission for IPC [    ].

[49] *See* Third Final Remand Calculation Memorandum.

[50] *See Third Remand Order* at 26 (quoting {777(i)(3)(A) of the Act}).

[51] *See* Association's Letter, "Petitioners' Comments on the Draft Remand Redetermination Concerning Assan Aluminyum Sanayi ve Ticaret A.S.," dated July 5, 2024, at 16-17.

[52] *See Third Remand Order* at 26.

Association cited, *Toscelik Profil ve Sac Endustrisi A.S. v. United States*, 348 F.Supp.3d 1321, 1325 (CIT 2018) (*Toscelik*), where the CIT explained that it was critical that Commerce collected and verified information on all IPCs submitted by plaintiffs.[53] As the Court explained in its *Third Remand Order*, "{t}hese points at least warrant a response . . . ."[54]

While section 777(i) of the Act states that Commerce "shall verify all information relied upon in making … a final determination in an investigation," the purpose of verification is to "test information provided by a party for accuracy and completeness."[55] To this end, despite the language in section 777(i) of the Act that Commerce shall verify *all* information, the CIT and Federal Circuit have held that "Commerce enjoys wide latitude in its verification procedures."[56] Indeed, Commerce, the CIT, and the Federal Circuit, because of the vast amount of information on the record in most cases, have described the nature of verification as a "spot check."[57]

In the underlying investigation proceeding, Commerce conducted verification of Assan's IPCs via a questionnaire, determined that the information that Assan provided with respect to its IPCs was accurate, and granted Assan a duty drawback adjustment with respect to IPC [    ].[58] Following the Court's *Second Remand Order*, Commerce reopened the record and solicited more information with respect to the open/closed status of Assan's IPCs.[59] As discussed above, Assan submitted new factual information on June 6 and June 20, establishing that IPC [    ] was also

---

[53] *Id.*
[54] *Id.*
[55] *See Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343-44 (Fed. Cir. 2021) (*Goodluck*) (quoting *Micron Technology, Inc. v. U.S*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (*Micron*)).
[56] *See Bonney Forge Corporation v. United States*, 2025 WL 1304590 at *5 (CIT May 6, 2025) (*Bonney Forge*) (quoting *American Alloys, Inc. v. U.S.*, 30 F.3d 1469, 1475 (Fed. Cir. 1994) (*American Alloys*).
[57] *See Torrington Co. v. U.S.*, 146 F.Supp.2d 845, 897 (CIT 2001) (*Torrington*) ("{A} verification is a spot check and is not intended to be an exhaustive examination of the respondent's business. {Commerce} has considerable latitude in picking and choosing which {items} it will examine in detail." (citations omitted); *see also Government of Quebec v. United States*, 105 F.4th 1359, 1370 (Fed. Cir. 2024) (*Government of Quebec*) (describing "Commerce's spot-checking" of information during verification in that proceeding).
[58] *See* Assan's Letter, "Response to Request for Documents in Lieu of Verification," dated December 18, 2020; *see also Final Determination* IDM at Comment 1.
[59] *See* May 23 Questionnaire.

closed.  Because Commerce has now rejected Assan's June 20 Submission from the record
because it contained untimely, non-rebuttal, new factual information, there is not sufficient
information on the record to calculate a duty drawback adjustment for IPC [       ].

## IV.    INTERESTED PARTY COMMENTS

On August 14, 2025, Commerce issued its Third Draft Remand Results and provided
interested parties with an opportunity to comment on Commerce's analysis and redetermination.
Commerce received comments from the Association and Assan.[60]

After considering these comments, we concluded that we did not have the necessary
information on the record to calculate a duty drawback adjustment for IPC [       ].  Accordingly,
we adjusted the duty drawback calculation for Assan.

**Comment 1:  Duty Drawback Adjustment for IPC [       ]**

*Association's  Comments*:

The following is a verbatim summary of the comments submitted by the Association.[61]  For
further details, *see* the Association's Comments at 2-6.

