**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) Consol. Court No. 21-00246 |
| *Defendant*, | ) ) ) |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, et al., | ) ) ) ) |
| *Defendant-Intervenors*. | ) ) ) |


**PLAINTIFF ASSAN ALUMINYUM SANAYI VE TICARET A.S.'S COMMENTS IN OPPOSITION TO THE THIRD REMAND REDETERMINATION**

Jessica R. DiPietro
Matthew M. Nolan
Christian L. Bush
Kimia Pourshadi


ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, D.C. 20006
Tel: (202) 350-3622
Email: jessica.dipietro@afslaw.com

October 9, 2025

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 2

III.    STANDARD OF REVIEW ................................................................................ 7

IV.     ARGUMENT ...................................................................................................... 9

    A.     SUMMARY ............................................................................................ 9

    B.     COMMERCE'S REMAND REDETERMINATION FAILS TO
          COMPLY WITH THE COURT'S REMAND ORDER ................................... 10

          1.     Drawback Calculability Is Not A Prerequisite For Eligibility For A
                Drawback Adjustment, As Recognized By Commerce's Prior
                Practice ........................................................................................ 11

          2.     Commerce Properly Determined That IPC 7734 Is Closed .................... 13

          3.     Disturbing The Drawback Calculation For IPC 7734 Exceeded The
                Court's Remand ........................................................................... 16

    C.     COMMERCE'S REMAND REDETERMINATION FAILS TO
          RECONCILE THE DETERMINATION THAT IPC 7734 IS CLOSED
          WITH THE DECISION NOT TO GRANT A DRAWBACK
          ADJUSTMENT ...................................................................................... 17

    D.     COMMERCE'S UNPRECEDENTED CANCELLATION OF
          VERIFICATION IS AN ABUSE OF DISCRETION ......................................... 21

    E.     COMMERCE IMPROPERLY REJECTED ASSAN'S JUNE 20
          SUBMISSION ....................................................................................... 30

V.      CONCLUSION ................................................................................................. 32

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,
  624 F.Supp.3d 1343 (Ct. Int'l Trade 2023) ("*Assan I*") ..........................................................13

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,
  701 F. Supp. 3d 1321 (Ct. Int'l Trade 2024) ("*Assan II*").............................................2, 16, 18

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*,
  No. 21-00246, slip op. 25-63 (Ct. Int'l Trade May 21, 2025) ("*Assan III*") .................. *passim*

*Atl. Sugar, Ltd. v. United States*,
  744 F.2d 1556 (Fed. Cir. 1984).................................................................................................8

*Belton Indus. v. United States*,
  6 F.3d 756 (Fed. Cir. 1993)....................................................................................................22

*Bonney Forge Corp. v. United States*,
  560 F.Supp.3d 1303 (Ct. Int'l Trade 2022) ......................................................................8, 22

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
  419 U.S. 281 (1974) ..................................................................................................................8

*Burlington Truck Lines, Inc. v. United States*,
  371 U.S. 156 (1962)..............................................................................................................8, 17

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938)..................................................................................................................8

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  591 US 1 (2020)........................................................................................................................9

*Fuyao Glass Indus. Grp. Co. v. United States*,
  30 CIT 165 (2006) ....................................................................................................................7

*Grupo Acerero S.A. de C.V. v. United States*,
  698 F.Supp.3d 1320 (Ct. Int'l Trade 2024) ...............................................................9, 22, 25

*Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi, A.Ş. v. United States*,
  439 F.Supp.3d 1342 (Ct. Int'l Trade 2020) ..........................................................................12

*Hyundai Elec. & Energy Sys. Co. v. United States*,
  466 F.Supp.3d 1303, *aff'd* 15 F.4th 1078 (Fed. Cir. 2021) .................................................9, 22

-ii-

*Icdas Celik Enerji Tersane ve Ulasim Sanayi A.Ş. v. United States*,
    654 F.Supp.3d 1311 (Ct. Int'l Trade 2023) ..............................................12, 14

*Nakornthai Strip Mill Pub. Co. v. United States*,
    587 F.Supp.2d 1303 (Ct. Int'l Trade 2008) ....................................................8

*New Am. Keg v. United States*,
    No. 20-00008, 2022 WL 4363320 (Ct. Int'l Trade Sep. 13, 2022) ...................15

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003)......................................................................8

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006)......................................................................8

*NTN Bearing Corp. of Am. v. United States*,
    186 F.Supp.2d 1257 (Ct. Int'l Trade 2002) ..................................................25

*Parkdale Int'l v. United States*,
    475 F.3d 1375 (Fed. Cir. 2007).....................................................................31

*Saha Thai Steel Pipe (Pub.) Co. v. United States*,
    635 F.3d 1335 (Fed. Cir. 2011).....................................................................13

*SKF USA Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001).....................................................................19

*Sullivan v. Hudson*,
    490 US 877 (1989)........................................................................................16

*Timken U.S. Corp. v. United States*,
    434 F.3d 1345 (Fed. Cir. 2006).....................................................................16

*Torrington Co. v. United States*,
    68 F.3d 1347 (Fed. Cir. 1995)..................................................................21, 22

*Toscelik Profil ve Sac Endustrisi A.S. v. United States*,
    348 F.Supp.3d 1321 (Ct. Int'l Trade 2018) ..................................................19

*Transactive Corp. v. United States*,
    91 F.3d 232 (D.C. Cir. 1996)........................................................................19

*Uttam Galva Steels Ltd. v. United States*,
    997 F.3d 1192 (Fed. Cir. 2021)................................................................12, 31

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
    435 U.S. 519 (1978)......................................................................................22

*Wheatland Tube Corp. v. United States*,
    841 F.Supp. 1222 (Ct. Int'l Trade 1993) ...................................................8

*Xinjiamei Furniture (Zhangzhou) Co. v. United States*,
    968 F.Supp.2d 1255 (Ct. Int'l Trade 2014) .............................................7

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
    716 F.3d 1370 (Fed. Cir. 2013)...............................................................31

**Federal Statutes**

5 U.S.C. § 706(2)(A) ..................................................................................8

19 U.S.C. § 1516a(b)(1)(B)(i)......................................................................8

19 U.S.C. § 1677a(c)(1)(B).................................................................18, 31

19 U.S.C. § 1677e .....................................................................................19

19 U.S.C. § 1677e(a)(1) .............................................................................19

28 U.S.C. § 2640(b) ....................................................................................8

**Rules**

USCIT R. 56.2(c)(1)(B)................................................................................8

**Regulations**

19 C.F.R. § 351.301(c)(1)(v) ..................................................................6, 30

19 C.F.R. § 351.301(d) ................................................................................6

**Administrative Determinations**

*Aluminum Extrusions From the Republic of Türkiye*, 89 Fed. Reg. 80512 (Dep't
    Commerce Oct. 3, 2024) ) (final affirm. LTFV determ.), and accompanying
    Issues and Decision Memorandum ................................................ *passim*

*Low Melt Poyester Staple Fiber From the Republic of Korea*, 83 Fed Reg. 29094
    (Dep't Commerce June 22, 2018) (final LTFV determ. & critical circum., in
    part), and accompanying Issues and Decision Memorandum ...............13

*Steel Concrete Reinforcing Bar From the Republic of Turkey*, 87 Fed. Reg. 7118
    (Dep't Commerce Feb. 8, 2022) (final AD results & no shipments determ.;
    2019-2020), and accompanying Issues and Decision Memorandum ..........13, 14

**Other Authorities**

*Eligible*, BLACK'S LAW DICTIONARY (12th ed. 2024) ...................................................................11

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| THE UNITED STATES, ) | Consol. Court No. 21-00246 |
| ) | |
| *Defendant*, ) | |
| ) | |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, et al., ) | |
| ) | |
| *Defendant-Intervenors.* ) | |

## PLAINTIFF ASSAN ALUMINYUM SANAYI VE TICARET A.S'S COMMENTS IN OPPOSITION TO THE THIRD REMAND REDETERMINATION

### I.    INTRODUCTION

Pursuant to the U.S. Court of International Trade's ("CIT") opinion dated May 21, 2025, Slip Op. 25-63, ECF No. 152, Plaintiff Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan"), respectfully submits these comments in opposition to the U.S. Department of Commerce's ("Commerce") Final Results of Third Redetermination Pursuant to Court Remand filed on September 9, 2025, ECF No. 158 ("Third Remand Redetermination"). The Third Remand Redetermination was issued pursuant to the Court's May 21, 2025 remand opinion and order. *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, No. 21-00246, slip op. 25-63 (Ct. Int'l Trade May 21, 2025) ("*Assan III*"). These comments are timely pursuant to the Court's October 9, 2025 deadline for submitting comments, ECF No. 155 and 158.

