PUBLIC VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) )<br>) **PUBLIC VERSION** |
| *Plaintiff,* | ) Business proprietary information<br>) omitted at pages i, 12-18, 21, 23-25,<br>) and 27-32 |
| v. | )<br>) Consol. Court No. 21-00246 |
| UNITED STATES, | ) |
| *Defendant,* | ) ) |
| and | ) ) |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, *et al.*, | ) ) ) |
| *Defendant-Intervenors.* | ) ) |

### ORDER

Upon consideration of plaintiff's and defendant-intervenors' comments regarding the Department of Commerce's Final Results of the Third Redetermination Pursuant to Court Remand (Sept. 9, 2025) (ECF No. 159) (Third Remand Redetermination), defendant's response thereto, and all other pertinent papers, it is hereby

**ORDERED** that Commerce's Third Remand Redetermination is sustained in all respects; and it is further

**ORDERED** that judgment will enter in favor of the United States.

Dated: _____
     New York, New York            _____
                                          JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., )<br><br>*Plaintiff,* )<br><br>v. )<br><br>UNITED STATES, )<br><br>*Defendant,* )<br><br>and )<br><br>ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP, *et al.,* )<br>*Defendant-Intervenors.* ) | **PUBLIC VERSION**<br><br>Business proprietary information omitted at pages i, 12-18, 21, 23-25 and 27-32<br><br>Consol. Court No. 21-00246 |

**DEFENDANT'S RESPONSE TO COMMENTS**
**ON COMMERCE'S THIRD REMAND REDETERMINATION**

<table>
<tr><td></td><td>BRETT A. SHUMATE<br>Assistant Attorney General</td></tr>
<tr><td></td><td>PATRICIA M. MCCARTHY<br>Director</td></tr>
<tr><td></td><td>REGINALD T. BLADES, JR.<br>Assistant Director</td></tr>
<tr><td>OF COUNSEL:</td><td>REBECCA T. MITCHELL<br>Trial Attorney</td></tr>
<tr><td>BRIEN STONEBREAKER<br>Attorney<br>Office of the Chief Counsel<br>    for Trade Enforcement and Compliance<br>U.S. Department of Commerce<br>Washington, D.C.</td><td>Commercial Litigation Branch<br>Civil Division, U.S. Department of Justice<br>P.O. Box 480, Ben Franklin Station<br>Washington, D.C. 20044<br>(202) 616-0467</td></tr>
<tr><td>February 13, 2026</td><td>Attorneys for Defendant</td></tr>
</table>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

BACKGROUND. ............................................................................................... 2

    I.     The Antidumping Duty Investigation ................................... 2

    II.    The Court's First Remand Order ........................................ 3

    III.   Commerce's First Remand Redetermination ......................... 5

    IV.   The Court's Second Remand Order ..................................... 6

    V.    Commerce's Second Remand Redetermination ..................... 8

    VI.   The Court's Third Remand Order ....................................... 11

    VII.  Commerce's Third Remand Redetermination ...................... 12

ARGUMENT. .................................................................................................... 16

    I.     Standard Of Review ........................................................ 16

    II.    The Court Should Sustain Commerce's Third Remand Redetermination ............ 17

        A.   Commerce Properly Exercised Its Discretion in Reconsidering and Rejecting Assan's Untimely June 20 Submission .................................. 17

        B.   Commerce Reasonably Cancelled The Verification Scheduled During The Third Remand ...................................... 19

        C.   Commerce's Determination that IPC [    ] Was Closed Is Reasonable and Supported by Substantial Evidence .................................. 24

        D.   Commerce Properly Denied a Duty Drawback Adjustment .................... 27

CONCLUSION .................................................................................................. 33

PUBLIC VERSION

### TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
   802 F.3d 1339 (Fed. Cir. 2015) .................................................. 25

*American Alloys, Inc. v. U.S.*,
   30 F.3d 1469 (Fed. Cir. 1994) ................................................... 20

*Assan Aluminyum Sanayi v. Ticaret A.S. v. United States* (*Assan I*),
   624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) .............................. 3, 4

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States* (*Assan II*),
   701 F. Supp. 3d 1321 (Ct. Int'l Trade 2024) ...................... 4, 6, 7, 8

*Assan Aluminyum Sanayi ve Ticaret A.S. v. United States* (*Assan III*),
   789 F. Supp. 3d 1257 (Ct. Int'l Trade 2025) ......................... passim

*Bonney Forge Corporation v. United States*,
   No. 1:20-CV-03837, 2025 WL 1304590 (Ct Int'l Trade May 6, 2025) .................. 20

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
   63 F.4th 25 (Fed. Cir. 2023) ...................................................... 4, 7

*CC Metals & Alloys, LLC v. United States*,
   145 F. Supp. 3d 1299 (Ct. Int'l Trade 2016) ............................... 23

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) .................................................................... 17

*Ellwood City Forge Co. v. United States*,
   788 F. Supp. 3d 1317 (Ct. Int'l Trade 2025) ........................ 20, 22

*Goodluck India Ltd. v. United States*,
   11 F.4th 1335 (Fed. Cir. 2021) ................................................... 20

*Government of Quebec v. United States*,
   105 F.4th 1359 (Fed. Cir. 2024) ................................................. 20

*Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*,
   439 F. Supp. 3d 1342 (Ct. Int'l Trade 2020) ......................... 26, 27

*Hyundai Elec. & Energy Sys. Co. v. United States*,
   15 F.4th 1078 (Fed. Cir. 2021) ........................................ 20, 21, 22

*IcdaS Celik Enerji Tersane v. Ulasim Sanayi A.S.*,
   498 F. Supp. 3d 1345 (Ct. Int'l Trade 2021) ............................... 23

*Icdas Celik Enerji Tersane v. Ulasim Sanayi A.S.*,
    654 F. Supp. 3d 1311 (Ct. Int'l Trade 2023) ........................................... 26

*Linyi Chengen Imp. & Exp. Co. v. United States*,
    391 F. Supp. 3d 1283 (Ct. Int'l Trade 2019) ........................................... 21

*MacLean-Fogg Co. v. United States*,
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ........................................... 17

*Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S.*,
    861 F.3d 1269 (Fed. Cir. 2017) ............................................................... 29

*Micron Technology, Inc. v. United States*,
    117 F.3d 1386 (Fed. Cir. 1997) ............................................................... 20

*Nippon Steel & Sumitomo Metal Corp. v. United States*,
    483 F. Supp. 3d 1214 (Ct. Int'l Trade 2020) ........................................... 25

*PSC VSMPO-Avisma Corp. v. United States*,
    688 F.3d 751 (Fed. Cir. 2012) ........................................................... 18, 26

*Saha Thai Steel Pipe (Pub.) Co. v. United States* (*Saha Thai*),
    635 F.3d 1335 (Fed. Cir. 2011) ............................................................... 30

*Uttam Galva Steels Ltd. v. United States*,
    No. 2021-2119, 2022 WL 1419596 (Fed. Cir. May 5, 2022) ..................... 4

*Zhejiang Sanmei Chemical Ind. Co., Ltd. v. United States*,
    745 F. Supp. 3d 1356 (Ct. Int'l Trade 2024) ........................................... 32

**Statutes**

19 U.S.C § 1677e(b)(1) ................................................................................... 6

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................................................... 17

19 U.S.C. § 1677a(c)(1)(B) ........................................................... 5, 7, 11, 29

19 U.S.C. § 1677e(a)(2)(A), (B), & (D) ........................................................ 5

**Regulations**

19 C.F.R § 351.302 ...................................................................................... 14

19 C.F.R § 351.302(d) ................................................................................. 18

19 C.F.R. § 351.301 (c)(1)(v) ...................................................................... 14

19 C.F.R. § 351.301(c)(1)(v) ............................................................. 13, 17, 18

**PUBLIC VERSION**

19 C.F.R. § 351.302(d) ................................................................................................ 18

19 C.F.R. § 351.307 ..................................................................................................... 19

19 C.F.R. § 351.401(b)(1) ............................................................................... 22, 29, 33

19 U.S.C. § 1677m(i) .................................................................................................... 19

19 U.S.C. § 1677m(i)(1) ............................................................................................... 19

**Other Authorities**

*Aluminum Extrusions From the Republic of Türkiye*,
   89 Fed. Reg. 80512 (Dep't Commerce Oct. 3, 2024) ........................................ 31, 32