> In the Draft Remand, {Commerce}continued to assign U.S. sales that Assan
> exported in connection with IPC $\beta$ the same per-unit duty drawback adjustment that
> it calculated in the final results of the second remand redetermination[62]
> {Commerce's} calculation, however, depends entirely on information contained in
> Assan's June 20, 2024 submission,[63] which {Commerce} has now correctly
> rejected as untimely.[64]  As a result of {Commerce's } rejection of Assan's untimely
> submission, there is no information on the record with which to calculate a per-unit
> drawback adjustment for IPC $\beta$.  While {Commerce} noted that the record contains
> a certain certificate for IPC $\beta$ that includes a "list of articles imported and

---

[60] *See* The Association's Letter, "Petitioners' Comments on the 3rd Draft Remand Redetermination Concerning
Assan Aluminyum Sanayi ve Ticaret A.S.," dated August 20, 2025 (Association's Draft Comments); *see also*
Assan's Letter, "Assan Aluminyum Sanayi ve Ticaret A.S.'s Comments on the Draft Results of Redetermination in
Consol. Court No. 21-00246 (Slip Op. 25-63)," dated August 20, 2025 (Assan's Draft Comments).
[61] These three comments were presented as three separate issues by the Association.  However, because they all
relate to the same issue, we have grouped them into one for the purposes of this final remand.
[62] *See* Memorandum, "Revised Margin Calculation for Assan Aluminyum Sanayi ve Ticaret A.S." dated August 13,
2025 (Third Draft Remand Calculation Analysis); *see also* Second Final Remand Calculation Memorandum at
Attachment 6.
[63] *See* Second Final Remand Calculation Memorandum at Attachment 6.
[64] *See* Third Draft Remand Results at 6-8; *see also* Rejection Letter.

exported,"[65] that information is inadequate. In particular, those import and export lists: (1) contradict {Commerce's} per-unit drawback calculation in the final results of the second remand redetermination,[66] (2) provide only projected information, not Assan's actual imports and exports under IPC $\beta$,[67] and (3) provide only aggregate information, not the detailed import and export lists {Commerce} requires in order to calculate a per-unit drawback adjustment.[68] Consistent with the Remand Order, without record information to calculate a per-unit drawback adjustment for IPC $\beta$, sales Assan made pursuant to this IPC are not entitled to a drawback adjustment.[69]

Even if {Commerce's} conclusion about IPC $\beta$'s closure is not erroneous, closure is not the only consideration in determining Assan's eligibility for a drawback adjustment pursuant to this IPC. The documents on the record do not establish whether IPC $\beta$ is a "drawback system" IPC or a "suspension system" IPC.[70] Because only the latter type allows for the exemption of import duties,[71] it is not possible to conclude that this IPC was even associated with a duty drawback benefit. Moreover, because the record does not include a detailed import list for IPC $\beta$, it is not possible to conclude that Assan's imports under this IPC could have been used to manufacture subject merchandise. Absent such information on the record, sales Assan made pursuant to IPC $\beta$ are not entitled to a duty drawback adjustment.[72] Finally, because the record does not establish the quantity of Assan's imports under IPC $\beta$, let alone the amount of exempted duties (if any) associated with those imports, {Commerce} is unable to evaluate the second prong of its two-prong test for duty drawback eligibility.[73] Because the record does not contain the information needed for {Commerce} to weigh these duty drawback eligibility factors, Assan is not entitled to a duty drawback adjustment for sales it made under IPC $\beta$, even assuming that this IPC is closed.

While Assan is not entitled to a per-unit duty drawback adjustment even assuming IPC $\beta$ is closed (see sections I and II), {Commerce} conclusion about this IPC's closure is not supported by substantial record evidence. In order to qualify for a drawback adjustment, a respondent must provide "record evidence that showed the

---

[65] *See* Third Draft Remand Results at 10.

[66] *See* Second Final Remand Calculation Memorandum at Attachment 6; *see also* Assan's June 6 Submission at Exhibit 2B page 204.

[67] *See* Assan's June 6 Submission at Exhibit 2B page 203-204.

[68] *Id*.

[69] *See Third Remand Order* at 24.

[70] *See* Assan's June 6 Submission at Exhibit 2A and 2B.

[71] *See* Association's Rebuttal Submission at 3-5 and Attachments 1-2.

[72] *See Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, Consol. Court No. 21-00246 (CIT Nov 22, 2021) at 13-17 (citing Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S., 861 F.3d 1269, 1271 (Fed. Cir. 2017)); *see also Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, Consol. Court No. 21-00246 (CIT Mar 24, 2022) at 5-7.

[73] *See Low Melt Polyester Staple Fiber from the Republic of Korea: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 83 FR 29094 (June 22, 2018) (*PSF from Korea Investigation Final*), and accompanying IDM at 18 (Comment 3).