Commerce's Third Remand Redetermination regrettably represents a step backwards in this protracted appeal, which has already placed a significant burden on the Court's time and resources, as well as that of the parties. Although some outstanding issues were nearing resolution, Commerce's actions on remand introduced new problems. Despite Assan's hope for a just and final resolution, the Third Remand Redetermination has plunged these proceedings back into uncertainty. Assan respectfully urges the Court to remand the case again with specific instructions for Commerce to address these remaining issues.

## II.    BACKGROUND

All parties are aware of the facts and issues in these lengthy proceedings, the scope of which have narrowed sharply following the Court's opinion and order in *Assan III* to now concern the applicability of duty drawback adjustments for two Inward Processing Certificates ("IPCs"), 7905 and 7734,[1] and two of Assan's submissions relevant to the eligibility for and calculability of Assan's drawback adjustment. *See* Assan Group's Response to Remand Request for Additional Information to Calculate Duty Drawback (June 6, 2024), P.R.R.2d 4, C.R.R.2d 2–7 ("Assan's June 6 Submission") and Assan Group's Submission of Comments and Rebuttal Factual Information in Response to Petitioners' June 13, 2024 Submission (June 20, 2024), C.R.R.2d 9, P.R.R.2d 6 ("June 20 Submission"); see also, Rejection of Assan's June 20, 2024 Submission at 1 (Aug. 13, 2025), P.R.R.3d 7 ("Letter Rejecting Rebuttal Cmts.").

Following *Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 701 F. Supp. 3d 1321 (Ct. Int'l Trade 2024) ("*Assan II*"), Commerce "reopened the record and revised its methodology

---

[1] In *Assan III*, the Court used {α, β, γ, and δ} to refer to IPCs {7905, 7734, 2072, and 4770}. Assan appreciates the Court's efforts to protect its confidential information. In light of the length of these proceedings, Assan no longer considers its IPC numbers to be business proprietary information ("BPI") and waives any designation of this information as confidential in this submission. Additionally, Assan will not claim BPI status for IPC numbers in any submissions going forward in this appeal before Commerce or the Court.

to allocate the duty drawback benefit only to U.S. sales associated with closed IPCs." Third

Remand Redetermination at 3. The agency issued Assan a questionnaire on May 23, 2024,

requesting additional information to properly allocate the duty drawback benefit for U.S. sales

associated with only closed IPCs. *Id.* at 8. On June 6, 2024, Assan filed its response explaining

that all of its U.S. sales were made pursuant to a closed IPC. *Id.*; *see also* June 6 Submission,

P.R.R.2d 4, C.R.R.2d 2–7. For support, Assan provided supporting exhibits, including:

- A database "identifying the IPC number for each U.S. sale and {that} there were no reported U.S. sales with open IPCs;"

- A screenshot queried from the Turkish Customs Inward Processing Regime ("IPR") e-portal demonstrating that IPCs {7905, 2072, 4770, and 7734} all have the same status: "closed" and additional identifying information such as "IPC holder name, taxpayer number, IPC number, IPC application date, the beginning and ending date of the IPC, the status of the IPC{,} and the closure date for each IPC;"

- "{Inward processing authorization certificates for IPCs 7905 and 7734, issued by the Ministry of Commerce (General Directorate of Export)}," which corroborated the information in the IPR e-portal;

- A "list of articles imported and exported that are associated with each certificate;" and

- More detailed information supporting the closure of IPC 7905, such as (1) a letter from the Turkish Ministry of Trade Customs and Foreign Trade Regional Office that IPC 7905 is closed.

Third Remand Redetermination at 8-9; *see also* Assan June 6 Submission, P.R.R.2d 4, C.R.R.2d

2–7.

On June 13, 2024, Petitioners filed a letter objecting to the June 6 submission. *See*

Petitioners' Comments and Rebuttal Factual Information Concerning Assan Aluminyum Sanayi

ve Ticaret A.S.'s June 6, 2024 Response to the Department's Request for Information (June 13,

2024), C.R.R.2d 8, P.R.R.2d 5. Assan filed a response on June 20, 2024. This submission included,

*inter alia*, additional documents for IPC 7734, such as "a closure certification from the

Government of Türkiye and supporting import and export records." Third Remand

Redetermination at 5; *see also Assan III* at 9 ("In response to the Association's assertion that IPC {7734} lacked sufficient closure documentation, Assan provided an attachment that contained 'the closure certification from the Government of Turkey' and 'the import and export list under IPC {7734.'"). The Petitioners opposed the submission on the grounds that it was an untimely attempt to supplement the June 6 Submission, as opposed to offering rebuttal. Third Remand Redetermination at 5; *see also*, Petitioners' Request for the Department to Reject from the Record the Untimely New Factual Information Filed By Assan Aluminyum Sanayi ye Ticaret A.S. on June 20, 2024 (June 24, 2024), P.R.R.2d 7, C.R.R.2d 12.

In *Assan III*, the Court accepted that Assan's June 6 Submission is properly on the record, but it remanded for Commerce to address Petitioners' procedural objections to Commerce accepting the June 20 Submission and Commerce's reliance on unverified information. *Assan III* at 14, 27. It "{did} not remand for Commerce to reconsider a matter of substantive law, or even to complete an unsatisfactory explanation." *Assan III* at 27. The basis for remand was simple:

- Address the Petitioners' arguments regarding the timeliness of Assan's June 20 Submission and verification; and

- upon that consideration, redetermine Assan's eligibility for a duty drawback based on Inward Processing Certificate ("IPC") 7734.

*Id*.

Accordingly, the crux of the present proceedings chiefly turns on whether Commerce complied with the Court's order and whether its Third Remand Redetermination is supported by substantial evidence.

However, a new issue emerged during this remand that warrants the Court's attention. During the pendency of these remand proceedings, Commerce contacted Assan to schedule verification of Assan's June 6, 2024 questionnaire response for "Assan's claim that it earned

benefits from exempted duties on all of Assan's {period of investigation ("POI")} sales of subject merchandise to the U.S. because these sales were associated with closed IPCs." Verification Agenda Pursuant to Court-Ordered Remand at 4 (July 24, 2025), P.R.R.3d 1, C.R.R.3d 1 ("Verification Agenda").

As the Court is well aware, the disposition of this drawback issue is not only central to this case but also to whether Assan should be covered by the Order at all. *Assan III* at 28 ("Assan must undergo a costly fourth round of proceedings before Commerce and the court, knowing all the while that a tiny shift across the *de minimis* boundary could spell the difference between significant liability and none at all.").

Assan worked with Commerce in good faith to arrange verification, moving up a separate verification in the third administrative review of *Certain Aluminum Foil from Türkiye* to accommodate Commerce. *See* Assan Group's Objection to the Department's Cancellation of Verification for Assan Aluminyum Sanayi ve Ticaret A.S., Request for Immediate Reconsideration, and Request that Correspondence be Added to the Record (Aug. 4, 2025), P.R.R. 3d 3 ("Cmts. on Verification Cancellation"). Commerce also issued a verification agenda narrowly focused on Assan's IPCs, which have been core information throughout these proceedings, and Assan devoted significant resources and personnel preparing for both verifications. *See* Verification Agenda, P.R.R.3d 1, C.R.R.3d 1. However, Commerce informed Assan that it would cancel this verification a mere four days (two of which were a weekend) before verification was scheduled to begin. *See* Third Remand Redetermination; Cancellation of Verification for Assan Aluminyum Sanayi ve Ticaret A.S. (Aug. 4, 2025), P.R.R. 3d 2 ("CAAS Verification Cancellation"). It did not place a formal notice of cancellation on the record until one day before the intended start date — after Assan's counsel and Commerce personnel assigned to both verifications were already in country

for the second verification. *Id.* Assan filed a letter the same day objecting to the cancellation, explaining why verification was appropriate and necessary, and requesting immediate reconsideration. *See generally* Cmts. On Verification Cancellation, P.R.R. 3d 3.