*Certain Low Speed Personal Transportation Vehicles from the People's Republic of China:*
   *Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative*
   *Determination of Critical Circumstances, in Part*,
   90 FR 26530 (June 23, 2025), ................................................................................. 21

*Light-Walled Rectangular Pipe and Tube: Final Results of Antidumping Duty Administrative*
   *Review and Final Determination of No Shipments; 2015-2016*,
   82 Fed. Reg. 47,477 (Dep't of Commerce Oct. 12, 2017) ......................................... 8

*Polyethylene Terephthalate Resin from Taiwan: Final Determination of Sales at Less Than Fair*
   *Value, and Final Affirmative Determination of Critical Circumstances, in Part,*
   83 Fed. Reg. 48,287 (September 24, 2018) ............................................................. 20

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI<br>VE TICARET A.S.,<br><br>        *Plaintiffs*,<br><br>   v.<br><br>UNITED STATES,<br><br>        *Defendant*,<br><br>   and<br><br>ALUMINUM ASSOCIATION COMMON ALLOY<br>ALUMINUM SHEET TRADE ENFORCEMENT<br>WORKING GROUP AND ITS INDIVIDUAL<br>MEMBERS, *ET AL.*,<br><br>        *Defendant-Intervenors*. | **PUBLIC VERSION**<br><br>Business proprietary information<br>  omitted at I, 12-18, 21, 23-25, and<br>  27-32<br><br>Consol. Court No. 21-00246 |

## DEFENDANT'S RESPONSE TO
## COMMENTS ON COMMERCE'S THIRD REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to comments filed by

plaintiff, Assan Aluminyum Sanayi ve Ticaret A.S. (Assan), and consolidated plaintiffs

Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group

and its working members (Aluminum Association or Association).  *See* ECF No. 162 (Assan

Cmts); ECF Nos. 161, 163 (Al. Cmts).  The parties' comments address the third remand

redetermination issued by the Department of Commerce (Commerce), *see* Final Results of

Redetermination Pursuant to Court Remand, September 9, 2025 (Third Remand

Redetermination), ECF No. 158, 159, pursuant to this Court's opinion and remand order, *Assan*

*Aluminyum Sanayi ve Ticaret A.S. v. United States* (*Assan III*), 789 F. Supp. 3d 1257 (Ct. Int'l

Trade 2025) (Third Remand Order), ECF No. 152. For the reasons explained below, we respectfully request that the Court sustain Commerce's third remand redetermination and enter final judgment for the United States.

## BACKGROUND

### I.    The Antidumping Duty Investigation

On October 6, 2020, Commerce issued its preliminary determination in the antidumping duty investigation on common alloy aluminum sheet from Turkey. *See Common Alloy Aluminum Sheet From Turkey: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 65,346 (Dep't of Commerce Oct. 15, 2020) (Preliminary Determination) (P.R. 264), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 247). In the Preliminary Determination, Commerce granted and denied Assan (one of two mandatory respondents) certain adjustments to its constructed export price. Commerce increased the constructed export price by granting a duty drawback adjustment to Assan for import duties not collected. *See* PDM at 10-11. Commerce also reduced Assan's constructed export price by (1) denying billing adjustments claimed by Assan to correct certain errors, (2) reducing the freight expenses Assan paid to an affiliated service provider, and (3) deducting tariffs imposed on Assan's subject merchandise under Section 232 of the Trade Expansion Act of 1962. *See* PDM at 9; Assan Cost Memo at 5-6 (P.R. 249) (C.R. 324) (Prelim. Calc. Memo). Commerce also declined to grant Assan a home market rebate adjustment, which would have reduced Assan's normal value. *Id*.

On March 8, 2021, Commerce issued its final determination. *Common Alloy Aluminum Sheet From Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed.

Reg. 13,326 (Dep't of Commerce March 8, 2021) (Final Determination) (P.R. 358), and the accompanying Issues and Decision Memorandum (IDM) (P.R. 330). After reviewing case briefs from the parties, Commerce made no changes to its adjustments to Assan's duty drawback adjustment, Section 232 tariffs, home market rebates, or affiliated freight charges. However, Commerce modified its billing adjustments by using Assan's reported information on the record–rather than the lowest reported value, as in the Preliminary Determination–to lower the constructed export price. As a result, Commerce assigned Assan a final dumping margin of 2.02 percent. *See* Final Determination, 86 Fed. Reg. at 13,327.

## II.     **The Court's First Remand Order**

On March 1, 2023, the Court issued an opinion sustaining in part and remanding in part the final determination. *Assan Aluminyum Sanayi v. Ticaret A.S. v. United States* (*Assan I*), 624 F. Supp. 3d 1343 (Ct. Int'l Trade 2023). The Court sustained Commerce's treatment of Assan's home market rebates and affiliated freight expense but held that it could not discern what evidence Commerce relied on to modify its calculation of Assan's billing adjustment when Assan failed to provide supporting documentation. *Id.*

Instead of continuing to use the lowest reported value, Commerce changed course and relied on all of Assan's reported values at the final determination. *Id.* at 1376-78. The Court held that Commerce denied applying an adverse inference to Assan's billing adjustment reporting yet failed to explain the change that resulted in a lower margin from the preliminary determination. *Id.* As for the duty drawback adjustment, the Court sustained Commerce's general grant of Assan's duty drawback adjustment but explained that the implementation of that

adjustment contravened current Federal Circuit precedent in *Uttam Galva Steels Ltd. v. United States*, No. 2021-2119, 2022 WL 1419596 (Fed. Cir. May 5, 2022). *Id.* at 1361-63.

The Court held that Commerce's determination to grant Assan a duty drawback adjustment was consistent with law because (1) the exemption that Assan received under Turkey's duty drawback regime was linked to the exportation of the subject merchandise, and (2) there were sufficient imports of the raw material to account for the duty drawback on the export of subject merchandise. *Id.* at 1361. Moreover, evidence suggested that at least one imported input under the closed Inward Processing Certificate (IPC) was capable of being used in the production of subject merchandise. *Id.*

However, as Commerce acknowledged, its "duty neutral" methodology, which allocated exempted duties over total production (that is, by both exports and home-market sales of subject merchandise), conflicted with precedent, and Commerce requested a voluntary remand to recalculate the granted adjustment. *Id.* at 1362-1363. The Court granted Commerce's request for a voluntary remand so that Commerce may recalculate Assan's duty drawback adjustment in accordance with the latest Federal Circuit precedent. *Id.* ("{T}he Federal Circuit has ruled that a "duty neutral methodology" is incompatible with the plain language of section 1677a(c)(1)(B)."); *see also Assan Aluminyum Sanayi ve Ticaret A.S. v. United States* (*Assan II*), 701 F. Supp. 3d 1321, 1325 (Ct. Int'l Trade 2024) (Second Remand Order) ("{T}he Federal Circuit held that '{t}here is no basis' in 19 U.S.C. § 1677a(c)(1)(B) for dividing exempted duties by both exports and home-market sales of subject merchandise.").

Finally, the Court suspended proceedings on the issue regarding Section 232 tariffs, pending the final resolution of *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 63 F.4th 25 (Fed. Cir. 2023). *Assan I*, 624 F. Supp. 3d at 1380. Nevertheless, the Court

requested that on remand, Commerce assume the proper deduction of Section 232 tariffs from U.S. price in assessing the remaining issues. *Id.* at 1381. The Court instructed Commerce to determine whether there will be a *de minimis* margin following the proper allocation of Assan's duty drawback adjustment, and if Commerce is unable to make such an assessment at that time, it must explain why. *Id.*

## III.    **Commerce's First Remand Redetermination**

On May 10, 2023, Commerce issued its draft first remand results. Commerce revised its duty drawback calculation by (1) dividing the amount of total duties exempted on the IPC closed during the period of investigation by the total quantity of exports made under that closed IPC to calculate a per-unit duty drawback adjustment, and (2) applied that adjustment to all of Assan's sales of subject merchandise. *See* Draft Remand (1st Remand P.R. 1, 2) at 3. In response, the Association argued that Commerce's duty drawback methodology improperly applied a closed IPC-derived adjustment to open-IPC sales because there is no record evidence that Assan exported all its U.S. sales pursuant to the closed IPC. *See* Al. Cmts on Draft Remand (1st Remand P.R. 8) at 4. The Association further argued that the duty exemptions pursuant to the closed IPC did not all constitute exemptions by reason of "the exportation of the subject merchandise to the United States" under 19 U.S.C. § 1677a(c)(1)(B) because the closed IPC includes export destinations other than the United States as well as exports made outside of the period of investigation. *See* Al. Cmts on Draft Remand at 4-5.