{Government of Türkiye (GOT)}} had 'forgiven the duty liability.'"[74]   Thus, {Commerce} grants a per-unit drawback adjustment only for IPCs for which the respondent "provided the closure letters from the GOT."[75]   For IPC $\beta$, the record in the instant case does not contain such a closure letter from the GOT,[76] nor any other communication from the GOT releasing Assan from duty liability associated with this IPC.[77]   {Commerce's} grant of a drawback adjustment under such circumstances represents an unexplained change in practice, which is unlawful.[78] At the very least, Assan has not "fully documented" the closure of IPC $\beta$, making the grant of an adjustment inappropriate, as the Remand Order explained.[79]

*Assan's Comments*:

The following is a verbatim summary of the comments submitted by Assan.  For further details, *see* Assan's Comments at 2-3.

> {A}s required by the Court's Opinion in Assan III, {Commerce} addressed the Petitioners' argument regarding Assan's June 20 Submission.  Specifically, {Commerce} took action by rejecting Assan's June 20 Submission.[80]   Although Assan disagrees with the Department's rejection of the June 20 Submission, the evidence on the record continues to support {Commerce's} determination to continue to grant duty drawback adjustments for IPCS [     ] and [     ].

> {Commerce's} review of the information on the record is reasonable and in accordance with law.  The record, as a whole, still supports {Commerce's} continued determination to grant Assan a duty drawback adjustment for IPC [          ].[81]     Specifically, Assan provided {Commerce} with the necessary information to demonstrate that both IPCs at issue are closed, including screenshots from the Turkish drawback system's e-portal.[82]   {Commerce's} reasonably

---

[74] *See ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States*, 654 F.Supp.3d 1311, 1320 (CIT 2023).
[75] *See Steel Concrete Reinforcing Bar from the Republic of Turkey:  Final Results of Antidumping Duty Administrative Review and Final Determination of No-Shipments; 2019-2020*, 87 FR 7118 (February 8, 2022), and accompanying IDM at 18.
[76] *See* Third Draft Remand Results at 10.
[77] *See* Assan's June 6 Submission at Exhibit 2A and 2B.
[78] *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) (an agency changing its practice is "obligated to supply a reasoned analysis for the change*"); see also Save Domestic Oil, Inc. v. United States*, 357 F.3d 1278, 1283-84 (Fed. Cir. 2004) ("if Commerce has a routine practice for addressing like situations, it must either apply that practice or provide a reasonable explanation as to why it departs therefrom"); *see also NMB Sing. Ltd v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009) ("Once Commerce establishes a course of action, however, Commerce is obliged to follow it until Commerce provides a sufficient, reasoned analysis explaining why a change is necessary.").
[79] *See Third Remand Order* at 24.
[80] *See* Rejection Letter.
[81] *See* Third Draft Remand Results at 13; *see also New Am. Keg v. United States, Ct.* No. 20-00008, 2021 Ct. Int'l Trade WL 1206153, at 6 (March 23, 2021) ("{T}he question is not whether the Court would have reached the same decision on the same record{;} rather, it is whether the administrative record as a whole permits Commerce's conclusion.").
[82] *See* Assan's June 6 Submission 1, P.R.R.2d 4, C.R.R.2d 2–7.

weighed the remaining evidence properly on the record and found that "all evidence supports the conclusion that IPC [    ] is also closed."[83]   Accordingly, Assan is entitled to a duty drawback adjustment and the resulting *de minimis* rate.

**Commerce's Position:**  Commerce agrees with the Association, that the record does not contain the information necessary to calculate a per-unit duty drawback adjustment for IPC [    ].[84]  In the Third Draft Remand Results, Commerce inadvertently relied upon information submitted by Assan in its June 20 Submission.[85]  In the Third Draft Remand Results, Commerce rejected the June 20 Submission as unsolicited new factual information that was not timely, pursuant to 19 CFR 351.302(d), and it is therefore no longer on the record.[86]  With the rejection of that submission, the detailed import, export, and tariff-rate data required to calculate a per-unit adjustment for IPC [    ] is missing.