In its Third Draft Remand Results, Commerce determined that IPC 7734 was closed and did not revise the weighted-average dumping margin for IPC 7734. Draft Results of Redetermination Pursuant to Court Remand at 9–10, P.R.R. 3d 5, C.R.R. 3d 2 ("Draft Third Remand Redetermination"). Commerce explicitly found "that IPC {7734} is closed and {} considered it in calculating a duty drawback adjustment" despite rejecting the June 20 Submission. *Id.* at 6. Assan commented on the Draft Third Remand Redetermination, arguing that the record supports granting a duty drawback adjustment for IPCs 7905 and 7734, and disagreeing with Commerce's rejection of the June 20 Submission. Third Remand Redetermination at 14. Assan also commented that it disagreed with Commerce's decision to cancel verification, citing harmless error, because Commerce correctly determined in its Draft Third Remand that the record evidence supported a duty drawback adjustment for IPC 7734. *Id.* at 20. Assan also agreed that its reporting has been reliable throughout the proceeding. *Id.* However, the agency determined that the June 20 Submission contained untimely new factual information and rejected it so that "the information contained therein is no longer on the record of the proceeding." *See id.* at 7–8 (citing 19 C.F.R. §§ 351.301(c)(1)(v), (d)). Commerce continued to state that verification was unnecessary. *Id.* at 22–23.

In its Third Remand Redetermination, Commerce determined that because it had now rejected Assan's June 20 Submission, there is not sufficient information on the record "to calculate" a duty drawback adjustment for IPC 7734, notwithstanding the fact that the agency continued to find that IPC 7734 was closed. *Id.* at 12, 15. In other words, Commerce again

determined that IPC 7734 is closed – warranting a duty drawback adjustment – but refused to make the adjustment because the information in Assan's June 6 Submission is "inadequate to support a per-unit adjustment." *Id.* at 15. Commerce now claims that necessary information – information included in Assan's June 20 Submission – is missing from the record to determine the "precise allocation of exempted duties to U.S. sales of subject merchandise entitled to a duty drawback adjustment." *Id.* at 18. Interestingly, Commerce also explains that its initial verification of Assan provided the necessary information to grant a duty drawback adjustment for IPC 7905. *Id.* at 23. Commerce also claims that verification would be improper because it is no longer granting a duty drawback adjustment for the (closed) IPC 7734, and that the verification agenda was issued "out of an abundance of caution." *Id.* at 25. Commerce concluded "there is no remaining information on the record concerning IPC {7734} to verify," ignoring information provided in Assan's June 6 Submission. *Id.* at 26. As described above, the scheduling of verification was the result of lengthy consultations, the verification agenda was issued July 24, 2025, two months after the Court issued its opinion, and verification was cancelled with two-business days' notice.

Assan built the requisite record for Commerce to determine that a duty drawback adjustment is warranted and required by statute, with or without the June 20 Submission. Commerce's rejection of the June 20 Submission and cancellation of verification prior to the Third Remand Redetermination have impeded this proceeding.

## III.    STANDARD OF REVIEW

"The results of a redetermination pursuant to court remand are reviewed for compliance with the court's remand order." *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 968 F.Supp.2d 1255, 1258 (Ct. Int'l Trade 2014) (quotations omitted); *see also Fuyao Glass Indus. Grp. Co. v. United States*, 30 CIT 165, 173 (2006), (remanding for a third time where Commerce, among other things, failed to comply with the Court's remand instructions).

Commerce's Third Remand Redetermination is also reviewed under the same substantial evidence standard as the original proceedings. *Nakornthai Strip Mill Pub. Co. v. United States*, 587 F.Supp.2d 1303, 1306 (Ct. Int'l Trade 2008) ("{A}ny factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law"). This Court must remand Commerce's decision if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); 28 U.S.C. § 2640(b); *see Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). "'Substantial evidence' has been defined as 'more than a mere scintilla,' and as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court must again "review the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Id.* (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (holding that the substantial evidence standard requires that Commerce "articulate {a} rational connection between the facts found and the choice made").

Finally, "{t}he Court must be ever vigilant of abuse of discretion by the agency," *Wheatland Tube Corp. v. United States*, 841 F.Supp. 1222, 1236 (Ct. Int'l Trade 1993), and must set aside actions where the agency abuses its discretion, 5 U.S.C. § 706(2)(A); *see, e.g., Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284 (1974); *see also* USCIT R. 56.2(c)(1)(B). Although the decision to cancel a verification is reviewed for abuse of discretion, Commerce's reasoning and justification should also be reviewed for substantial evidence. *Compare Bonney Forge Corp. v. United States*, 560 F.Supp.3d 1303, 1316 (Ct. Int'l Trade 2022),

-8-

*with Hyundai Elec. & Energy Sys. Co. v. United States*, 466 F.Supp.3d 1303, 1310 n.10, *aff'd* 15 F.4th 1078 (Fed. Cir. 2021) (the government agreeing that "Commerce's decision to cancel verification" is "a factual determination reviewed for substantial evidence"); *see also Grupo Acerero S.A. de C.V. v. United States*, 698 F.Supp.3d 1320, 1332 (Ct. Int'l Trade 2024) (remanding final results where Commerce abused its discretion in denying an extension request and its explanation lacked substantial evidentiary support).

## IV.    ARGUMENT

### A. SUMMARY

During these remand proceedings, Commerce impermissibly deviated from the Court's remand order, set forth a Third Remand Redetermination that lacks evidentiary support, and abused its discretion in cancelling verification. All three analyses command the same result: the Court must remand the case again for Commerce to either further explain its determination or take a new agency action. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 US 1, 20–21 (2020).

Commerce correctly determined that IPC 7734 remains closed and rendered its determination based on the weight of the record evidence. However, the agency erred in conflating "eligibility" for a drawback adjustment with "calculability." The fact that IPC 7734 is closed behooves the agency to take action to ensure Assan receives its entire drawback, either through using its calculation from the Second Remand Redetermination, reopening the record, conducting verification of the June 6 Submission, or using neutral facts available from IPC 7905, which Commerce was able to calculate a per-unit adjustment for. Commerce's refusal to calculate an adjustment after finding IPC 7734 is closed fails to comply with the remand order and lacks substantial evidentiary support.

Moreover, cancelling verification at the last minute for the otherwise cooperative Assan was an abuse of discretion, and Commerce's present explanations are unsupported by substantial evidence. Finally, Commerce improperly rejected Assan's June 20 Submission.

For the following reasons, the Court should remand the case.

### B. COMMERCE'S REMAND REDETERMINATION FAILS TO COMPLY WITH THE COURT'S REMAND ORDER

In its Third Remand Redetermination, Commerce erroneously conflated the Court's instructions to redetermine Assan's *eligibility* for a duty drawback adjustment with the calculability of that adjustment, thereby exceeding the scope of the remand order. *Compare* Third Remand Results at 2 ("{W}e found the record does not contain sufficient information to find that Assan is eligible for a duty drawback adjustment regarding IPC {7734}."), *with id.* at 7 ("{T}here is not sufficient information on the record to calculate the duty drawback adjustment for IPC {7734}, *and id.* at 10 (same), *and id.* at 12 (same), *and id.* at 15 (same), *and id.* at 18 (same), *and id.* at 25 ("{B}ecause the record lacks the necessary information to calculate an adjustment for the other three IPCs, further verification is unnecessary."). However, because Commerce continued to correctly determine that IPC 7734 is closed, that determination establishes that IPC 7734 is "eligible" for a duty drawback independent of the adjustment's calculability. Commerce should have either used other record information to calculate a suitable adjustment or solicited the information necessary to calculate IPC 7734's adjustment.[2] The agency's failure to do so renders its Third Remand Redetermination noncompliant with the Court's remand order and unsupported by substantial evidence.

---

[2] As discussed *infra* part D, Commerce had the opportunity to obtain this information via a scheduled verification, but the agency formally cancelled the verification with one business days' notice to Assan.