On remand, Commerce revisited the issue and acknowledged that Assan withheld information and provided incomplete supporting documentation needed to corroborate and to verify the proper billing adjustment for its reported quality errors (that is, BILLADJ2U). *See* Draft Remand at 4-7. Therefore, Commerce relied on 19 U.S.C. § 1677e(a)(2)(A), (B), and (D)

to determine that the application of facts available was warranted. *Id.* Moreover, Assan's failure to provide supporting documentation after multiple requests constituted a failure by Assan to act to the best of its ability under 19 U.S.C § 1677e(b)(1). *Id.* Therefore, Commerce determined that an adverse inference was warranted and that the correct billing adjustment was the lowest value that Assan reported as a billing adjustment for quality errors. *Id.* In response, Assan argued that there was no basis for Commerce to make an adverse inference. *See* Assan Cmts on Draft Remand (1st Remand P.R. 7) at 3-4.

On May 31, 2023, Commerce issued its First Remand Redetermination. *See* ECF No. 94 (First Remand Redetermination). Commerce made no changes from its draft first remand redetermination. The net effect of the two issues on remand resulted in a *de minimis* margin for Assan. *See* First Remand Redetermination (1st Remand P.R. 11) at 16.

## IV.    The Court's Second Remand Order

The Court issued its second decision on April 11, 2024, remanding Commerce's recalculation of Assan's duty drawback adjustment. *Assan II*, 701 F. Supp. 3d at 1321. As an initial matter, the Court recognized that, because Commerce announced a *de minimis* dumping margin for Assan, the other unrelated issues discussed in the first remand opinion were no longer live (that is, the Court's decisions (1) to sustain Commerce's denial to Assan of a home market rebate adjustment, (2) to sustain Commerce's deduction of Assan's affiliated freight costs from its calculation of Assan's constructed export price, (3) to remand for further explanation Commerce's determination not to apply an adverse inference as to Assan's reporting of certain billing adjustments,[1] and (4) to stay consideration of Assan's challenge to Commerce's

---

[1] Assan supported the Final Remand Redetermination and did not "request a second remand to the agency on . . . {the adverse inference} issue solely in the interest of expediency." *See* Assan Cmts on Remand Redetermination at 9, ECF No. 99.

deduction of certain tariffs until the Federal Circuit's then-pending decision in *Borusan Mannesmann Boru Sanayi ve Ticaret A.S.*, 63 F.4th 25. *Id.* at n.3. Therefore, the sole live issue on remand concerned Commerce's calculation of Assan's duty drawback adjustment. *Id.*

In its second decision, the Court held that Commerce's revised duty drawback methodology was not consistent with 19 U.S.C. § 1677a(c)(1)(B). *See Assan II*, 701 F. Supp. 3d at 1331. More specifically, the Court explained that,

> Commerce's revised methodology impermissibly increased Assan's export price by more than "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States." 19 U.S.C. § 1677a(c)(1)(B). This is because Commerce calculated a per-unit duty drawback adjustment on the basis of a single closed IPC and applied that adjustment to all of Assan's U.S. sales of subject merchandise, including to sales of merchandise exported under open IPCs. Even though certain open-IPC sales did not earn "benefits of the exempted duties," Commerce adjusted its calculation of their U.S. prices as though they did.

*See Assan II*, 701 F. Supp. 3d at 1328 (citations omitted). In other words, Commerce increased Assan's constructed export price by an amount that includes duties which have been collected and *not* rebated (open IPCs), thus exceeding "'the amount' of duties exempted by the Turkish government 'by reason of' the open-IPC exports of subject merchandise to the United States." *Id.* (quoting 19 U.S.C. § 1677a(c)(1)(B)). The Court explained that there was no statutory basis to treat open- IPC sales as though they were closed. *Id.* Thus, the Court remanded for Commerce to further explain or to reconsider its remand redetermination in light of the statutory limitations of a duty drawback adjustment.

Assan's receipt of exemptions under Turkish law occurred only when IPCs were closed. Commerce's practice with regard to the Turkish duty drawback program is to consider the benefits of the exempted duties once an IPC is closed. *See, e.g., Light-Walled Rectangular Pipe*

*and Tube: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016*, 82 Fed. Reg. 47,477 (Dep't of Commerce Oct. 12, 2017), and accompanying IDM (explaining that Commerce "cannot be certain that a company has satisfied the export requirements under a {IPC} until the {IPC} is closed.")). Therefore, under Commerce's practice, the amount of exempted duties under an open IPC is zero, and thus Commerce needed to adequately explain why it applied a closed IPC–derived adjustment to open-IPC sales. *See Assan II*, 701 F. Supp. 3d at 1328.

The Court also held that Commerce failed to substantively address two of the Association's arguments. First, Commerce did not address the Association's argument that Commerce's drawback methodology improperly applied a closed IPC–derived adjustment to open-IPC sales. *See id.* at 1331-1332. Specifically, the Association challenged whether Commerce's methodology established a link between the duties exempted and the U.S. sale that earned the corresponding drawback adjustment. *Id.* Commerce also did not address the Association's argument that Commerce's methodology was inconsistent with the statute "because, as summarized by Commerce, 'the closed IPC . . . includes export destinations other than the United States as well as exports made outside of the {period of investigation}.'" *See id.* at 1333. Therefore, the Court instructed Commerce, on remand, to respond to these two arguments to adequately explain its determination. *Id.*

## V.    Commerce's Second Remand Redetermination

On remand, because information on the record regarding Assan's closed-IPC and reported U.S. sales was inadequate for purposes of allocating the duty drawback benefit to only those reported U.S. sales associated with the closed-IPC, Commerce re-opened the record to request additional necessary information. *See* Second Draft Remand (2nd Remand P.R. 8) at 5-

7.  Commerce requested that Assan identify the relevant in-scope merchandise exported to the United States associated with the IPC that was closed during the period of investigation, and to tie these sales to the company's U.S. sales database.  *See generally* Supplemental Questionnaire (2nd Remand P.R. 1) (2nd Remand C.R. 1).  Commerce requested that Assan

> {S}ubmit a revised U.S. sales database by adding an additional field (e.g., "IPCNOU") to database {} submitted under the ACCESS barcode 4067209-26, that identifies those reported U.S. sales that are included in the {} reported closed IPC{}.  *For those reported U.S. sales with open IPCs, please notate with a "." to indicate that it was not a closed IPC.*

*See id*. at Attachment (emphasis added).

On June 6, 2024, Assan responded to Commerce's duty drawback questionnaire with information to reconcile the total quantity and value of in-scope merchandise under the relevant closed-IPC to a now revised U.S. sales database.  Assan's Supplemental Questionnaire Response (2nd Remand P.R. 4) (2nd Remand C.R. 2-4).  Assan also reported that all its reported U.S. sales in the period of investigation can be tied to a closed-IPC, including IPCs that were closed outside of the period of investigation.  *Id*. at 1.  However, Assan also maintained that "it is reasonable to treat all IPCs, open or closed, as closed for the purpose of calculating drawback adjustments." *Id*. at 3.

On June 13, 2024, the Association submitted comments and rebuttal factual information arguing that Assan submitted unsolicited new factual information, regarding information not related to the IPC that was closed during the period of investigation.  *See* Al. Rebuttal for Second Remand (2nd Remand P.R. 5) (2nd Remand C.R. 8).  The Association argued that Commerce did not request information on any IPC other than the IPC that was closed during the period of investigation.  *Id*. at 5.  The Association also argued that Assan failed to establish that any of the other IPCs that it claimed have since closed are related to the Turkish duty drawback system, nor

has Assan provided documentation, such as closure documentation and an import list and export list, to demonstrate its entitlement to a duty drawback adjustment and the appropriate calculation. *Id.* at 3, 5-8.  The Association further argued that Commerce should deny Assan any further opportunity to supplement the record, following its response.  *Id.* at 9-10.  On June 20, 2024, Assan submitted comments and rebuttal factual information in response to the Association's submission.  *See* Assan's Additional Response (2nd Remand P.R. 6) (2nd Remand C.R. 9-11).