The remaining references to IPC [    ] are only mentioned on the record in the initial questionnaire section C response and the June 6 Submission.[87]  The initial questionnaire states IPC [    ] is categorized as being in the [                    ], and provides no supporting documentation.[88]  Exhibit 2B of Assan's June 6 submission is insufficient for the purposes of calculating a duty drawback adjustment, as it only contains projected values, not actual, reconciled import and export data.[89]  Although the information provided in Assan's June 6 Submission is inadequate to support a per-unit adjustment, it does provide record evidence to allow Commerce to determine that IPC [    ] is closed.[90]

---

[83] *See* Third Draft Remand Results at 10.
[84] *See* The Association's Draft Comments at 2-6.
[85] *See* Third Draft Remand Calculation Analysis; *see also* Second Final Remand Calculation Memorandum at Attachment 6.
[86] *See* Third Draft Remand Results at 8.
[87] *See* Section C IQR at 43; *see also* Assan's June 6 Submission at Exhibit 2B.
[88] *See* Section C IQR at 43.
[89] *See* Assan's June 6 Submission at Exhibit 2B.
[90] *See* Third Draft Remand Results at 9-11.

Specifically, Commerce agrees with the Association that the record does not contain the actual import and exporter values, customs duty rates, and reconciled duties exempted necessary to calculate a per-unit drawback adjustment for IPC [    ].[91]  This data was available only in the June 20 Submission.  By contrast, the record for IPC [    ] contains the following information from Assan's initial section C questionnaire response and June 6 Submission:

- Total IPC import quantity[92]

- Total IPC import value[93]

- Total IPC export quantity[94]

- Total IPC exports of subject merchandise to the U.S.[95]

- Customs duty rate[96]

The import data and export data for IPC [    ] specifically, was provided in the initial questionnaire section C response, where Assan provided detailed quantity and value of exports with destination specific information, as well as combined import data with corresponding Harmonized Tariff System of the United States (HTSUS) classification and applicable customs duty rates.[97]  Additionally, Assan, during the second remand, included Exhibit 3 in its June 6 supplemental questionnaire response, which contains a breakdown of the realized exportation under IPC [    ] on a customs declaration number basis, HTSUS code of each exported product, and identified whether the relevant export sale is in-scope merchandise or out of scope merchandise under column "Subject/Non-subject merchandise."[98]  Additionally, a pivot table in

---

[91] *See* The Association's Draft Comments at 12-14.
[92] *See* Section C IQR at Exhibit C-12.
[93] *Id*.
[94] *Id*.
[95] *See* Assan's June 6 Submission at Exhibit 3.
[96] *See* Section C IQR at Exhibit C-12.
[97] *Id*.
[98] *See* Assan's June 6 Submission at 2 and Exhibit 3.

Exhibit 3 shows Assan's total quantity and value of sales of in-scope merchandise during the POI generated from the realized export list of IPC [    ].[99]  This complete information set allowed Commerce to calculate a duty drawback adjustment for IPC [    ], which divides the total closed-IPC duty drawback benefit associated with U.S. exports in the POI for the closed-IPC, by their respective quantity of subject merchandise exported to the U.S. during the POI for the closed-IPC, and then applies the relevant per-unit duty drawback adjustment for the closed IPC to the respective U.S. sales of subject merchandise during the POI that were exported under that closed IPC.[100]

The same cannot be done for IPC [    ] because the record does not have corresponding IPC import and export quantity and value, as well as total IPC exports that could have been used in the manufacture of subject merchandise to the U.S., or applicable customs duty rates.  We agree with the Association that the June 6 Submission in Exhibit 2B contains only predicted import and export values of IPC [    ].[101]  In particular, IPC [    ] identifies [

].[102]  The inward processing authorization certificate, meanwhile, was [

].[103]  Therefore, we are unable to use the projected values presented in the June 6 Submission, as it does not provide an adequate basis for a duty drawback calculation.

Furthermore, the Association argues the that the two-prong test for drawback benefit eligibility was not met.[104]  Commerce's established practice requires that:  (1) the import duty

---

[99] *Id.*
[100] *See* Second Final Remand Calculation Memorandum at Attachment 5.
[101] *See* The Association's Draft Comments at 10 and 15; *see also* Assan's June 6 Submission at 2B.
[102] *See* Assan's June 6 Submission at 2A.
[103] *Id.* at Exhibit 2B.
[104] *See* Association's Draft Comments at 16.

paid and the rebate payment are directly linked to, and dependent upon, one another (or the

exemption from import duties is linked to the exportation of subject merchandise); and (2) that

there were sufficient imports of the imported raw material to account for the drawback received

upon the exports of the subject merchandise.[105]  Because the record does not contain the quantity

of actual imports under IPC [    ] or the associated exempted duties, Commerce cannot confirm

whether sufficient imports existed to support the claimed drawback.  Without this information,

IPC [    ] fails both prongs of the test.