      **1.  Drawback Calculability is not a Prerequisite for Eligibility for a Drawback Adjustment, as Recognized by Commerce's Prior Practice**

Petitioners assert that "without record information to calculate a per-unit drawback adjustment for IPC {7734}, sales Assan made pursuant to this IPC are not entitled to a drawback adjustment." *Compare* Third Remand Redetermination at 13 (quoting Petitioners' Comments on the 3rd Draft Remand Redetermination Concerning Assan Aluminyum Sanayi ve Ticaret A.S. at 2-6 (Aug. 20, 2025), P.R.R. 3d 9, C.R.R. 3d 17 ("Pets.' Cmts. on Third Draft Remand Redetermination"), *with id.* at 15 ("Although the information provided in Assan's June 6 Submission is inadequate to support a per-unit adjustment, it does provide record evidence to allow Commerce to determine that IPC {7734} is closed."), *and id.* at 6 ("Commerce reasoned that the {June 20 Submission} was . . . necessary to ensure an accurate calculation of Assan's duty drawback adjustment."). However, Petitioners mischaracterize the standard. IPC 7734 is "entitled" to or "eligible" for a drawback adjustment because Commerce determined that it closed. *Cf. Eligible*, Black's Law Dictionary (12th ed. 2024) (defined as "Fit and proper to be selected or to receive a benefit; legally qualified for an office, privilege, or status").

Calculability is a separate inquiry, the absence of which has not prevented Commerce from applying an adjustment to a closed IPC through neutral facts available. *See Aluminum Extrusions From the Republic of Türkiye*, 89 Fed. Reg. 80512 (Dep't Commerce Oct. 3, 2024) (final affirm. LTFV determ.), and accompanying Issues and Decision Memorandum at 11 ("*Aluminum Extrusions IDM*") ("Erdoganlar provided proof of closure for all closed IPCs, but the necessary . . . information for Commerce to fully calculate the duty drawback adjustment on an IPC-specific basis is not available on the record."); *id.* at 11-12 ("As facts available, Commerce is using the calculated per-unit adjustment provided in Erdoganlar's 8SQR response, . . . {which} is based on IPCs with complete data, allowing for an accurate duty drawback calculation."). Accordingly,

whether an IPC is eligible for a drawback adjustment begins with whether the IPC has closed, not calculability. *Id.* at 6 ("Not only does Commerce limit the calculation of a per-unit adjustment to closed IPCs, but it applies that adjustment to sales made pursuant to a closed IPC.").

Commerce determined that IPC 7734 has closed, so it should not be excused from granting "an adjustment to 'export price' **based on the full extent of the duty drawback**." *Cf. Uttam Galva Steels Ltd. v. United States*, 997 F.3d 1192, 1197 (Fed. Cir. 2021) (emphasis added). Just as excluding an IPC that Commerce has recognized as closed in other proceedings is unreasonable and violates the plain language of the statute, which "requires an adjustment to 'export price' based on the full extent of the duty drawback," *cf. id.*, denying Assan's drawback adjustment in a proceeding where Commerce has found that IPC 7734 is closed is unreasonable. At most, not having the IPC-specific data limits Commerce's ability to *directly* calculate a per-unit drawback adjustment for an otherwise drawback-eligible IPC. Its absence does not impair eligibility.

Commerce has developed, through fits and starts, a practice of granting a duty drawback adjustment for a given IPC when certain preconditions are met, namely when the IPC is closed. Although "Commerce's evaluation of when an IPC is closed has evolved," the agency, as a general practice, "predicates its inclusion of IPCs on evidence of closure as demonstrating final duty exemption." *Compare Icdas Celik Enerji Tersane ve Ulasim Sanayi A.Ş. v. United States*, 654 F.Supp.3d 1311, 1320 (Ct. Int'l Trade 2023), *with Habaş Sinai ve Tibbi Gazlar Istihsal Endüstrisi, A.Ş. v. United States*, 439 F.Supp.3d 1342, 1349 (Ct. Int'l Trade 2020). As explained in *Icdas*, "When an IPC has been closed, and the closure is approved by the Turkish Ministry of Trade, the IPC holder is released of any liability for import duties otherwise payable on the entries under the IPC." *Icdas*, 654 F. Supp. 3d at 1318 (quotations omitted). When an IPC is determined to be closed, a respondent is entitled to a drawback.

## 2.  Commerce Properly Determined that IPC 7734 is Closed

Commerce properly determined in its Third Draft Remand Redetermination, on the basis of the information provided for IPC 7905 and in the June 6 Submission, that IPC 7734 is closed and it did not disturb that determination in the Third Remand Redetermination. Third Remand Redetermination at 15 (citing Third Draft Remand Redetermination at 9–11, P.R.R. 3d 5, C.R.R. 3d 2).

The agency erred in its analysis of IPC 7734 under the two-part eligibility test upheld by the Federal Circuit's opinion in *Saha Thai*, *See* Third Remand Redetermination at 17–18,[3] which requires: (1) "that the rebate and import duties are dependent upon one another, or in the context of an exemption from import duties, that the exemption is linked to the exportation of the subject merchandise;" and (2) "that there are sufficient imports of the raw material to account for the duty drawback on the exports of the subject merchandise." *Saha Thai Steel Pipe (Pub.) Co. v. United States*, 635 F.3d 1335, 1340 (Fed. Cir. 2011). That test is used for assessing the drawback regime itself, not the IPC, and Commerce has consistently found that Türkiye's IPR satisfies the test. *See Assan Aluminyum Sanayi ve Ticaret A.S. v. United States*, 624 F.Supp.3d 1343, 1358 (Ct. Int'l Trade 2023) ("*Assan I*") ("Commerce granted Assan a duty drawback adjustment, citing prior agency findings that **participation in Turkey's IPR** satisfies the *Saha Thai* two prong-test") (citation omitted) (emphasis added). *see also Steel Concrete Reinforcing Bar From the Republic of Turkey*, 87 Fed. Reg. 7118 (Dep't Commerce Feb. 8, 2022) (final AD results & no shipments determ.; 2019-2020), and accompanying Issues and Decision Memorandum at 18 ("*Rebar from*

---

[3] The Third Remand Results cite to the Commerce's decision memorandum from the investigation for *Low Melt Poyester Staple Fiber from the Republic of Korea* for the test. *See* Third Remand Redetermination at 18 n. 105 (citing *Low Melt Poyester Staple Fiber From the Republic of Korea*, 83 Fed Reg. 29094 (Dep't Commerce June 22, 2018) (final LTFV determ. & critical circum., in part), and accompanying Issues and Decision Memorandum at 18 (Cmt. 3)).

*Türkiye IDM*") ("In the *Preliminary Results*, we determined that a duty drawback adjustment is warranted because the {two-pronged test} above {is} satisfied **for the Turkish duty drawback program**. We continue to determine that, for these final results, **under the Turkish drawback program, a company can meet the two-prong test**.") (emphasis added). As discussed in more detail below, Commerce dealt with a similar situation to the present case in *Aluminum Extrusions from Türkiye*, but the absence of data needed for one IPC's adjustment did not vitiate the finding that the Turkish IPR regime satisfies both prongs of *Saha Thai* as a general matter. *See Aluminum Extrusions IDM* at 11 (Cmt. 3) (noting that respondent satisfied the two-prong test and that not applying a duty drawback adjustment would be "unreasonably undercut{ing} its stated goals of accuracy, transparency, and predictability" (alteration in original) (citation omitted)).

Additionally, and more salient to these proceedings, Commerce, in cases involving the Turkish IPR, has required a respondent to provide "record evidence that showed the {Government of Türkiye} ha{s} 'forgiven the duty liability.'" *Icdas*, 654 F. Supp. 3d at 1320.[4] Commerce correctly evaluated the record and determined that, even without the closure certifications from the Government of Türkiye and supporting import and export records from the June 20 Submission, the weight of the evidence supported finding IPC 7734 closed.