On June 27, 2024, Commerce issued its draft second results of redetermination and agreed with the Association, in part, that Assan had unnecessarily provided information associated with IPCs that remained open during the period of investigation.  In the draft second results, Commerce calculated a per-unit duty drawback adjustment on the basis of a single closed IPC, observing that Assan exported subject merchandise during the period of investigation under four distinct Turkish IPCs but only "one of these IPCs closed during the period of investigation; the other three remained open."  *See* Second Draft Remand (2nd Remand P.R. 8) at 7. Commerce explained that this followed its practice at the time of the investigation to decline to calculate a duty drawback adjustment on the basis of an IPC until that IPC is closed, requiring evidence of official approval by the Turkish government during the period of investigation.  *Id.* at 8.  Thus, although Commerce accepted Assan's submission as timely and responsive to its questionnaire, Commerce considered moot all other issues regarding the other three IPCs that remained open during the period of investigation.

Nevertheless, in the final second remand redetermination, after reviewing both Assan's and the Association's comments on the draft second remand, Commerce revised Assan's duty drawback calculation to include IPCs that were also closed outside the period of investigation but associated with reported U.S. exports of subject merchandise during the period of investigation.

Second Remand Redetermination at 8-10. Both Assan and the Association agreed that Commerce's IPC closure practice does not include a period of investigation limitation in calculating duty drawback adjustments, and both parties notified Commerce that courts have held unlawful such determinations to confine margin calculation to only IPCs closed during the period of investigation. *See* Assan Cmts on Draft Remand (2nd Remand P.R. 14) at 6-9; Al. Cmts on Draft Remand (2nd Remand P.R. 15) at 4. Therefore, Commerce reconsidered its draft results and found that for purposes of calculating a dumping margin, the evaluation of Assan's other three IPCs was necessary and no longer moot. *See* Second Remand Redetermination at 8-14. As such, Commerce made the change to include the one additional IPC that closed after the period of investigation. *Id*. Commerce also made certain methodological corrections, as identified by the Association, that were in line with Commerce's intended rationale to calculate a duty drawback benefit associated with only U.S. exports made during the period of investigation. *Id*. at 15-16. Both proposals by the parties regarding Commerce's intended methodology resulted in the same per-unit duty drawback adjustment. *Id*. Regardless, the net effect of Assan's duty drawback adjustment resulted in a *de minimis* margin for Assan.

## VI.    <u>The Court's Third Remand Order</u>

The Association challenged Commerce's Second Remand Redetermination. *Assan III*, 789 F. Supp. 3d at 1266. As in the prior remands, the dispute centered on Commerce's application of a duty drawback adjustment under 19 U.S.C. § 1677a(c)(1)(B) in connection with Turkey's Inward Processing Regime (IPR). *Id.* at 1261. Under that regime, duty exemptions or drawbacks are conferred upon the closure of an IPC. *Id.* at 1272. The Association argued that Commerce unlawfully accepted Assan's June 6 Response and June 20 Submission and that Commerce unlawfully relied on unverified information in those documents, which affected

Commerce's analysis of Assan's eligibility for a drawback adjustment based on IPC [      ].  *Id.* at 1261, 1272.

The Court concluded that Commerce failed to address the Association's objections to Commerce's acceptance of Assan's June 20 Submission and reliance on unverified information in Assan's June 6 Response and June 20 Submission.  *Id.* at 1267.  The Court remanded for Commerce (1) to consider the Association's unaddressed arguments regarding timeliness and verification; and (2) upon that consideration, to redetermine Assan's eligibility for a duty drawback based on IPC [      ].  *Id.*  The Court did not direct a particular outcome on remand but required Commerce to provide a reasoned explanation that responds to the arguments raised and complies with its statutory and regulatory obligations.  *Id*. at 1274-75.

## VII. <u>Commerce's Third Remand Redetermination</u>

On July 24, 2025, Commerce notified Assan that it intended to conduct verification of the information in Assan's June 6 Response regarding Assan's duty drawback claim.  Verification Agenda at 4 (July 24, 2025) (3rd Remand P.R. 1) (3rd Remand C.R. 1).  The verification agenda included

> 1. Be prepared to provide an overview of Türkiye's duty drawback system and provide documentation demonstrating on what date Turkish companies earn benefits from exempted duties with respect to IPCs.
>
> 2. Referencing Assan's June 6, 2024 QR at 1-2, be prepared to discuss and provide documentation that clearly identifies the closure dates of the following IPCs: [                    ].
>
> 3. Referencing Assan's Revised U.S. Sales Database at Exhibit 1 of its June 6, 2024 QR, be prepared to review Assan's U.S. sales

transactions (i.e., SEQUs) and the accuracy of their corresponding
IPC nos. (i.e., IPCNOU) and IPCStatus.

4. Be prepared to demonstrate and document the realized export
amount under IPC no. [       ] is [                ] as stated on
page 2 of Assan's June 6, 2024 QR, and at Exhibit 3.

5. Be prepared to demonstrate and document the quantity, value,
[                  ], and how Assan determined its reported
[                          ] under IPC no.
[     ] as referenced in Assan's June 6, 2024 QR at Exhibit 3.

*Id.* Thereafter, Commerce decided to exercise its discretion to cancel verification and sent Assan

a letter memorializing that decision on August 4, 2025. Cancellation of Verification (August 4,

2025) (P.R. 2). Assan objected to the cancellation, Letter from ArentFox Schiff LLP to

Secretary of Commerce Pertaining to Assan Comments re Verification (August 4, 2025) (P.R. 3),

and the Association responded to Assan's objection, Letter from Kelley Drye & Warren LLP to

Secretary of Commerce Pertaining to Petitioners Rebuttal Comments re Verification (August 6,

2025) (P.R. 4).

Pursuant to the Court's Third Remand Order, Commerce issued its Draft Third Remand

Results on August 14, 2025. *See* Draft Third Remand Results (August 14, 2025) (C.R. 2).

Commerce reconsidered its acceptance of Assan's June 20 Submission and the related duty

drawback claim based on the IPC information contained in the June 6 Response and June 20

Submission. *Id.* at 4-8. Upon further review of the record and in accordance with 19 C.F.R.

§ 351.301(c)(1)(v), Commerce determined that Assan's June 20 Submission did not constitute

timely-submitted factual information to rebut, clarify, or correct information placed on the record

by another interested party. *Id.* Instead, it was an untimely effort by Assan to supplement its

June 6 questionnaire response. *Id.* Accordingly, Commerce rejected Assan's June 20

submission in its entirety pursuant to 19 C.F.R § 351.302(d).  *See* Rejection of Assan's June 20,

2024, Submission (August 13, 2025) (Rejection Letter) (3d Remand P.R. 7).

In the Draft Third Remand Results, Commerce also analyzed Assan's duty drawback

adjustment and concluded that, notwithstanding its rejection of Assan's June 20 Submission, the

record contained sufficient verified information to conclude that ICPs [      ] and [      ] were

closed.  Draft Third Remand Results at 2.  Because Commerce's conclusion that ICP [      ] was

closed was consistent with its conclusion in the Second Remand Results, Commerce did not

revisit the *de minimis* weighted-average dumping margin calculated for Assan.  *Id.* at 11.

On September 9, 2025, after reviewing Assan's and the Association's comments on the

Draft Third Remand Results, Commerce issued the third remand results.  *See* Third Remand

Redetermination (September 9, 2025) (3d Remand C.R. 18).  First, Commerce concluded that

Assan's June 20 Submission "contained new factual information that did not rebut, clarify, or

correct factual information submitted in response" to Assan's June 6 Response as required in 19

C.F.R. § 351.301 (c)(1)(v) and accordingly rejected the June 20 Submission.  *Id.* at 6-7.  Having

determined that it could not consider information in the June 20 Submission, Commerce needed

to assess how that exclusion affected Assan's duty drawback adjustment.  *Id.* at 7.