      Without a detailed list of actual imports or exports, customs duty rate and import and

export ledgers for IPC [    ] reconciled to the U.S. sales database, Commerce cannot conclude

that such imports were suitable for producing subject merchandise.  In conclusion, we lack the

precise allocation of exempted duties to U.S. sales of subject merchandise entitled to a duty

drawback adjustment.[106]

      To consider granting an adjustment, Commerce requires record evidence that the

Government of Türkiye extinguished the liability under the IPC.  Assan's June 6 Submission,

specifically  Exhibits 5 and 2, provides such evidence which establishes that IPC [    ] is

closed.[107]  However, as discussed above, the record for IPC [    ] is missing critical information

required for Commerce to calculate a per-unit duty drawback adjustment.[108]  Unlike IPC [    ],

where Commerce had  import, export, custom duty rate, reconciliation, and closure evidence,

IPC [    ] lacks these elements.  That information is contained in the now rejected June 20

---

[105] *See PSF from Korea Investigation Final* IDM at 18 (Comment 3).
[106] *See Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S.*, 861 F.3d 1269, 1271 (Fed. Cir. 2017) (holding that Commerce may deny a drawback adjustment where the link between exempted imports and exported subject merchandise is not established).
[107] *See* Third Draft Remand Results at 8-11.
[108] *See Ad Hoc Shrimp Trade Action Comm. v. U.S.*, 802 F.3d 1339, 1357 (Fed. Cir. 2015) (*Ad Hoc Shrimp*); *see also Hyundai Elec. & Energy Sys. Co., Ltd., v. United States*, 617 F.Supp.3d 1253, 1260 (CIT 2023) (Explaining that "Complete and accurate U.S. sales prices are a fundamental aspect of a dumping calculation…reporting of service-related revenue was core to {Commerce's} analysis) (*Hyundai Elec. & Energy Sys. Co., Ltd.*).

Submission, whereas Exhibit 2B of Assan's June 6 Submission provides only projections.[109]

Accordingly, Commerce determines in these final results of redetermination that while Assan has

established that IPC [    ] is closed, the record does not support a duty drawback adjustment.  As

discussed above, the record contains the information necessary to calculate a duty drawback

adjustment for IPC [    ] and this determination is supported by necessary and core information

on the record.[110]

**Comment 2:  Verification concerning IPC [      ]**

*Association's  Comments*:

The following is a verbatim summary of the comments submitted by the Association.  For further
details, *see* the Association's Comments at 6-7.

> In its Draft Remand, {Commerce} argues that it does not have to verify any
> information concerning IPC $\beta$ specifically, despite the requirements of 19 U.S.C. §
> 1677m(i)(1), because verification is a "spot check" and {Commerce} had already
> verified Assan's questionnaire responses.[111]  {Commerce's} argument neglects a
> crucial timing issue:  because all documentation concerning IPC $\beta$ was not
> available until after {Commerce} issued a final determination,[112] it was, by
> definition,  not  verified  through  {Commerce}  verification  procedure.
> {Commerce's} verification during the underlying investigation cannot be imputed
> to information that did not even exist at the time {Commerce} conducted
> verification.   Further,  {Commerce}  should  not  establish  a  policy  that  will
> encourage Turkish producers to appeal final determinations with the hope that, with
> the passage of time, additional IPCs will close and information concerning these
> IPCs can be provided to the Department during remand proceedings.  Finally, two
> decisions by the U.S. Court of International Trade ("CIT") establish the principle
> that, in order to be eligible for a drawback adjustment associated with a particular
> IPC, a respondent must furnish the information needed to demonstrate that IPC's
> closure and to calculate the associated per-unit drawback adjustment in advance of
> verification.[113]  Accordingly, Assan's submission of incomplete and inadequate
> documentation for IPC $\beta$, long after {Commerce} performed verification, does not
> provide an appropriate basis for the grant of a drawback benefit.

---

[109] *See* Assan's June 6 Submission at Exhibit 2B.
[110] *See Ad Hoc Shrimp*, 802 F.3d at 1357 (Explaining that "information about Hilltop's corporate structure is core,
not tangential, to Commerce's analysis because it goes to the heart of Hilltop's corporate structure").
[111] *See* Third Draft Remand Results at 12-13.
[112] *See* Assan's June 6 Submission at Exhibit 2A and 2B.
[113] *See Tosçelik*; *see also Habas*.

*Assan's Comments*:

The following is a verbatim summary of the comments submitted by Assan.  For further details, *see* Assan's Comments at 3.