Commerce explained that Assan's June 6 Submission contained sufficient information to establish IPC closure for IPCs 7905 and 7734. Assan provided, (1) a database "identifying the IPC number for each U.S. sale and {that} there were no reported U.S. sales with open IPCs," (2) a "screenshot from the Turkish drawback system's e-portal" ("Inward Processing Regime or "IPR"

---

[4] Petitioners claimed that Commerce grants a per-unit drawback adjust "only for IPCs for which the respondent 'provided the closure letters from the GOT.'" Pets' Cmts. on Third Draft Remand Redetermination (quoting *Rebar from Türkiye IDM* at 18). However, Commerce has not adopted such a stringent closure standard and has instead looked for record evidence of closure, the closure letter being a significant or sufficient sign thereof.

e-portal) demonstrating that IPCs 7905, 2072, 4770, and 7734 have the same status — "KAPALI", *i.e.*, "closed," and (3) more detailed information supporting the closure of IPC 7905. Third Remand Redetermination at 8. Additionally, Assan's June 6 Submission contained (1) original and translated versions of the inward processing authorization certificates for 7905 and 7734, (2) a "list of articles imported and exported that are associated with each certificate," and (3) a "table calculating the average number of days for each certificate's closure." *Id.* at 9. Finally, the June 6 Submission contained a "letter from the Turkish Ministry of Trade, Customs and Foreign Trade Regional Office, that certificate {7905} has been closed." *Id.*

Because Commerce rejected Assan's June 20 Submission, "{t}he record **now** does not contain a similar letter for IPC {7734}." *Id.* Nevertheless, Commerce examined the record as a whole and correctly found that the weight of the evidence overwhelmingly supports the conclusion that IPC 7734 has closed for drawback calculation purposes. The Draft Third Remand Redetermination in particular noted:

> **Commerce finds the information remaining on the record is compelling**. Specifically, the screen shot from the IPR portal and the original and translated version of the {inward processing authorization certificates for {7905} and {7734} issued by the Ministry of Commerce (General Directorate of Export)} contain identical data that are relevant and critical to the consideration of whether IPC {7734} is closed and support a duty drawback adjustment for Assan. **As such, we continue to consider IPC {7734} closed and have not revised the weighted-average dumping margin calculated for Assan in the *Second Remand Final Results*.**

Draft Third Remand Redetermination at 11 (emphasis added), P.R.R. 3d 5, C.R.R. 3d 2; *see also* Third Remand Redetermination at 10 (maintaining its determination that IPC 7734 is closed). Commerce properly weighed the evidence of closure and concluded that IPC 7734 is closed. *See New Am. Keg v. United States*, No. 20-00008, 2022 WL 4363320, at *1, (Ct. Int'l Trade Sep. 13, 2022) ("{T}he question is not whether the Court would have reached the same decision on the

same record{;} rather, it is whether the administrative record as a whole permits Commerce's conclusion."). That determination should be affirmed.

Calculability, conversely, pertains solely to the existence of sufficient evidence to compute the precise amount of the adjustment. By rejecting Assan's adjustment for IPC 7734, even though the agency found sufficient evidence that IPC 7734 had officially closed, Commerce misinterpreted the Court's remand order and failed to address the distinction between eligibility and calculability when assessing whether to grant the duty drawback adjustment.

### 3. Disturbing the Drawback Calculation for IPC 7734 Exceeded the Court's Remand

The Court did not order recalculation, nor did it question, that Assan's duty drawback adjustment for IPC 7734 is mathematically correct. Unlike *Assan II*, where the Court "{did} not direct a result on remand," the Court's basis for remand in *Assan III* was "simple{}."

- Address the Petitioners' arguments regarding timeliness of Assan's June 20 Submission and verification; and

- upon that consideration, redetermine Assan's eligibility for a duty drawback based on Inward Processing Certificate ("IPC") 7734.

*Compare Assan II*, 701 F. Supp. 3d at 1333 ("The court does not direct a result on remand"), *with Assan III* at 27.

The Court did not question the merits of Commerce's underlying calculations, and Commerce exceeded the scope of the Court's remand in doing so after determining that IPC 7734 is closed, which, as discussed before, is the linchpin under Commerce's current practice for establishing entitlement to a drawback adjustment. *Sullivan v. Hudson*, 490 US 877, 885 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."). It is also well-established that there exists a balance between accuracy and finality in antidumping proceedings. *Cf. Timken U.S. Corp.*

*v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006) (emphasizing the need to "balance{} the desire for accuracy in antidumping duty determinations with the need for finality at the final results stage."). Commerce's Third Remand Redetermination managed to dislodge the finality of the Court's opinion in *Assan III*, which did not question the mathematical accuracy of the drawback calculation for IPC 7734, to yield a result that is unquestionably inaccurate — denying Assan a duty drawback for a closed IPC; a drawback that Commerce already calculated in its Second Remand Redetermination, a "product of Commerce's conscientious and skillful efforts." *Assan III* at 27. For that reason, Commerce exceeded the scope of the Court's remand when, after finding IPC 7734 closed, it continued to deny the previously-calculated duty drawback adjustment.

### C. COMMERCE'S REMAND REDETERMINATION FAILS TO RECONCILE THE DETERMINATION THAT IPC 7734 IS CLOSED WITH THE DECISION NOT TO GRANT A DRAWBACK ADJUSTMENT

Commerce's Third Remand Determination also lacks substantial evidentiary support because it fails to "articulate {a} rational connection between the facts found and the choice made." *Burlington*, 371 U.S. at 168; *see* Third Remand Redetermination at 10 ("{T}he record does contain sufficient information to establish that IPC {7734} is closed, {but} the record does not contain the values necessary to calculate or allocate a duty drawback adjustment for IPC {7734} to the reported sales."). Although Commerce correctly determined that IPC 7734 closed, the agency's failure to take additional action either through using neutral facts available to allocate a duty drawback adjustment from IPC 7905 or accepting the necessary information, lacks substantial evidentiary support and is inconsistent with the agency's established practice. *See Aluminum Extrusions IDM* at 11 (Cmt. 3).

Commerce was correct in the Third Draft Remand Redetermination when it "continued to grant a duty drawback adjustment for {7905} and {7734}, as evidence establishing that these IPCs

were closed was submitted in {Assan's} June 6 Submission." Third Remand Results at 7. In other words, having found that the IPCs were closed, a duty drawback adjustment was appropriate. As the Court pointed out in *Assan II*, "Under what the Government acknowledges is Commerce's practice, the amount of exempted duties under an open IPC is zero." *Assan II*, 701 F.Supp.2d at 1328. "The adjustments to open-IPC sales thus exceed, in their entirety, 'the amount' of duties exempted by the Turkish government 'by reason of' the open-IPC exports of subject merchandise to the United States." *Id.* (quoting 19 U.S.C. § 1677a(c)(1)(B)). It stands to reason that the amount of exempted duties under an IPC Commerce determines is closed is a non-zero figure, and that setting the adjustment to zero (*i.e.*, denying the adjustment) thus entirely falls short of "the amount" of duties exempted by the Turkish government "by reason of" the closed IPC exports of subject merchandise to the United States. Third Remand Results at 26 ("{W}e . . . revised our duty drawback methodology, which now only includes IPC {7905}, which was initially reported closed in the underlying investigation."); Final Results of Third Revised Margin Calculation for Assan Aluminyum Sanayi ve Ticaret A.S. (Assan) at 3 (Sept. 8, 2025), P.R.R. 3d 11, C.R.R. 3d 19 ("Final Margin Calc. Mem.") ("Commerce continues to follow the methodology established in the *Second Remand Final Results* with respect to Assan's duty drawback adjustment, except . . . Commerce is no longer granting . . . {an} adjustment for . . . {7734}. Accordingly, the adjustment for Assan's IPC {7734} is set to {zero}" (footnote omitted)).

But even if Commerce's decision to recalculate IPC 7734's duty drawback adjustment was consistent with the Court's remand order, Commerce should have used neutral facts from IPC 7905 to fill in the apparent gap in the record created by excluding the June 20 Submission. Third Remand Redetermination at 17 ("This complete information set allowed Commerce to calculate a duty drawback adjustment for IPC {7905} . . . . The same cannot be done for IPC {7734}.").

In *Aluminum Extrusions from Türkiye*, Erdoganlar, a Turkish respondent, "provided proof of closure for all closed IPCs, but the necessary quantity and value (Q&V) information for Commerce to fully calculate the duty drawback adjustment on an IPC-specific basis {was} not available on the record." *Compare Aluminum Extrusions from Türkiye* at 11 (Cmt. 3), *with* Third Remand Redetermination at 18 ("Because the record does not contain the quantity of actual imports under IPC {7734} or the associated exempted duties, Commerce cannot confirm whether sufficient imports existed to support the claimed drawback."). Nevertheless, Commerce, in *Aluminum Extrusions from Türkiye*, stated that "{t}o not apply a duty drawback adjustment would be 'unreasonably undercut{ting} its stated goals of accuracy, transparency, and predictability by ignoring verified record information." *Aluminum Extrusions from Türkiye* at 11 (Cmt. 3) (alteration in original) (quoting *Toscelik Profil ve Sac Endustrisi A.S. v. United States*, 348 F.Supp.3d 1321 (Ct. Int'l Trade 2018).