Second, Commerce turned to the question of whether, excluding Assan's June 20

Submission, IPC [      ] was closed.  In addressing this question, Commerce considered Assan's

June 6 Response and exhibits, *id.* at 8, which the Court had previously concluded were lawfully

accepted.  *See Assan III*, 789 F. Supp. 3d at 1267 ("Commerce lawfully accepted Assan's June 6

Response and lawfully explained its reasons for doing so.").  Exhibit 2A of Assan's June 6

Response is a screenshot of the Turkish Ministry of Trade's Online IPR Portal that contains "the

IPC holder name, taxpayer number, IPC number, IPC application date, the beginning and ending

date of the IPC, the status of the IPC and the closure date for each IPC."  Third Remand
Redetermination at 8-9.  That screenshot reflects that IPC [      ] was closed [                ].  *Id.*
(citing June 6 Response, Exhibit 2A).  Exhibit 2A also includes supporting data for the
screenshot and a list of imported and exported articles associated with each IPC.  Third Remand
Redetermination at 9.  Additionally, Exhibit 5 is a table calculating the average number of days
for each IPC's closure.  *Id.*  Lastly, Exhibit 2B is a letter from the Turkish Ministry of Trade,
Customs and Foreign Trade Regional office stating that IPC [      ] "has been closed."  *Id.*
Weighing the foregoing information, Commerce found that IPC [      ] was closed.  *Id.* at 9-10.

Third, Commerce addressed the Association's argument from the second remand
redetermination proceedings that Commerce relied on unverified information in Assan's June 6
Response and June 20 Submission.  *Id.* at 10.  Commerce explained that it had conducted
verification of Assan's IPCs during the underlying investigation proceeding through a
questionnaire.  *Id.* at 11.  Commerce rejected the Association's arguments in its comment on the
Draft Third Remand Redetermination challenging Commerce's decision not to conduct
additional verification during the third remand redetermination proceedings.  *Id.* at 19-25.
Moreover, although Assan's comment on the Draft Third Remand Redetermination challenged
Commerce's decision to cancel its verification agenda, Commerce explained that verification
was unnecessary because Commerce had already conducted sufficient verification during the
underlying investigation.  *Id.* at 25.

Having addressed the Association's arguments that were unaddressed during the second
remand redetermination proceedings, Commerce followed the Court's remand instructions and
redetermined Assan's eligibility for a duty drawback based on IPC [      ].  Because Assan's
June 20 Submission was excluded, Commerce concluded that, although there was sufficient

information to find that IPC [      ] was closed, there was insufficient information to calculate

the corresponding duty drawback adjustment. *Id.* at 7, 10, 12. Specifically, the June 20

Submission was the only document containing detailed import, export, and tariff-rate data

necessary for Commerce to calculate a per-unit adjustment for IPC [      ], such as IPC import

and export quantity and value, total IPC exports that could have been used in the manufacture of

the subject merchandise to the United States, and applicable custom duty rates. *Id.* at 15-17.

Commerce also concluded that, because the record does not contain the quantity of actual

exports under IPC [      ] or the associated exempted duties, Commerce could not confirm

whether sufficient exports existed to support Assan's claimed drawback. *Id.* at 18. The absence

of this information is critical because, to establish drawback benefit eligibility, Commerce's

practice requires that,

> (1) the import duty paid and the rebate payment are directly linked
> to, and dependent upon, one another (or the exemption from import
> duties is linked to the exportation of subject merchandise); and (2)
> that there were sufficient imports of the imported raw material to
> account for the drawback received upon the exports of the subject
> merchandise.

*Id.* at 18 (citing PSF from Korea Investigation Final IDM at 18 (Comment 3)). As a result,

Assan's margin increased from *de minimis* to 2.14 percent and the all-others weighted-average

dumping margin decreased from 13.56 percent to 4.94 percent. *Id.* at 26 (citing Third Final

Remand Calculation Memorandum (September 9, 2025) (3rd Remand P.R. 11).

## **ARGUMENT**

### I.    **Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in

accordance with the remand order, are supported by substantial evidence, and are otherwise in

accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct.

Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence" is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## II.    The Court Should Sustain Commerce's Third Remand Redetermination

Commerce's Third Remand Redetermination fully complies with the Court's remand

instructions, is supported by substantial evidence, and is otherwise in accordance with law.  The

Court directed Commerce to complete two discrete tasks:  (1) consider the Association's

unaddressed arguments regarding timeliness and verification; and (2) upon that consideration,

redetermine Assan's eligibility for a duty drawback under 19 U.S.C. § 1677a(c)(1)(B).  *See*

*Assan III*, 789 F. Supp. 3d at 1274.  Commerce addressed both issues directly and provided a

well-reasoned explanation for its conclusions, which are supported by the administrative record.

### A.    Commerce Properly Exercised Its Discretion in Reconsidering and Rejecting Assan's Untimely June 20 Submission

On remand, as the Court ordered, Commerce addressed the Association's unresolved

arguments regarding the timeliness of Assan's June 20 Submission and reassessed Assan's

eligibility for a duty drawback adjustment based on IPC [        ].  *See Assan III*, 789 F. Supp. 3d

at 1269-73.  Pursuant to the Court's decision, *id.* at 1270, Commerce considered whether Assan's

June 20 Submission constituted "factual information to rebut, clarify, or correct factual

information in" the Association's June 13 Rebuttal to Assan's June 6 Response under 19 C.F.R.

§ 351.301(c)(1)(v), and concluded that it did not.  Third Remand Redetermination at 6-7

(September 9, 2025) (3d Remand C.R. 18).  Because the information did not satisfy the

regulatory requirements for rebuttal, clarification, or correction of factual information,

Commerce acted within its discretion in enforcing its filing deadlines, and its decision to do so is

neither unreasonable nor unlawful.  *See PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d

751, 760 (Fed. Cir. 2012) (explaining that Commerce is entitled to enforce deadlines and reject untimely factual submissions); *see also* 19 C.F.R. § 351.301(c)(1)(v); 19 C.F.R. § 351.302(d).

Under 19 C.F.R. § 351.301(c)(1)(v), an interested party, other than the original submitter, seeking to submit factual information to rebut, clarify, or correct factual information contained in a questionnaire response must do so within 14 days of an initial questionnaire response and within 10 days after a supplemental questionnaire response. Within seven days after the interested party's submission, the original filer of the questionnaire response may submit factual information to rebut, to clarify, or to correct factual information in the interested party's submission. *Id.*

Assan's June 6 Response addressed IPC [      ] and also identified three additional IPCs that had closed—IPCs [                    ], *see* June 6 Response at 1-2[2]; however, Assan failed to submit additional closure documents or the import and export list for IPC [      ] until its June 20 Submission. Third Remand Redetermination at 4-6; *Assan III*, 789 F. Supp. 3d at 1264, 1270-71. Although the Association argued in its June 13 Rebuttal that Assan's June 6 Response contained unsolicited and untimely new factual information for IPC [      ], the factual information that the Association submitted did not pertain to IPC [      ] or its closure. *See* Comments and Rebuttal Factual Information Concerning Assan Aluminyum Sanayi ve Ticaret A.S.'s June 6, 2024, Response to the Department's Request for Information (June 13, 2024) (2nd Remand P.R. 5) (Association's Rebuttal Submission). Because the factual information in Assan's June 20 Submission does not rebut, clarify, or correct any of the factual information in the Association's June 13 Rebuttal, it fails to meet the standard set forth in 19 C.F.R. § 351.301(c)(1)(v). Accordingly, pursuant to 19 C.F.R § 351.302(d), Commerce lawfully and

_____

[2] The Court refers to these IPCs as $\beta$, $\gamma$, and $\delta$, respectively, in *Assan III*. 789 F. Supp. 3d at 1263.

reasonably rejected Assan's June 20 submission in its entirety. *See* Rejection of Assan's June 20, 2024, Submission (August 13, 2025) (Rejection Letter) (3rd Remand P.R. 7).[3]

### B.    Commerce Reasonably Cancelled The Verification Scheduled During The Third Remand

In *Assan III*, the Court concluded that Commerce failed to address the Association's arguments that Commerce relied on unverified information that Assan had provided in its June 6 Response and June 20 Submission in violation of 19 U.S.C. § 1677m(i) and remanded for Commerce to address these arguments in the first instance. 789 F. Supp. 3d at 1273-74. Commerce addressed these arguments and concluded that, because there were no indicia of unreliability from previous verification conducted in this matter, Commerce need not conduct additional verification exclusively for the new information in Assan's June 6 Response and that the information in Assan's June 20 Submission did not need to be verified because Commerce rejected that submission. Commerce reasonably exercised its discretion to cancel the verification scheduled during the third remand.