> Second, as required by the Court's Opinion in Assan III, {Commerce} addressed the Petitioners' argument regarding verification of Assan's submitted information. While it is our position that {Commerce} had the authority pursuant to the remand to conduct a verification and we disagree with {Commerce's} decision to cancel that scheduled verification, {Commerce} correctly determined that "all evidence supports the conclusion that IPC {[     ]} is also closed."[114]  As explained in the Draft Remand Results, (1) {Commerce} is no longer relying on the June 20 Submission, (2) verification is a "spot check," and does not require exhaustively examining all IPCs, (3) {Commerce} verified that Assan's IPC reporting is reliable as a general matter and with respect to IPC {[     ]}, and (4) substantial evidence from Assan's June 6 Submission, of a similar quality to that verified for IPC {[     ]}, supports granting a drawback adjustment based on IPC {[     ]}.[115]

**Commerce's Position:**  The Association argues that Commerce's reliance on information submitted by Assan in its June 6, 2024, supplemental questionnaire response, and its now rejected June 20, 2024, submission, violates section 782(i)(1) of the Act because Commerce did not verify such information.[116]  The Association maintains that section 782(i) of the Act mandates verification of all information relied upon in making a final determination in an investigation.[117]  It further contends that reliance on information unavailable during the original investigation establishes a "bad policy" that improperly encourages respondents to seek appellate relief in hopes of adding new data during remand proceedings.[118]

Commerce disagrees with the Association.  In accordance with the *Third Remand Order*, Commerce considered the Association's statutory argument under section 782(i) of the Act and explained its reliance on post-investigation information.  Commerce maintains that its decision

---

[114] *See* Third Draft Remand Results at 10.
[115] *Id.* at 12-14; *see also* Assan's Letter, "Response to Request for Documents in Lieu of Verification," dated December 18, 2020 (Assan Verification Report); *see also Final Determination* IDM at Comment 1.
[116] *See* The Association's Draft Comments at 21.
[117] *Id.*
[118] *Id* at 22.

not to conduct verification in this remand is appropriate and consistent with both the facts and is in accordance with law.

As described in the Third Draft Remand Results, while section 777(i) of the Act states that Commerce "shall verify all information relied upon in making . . . a final determination in an investigation," the purpose of verification is to "test information provided by a party for accuracy and completeness."[119]  To this end, despite the language in section 777(i) of the Act that Commerce shall verify *all* information, both the CIT and Federal Circuit have consistently recognized that "Commerce enjoys wide latitude in its verification procedures."[120]  It is well established that verification is intended to serve as a "spot check" of information submitted by respondents, rather than an exhaustive or comprehensive audit of all information on the record.[121]

This principle has been upheld by the courts and consistently applied in Commerce's proceedings.  For instance, in *Torrington*, Commerce clarified that verification is a spot check and is not meant to be an exhaustive examination of the respondent's business.[122]  This understanding is further reinforced in other investigations such as *PET Resin from Taiwan*, where Commerce described verification as "somewhat akin to sampling," confirming its limited scope.[123]  In this case, Commerce already conducted verification during the investigation phase.  Because verification is intended to confirm the accuracy of the submitted information via a "spot

---

[119] *See Goodluck*, 11 F.4th at 1343-44 (quoting *Micron*, 117 F.3d at 1396 ).

[120] *See Bonney Forge*, 2025 WL 1304590 at *5 (quoting *American Alloys* 30 F.3d at 1475.

[121] *See Torrington*, 146 F.Supp.2d at 897-98; *see also Government of Quebec,* 105 F.4th at 1370(describing "Commerce's spot-checking" of information during verification in that proceeding).

[122] *See Torrington* , 146 F.Supp.2d at 897-98 ("{A} verification is a spot check and is not intended to be an exhaustive examination of the respondent's business.  The Court defers to {Commerce's} sensibility as to the depth of the inquiry needed.") (Citations Omitted); *see also Government of Quebec*, 105 F.4th at 1370.

[123] *See Polyethylene Terephthalate Resin from Taiwan:  Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part, 83 FR 48287 (September 24, 2018) (PET Resin from Taiwan*), and accompanying IDM at Comment 1.

check" of respondent's information and there have been no identified discrepancies or inconsistencies, further verification would be redundant.[124]  Further, as articulated in *Melamine from India*, verification is a spot check on information already provided, emphasizing that additional verification is only warranted if there are specific reasons to doubt the initial data's reliability.[125]

Commerce's decision is also consistent with well-established legal and procedural precedent.  For example, in the *Shrimp from Indonesia* investigation, Commerce relied on court decisions such as *Hercules*, *Floral Trade Council*, and *NTN Bearing* to clarify that Commerce has wide latitude in establishing its verification  procedures and that verification is primarily focused on validating core information rather than conducting a comprehensive review.[126] Moreover, avoiding unnecessary verification promotes the efficient use of Commerce's resources while ensuring compliance with regulatory and statutory standards.  Conducting verification without any specific cause or inconsistencies would impose burdens and cause delays without improving the accuracy of the record or the quality of Commerce's final determination.