Pursuant to 19 U.S.C. § 1677e, Commerce "shall . . . use the facts otherwise available in reaching the applicable determination" if, *inter alia*, "necessary information is not available on the record." *See Aluminum Extrusions from Türkiye* at 11 (Cmt. 3) (quoting 19 U.S.C. § 1677e(a)(1)). Because this "necessary information" was not on the record in *Aluminum Extrusions*, Commerce relied on record information for "IPCs with complete data" as "facts available," which allowed Commerce to apply "an accurate duty drawback calculation" for "**all closed IPCs** . . . . where a calculated per-unit adjustment is not on record." *Id.* at 11-12 (emphasis added). At a minimum, remand is warranted for Commerce to address why it did not apply the same methodology here. *Cf. SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("{I}t is well-established that 'an agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently.'" (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir.

1996))) (second alteration in original); *compare* Third Remand Redetermination; at 23 ("{W}e granted a duty drawback adjustment for IPC {7905}, which was both closed and verifiable during the investigation period."), *with id.* at 12 ("{W}e concluded that we did not have the **necessary information** on the record to calculate a duty drawback adjustment for IPC {7734}") (emphasis added).

Here Commerce verified IPC 7905 in the underlying investigation and continued to grant a duty drawback adjustment for IPC 7905. Third Remand Redetermination at 17 (describing how the "complete information set" for IPC 7905 allows it to apply a per-unit duty drawback); *id.* at 19 ("{T}his determination is supported by necessary and core information on the record."); *id.* at 10 n.48 ("For IPC {7905}, Commerce has access to export and import data, the applicable customs duty rate, and total IPC exports of subject merchandise to the U.S."); *see also* Final Margin Calc. Mem. at 3, P.R.R. 3d 11, C.R.R. 3d 19 ("Commerce continues to determine that Assan's reported duty drawback information for {7905} is reliable{.}"). Commerce also continued to find that IPC 7734 had closed but "{w}ith the rejection of {the June 20 Submission}, the detailed import, export, and tariff-rate data required to calculate a per-unit adjustment for IPC {7734} is missing." *Id.* at 15; *see also* Third Draft Remand Redetermination at 14, P.R.R. 3d 5, C.R.R. 3d 2 ("The fact that, following several remand proceedings, Assan was able to establish that another IPC closed does not then require Commerce to verify *all* information on the record, nor does it require Commerce to verify a subset of information that it has already verified."). Because the agency has verified record evidence and the "complete information set" to calculate an adjustment for IPC 7905, it should use that information to fill in the gap in the record for IPC 7734.

Commerce's approach in *Aluminum Extrusions from Türkiye* demonstrates that, when the record lacks certain drawback calculability information for closed IPCs, Commerce may

reasonably rely on neutral facts available, including data from other closed IPCs with complete records, to ensure an accurate and fair duty drawback adjustment. In the Third Remand Redetermination, Commerce should have applied a similar methodology for IPC 7734. Just as Commerce found it appropriate to use verified information from comparable IPCs to fill evidentiary gaps in *Aluminum Extrusions from Türkiye*, Commerce could have used the complete data from IPC 7905 as a neutral proxy for IPC 7734, thereby upholding its stated principles of accuracy and predictability without depriving Assan of the duty drawback adjustment it is entitled to. Remand is appropriate for Commerce to either explain its inconsistent treatment of Assan or to adjust its methodology in light of *Aluminum Extrusions from Türkiye*.

### D. COMMERCE'S UNPRECEDENTED CANCELLATION OF VERIFICATION IS AN ABUSE OF DISCRETION

Commerce's last minute verification cancellation is an abuse of discretion, and its explanation in the Third Remand Redetermination lacks substantial evidentiary support. Accordingly, the Court should again remand the case with instructions for Commerce to conduct a new analysis to determine if further verification is warranted. Commerce must also explain why and how its cancellation of verification was not outcome driven.

When Commerce cancels verification, it does so for (1) extraordinary reasons, such as COVID-19 travel restrictions and the outbreak of war, (2) case-specific issues, such as unverifiability of the information, a party's noncooperation, or when the record is "seriously deficient," or (3) departmental constraints, such as a large number of firms involved in a review or lack of resources. *See* Cmts. on Verification Cancellation at 10 n.27, 11 n.28, P.R.R. 3d 3 (citing caselaw and Commerce determinations including, *inter alia*, *Torrington Co. v. United States*, 68 F.3d 1347, 1351 (Fed. Cir. 1995)). Even with such explanations, the act of cancelling verification is reviewed for abuse of discretion, and the agency reasoning should be reviewed for substantial

evidence. *Compare Bonney Forge*, 560 F. Supp. 3d at 1316, *with Hyundai*, 466 F. Supp. 3d at 1310 n.10; *cf. Grupo Acerero*, 698 F. Supp. 3d at 1332 (remanding final results where Commerce abused its discretion in denying an extension request and where its explanation lacked substantial evidentiary support). In this case, Commerce abused its discretion when it cancelled verification, which greatly prejudiced Assan in these remand proceedings, and attempted to justify its actions with explanations lacking substantial evidentiary support.

As a preliminary matter, Assan believes that Commerce had the authority to conduct verification during this remand segment and that doing so was warranted because verification (1) is consistent with the Court's opinion and order in *Assan III*, (2) provides a path to addressing Petitioners' objections regarding verification, and (3) would hasten the end of this litigation. *See* Assan Aluminyum Sanayi ve Ticaret A.S.'s Comments on the Draft Results of Redetermination in Consol. Court No. 21-00246 (Slip Op. 25-63) at 9-12 (Aug. 20, 2025), P.R.R. 3d 8 ("Assan Draft 3rd Remand Cmts.").

Because the *Draft Remand Results* continued to assign a *de minimis* margin, Assan provisionally accepted that the cancellation, though unlawful, could be excused under the principle of harmless error so long as the remand redetermination resulted in the same conclusion: Assan is entitled to a duty drawback adjustment for IPC 7734 and the resulting *de minimis* rate. *Compare Torrington*, 68 F.3d at 1351 (reviewing verification cancellation for abuse of discretion), *with Belton Indus. v. United States,* 6 F.3d 756, 761 (Fed. Cir. 1993) ("Commerce's violation did not prejudice appellees. Accordingly, Commerce's violation was harmless error."), *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 558 (1978) ("Administrative decisions should be set aside . . . only for substantial procedural or substantive reasons{.}"); *see also* Assan Draft 3rd Remand Cmts. at 12 n.45, P.R.R. 3d 8. However, given Commerce's significant changes

in the Third Remand Redetermination for its analysis of IPC 7734 and resulting above-*de minimis*

rate, it is clear that cancellation of verification prejudiced Assan and warrants remand as an abuse

of discretion.

As the Court noted in *Assan III*, remand was needed to resolve issues "that should have

been resolved at the agency level." *Assan III* at 28. ("The remand proceeding itself was essentially

incomplete. As a result, the parties and the court have spent time and resources on matters that

should have been resolved at the agency level." *Id.*). Specifically, the Court remanded the case for

Commerce to address Petitioners' procedural objections to Assan Group's June 6 Submission and

June 20 Submission. Both objections should have been comprehensively resolved by verifying

Assan Group's June 6 Response, which the Court held was properly accepted. *Id.* at 17.

Moreover, the crux of Petitioners' argument regarding verification is that "the record does

not contain **verified** factual information for IPCs {7734, 2072, and 4770}," and the Court held that

"Commerce must address the verification issue in the first instance before the court's work can

begin." *Id.* at 26–27 (bracketing altered per *infra* n.1) (citation omitted).

Here, there was no reasonable justification for Commerce's sudden cancellation of Assan's

verification. Indeed, Commerce advanced no justification at all until the Third Remand

Redetermination — despite the fact that Assan contemporaneously objected to the cancellation in

a detailed letter brief to the agency. *See generally* Cmts. on Verification Cancellation, P.R.R. 3d 3.