Under 19 U.S.C. § 1677m(i)(1), Commerce must verify "all information relied upon in making … a final determination in an investigation." At verification, Commerce "will request access to all files, records, and personnel" that are " relevant to factual information *submitted*." 19 C.F.R. § 351.307 (emphasis added). However, as the Federal Circuit has observed,

> Section 1677m(e) provides that Commerce is not obligated to conduct verification when, for example, the information cannot be verified, the information is so incomplete as to be unreliable, or the interested party has not acted to the best of its ability to meet Commerce's requirements. . . . Where necessary information is

---

[3]  To the extent Assan contends that Commerce was required to accept its June 20 Submission because that submission contains information relevant to calculating a duty drawback adjustment, Assan Cmts at 31, the Court stated in *Assan III* that "{w}hile calculating an accurate dumping margin is Commerce's chief goal in an antidumping proceeding, it does not follow that Commerce must pursue that goal by systematically accepting information without regard to procedural constraints." 789 F. Supp. 3d at 1271.

absent, Commerce need not conduct a verification in an attempt to
obtain the missing information.

*Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078, 1089 (Fed. Cir. 2021)

(citations omitted).

The purpose of verification is to "test information provided by a party for accuracy and

completeness." *See Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343-44 (Fed. Cir.

2021) (quoting *Micron Technology, Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997)).

Because of the vast amount of information on the record in most cases, this Court, the Federal

Circuit, and Commerce have described the nature of verification as a "spot check." *See Ellwood

City Forge Co. v. United States*, 788 F. Supp. 3d 1317, 1325 (Ct. Int'l Trade 2025); *see also

Government of Quebec v. United States*, 105 F.4th 1359, 1370 (Fed. Cir. 2024) (describing

"Commerce's spot-checking" of information during verification).[4]  Consequently, "Commerce

enjoys wide latitude in its verification procedures." *See Bonney Forge Corporation v. United

States*, No. 1:20-CV-03837, 2025 WL 1304590 at *5 (Ct Int'l Trade May 6, 2025) (quoting

*American Alloys, Inc. v. U.S.*, 30 F.3d 1469, 1475 (Fed. Cir. 1994)).

Following *Assan II*, Commerce reopened the record and solicited additional information

regarding the status of Assan's IPCs.  *See* May 23 Questionnaire.  However, as the Court

explained in *Assan III*, Commerce relied on the new factual information in Assan's June 6

Response and June 20 Submission without addressing the Association's argument that this

information was unverified.  789 F. Supp. 3d at 1273-74.  Because Commerce rejected Assan's

---

[4]  This approach has been used in other investigations, including *PET Resin from Taiwan*,
where Commerce described verification as "somewhat akin to sampling," confirming its limited
scope.  *See Polyethylene Terephthalate Resin from Taiwan: Final Determination of Sales at Less
Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part,* 83
Fed. Reg. 48,287 (September 24, 2018) (*PET Resin from Taiwan*), and accompanying IDM at
Comment 1.

June 20 Submission and did not rely on any factual information therein regarding IPC [       ] for purposes of the Third Remand Redetermination, there was no need to verify that information. *See* Third Remand Redetermination at 25; *see also Linyi Chengen Imp. & Exp. Co. v. United States*, 391 F. Supp. 3d 1283, 1299 (Ct. Int'l Trade 2019) ("Because Commerce did not rely upon Bayley's questionnaires, it did not need to verify them.").

Regarding the June 6 Response, Commerce explained that it had previously conducted verification during the investigation phase and identified no discrepancies or inconsistencies. Third Remand Redetermination at 21-22. Because there was no reason to doubt Assan's data's reliability, Commerce reasonably concluded that the additional verification scheduled during the third remand solely for the purpose of evaluating the new information included in the June 6 Response was unnecessary.[5] *Id.* Additionally, in the absence of the information contained in the June 20 Submission, Commerce concluded that the June 6 Response contained sufficient information to conclude that IPC [       ] was closed but not to calculate a duty drawback adjustment. Third Remand Redetermination at 7. Because the information in Assan's June 6 Response, even if verified, was insufficient for Commerce to calculate a duty drawback adjustment, Commerce reasonably concluded that additional verification was unnecessary. *Id.* at 24-25; *see also Hyundai Elec. & Energy Sys. Co.*, 15 F.4th at 1089 (concluding that Commerce was not required to conduct verification when party "failed to provide the information necessary for Commerce's analysis despite being given multiple opportunities to do so"). In sum, Commerce reasonably cancelled the verification scheduled during the third remand because there

---

[5] This decision is consistent with a recent investigation in which additional verification was determined to be unnecessary because Commerce had already verified the relevant information in question. *See Certain Low Speed Personal Transportation Vehicles from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 FR 26530 (June 23, 2025), and accompanying IDM at Comment 14.

was nothing to verify in the rejected June 20 Submission and that previous verification conducted in this investigation demonstrated that there was no need to "spot check" the June 6 Response. *Ellwood City Forge Co.*, 788 F. Supp. 3d at 1325.

Assan seeks to circumvent Commerce's rejection of its untimely June 20 Submission by arguing that Commerce was obliged to conduct verification of information not in the record and to provide Assan with the opportunity to effectively submit for Commerce's consideration the information contained in that rejected document. Assan Cmts at 26-29.

First, Commerce was not obliged to conduct verification to provide Assan with an opportunity to submit factual information not included in its June 6 Response. "Commerce typically accepts new information at verification under limited circumstances, i.e., only when: (1) the need for that information was not evident previously; (2) the information makes minor corrections to information already on the record; or (3) the information corroborates, supports, or clarifies information already on the record." *Hyundai Elec. & Energy Sys. Co*, 15 F.4th at 1089 (internal quotation marks and citation omitted).

As we explained when addressing Commerce's rejection of Assan's June 20 Submission, the import and export information that Assan claims it would have provided during the verification scheduled during the third remand, Assan Cmts at 29, did not corroborate, support, or clarify information already in the record and Assan has provided no explanation for why it failed to provide that information in its June 6 Response. *See* 19 C.F.R. § 351.401(b)(1) ("The interested party that is in possession of relevant information has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment."). Additionally, the information was essential to calculating a drawback duty adjustment and its omission was therefore not a minor correction to information already in the record. *Compare IcdaS Celik*

*Enerji Tersane v. Ulasim Sanayi A.S.*, 498 F. Supp. 3d 1345, 1360 (Ct. Int'l Trade 2021) (concluding commerce did not abuse discretion by refusing to consider new information that "would affect a significant portion of the data" before Commerce), *with CC Metals & Alloys, LLC v. United States*, 145 F. Supp. 3d 1299, 1310 (Ct. Int'l Trade 2016) (concluding "interest rates intrinsic to the transactions already reported" were "minor corrections").

Second, contrary to Assan's arguments, the verification agenda issued for the cancelled verification requested documentation on the "closure date{}" for IPC [        ], not the import and export documentation needed to recalculate the duty drawback adjustment.  Verification Agenda (July 24, 2025) (3rd P.R. 1) (3rd C.R. 1).  However, as the Court observed in *Assan III*, "{a}n assertion that an IPC is not closed is not on the same level of abstraction as an assertion that a submission does not include sufficient information."  789 F. Supp. 3d at 1270.  Nothing in *Assan III* requires Commerce to provide Assan with another opportunity to submit information untimely, particularly when Assan "did not (and does not) explain why" it failed to submit sufficient documentation in its June 6 Response.  *Id.* at 1271.

None of Assan's list of complaints, Assan Cmts at 24, undermine the reasonableness of Commerce's decision to cancel verification.  The Court remanded for Commerce to address the Association's arguments regarding the verification of information in Assan's June 6 Response and June 20 Submission; the Court did not order Commerce to conduct verification.  *Assan III*, 789 F. Supp. 3d at 1273-74.  Although Assan asserts that information in its June 6 Response required verification, Commerce concluded that the previous verification indicated that Assan's submission was reliable, rendering additional verification redundant.  Indeed, while Assan opines that it devoted time and resources to preparing for verification, Assan ignores that it would have been a greater waste of time for Assan and Commerce to dedicate time and personnel to

conducting verification that would not have changed the result of the Third Remand

Redetermination. Moreover, Assan's willingness to reschedule is of no import when Commerce

reasonably determined that verification was unnecessary. Assan cites no case in which this

Court has ordered a remand under similar circumstances.