Considering the foregoing, Commerce's decision not to undertake additional verification is justified and consistent with previous court decisions and Commerce determinations.  In this

---

[124] *See Torrington*, 146 F.Supp.2d at 897.
[125] *Id.*; *see also Melamine from India:  Final Affirmative Determination of Sales at Less Than Fair Value and Affirmative Determination of Critical Circumstances, In Part*, 90 FR 9415 (February 12, 2025) (*Melamine from India*), and accompanying IDM at Comment 2.
[126] *See Frozen Warmwater Shrimp from Indonesia:  Final Negative Countervailing Duty Determination*, 89 FR 85512 (October 28, 2024) (*Shrimp from Indonesia*), and accompanying IDM at Comment 2; *see also Hung Vuong Corp. v. United States*, 483 F.Supp.3d 1321, 1368-69 (CIT 2020) ("{T}he missing information, *i.e.*, data needed to calculate a dumping margin, is **core** to {Commerce's} analysis and it would be unduly difficult" to apply a rate without it) (emphasis added) (*Hung Vuong Corp.*); *Hercules, Inc. v. United States*, 673 F.Supp.454, 465 (CIT 1987) ("Clearly, it is within Commerce's discretion to make reasonable interpretations of the evidence and to determine the overall significance of any particular factor or piece of evidence") (Citations Omitted) (*Hercules*);  *Floral Trade Council v. United States*, 822 F.Supp.766, 771-72 (CIT 1993) ("Congress has afforded {Commerce} a degree of latitude in implementing its verification procedures.") (*Floral Trade Council*); *NTN Bearing Corp. of Am. v. United States*, 186 F.Supp.2d 1257, 1296 (CIT 2002) (*NTN Bearing*);

case, Commerce already conducted verification during the underlying investigation, including review of Assan's IPC system and closure documentation.[127]  As a result, we granted a duty drawback adjustment for IPC [    ], which was both closed and verifiable during the investigation period.[128]  As the Association acknowledges, verification is not an all-encompassing audit but a procedure to test the accuracy and completeness of key information.[129]

The Association's reliance on *Toscelik* and *Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*, 439 F.Supp.3d 1342, 1349 (CIT 2020) (*Habas*) is misplaced.  In *Tosçelik*, the Court held that Commerce erred by ignoring information that it had already verified four IPCs.[130]  The Court did not hold that Commerce is required to verify every piece of information submitted in every subsequent proceeding, only that Commerce may not disregard verified data.[131]  Because IPC [    ] was not closed during the POI (January 1, 2019, through December 31, 2019) or during the investigation itself (April 7, 2020, through March 8, 2021), Commerce could not verify any information related to IPC [    ].  Because Commerce is not discarding verified data, *Toscelik* has no bearing on the present case.

Similarly, in *Habas*, the Court found that *Toscelik* cannot fairly be read to support the proposition that Commerce must include all IPCs reflecting POI exports in its margin calculations regardless of whether record evidence demonstrates closure."[132]  Further, in *Habas*, Commerce determined that eligibility for inclusion in an adjustment required "record evidence establishing that the IPC has closed."[133]  Record evidence in this situation would demonstrate

---

[127] *See* Assan Verification Report at 5-7 and 14-15.
[128] *See Final Determination* IDM at Comment 1.
[129] *See* The Association's Draft Comments at 22.
[130] *See Toscelik*, 348 F.Supp.3d at 1325.
[131] *Id*.
[132] *See Habas*, 439 F. Supp. 3d at 1349.
[133] *Id*.

that "the Turkish government has forgiven the duty liability."[134]  Because *Habas* could not provide the required record evidence, the Court sustained Commerce's exclusion of an IPC that closed outside the POI while simultaneously affirming the inclusion of an IPC when the closure evidence was established before verification.[135]  Taken together, *Habas* and *Tosçelik* confirm Commerce's practice:  verification is tied to the timing of information availability during the investigation.  Accordingly, the Association's argument overlooks the fact that unlike *Toscelik* and *Habas*, the closure of IPC [    ] occurred only after the investigation was completed, meaning no contemporaneous evidence was available to verify.