Commerce's three sentence memorandum filed on August 4, 2025 simply stated, in full:

> On July 24, 2025, the U.S. Department of Commerce (Commerce) notified Assan
> Aluminyum Sanayi ve Ticaret A.S. (Assan) of its intent to conduct verification of
> information provided by Assan in the record of the above-mentioned antidumping
> duty investigation and subsequent information provided for the remand
> redetermination segments. **However, Commerce has determined to exercise its
> discretion to decline to verify the information in this third remand
> redetermination**. Therefore, Commerce notified counsel to Assan on Friday, July

1, 2025 {sic}, that Commerce will not be conducting verification of the information provided by Assan as part of this third remand redetermination.[5]

CAAS Verification Cancellation, P.R.R. 3d 2 (emphasis added) (footnote omitted).

During the pendency of the Court's remand, Assan worked with Commerce in good faith to arrange verification of the IPCs at issue including moving up verification in an entirely different review to accommodate the agency and consenting to Defendant's planned motion to extend the deadline for the Third Remand Redetermination. *See* Cmts. on Verification Cancellation at 2, P.R.R. 3d 3. Assan personnel and counsel bifurcated their time preparing for both verifications, devoting significant time and resources to accommodating the agency in reliance on the fact that verification would actually occur and help expedite the resolution of nearly four years of litigation. Nevertheless, Commerce wholly disregarded Assan's contemporaneous objections that:

(1) Verification is within the scope of the Court's remand and would fully address the remanded issues;

(2) The CIT affirmed Commerce's acceptance of Assan's June 6 Response, the information can be verified, and the scheduled verification is limited to that submission;

(3) Commerce did not provide any reason, let alone a reasoned explanation, for its last minute cancellation;

(4) Assan had already invested considerable resources and personnel preparing for the verification;

(5) The same Commerce personnel assigned to the now-cancelled remand verification were already in-country for a second verification, the latter of which Assan moved to accommodate Commerce; and

(6) Assan was willing to accommodate reasonable adjustments, including rescheduling the verification entirely.

---

[5] Although the cancellation memorandum notes that "Commerce notified counsel to Assan on Friday, July 1, 2025" of this cancellation, counsel was in fact notified by email on Friday, **August 1, 2025**, less than two business days before the scheduled start of verification. Commerce did not place a memorandum on the record formally cancelling verification until Monday, August 4, after Assan's counsel and Commerce personnel were already in Türkiye for the other verification scheduled to coincide with the remand verification.

*See generally id.*

The act of cancelling verification under these circumstances — for an otherwise cooperating respondent — was itself an abuse of discretion, so remand is appropriate. Additionally, Commerce's Third Remand Results, which purport to explain its "decision not to conduct verification" lack substantial evidentiary support. *See* Third Remand Redetermination at 20–26 (discussing, *inter alia*, Assan's verification objections).

To date, Commerce has never addressed Assan's objections. Nor has the agency explained why cancellation was a valid exercise of discretion under these circumstances. The Third Remand Redetermination attempts to justify Commerce's abuse of discretion with arguments contemporaneously addressed in Assan's letter or lacking in substantial evidentiary support. The agency attempts to recast its abuse of discretion as standard practice, intonating that the cancelled verification would involve irrelevant information or be unduly burdensome. These justifications should not distract the Court from (1) the core IPC information Commerce originally sought to verify, *See* Verification Agenda, P.R.R.3d 1, C.R.R.3d 1 and (2) the unprecedented circumstances of the cancellation.

Commerce cites a litany of cases for the propositions that is has "wide latitude" in establishing verification procedures and is "primarily focused on validating core information rather than conducting a comprehensive review." Third Remand Redetermination at 22 (citing *e.g.*, *NTN Bearing Corp. of Am. v. United States*, 186 F.Supp.2d 1257, 1296 (Ct. Int'l Trade 2002)). Assan does not contest this framework as a general matter, but "wide latitude" cannot mean unbridled discretion. *Cf. Grupo Acerero*, 698 F.Supp.3d at 1332 ("Commerce has discretion to set and enforce deadlines . . . , {b}ut that discretion is not absolute"). In its cancellation memorandum, Commerce stated that it "determined to exercise its discretion to decline to verify the information,"

-25-

but provided no additional explanation until the Third Remand Redetermination; explanations which, as discussed below lack substantial evidentiary support. *See* CAAS Verification Cancellation, P.R.R. 3d 2.

It also strains credulity that the information Commerce *should* have verified was anything less than "core information." The Court and Commerce are well-aware of the centrality of the drawback issue and the issues surrounding Assan's IPCs. *See e.g.*, *Assan III*. The Court also need not consider abstract hypotheticals of what information Commerce **could have** requested and what documents Assan **would have** submitted at verification — the Court has the verification agenda before it. *Compare* Verification Agenda, P.R.R.3d 1, C.R.R.3d 1, *with Assan III*; *see also* Third Remand Redetermination at 2, ("In addition, the Court held that Commerce, 'must consider the full extent of the Association's concerns regarding the closure documents that Assan submitted on June 20.'") (quoting *Assan III* at 25). Question II.2 (Duty Drawback) of Commerce's Verification Agenda states:

> 2. Referencing Assan's June 6, 2024 QR at 1-2, be prepared to **discuss and provide documentation** that clearly identifies the closure dates of the following IPCs: {2072, 4770, 7734, 7905}.

Verification Agenda at 4, P.R.R.3d 1, C.R.R.3d 1 (emphasis added).

As shown from the agenda, the planned verification is limited in scope, not "a comprehensive review," and clearly related to "core information" at the heart of the Court's remand and Petitioners' objections. *Compare* Third Remand Redetermination at 22, *with* Cmts. on Verification Cancellation at 6, P.R.R. 3d 3 ("Verification not only aligns with the scope of the CIT's order and addresses the Petitioners' argument; it obviates that argument entirely."). Commerce's justification is meritless.

Commerce's post-hoc "efficiency" justifications are equally dubious, *Compare* Third Remand Results at 22 ("{A}voiding unnecessary verification promotes the efficient use of

Commerce's resources . . . ."), *with* Cmts. on Verification Cancellation at 13, P.R.R. 3d 3 ("{Commerce} will already be on site at Assan Group's facilities for a second verification during the same timeframe, {and} could carry out an in-person verification of the June 6 Response."), *and id.* ("The timing of {Commerce's} cancellation comes after Assan Group and its counsel have dedicated significant time, resources, and personnel to preparing for this verification."), as is the agency's contention that verification would "impose burdens and cause delays without improving the accuracy of the record or the quality of Commerce's final determination." *Compare* Third Remand Redetermination at 22, *and* Order granting Consent Motion for extension of time to file remand results (Aug. 15, 2025), ECF No. 155 (Court granting Defendant's post-draft results request) *with* Cmts. on Verification Cancellation at 2, P.R.R. 3d 3 ("Assan Group further requests that all correspondence with counsel for both Assan Group and Petitioners regarding the scheduling and cancellation of this verification, as well as the request for an extension of {Commerce's} remand redetermination with the {CIT}, be placed on the record or summarized in a memorandum to the file."), *and id.* at 12 ("{Commerce} has not {presently} sought leave . . . to extend the Remand Redetermination deadline to allow for more time to conduct verification (despite Assan Group's support for such action), so any argument surrounding time constraints is unpersuasive, especially given that the information to be verified was central to the CIT's remand opinion."). Commerce cannot be permitted to ignore Assan's contemporaneous objections to cancellation to then stand on reasoning anticipated in Assan's letter.

Finally, Commerce seriously misapprehends Assan's objections in its Third Remand Redetermination when it states:

> We disagree with Assan's comments on the canceled verification agenda, which was originally issued in this third remand proceeding. **According to Assan, cancelation of verification was improper given that Commerce continued to consider IPC {7734}.** Commerce disagrees. We issued a verification agenda **out of**

>**an abundance of caution** following the Court's *Third Remand Order* as we
>evaluated whether additional information regarding Assan's IPCs might be subject
>to verification. However, after reviewing the record, Commerce determined that
>only two categories of information were at issue: (1) information concerning IPC
>{7905}, which was already verified during the investigation; and (2) information
>concerning IPC {7734}, **which is not being used in these final results of
>redetermination**. This decision is consistent with a recent investigation, where
>additional verification was determined to be unnecessary because Commerce had
>already verified the relevant information in question.

Third Remand Redetermination at 25 (emphasis added) (footnotes omitted).