For these reasons, Commerce's decision to cancel verification was not an abuse of

discretion and is supported by substantial evidence.

### C. Commerce's Determination That IPC [    ] Was Closed Is Reasonable and Supported by Substantial Evidence

Commerce's determination that IPC [    ] was closed is reasonable and supported by

substantial record evidence demonstrating that the Government of Turkey extinguished the

administrative obligations associated with that IPC.

The Third Remand Redetermination contains Commerce's evaluation of the evidentiary

record and explains that, although the record ultimately lacks sufficient quantitative information

to support a drawback adjustment, the record nonetheless contains reliable government-

generated documentation establishing closure. *See* Third Remand Redetermination at 8-11. In

reaching this conclusion, Commerce relied on official Turkish government records included in

Assan's June 6 Response. Assan submitted a screenshot from the Turkish Ministry of Trade's

Inward Processing Regime e-portal identifying IPC [    ] as "KAPALI," meaning closed, on

[         ]. *See* Third Remand Redetermination at 8-9; June 6 Response, Exhibit 2A. The

e-portal constitutes an official administrative database that contains certificate-specific

information including the IPC holder name, taxpayer number, application and termination dates,

certificate status, and closure date. *Id.* Commerce further relied on translated copies of the

[inward processing authorization certificate] associated with IPC [    ], which corroborated the

identifying information reflected in the Turkish government database. *Id.* at 9. Because these

documents confirm the administrative existence and operation of IPC [      ] within the inward

processing regime, Commerce determined that the consistency between certificate

documentation and government database records provided mutually reinforcing evidence

supporting closure.

Commerce also evaluated contextual record evidence demonstrating that IPC [      ]

followed the same administrative trajectory as other IPCs reflected in the Turkish government

system. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1357 (Fed.

Cir. 2015) (recognizing Commerce's authority to evaluate totality of record when assessing

statutory criteria).  The record demonstrates that IPCs [                    ] were listed

within the same government database with identical "KAPALI" closure status indicators.  Third

Remand Redetermination at 8-9.  For example, the screenshot indicates that IPC [      ] was

closed on [            ], June 6 Response at Exhibit 2-A, and Assan provided a letter of

closure from the Government of Turkey dated [              ], Assan QCR Response at

Exhibit C-9 (C.R. 52), June 6 Response at 2-B.  Accordingly, Commerce determined that

uniform status designations across certificates administered under the same regulatory regime

support the reliability of the closure evidence in Exhibit 2-A for IPC [      ].  *Id*.  That is a

reasonable inference drawn from the totality of the evidence before Commerce.  *See Nippon*

*Steel & Sumitomo Metal Corp. v. United States*, 483 F. Supp. 3d 1214, 1222 (Ct. Int'l Trade

2020) ("Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." (internal quotation marks

and citation omitted)).

Contrary to the Association's arguments, *see* Al. Cmts at 2-3, Commerce did determine

that record evidence demonstrates that the Government of Turkey had "forgiven the duty

liability." *Icdas Celik Enerji Tersane v. Ulasim Sanayi A.S.*, 654 F. Supp. 3d 1311, 1320 (Ct. Int'l Trade 2023) (quotation omitted). Commerce's practice requires record evidence demonstrating that the foreign government has extinguished administrative obligations associated with a certificate, but Commerce retains discretion to determine what record evidence reliably demonstrates such closure. *See Third Remand Redetermination* at 9-11; *see also Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*, 439 F. Supp. 3d 1342, 1349 (Ct. Int'l Trade 2020) (sustaining Commerce's reliance on record evidence demonstrating certificate closure rather than requiring a particular form of documentation). Indeed, as the Court has observed, although Commerce's practice has not always been articulated with precision, in "recent years Commerce's practice has been to require *some* indication from the GOT that the IPC was approved." *Icdas Celik Enerji Tersane*, 654 F. Supp. 3d at 1321 (emphasis added). Commerce therefore appropriately relied on government-generated evidence rather than respondent summaries, consistent with Commerce's established evidentiary hierarchy and judicial precedent recognizing Commerce's discretion to select among competing record evidence. *See PSC VSMPO-Avisma Corp.*, 688 F.3d at 761.

Although the Association argues that certain record documents, including the inward processing authorization certificate, predate the completion of imports and exports and therefore do not demonstrate closure, Pl. Cmts. at 4-5, the Association misunderstands Commerce's reasoning. Commerce's decision does not hinge solely on certificate issuance dates; instead Commerce evaluated the full evidentiary record then determined that the government database screenshots accurately reflected closure status. Third Remand Redetermination at 8-11. When Commerce conducted this analysis, Commerce determined that the documents predating IPC

[    ]'s closure corroborated the information in Exhibits 2-A and 5 to Assan's June 6 Response. *Id.*

Commerce's determination is also consistent with its established practice requiring record evidence demonstrating that the foreign government extinguished duty liability associated with a certificate. The Turkish government's designation of IPC [    ] as "KAPALI" reflects administrative closure within the inward processing regime and constitutes probative evidence that certificate obligations were satisfied. Third Remand Redetermination at 8-11. Courts have sustained Commerce's reliance on comparable closure evidence when the record demonstrates that certificate obligations have been administratively completed. *See HabaS Sinai*, 439 F. Supp. 3d at 1349 ("{E}ligibility for inclusion in the adjustment is based on the existence of record evidence establishing that the IPC has closed, which demonstrates that the Turkish government has forgiven the duty liability.").

Commerce's determination that IPC [    ] was closed reflects a reasoned evaluation of official Turkish government records, is supported by substantial evidence, and is in accordance with law. The Court should sustain Commerce's closure determination.

### D. Commerce Properly Denied a Duty Drawback Adjustment

Although Commerce concluded that IPC [    ] was closed, it denied a duty drawback adjustment because there is insufficient information in the record to calculate a per-unit duty drawback adjustment. Third Remand Redetermination at 15. Accordingly, Commerce's denial of a duty drawback adjustment is supported by substantial evidence and otherwise in accordance with law.

In the Second Remand Redetermination, Commerce concluded that IPC [    ] was closed and granted Assan a duty drawback adjustment that resulted in a *de minimis* dumping margin. *Assan III*, 789 F. Supp. 3d at 1265. However, in the Third Remand Redetermination,

although Commerce reaches the same conclusion regarding IPC [      ]'s closure, Commerce denied a duty drawback adjustment. Third Remand Redetermination at 15. Commerce's decision to reject Assan's June 20 Submission during the third remand is the reason for this different result. *Id.* Although Commerce relied on the factual information in the June 20 Submission in the Second Remand Redetermination, the Third Remand Redetermination does not do so because Commerce had rejected the June 20 Submission. *Id.* For this reason, Commerce could rely only on the information submitted in the record—namely in Assan's initial questionnaire response and its June 6 Response—to see whether it could calculate a duty drawback adjustment. *Id.*

The Third Remand Redetermination explains that, in order to calculate a duty drawback adjustment, Commerce would need the total IPC import quantity, total IPC import value, total IPC export quantity, total IPC exports of subject merchandise to the U.S., and the customs duty rate. Third Remand Redetermination at 16. However, this information for IPC [      ] is included in only the rejected June 20 Submission. *Id.* Because the information that Commerce had previously relied upon was no longer in the record, Commerce determined that it needed to assess the calculation issue for IPC [      ] based on the information remaining in the record. *Id.*

The record information available from Assan's June 6 Response for IPC [      ] identifies [

                    ]. *See* Assan's June 6 Submission at Exhibit 2A. However, the available inward processing authorization certificate was [


                    ]. *Id.* at Exhibit 2B. Because the record information regarding IPC [      ] contains only *predicted* import and export values, Commerce appropriately declined to find such

projected values to be a sufficient basis for a duty drawback calculation.  Third Remand Redetermination at 17.