Finally, consistent with the Court's remand instructions, Commerce has reconsidered whether further verification is appropriate here.  The Association argues that Commerce's reasoning not to verify "neglects a crucial timing issue" because all documentation concerning IPC [    ] was not available until after Commerce issued the final determination, and therefore was not verified.[136]  As noted above, Assan's June 20 Submission has been rejected as untimely, and because the June 6 Submission alone does not contain sufficient verifiable data to calculate a duty drawback adjustment for IPC [    ], Commerce determines that we cannot calculate a duty drawback adjustment for IPC [    ] in these final results of redetermination.  Additional verification is not necessary because Commerce has already verified the information underlying IPC [    ] in the investigation, and nothing in the statute or case law requires the agency to conduct a second, supplemental verification, particularly where the record no longer supports reliance on IPC [    ].  This approach is consistent with Commerce's longstanding precedent

---

[134] *Id*.
[135] *Id*. ("Commerce reasonably predicates its inclusion of IPCs on evidence of closure as demonstrating final duty exemption; thus, Commerce was within its discretion to decline to adopt or further address Habas's method of calculating duties conditionally exempted under open IPCs. Accordingly, this aspect of Commerce's determination is sustained").
[136] *See* The Association's Draft Comments at 6.

that verification is a spot check and not an exhaustive review of every submission.  Commerce retains broad discretion to determine what to verify, Commerce has already conducted verification in this investigation, and because the record lacks the necessary information to calculate an adjustment for the other three IPCs, further verification is unnecessary.[137]

We disagree with Assan's comments on the canceled verification agenda, which was originally issued in this third remand proceeding.[138]  According to Assan, cancelation of verification was improper given that Commerce continued to consider IPC [    ].  Commerce disagrees.[139]  We issued a verification agenda out of an abundance of caution following the Court's *Third Remand Order* as we evaluated whether additional information regarding Assan's IPCs might be subject to verification.  However, after reviewing the record, Commerce determined that only two categories of information were at issue:  (1) information concerning IPC [    ], which was already verified during the investigation; and (2) information concerning IPC [    ], which is not being used in these final results of redetermination.  This decision is consistent with a recent investigation, where additional verification was determined to be unnecessary because Commerce had already verified the relevant information in question.[140]

In sum, Commerce has complied with section 782(i) of the Act and with the *Third Remand Order*.  Verification is a spot check, Commerce retains broad discretion in determining what to verify, and the circumstances here do not warrant an additional verification.  Accordingly, Commerce is granting a duty drawback adjustment only for IPC [    ], which was verified during the investigation, and declines to verify or grant any adjustment for IPC [    ].

---

[137] *See Torrington*, 146 F.Supp.2d at 897-98.
[138] *See* Assan's Draft Comments at 2.
[139] *Id.,* at 9-15.
[140] *See Certain Low Speed Personal Transportation Vehicles from the People's Republic of China:  Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 FR 26530 (June 23, 2025), and accompanying IDM at Comment 14.

Commerce cannot rely on the June 20 Submission regarding IPC [    ] because it has been removed from the record and, therefore, there is no remaining information on the record concerning IPC [    ] to verify. Commerce concludes that conducting verification in this remand proceeding would serve no useful purpose and would not alter the outcome of the adjustment calculation.

## V.    FINAL RESULTS OF THE THIRD REMAND REDETERMINATION

Consistent with the *Third Remand Order*, we addressed the Association's unaddressed arguments and have revised our duty drawback methodology, which now only includes IPC [    ], which was initially reported closed in the underlying investigation.[141] As a result of the increase in Assan's margin to 2.14 percent, the all-others weighted-average dumping margin decreases from 13.56 percent calculated in the *Second Remand Redetermination*,[142] to 4.94 percent.[143] Should the Court affirm these third final results of redetermination, Commerce intends to publish a notice of an amended final determination and order in the *Federal Register*. If the Court's ruling is not appealed or, if appealed and subsequently upheld by a final and conclusive court decision, Commerce intends to issue appropriate customs instructions to U.S. Customs and Border Protection.

9/9/2025

X _Chris f Abbott_____

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

---

[141] *See* Third Final Remand Calculation Memorandum.
[142] *See Second Remand Final Results.*
[143] *See* Third Final Remand Calculation Memorandum.