Assan does not contend that cancellation was improper solely because "Commerce continued to consider IPC {7734}." *Id.* Cancellation was improper because the agency abused its discretion and failed to provide a reasoned explanation for its "unusual and frankly unprecedented decision to cancel a scheduled verification with so little notice" to the cooperating Assan — even as Commerce's analysts were on site at the company's facilities. Cmts. on Verification Cancellation at 2, P.R.R. 3d 3. As discussed above, although Commerce's remand verification actions were and remain an abuse of discretion, the cancellation did not initially prejudice Assan at the Third Draft Remand Redetermination phase because Commerce continued to grant a duty drawback adjustment for IPC 7734 and the resulting *de minimis* margin. This is no longer the case with the changes in the Third Remand Redetermination, so Assan "must once again press the arguments that did not elicit a response during" the pendency of the remand. *Cf.* Assan *III* at 28.

Commerce's assertion that IPC 7734 "is not being used in these final results of redetermination" is also false. Third Remand Redetermination at 25. Commerce continues to correctly determine that IPC 7734 has closed, relying on information Assan submitted in the underlying investigation for IPC 7905 and information submitted for IPC 7734 in the June 6 Submission. Third Remand Redetermination at 9 ("Commerce weighed the information on the record and concluded that IPC {7734} is also closed."). That determination is susceptible to

verification of the June 6 Submission, and the import export documents needed to calculate the duty drawback adjustment are within the scope of the supporting documents Assan would be reasonably expected to provide at the verification. *Compare* Third Remand Redetermination at 5 (Describing the "additional documentation for IPC {7734}" in the June 20 Submission as "a closure certification from the Government of Türkiye and supporting import and export records."), *with* Verification Agenda, at II.2, P.R.R.3d 1, C.R.R.3d 1 ("{B}e prepared to . . . provide documentation that clearly identifies the closure dates of the following IPCs: {2072, 4770, **7734**, and 7905}") (emphasis added), *and* Cmts. on Verification Cancellation at 7 n.20, P.R.R. 3d 3 ("Assan Group believes that these objections {to the June 20 Submission} can be addressed by verifying the June 6 {Submission} and relying on that verified information in the Remand Redetermination.").

Finally, Commerce claims it issued the verification agenda "out of an abundance of caution . . . {that} additional information regarding Assan's IPCs might be subject to verification." Third Remand Redetermination at 25. In other words, Assan was directed to devote time and resources preparing for the off chance that Commerce "might" decide to conduct verification.

Assan is concerned that should Commerce's cancellation stand on these facts and the agency's flimsy rationale, it will seriously upset future parties' reliance on a fair and orderly verification process, and it will embolden the agency to cancel verification of an otherwise cooperative respondent at any time, without a justifiable reason at the time of the agency action. Conversely, respondents, like Assan, who are often reminded that "it is in {their} interest to cooperate since failure to permit verification may result in . . . rel{iance} on adverse 'facts available'" may be forced to devote significant time and resources for a verification agenda merely issued "out of an abundance of caution," in service of a verification Commerce may inexplicably

cancel, regardless of whether they have cooperated. *See e.g.*, Verification Agenda at pdf. p. 1, P.R.R.3d 1, C.R.R.3d 1; *see also* Cmts. on Verification Cancellation at 12, P.R.R. 3d 3 ("In contrast to other respondents that have had their verification cancelled, Assan Group has also unquestionably cooperated during the original investigation and the following four years of litigation and three remands.").

As the Court noted in *Assan III*, remand was needed to resolve issues "that should have been resolved at the agency level." *Assan III* at 28. ("The remand proceeding itself was essentially incomplete. As a result, the parties and the court have spent time and resources on matters that should have been resolved at the agency level."). Regrettably, what was past became prologue, and the Court should remind the agency that although it enjoys discretion in how it carries out remand proceedings and verifications, that discretion is not unbridled. Commerce may claim "wide latitude" in carrying out remand and verification, but the Court must delineate procedural safeguards when the agency abuses its discretion, as it has done here.

### E. COMMERCE IMPROPERLY REJECTED ASSAN'S JUNE 20 SUBMISSION

Commerce's regulations at 19 C.F.R. § 351.301(c)(1)(v) provide "one opportunity to submit factual information to rebut, clarify, or correct factual information submitted in the interested party's rebuttal, clarification or correction." In its Second Remand Redetermination, Commerce accepted Assan's June 20 Submission, explaining that "the information submitted was responsive to both its remand inquiry and the Court's prior instructions, and thus necessary to ensure an accurate calculation of Assan's duty drawback adjustment." Third Remand Redetermination at 6. In its Third Remand Redetermination, Commerce changes course and determined that "Assan's June 20 Submission did not constitute timely factual information submitted to rebut, clarify, or correct information placed on the record by another interested party."

*Id*. at 6-7. The record showed otherwise. Now removed from the administrative record, *see id*. at 7, public information throughout this proceeding demonstrates that Assan was rebutting Petitioners' challenge of the closure, beginning, and ending date of IPC 7734. *Assan III* at 20. Assan's submission rebuts and clarifies those claims by substantiating the dates provided in Assan's Drawback Questionnaire, the validity of which was challenged. Commerce established a mechanism and deadlines for parties to "rebut, clarify or correct" the record, and unreasonably found that Assan did not comply with those requirements in its June 20 Submission.

    As explained throughout these comments, Commerce must calculate an adjustment for IPC 7734 to comply with its statutory mandate to (1) calculate accurate margins and (2) make an adjustment to export price, based on the full extent of the duty drawback. *See* 19 U.S.C. § 1677a(c)(1)(B); *Uttam Galva*, 997 F.3d at 1197 ("The duty drawback statute requires an adjustment to 'export price' **based on the full extent of the duty drawback**.") (emphasis added); *See Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) (Commerce has a duty "to calculate dumping margins as accurately as possible."); *Parkdale Int'l v. United States*, 475 F.3d 1375, 1380 (Fed. Cir. 2007) ("{A}n overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible{.}"). The June 20 Submission allows Commerce to achieve both goals.

## V.    CONCLUSION

For these reasons, Assan respectfully requests that the Third Remand Redetermination is affirmed in part and remanded in part to the U.S. Department of Commerce for further explanation consistent with this Opinion; that Commerce shall recalculate Assan's duty drawback adjustment in accordance with the Court's Opinion; and that Commerce shall conduct a new analysis to determine if further verification is warranted in accordance with the Court's Opinion.

Respectfully submitted,

**/s/ Jessica R. DiPietro**
Jessica R. DiPietro
Matthew M. Nolan
Christian L. Bush

October 9, 2025                    *Counsel for Assan Aluminyum Sanayi ve Ticaret A.S.*

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to the Court's Standard Chamber Procedure 2(b)(1), the undersigned certifies that Plaintiff's Comments in Opposition to the Third Remand Redetermination filed on October 9, 2025, complies with the word limitation requirement. The word count for Plaintiff's Comments in Opposition to the Third Remand Redetermination, as computed by ArentFox Schiff LLP's word processing system is 9,697.

 <u>/s/ **Jessica R. DiPietro**</u>
Jessica R. DiPietro

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) ) ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| THE UNITED STATES, | ) Consol. Court No. 21-00246 |
| | ) |
| *Defendant,* | ) |
| | ) |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, et al., | ) ) ) |
| | ) |
| *Defendant-Intervenors.* | ) |
| | ) |

**ORDER**

Upon consideration of the Final Results of Redetermination Pursuant to Court Remand ("Third Remand Redetermination") filed on September 9, 2025 by the U.S. Department of Commerce ("Commerce"), Plaintiff Assan Aluminyum Sanayi Ve Ticaret A.S.'s comments opposing the Third Remand Redetermination, and all other comments, papers and proceedings herein, it is hereby

**ORDERED** that the Third Remand Redetermination is **AFFIRMED** in part **REMANDED** in part to the U.S. Department of Commerce ("Commerce") for further explanation consistent with this Opinion; and it is further

**ORDERED** that Commerce shall recalculate Assan's duty drawback adjustment in accordance with the Court's Opinion; and it is further

1

**ORDERED** that Commerce shall conduct a new analysis to determine if further verification is warranted in accordance with the Court's Opinion; and it is further

**ORDERED** that Commerce shall file the results of its fourth remand redetermination with the Court within ninety days of the date of this opinion. The timeline for filings and comments regarding the fourth remand redetermination will proceed according to USCIT Rule 56.2(h).

**SO ORDERED.**

_____
Gary S. Katzmann, Judge

Dated: _____, 2025
          New York, New York