Without a detailed list of actual imports or exports, customs duty rate, and import and export ledgers for IPC [    ] that can be reconciled to the U.S. sales database, Commerce is unable to determine the precise allocation of exempted duties to U.S. sales of subject merchandise entitled to a duty drawback adjustment.  *Cf. Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S.*, 861 F.3d 1269, 1271 (Fed. Cir. 2017) (concluding that Commerce reasonably denied duty drawback adjustment when Commerce concluded that duty-exempted goods were unrelated to subject merchandise).

However, as discussed above, the record evidence for IPC [    ] is missing critical information required for Commerce to calculate the amount of a per-unit duty drawback adjustment.  *See* 19 C.F.R. § 351.401(b)(1) ("The interested party that is in possession of relevant information has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment. . . .").  Because Assan did not satisfy its burden of establishing to the satisfaction of Commerce the amount and nature of the requested adjustment, Commerce's denial of a duty drawback adjustment is reasonable.

Assan incorrectly asserts that, notwithstanding its failure to submit sufficient documentation for Commerce to calculate a duty drawback adjustment for IPC [    ], Commerce was required to grant a duty drawback adjustment because Assan was automatically entitled to an adjustment once Commerce determined that IPC [    ] was closed.  Assan Cmts at 10-12, 18.

When determining eligibility for a duty drawback adjustment, Commerce applies a two-pronged test based upon the criteria set forth in 19 U.S.C. § 1677a(c)(1)(B) to determine whether

a party is eligible for a duty drawback. *See Saha Thai Steel Pipe (Pub.) Co. v. United States*

(*Saha Thai*), 635 F.3d 1335, 1340 (Fed. Cir. 2011); *see also Assan I*, 624 F. Supp. 3d at 1356

(stating two-pronged test upheld in *Saha Thai* assesses "duty drawback eligibility"). A

respondent must demonstrate

> (1) that the rebate and import duties are dependent upon one
> another, or in the context of an exemption from import duties, that
> the exemption is linked to the exportation of the subject
> merchandise, and (2) that there are sufficient imports of the raw
> material to account for the duty drawback on the exports of the
> subject merchandise.

*Saha Thai*, 635 F.3d at 1340 (citation omitted).

Commerce found that Assan's claimed adjustment for the IPC at issue failed both prongs

of the test due to missing information on the record. Third Remand Redetermination at 16-17.

Commerce explains that its established practice requires that: (1) the import duty paid and the

rebate payment are directly linked to, and dependent upon, one another (or the exemption from

import duties is linked to the exportation of subject merchandise); and (2) that there were

sufficient imports of the imported raw material to account for the drawback received upon the

exports of the subject merchandise. *Id.* Commerce concluded that, because the record does not

contain the quantity of actual imports under IPC [      ] or the associated exempted duties,

Commerce cannot confirm whether sufficient imports existed to support the claimed drawback.

Without this information, IPC [      ] fails both prongs of the test. *Id.*

Although determining whether an IPC is closed is an important part of Commerce's

process, the closed IPC itself is relevant only insofar as it affects Assan's ability to produce

sufficient record evidence. Sufficient record evidence would include total IPC import quantity,

total IPC import value, total IPC export quantity, total IPC exports of subject merchandise to the

U.S., and the customs duty rate. *Id.* at 16. Moreover, Assan was aware that this information was

required because it was provided for IPC [      ] in Assan's section C IQR and June 6 submission.  *See* Section C IQR at Exhibit C-12; *see also* Assan's June 6 submission at Exhibit 3.

Although Assan also argues that Commerce exceeded the scope of the Court's remand by conducting a recalculation, Assan Cmts at 16-17, that argument is divorced from the text of the Court's decision in *Assan III*.  The Court explained that, "{w}hile calculating an accurate dumping margin is Commerce's chief goal in an antidumping proceeding, it does not follow that Commerce must pursue that goal by systematically accepting information without regard for procedural constraints."  789 F. Supp. 3d at 1271 (citations omitted).  In emphasizing the importance of timeliness, the Court observed that acceptance or denial of the June 20 Submission would affect each IPC's eligibility of a drawback adjustment.  *Id.* at 1272.  The Court also recognized that "Commerce implies that without the documents in the June 20 Submission, IPC {[      ]} would not 'be fully documented with the inclusion of the relevant import and export lists that are needed in calculating the duty drawback adjustment.'"  *Id.* at 1272 n.6.  In sum, the Court anticipated in *Assan III* that the outcome of the remand with respect to acceptance or rejection of Assan's June 20 Submission could affect Commerce's ability to calculate a duty drawback adjustment.  As we have explained, the ability to calculate a duty drawback adjustment and eligibility for a duty drawback adjustment are intertwined.  Accordingly, Commerce complied with the Court's remand instructions when denying Assan a duty drawback adjustment.

Assan further contends that Commerce could apply some inferences in the record to replace the information that Assan should have provided pursuant to 19 U.S.C. § 1677e(a) relying on a prior Commerce determination.  *See* Assan Cmts. at 19-21 (citing *Aluminum Extrusions From the Republic of Türkiye*, 89 Fed. Reg. 80512 (Dep't Commerce Oct. 3, 2024)).

31

First, 19 C.F.R. § 351.401(b)(1) governs whether a party has provided sufficient information to warrant a particular adjustment; therefore, a finding that a party has not provided sufficient information to warrant a particular adjustment does not necessarily constitute a finding that there is a gap in the record within the meaning of 19 U.S.C. § 1677e(a) necessitating the use of facts otherwise available. Second, because *Aluminum Extrusions* was not raised before Commerce, the agency did not have an opportunity to explain potential differences in the calculations at issue.

Nevertheless, Commerce does explain why it needed the missing information and why it was unable to use projected values presented in the June 6 Submission to create an accurate calculation in the manner Assan suggests. *See* Third Remand Redetermination at 16-18. Additionally, *Aluminum Extrusions* is distinguishable because, in that situation, Commerce found that the respondent met both prongs of the *Saha Thai* test. *See Aluminum Extrusions* IDM at Comment 3 (finding that respondent, Erdoganlar, met the requirements of Commerce's two prong test). In this case, Commerce describes why the missing information prevented it from concluding that both prongs of its test under *Saha Thai* were met with respect to IPC [     ], Third Remand Redetermination at 16-17, and therefore permissibly declines to make an adjustment based on the cited calculability issues. *See e.g.*, *Zhejiang Sanmei Chemical Ind. Co., Ltd. v. United States*, 745 F. Supp. 3d 1356, 1372 (Ct. Int'l Trade 2024) ("The absence from the record of yield loss data provided reasonable grounds for Commerce to find that it could not determine, with accuracy, the volume of by-products generated during production of {anhydrous hydrofluoric acid}. That is, because there was no actual data on the record regarding yield loss for each of the raw materials that went into making {anhydrous hydrofluoric acid} . . . , Commerce reasonably found that it could not determine whether the quantities of the claimed by-

product offsets were accurate and, thus, could provide the basis for an accurate adjustment to normal value." (citing 19 C.F.R. § 351.401(b)(1)).

In the absence of sufficient record evidence to conduct a duty drawback calculation due to Assan's own omission, Commerce reasonably denies Assan a duty drawback adjustment consistent with 19 C.F.R. § 351.401(b)(1).

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's Third Remand Redetermination and enter final judgment in favor of the United States.

<div style="margin-left: 40%;">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

</div>

OF COUNSEL:
BRIEN STONEBREAKER
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

<div style="margin-left: 40%;">

/s/Rebecca T. Mitchell
REBECCA T. MITCHELL
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0467
E-mail: Rebecca.Mitchell@usdoj.gov

</div>

February 13, 2026                                    *Attorneys for Defendant*

PUBLIC VERSION

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(b)(1) of the Standard Chambers Procedures of this Court, that this brief contains 9,335 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Rebecca T. Mitchell</u>
REBECCA T. MITCHELL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 13, 2026, I caused the confidential version of the

foregoing brief filed by defendant, the United States, to be served electronically by the

Department of Justice's secured electronic file share service JEFS to the following parties:

Jessica R. DiPietro
Matthew M. Nolan
Christian L. Bush
ARENTFOX SCHIFF LLP
1717 K Street, N.W.
Washington, D.C. 200006

John M. Herrmann
Joshua R. Morey
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C. 200007

<u>/s/ Rebecca T. Mitchell</u>
REBECCA T. MITCHELL