NONCONFIDENTIAL

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ASSAN ALUMINYUM SANAYI VE TICARET A.S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) Consol. Court No. 21-00246 |
| | ) |
| and | ) |
| | ) |
| ALUMINUM ASSOCIATION COMMON ALLOY ALUMINUM SHEET TRADE ENFORCEMENT WORKING GROUP AND ITS INDIVIDUAL MEMBERS, ET AL., | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

**CONSOLIDATED PLAINTIFFS' RESPONSE TO ASSAN ALUMINYUM SANAYI VE TICARET A.S.'S COMMENTS ON THIRD REMAND REDETERMINATION**

JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
670 Maine Avenue, SW, Suite 600
Washington, DC 20024
(202) 342-8400

Counsel to Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and Its Individual Members, et al.

Dated: February 13, 2026

NONCONFIDENTIAL

# TABLE OF CONTENTS

Page

I.      COMMERCE LAWFULLY REJECTED ASSAN'S JUNE 20, 2024 SUBMISSION ..................................................................................................2

II.     COMMERCE CORRECTLY DETERMINED THAT ASSAN IS NOT ELIGIBILE FOR A DUTY DRAWBACK ADJUSTMENT FOR U.S. SALES ASSOCIATED WITH INWARD PROCESSING CERTIFICATE 7734......................................................................................................................4

        A.     Like All Favorable Adjustments, a Respondent Must Provide Information to Demonstrate the Amount and Nature of the Duty Drawback Adjustment ..................................................................................5

        B.     Evidence of a Closed IPC Is Necessary, But Not Sufficient, for Commerce to Grant a Duty Drawback Adjustment................................8

               1.     The Record Does Not Establish That IPC 7734 Meets the Two-Pronged Test for Duty Drawback Eligibility .....................8

               2.     The Record Does Not Establish That IPC 7734 Involved Imports Suitable to Produce Subject Merchandise ...................11

               3.     A Neutral Facts Available Adjustment Is Also Not Appropriate ...................................................................................13

III.    COMMERCE APPROPRIATELY CANCELLED VERIFICATION ............................16

IV.     THE RECORD DOES NOT SUPPORT A FINDING THAT THE GOVERNMENT OF TURKEY CLOSED IPC 7734 ......................................21

V.      CONCLUSION..................................................................................................23

**NONCONFIDENTIAL**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Allied Tube & Conduit Corp. v. United States</u>,
374 F. Supp. 2d 1257 (Ct. Int'l Trade 2005) ............................................................9

<u>Assan Aluminyum Sanayi ve Ticaret A.S. v. United States</u>,
701 F. Supp. 3d 1321 (Ct. Int'l Trade 2024) ("<u>Assan II</u>")......................................10

<u>Assan Aluminyum Sanayi ve Ticaret A.S. v. United States</u>,
789 F. Supp. 3d 1257 (Ct. Int'l Trade 2025) ("<u>Assan III</u>") .........................4, 5, 7, 15

<u>China Kingdom Imp. & Exp. Co. v. United States</u>
507 F. Supp. 2d 1337 (Ct. Int'l Trade 2007) ........................................................17

<u>Compañia Valenciana De Aluminio Baux, S.L.U. v. United States</u>,
CIT Ct. No. 23-00259, Slip Op. 25-127, 2025 Ct. Intl. Trade LEXIS 130
(Sept. 25, 2025) ..........................................................................................................6

<u>Essar Steel Ltd. v. United States</u>,
678 F.3d 1268 (Fed. Cir. 2012)................................................................................15

<u>Fujitsu Gen. v. United States</u>,
88 F.3d 1034 (Fed. Cir. 1996).....................................................................................6

<u>Guizhou Tyre Co. v. United States</u>,
523 F. Supp. 3d 1312 (Ct. Int'l Trade 2021) .........................................................17

<u>Hyundai Elec. & Energy Sys. Co. v. United States</u>,
466 F. Supp. 3d 1303 (Ct. Int'l Trade 2020), <u>aff'd</u>, 15 4th 1078 (Fed. Cir.
2021) ........................................................................................................................17

<u>ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States</u>,
654 F. Supp. 3d 1311 (Ct. Int'l Trade 2023) ...........................................................8

<u>Marsan Gida Sanayi ve Ticaret A.S. v. United States</u>
931 F. Supp. 2d 1258 (Ct. Int'l Trade 2013) ("<u>Marsan</u>") ...............................20, 21

<u>Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S.</u>,
861 F.3d 1269, 1272 (Fed. Cir. 2017) ("<u>Maverick Tube Corp.</u>") .........10, 11, 12, 14

<u>Mid Continent Steel & Wire, Inc. v. United States</u>,
586 F. Supp. 3d 1349 (Ct. Int'l Trade 2022), <u>aff'd</u>, Appeal No. 2023-1039,
2025 U.S. App. LEXIS 255 (Fed. Cir. Jan 7, 2025) ...............................................15

New Am. Keg v. United States,
  CIT Ct No. 20-00008, Slip Op. 24-129, 2024 Ct. Intl. Trade LEXIS 131 (Nov.
  25, 2024) ........................................................................................................16

NSK Ltd. v. United States,
  510 F.3d 1375 (Fed. Cir. 2008)...........................................................................6

Özdemir Boru San. ve Tic. Ltd. Sti. v. United States
  273 F. Supp. 3d 1225 (Ct. Int'l Trade 2017) ("Özdemir") ..............................20, 21

Pro-Team Coil Nail Enter. Inc. v. United States,
  587 F. Supp. 3d 1364 (Ct. Int'l Trade 2022), aff'd on other grounds,
  2024 U.S. App. LEXIS 20,591 (Fed. Cir. Aug. 15, 2024).....................................15

Pro-Team Coil Nail Enter., Inc. v. United States,
  Slip Op. No. 22-84, 2022 Ct. Intl. Trade LEXIS 83, 2022 WL 2783885 (CIT
  July 15, 2022), aff'd on other grounds, Appeal No. 2023-1039, 2025 U.S.
  App. LEXIS 255 (Fed. Cir. Jan. 7, 2025) ...........................................................16

Pt. Asia Pac. Fibers TBK v. United States,
  673 F. Supp. 3d 1320 (Ct. Int'l Trade 2023) .....................................................17

QVD Food Co. v. United States,
  658 F.3d 1318 (Fed. Cir. 2011)........................................................................7, 16

Saha Thai Steel Pipe (Public) Co. v. United States,
  635 F.3d 1335 (Fed. Cir. 2011)........................................................................9, 14

Samsung Elecs. Co. v. United States,
  70 F. Supp. 3d 1350 (Ct. Int'l Trade 2015) .......................................................17

Ta Chen Stainless Steel Pipe, Inc. v. United States,
  298 F.3d 1330 (Fed. Cir. 2002).........................................................................6

Torrington Co. v. United States,
  68 F.3d 1347 (Fed. Cir. 1995)..........................................................................18

Uttam Galva Steels Ltd. v. United States,
  997 F.3d 1192 (Fed. Cir. 2021).........................................................................7

Wuhu Fenglian Co. v. United States,
  899 F. Supp. 2d 1355 (Ct. Int'l Trade 2013) ......................................................6

## Statutes and Regulations

19 U.S.C. § 1677a(c)(1)(B).................................................................................10

NONCONFIDENTIAL

19 U.S.C. § 3512(d) ....................................................................................6

19 C.F.R. § 351.301(c)(1)(v) ....................................................................2, 3, 4

19 C.F.R. § 351.401(b) ................................................................................5

19 C.F.R. § 351.401(b)(1) ............................................................................7

**Legislative Authorities**

Statement of Administrative Action, Uruguay Round Agreements Act, H.R. Doc.
No. 316. Vol. 1, 103d Cong. 2d Sess. 656 (1994), reprinted in 1994
U.S.C.C.A.N. 4040 ..............................................................................6

**Administrative Determinations**

Large Power Transformers From the Republic of Korea,
84 Fed. Reg. 16,461 (Dep't Commerce Apr. 19, 2019) and accompanying
Issues and Decision Memorandum (Apr. 12, 2019), aff'd, Hyundai Elec. &
Energy Sys. Co., 466 F. Supp. 3d 1303 (Ct. Int'l Trade 2020), aff'd, 15 4th
1078 (Fed. Cir. 2021)..........................................................................19

Aluminum Extrusions From China, Colombia, Ecuador, India, Indonesia, Italy,
Malaysia, Mexico, South Korea, Taiwan, Thailand, Turkey, United Arab
Emirates, and Vietnam, 89 Fed. Reg. 92,720 (U.S. Int'l Trade Comm'n Nov.
22, 2024) ........................................................................................13

Aluminum Extrusions From the Republic of Türkiye:
Final Affirmative Determination of Sales at Less Than Fair Value,
89 Fed. Reg. 80,512 (Dep't Commerce Oct. 3, 2024) and accompanying
Issues and Decision Memorandum (Sept. 26, 2024) ("Aluminum Extrusions
Turkey IDM").............................................................................13, 14

Aluminum Wire and Cable From the People's Republic of China:
Final Affirmative Determination of Sales at Less Than Fair Value,
84 Fed. Reg. 58,134 (Dep't Commerce Oct. 30, 2019) and accompanying
Issues and Decision Memorandum (Oct. 18, 2019).....................................19

Certain Aluminum Foil From the Republic of Türkiye:
Final Results of Antidumping Duty Administrative Review; 2021–2022,
89 Fed. Reg. 48,889 (Dep't Commerce June 10, 2024) and accompanying
Issues and Decision Memorandum (June 5, 2024) .....................................10

Certain Aluminum Foil From the Republic of Turkiye:
Final Results of Antidumping Duty Administrative Review; 2022–2023,
90 Fed. Reg. 21,896 (May 22, 2025) and accompanying Issues and Decision
Memorandum (May 16, 2025). .............................................................22

**NONCONFIDENTIAL**

Final Results Of Third Redetermination Pursuant To Court Remand:
   Assan Aluminyum Sanayi ve Ticaret A.S. v. United States,
   Consol. Court No. 21-00246 (Dep't Commerce Sept. 9, 2025) ("3rd Remand
   Results").................................................................................................................. *passim*

Low Melt Polyester Staple Fiber From the Republic of Korea:
   Final Determination of Sales at Less Than Fair Value and Final Affirmative
   Determination of Critical Circumstances, in Part,
   83 Fed. Reg. 29,094 (Dep't Commerce Jun. 22, 2018) and accompanying
   Issues and Decision Memorandum (June 18, 2018) ("Low Melt Korea IDM") .................9, 11

Monosodium Glutamate From the Republic of Indonesia:
   Final Determination of Sales at Less Than Fair Value,
   79 Fed. Reg. 58,329 (Dep't Commerce Sept. 29, 2014) and accompanying
   Issues and Decision Memorandum (Sept. 22, 2014) ................................................6

Polyethylene Terephthalate Resin From Indonesia:
   Final Determination of Sales at Less Than Fair Value, and Final Affirmative
   Determination of Critical Circumstances, in Part, 83 Fed. Reg. 48,278 (Dep't
   Commerce Sept. 24, 2018) and accompanying Issues and Decision
   Memorandum (Sept. 17, 2018) ...............................................................................19

Steel Concrete Reinforcing Bar From the Republic of Turkey:
   Final Results of Antidumping Duty Administrative Review and Final
   Determination of No-Shipments; 2019-2020, 87 Fed. Reg. 7,118 (Dep't
   Commerce Feb. 8, 2022) and accompanying Issues and Decision
   Memorandum (Feb. 2, 2022) ...................................................................................9

NONCONFIDENTIAL

## CONSOLIDATED PLAINTIFFS' RESPONSE TO ASSAN ALUMINYUM SANAYI VE TICARET A.S.'S COMMENTS ON THIRD REMAND REDETERMINATION

These comments, filed on behalf of the Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members, Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc. (collectively, "Consolidated Plaintiffs"), respond to comments filed on behalf of Assan Aluminyum Sanayi ve Ticaret A.S. ("Assan"). See Pl.'s Comments in Opposition to the Third Remand Redetermination (Oct. 9, 2025) (ECF No. 162) (hereinafter, "Assan's Cmts."). For the reasons set forth below the Court should affirm the Department of Commerce's ("Commerce") Final Results Of Third Redetermination Pursuant To Court Remand: Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, Consol. Court No. 21-00246 (Dep't Commerce Sept. 9, 2025) (3rd Remand CR 18) (3rd Remand PR 10)[1] (ECF No. 158) ("3rd Remand Results"). If the Court instead orders a further remand, the Court should order Commerce to reconsider its conclusion that the record supports a finding that the Government of Turkey ("GOT") has closed IPC 7734. See Consol. Pl.'s Comments on the Third Remand Redetermination (Oct. 9, 2025) (ECF No. 161) (hereinafter, "Consol. Pl.'s Cmts.").

---

[1] Documents in the administrative record compiled in connection with the 3rd Remand Results are cited using the descriptions in the Index to the Administrative Record, filed with this Court on September 22, 2025 (ECF No. 160). Documents are cited by their confidential record number ("3rd Remand CR __") and/or their public record number ("3rd Remand PR __"), as appropriate. Additionally, documents in the administrative record compiled in connection with the 2nd Remand Results are cited using the descriptions in the Index to the Administrative Record, filed with this Court on August 14, 2024 (ECF No. 123). Documents are cited by their confidential record number ("2nd Remand CR __") and/or their public record number ("2nd Remand PR __"), as appropriate.

NONCONFIDENTIAL

As an initial matter, Consolidated Plaintiffs remind the Court that: (1) Inward Processing Certificate ("IPC") 7734 was not closed until after Commerce's investigation was completed and the antidumping duty order on imports of common alloy aluminum sheet ("CAAS") was published; and (2) information supporting such closure only surfaced because Commerce reopened the record during a remand segment. Assan's claims of prejudice, and that the interest of finality weighs in its favor, are wrong. When Consolidated Plaintiffs filed a petition alleging sales at less-than-fair-value by Assan and other foreign producers, and material injury by reason of those unfairly-traded imports, it expected Commerce to reach a determination based on the record developed during the investigation, not based on evidence that surfaced only due to the pendency of litigation and activities and government actions that were taken long after Commerce's investigation was completed. As a result, Assan has not been prejudiced by Commerce's denial of a duty drawback adjustment based on IPC 7734, and the interests of finality strongly support affirming Commerce's 3rd Remand Results. Commerce's 3rd Remand Results are also supported by substantial evidence and otherwise lawful, as explained below.

## I.     COMMERCE LAWFULLY REJECTED ASSAN'S JUNE 20, 2024 SUBMISSION

On June 6, 2024, Assan responded to a questionnaire Commerce issued during the second remand proceeding. See 3rd Remand Results at 4. On June 13, 2024, Petitioners submitted comments addressing Assan's questionnaire response, which included rebuttal factual information pursuant to 19 C.F.R. § 351.301(c)(1)(v). See id. at 4-5 (citing Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts on Assan Supp QR (June 13, 2024) (hereinafter, "Petitioners' June 13 Submission") (2nd Remand CR 8) (2nd Remand PR 5)). On June 20, 2024, Assan submitted new factual information concerning IPC 7734, which it characterized as surrebuttal factual information pursuant to 19 C.F.R.

§ 351.301(c)(1)(v).  See id. at 5.  In its third remand redetermination, Commerce "determined that Assan's June 20{, 2024} Submission did not constitute timely factual information submitted to rebut, clarify, or correct information placed on the record by another interested party," and instead "represented an untimely effort by Assan to supplement its own prior {June 6, 2024} questionnaire response."  Id. at 6-7.  Assan disagrees, arguing that its June 20, 2024 submission, in accordance with 19 C.F.R. § 351.301(c)(1)(v), "rebutt{ed} Petitioners' challenge of the closure, beginning, and ending date of IPC 7734."  Assan's Cmts. at 30-31.  As explained further below, Assan is wrong and this Court should affirm Commerce's rejection of Assan's June 20, 2024 submission.

While the relevant regulation provided Assan with an opportunity to submit surrebuttal factual information by or on June 20, 2024, such new factual information must have "rebut{ted}, clarif{ied}, or correct{ed} *factual information submitted in*" Petitioners' June 13, 2024 submission.  19 C.F.R. § 351.301(c)(1)(v) (emphasis added).  In their June 13, 2024 submission, Petitioners argued that the information concerning IPC 7734 in Assan's June 6, 2024 questionnaire response is insufficient to justify a drawback adjustment for this IPC.  See Petitioners' June 13 Submission at 5-8 (2nd Remand CR 8) (2nd Remand PR 5).  Crucially, Petitioners did not submit any *factual information* concerning IPC 7734, but merely submitted *arguments* about factual information already on the record concerning this IPC.  See id.[2] Because Petitioners' June 13, 2024 submission contained no new *factual information*

---

[2]    Petitioners' June 13, 2024 submission contained new factual information concerning (1) Assan's descriptions of the duty drawback regime in Turkey, the different types of IPCs, and its methodology for calculating a per-unit duty drawback adjustment in a different proceeding, and (2) the English translation of a Turkish phrase.  Petitioners' submission, however, did not include information concerning IPC 7734.  See Petitioners' June 13 Submission at Atts. 1-3 (2nd Remand CR 8) (2nd Remand PR 5).

NONCONFIDENTIAL

concerning IPC 7734, Assan was not entitled to an opportunity to submit new factual information concerning this IPC as surrebuttal on June 20, 2024. <u>See</u> 19 C.F.R. § 351.301(c)(1)(v).

In arguing otherwise, Assan attempts to conflate Petitioners' submission of new factual information with Petitioners' submission of arguments about factual information already on the record. <u>See</u> Assan's Cmts. at 30-31. Commerce's regulation, however, permitted Assan to submit new factual information *only* in response to the former. <u>See</u> 19 C.F.R. § 351.301(c)(1)(v). It did not permit Assan to submit new factual information to rebut Petitioners' *arguments* about the insufficiency of information already on the record, as this Court has already held. <u>See</u> <u>Assan Aluminyum Sanayi ve Ticaret A.S. v. United States</u>, 789 F. Supp. 3d 1257, 1271 (Ct. Int'l Trade 2025) ("Assan was not entitled to get around {Commerce's deadline} by exploiting the Association's attempt to enforce it.") (hereinafter, "<u>Assan III</u>"). Because Assan's June 20, 2024 submission "was not a true rebuttal to the Association's rebuttal" (<u>id.</u> at 20), this Court should affirm Commerce's determination to reject it.

II.    <u>COMMERCE CORRECTLY DETERMINED THAT ASSAN IS NOT ELIGIBILE FOR A DUTY DRAWBACK ADJUSTMENT FOR U.S. SALES ASSOCIATED WITH INWARD PROCESSING CERTIFICATE 7734</u>

Having rejected Assan's June 20, 2024 submission, Commerce correctly denied a duty drawback adjustment for Assan's sales associated with IPC 7734. <u>See</u> 3rd Remand Results at 19. Assan contends that Commerce's redetermination exceeded the Court's remand order because the Court did not instruct Commerce to perform any recalculation of the drawback adjustment. <u>See</u> Assan's Cmts. at 16-17. Commerce, however, performed no recalculation of any drawback adjustment. Instead, Commerce found that "the record does not contain sufficient information to find that Assan is eligible for a duty drawback adjustment regarding IPC" 7734 and,

NONCONFIDENTIAL

consequently, Commerce denied a drawback adjustment for Assan's sales associated with this IPC. See 3rd Remand Results at 2, 10, 19. Commerce's redetermination, therefore, falls squarely within this Court's remand order, which ordered Commerce "to redetermine Assan's eligibility for a duty drawback based on IPC" 7734. Assan III, 789 F. Supp. 3d at 1274.[3]

As explained further below, Commerce's conclusion about Assan's ineligibility for a duty drawback adjustment in relation to IPC 7734 is correct because the record contains neither the information necessary for Commerce to conduct the agency's two-pronged test, nor the information necessary for the agency to calculate a per-unit drawback adjustment for IPC 7734.

A.  **Like All Favorable Adjustments, a Respondent Must Provide Information to Demonstrate the Amount and Nature of the Duty Drawback Adjustment**

Commerce determined that Assan is not eligible for a duty drawback adjustment related to IPC 7734, in part, because "the record does not contain the information necessary to calculate a per-unit duty drawback adjustment for IPC" 7734. 3rd Remand Results at 15. Assan argues that Commerce's ability to calculate an adjustment is not a prerequisite for duty drawback eligibility. See Assan's Cmts. at 11-12. Assan's argument, however, is contrary to Commerce's regulations, Congressional intent, and this Court's and the U.S. Court of Appeals for the Federal Circuit's ("CAFC") precedent.

Commerce's regulations state that in making adjustments:

> {t}he interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of the Secretary **the amount** and nature of a particular adjustment . . .

---

[3]  The Court referred to IPC 7734 as IPC *β*. Assan has confirmed that it "no longer considers its IPC numbers to be business proprietary information ("BPI") and waives any designation of this information as confidential." Assan Cmts. at 2 n.1.

NONCONFIDENTIAL

19 C.F.R. § 351.401(b) (emphasis added).[4]

The Statement of Administrative Action[5] similarly provides that "as with all adjustments which benefit a responding firm, the respondent must demonstrate the appropriateness of such adjustment." Statement of Administrative Action, Uruguay Round Agreements Act, H.R. Doc. No. 316. Vol. 1, 103d Cong. 2d Sess. 656 (1994) at 829, reprinted in 1994 U.S.C.C.A.N. 4040, 4167-68. The CIT and the CAFC have also repeatedly sustained Commerce's rejection of an adjustment based on a respondent's failure to demonstrate the amount or nature of the adjustment. See, e.g., Fujitsu Gen. v. United States, 88 F.3d 1034, 1040 (Fed. Cir. 1996) ("Commerce has reasonably placed the burden to establish entitlement to adjustments on {the respondent}, the party seeking the adjustment and the party with access to the necessary information").[6] Thus, Commerce's denial of an adjustment on the basis that "the record does not contain the values necessary to calculate or allocate a duty drawback adjustment for IPC" 7734 "to the reported sales" (3rd Remand Results at 10) is consistent with Commerce's regulations,

---

[4]    Indeed, Commerce has previously invoked this regulation to deny a duty drawback adjustment. See, e.g., Monosodium Glutamate From the Republic of Indonesia: Final Determination of Sales at Less Than Fair Value, 79 Fed. Reg. 58,329 (Dep't Commerce Sept. 29, 2014), and accompanying Issues and Decision Memorandum at 8 n.28 (Sept. 22, 2014).

[5]    The Statement of Administrative Action is the authoritative interpretation of the statute and reflects congressional intent. See 19 U.S.C. § 3512(d); Compañia Valenciana De Aluminio Baux, S.L.U. v. United States, CIT Ct. No. 23-00259, Slip Op. 25-127 at 9, 2025 Ct. Intl. Trade LEXIS 130, at *10 (Sept. 25, 2025).

[6]    See also NSK Ltd. v. United States, 510 F.3d 1375, 1382 (Fed. Cir. 2008) ("{T}he party seeking a billing adjustment has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment.") (citing (19 C.F.R. § 351.401(b)(1)); Wuhu Fenglian Co. v. United States, 899 F. Supp. 2d 1355, 1364-65 (Ct. Int'l Trade 2013) ("{I}t is Plaintiffs - not Commerce - who bear the burden of creating a record of relevant data in a timely fashion. . . . Plaintiffs cite no authority that would oblige Commerce to gather, on behalf of Plaintiffs, information for the record to ensure that Commerce has a complete understanding of the methodology behind Plaintiffs' submitted data. Nor is the Court aware of any such authority.") (emphasis in original) (citations omitted); Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1336 (Fed. Cir. 2002).

**NONCONFIDENTIAL**

court precedent, and Congressional intent that a respondent is not eligible for a favorable adjustment to U.S. price unless it has furnished the factual information necessary to establish the amount of that adjustment.

Assan failed to submit the information necessary to calculate a per-unit drawback adjustment for IPC 7734 in a timely manner. Moreover, Assan has withheld any explanation for this failure. See generally Assan's Cmts.; see also Assan III, 789 F. Supp. 3d at 1271 ("Assan did not (and does not) explain why it did not submit documents establishing IPC $\beta$'s closure as part of its June 6 Response.").

Assan relies on Uttam Galva Steels Ltd. v. United States[7] in arguing that Commerce erred in failing to grant it a drawback adjustment "'based on the full extent of the duty drawback'" associated with IPC 7734. Assan's Cmts. at 12, 31. Yet, it was *Assan* itself that forestalled such an adjustment by withholding the information necessary to calculate the amount of drawback associated with this IPC. See Assan III, 789 F. Supp. 3d at 1271 ("{I}f any party bore the burden of forestalling Commerce's disregard of this information, that party was Assan.") (citing QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011)). Accordingly, pursuant to 19 C.F.R. § 351.401(b)(1), by failing to submit information necessary to establish the amount of the per-unit duty drawback adjustment associated with IPC 7734 in a timely manner, Assan is not eligible for a duty drawback adjustment on sales associated with this IPC. See also Assan III, 789 F. Supp. 3d at 1272 ("By Commerce's own description, adjustments can be applied to entries made under 'IPCs that close outside the . . . period of review {only} where evidence shows that during the course of a proceeding, the IPC closure has been fully documented and *the*

---

[7]    997 F.3d 1192, 1197 (Fed. Cir. 2021).

NONCONFIDENTIAL

*relevant information is available to calculate a duty drawback adjustment*.'"") (emphasis added) (citation omitted).

### B.    Evidence of a Closed IPC Is Necessary, But Not Sufficient, for Commerce to Grant a Duty Drawback Adjustment

Assan argues that "IPC 7734 is 'entitled' to or 'eligible' for a drawback adjustment because Commerce determined that it closed."  Assan's Cmts. at 11; see also id. at 18 ("{H}aving found that the IPCs were closed, a duty drawback adjustment was appropriate."). Consolidated Plaintiffs agree that ICDAS Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States[8] holds that the Government of Turkey must have closed an IPC for a respondent to be eligible for a duty drawback adjustment related to that IPC.  See Assan's Cmts. at 12.  While evidence that an IPC is closed is necessary to demonstrate duty drawback eligibility, it is not sufficient.  To the contrary, as explained below, even assuming IPC 7734 is closed, Assan is not eligible for a duty drawback adjustment related to this IPC because the record does not establish that the IPC: (1) satisfies the two-pronged test for duty drawback eligibility, or (2) was associated with imported inputs that can be used in the production of subject merchandise. Assan's assertion that a neutral facts available adjustment was appropriate under these circumstances is also wrong.

### 1.    The Record Does Not Establish That IPC 7734 Meets the Two-Pronged Test for Duty Drawback Eligibility

Commerce employs a two-pronged test to determine duty drawback eligibility, which requires that:

> 1) the import duty paid and the rebate payment are directly linked to, and dependent upon, one another (or the exemption from import

---

[8]    654 F. Supp. 3d 1311 (Ct. Int'l Trade 2023).

duties is linked to the exportation of subject merchandise), and 2) that there were sufficient imports of the imported raw material to account for the drawback received upon the exports of the subject merchandise.

Low Melt Polyester Staple Fiber From the Republic of Korea: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part, 83 Fed. Reg. 29,094 (Dep't Commerce Jun. 22, 2018), and accompanying Issues and Decision Memorandum at 18 (Comment 3) (June 18, 2018) (hereinafter, "Low Melt Korea IDM").  Both the CIT and the U.S. Court of Appeals for the Federal Circuit have sustained Commerce's use of this test.  See, e.g., Allied Tube & Conduit Corp. v. United States, 374 F. Supp. 2d 1257 (Ct. Int'l Trade 2005); Saha Thai Steel Pipe (Public) Co. v. United States, 635 F.3d 1335, 1340-41 (Fed. Cir. 2011) (hereinafter, "Saha Thai").

In its remand redetermination, Commerce found that "{b}ecause the record does not contain the quantity of actual imports under IPC" 7734 "or the associated exempted duties, Commerce cannot confirm whether sufficient imports existed to support the claimed drawback," meaning IPC 7734 "fails both prongs of the test."  3rd Remand Results at 18.  In response, Assan contends that participating in the Turkish Inward Processing Regime ("IPR") automatically satisfies Commerce's two-pronged test.  See Assan's Cmts. at 13-14.  The case on which Assan relies, however, states that "under the Turkish drawback program, a company *can* meet the two-prong test."  Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No-Shipments; 2019-2020, 87 Fed. Reg. 7,118 (Dep't Commerce Feb. 8, 2022), and accompanying Issues and Decision Memorandum at 18 (Feb. 2, 2022) (emphasis added).  Thus, contrary to its

NONCONFIDENTIAL

characterization, Assan's operating within the Turkish IPR implies only that it has the **potential** to meet the two-pronged test, not that it is guaranteed to meet that test.

     For example, the statute requires

> the price used to establish export price and constructed export price shall be . . . increased by . . . the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States.

19 U.S.C. § 1677a(c)(1)(B).  However, as this Court and Commerce have acknowledged, IPCs may include sales exported to destinations other than the United States and/or exports of non-subject merchandise, meaning that any import duty liability forgiven based on exports to countries other than the United States or exports of non-subject merchandise do not qualify for a drawback adjustment under the statute's plain language.  See, e.g., Assan Aluminyum Sanayi ve Ticaret A.S. v. United States, 701 F. Supp. 3d 1321, 1333 (Ct. Int'l Trade 2024) ("Assan II"); 2nd Remand Results at 6 (2nd Remand PR 16); Certain Aluminum Foil From the Republic of Türkiye: Final Results of Antidumping Duty Administrative Review; 2021–2022, 89 Fed. Reg. 48,889 (Dep't Commerce June 10, 2024), and accompanying Issues and Decision Memorandum at 8 (June 5, 2024) (explaining Commerce's revised duty drawback methodology that "captures exempted import duties associated only with exports of subject merchandise during the POR," because it "best meets the plain language of the statute and *the first prong of Commerce's two-prong test*, and it is consistent with judicial precedents") (emphasis added).  Further, as discussed below, imports may not be capable of being used to produce subject merchandise, an issue addressed by the CAFC in a case involving Turkey.  See Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S., 861 F.3d 1269, 1272 (Fed. Cir. 2017) (hereinafter, "Maverick Tube Corp.").

Here, "the record does not contain the quantity of actual imports under IPC" 7734 "or the associated exempted duties." 3rd Remand Results at 18.  As a result, if Commerce assigns Assan's U.S. sales related to IPC 7734 any non-zero amount of drawback, it would not be able to confirm whether IPC 7734 included "sufficient imports of the imported raw material to account for the drawback" assigned.  Low Melt Korea IDM at 18.  Accordingly, Commerce correctly determined that this IPC fails the two-pronged test.  See 3rd Remand Results at 18.  Further, as discussed directly below, Commerce determined that the record does not establish the inputs imported under IPC 7734 were capable of being used in the production of CAAS – a circumstance that further demonstrates satisfaction of the Turkish drawback system does not – standing alone – satisfy Commerce's two-pronged test.

### 2.  The Record Does Not Establish That IPC 7734 Involved Imports Suitable to Produce Subject Merchandise

Commerce additionally determined that Assan is ineligible for a duty drawback adjustment related to IPC 7734 because "{w}ithout a detailed list of actual imports or exports, customs duty rate and import and export ledgers for IPC" 7734 "reconciled to the U.S. sales database, Commerce cannot conclude that such imports were suitable for producing subject merchandise." 3rd Remand Results at 18.  Assan ignores this aspect of IPC 7734's ineligibility in its comments.  See generally Assan's Cmts.

In the administrative proceedings underlying Maverick Tube Corp. v. Toscelik Profil ve Sac Endustrisi A.S., Commerce determined that the Turkish respondent – Çayirova – "was not entitled to a duty drawback adjustment because none of the goods for which duties were exempted, i.e., the non-J55 coils, were capable of being used to produce Çayirova's oil country tubular goods {i.e., the subject merchandise}." Maverick Tube, 861 F.3d at 1272.  The CAFC

affirmed Commerce's determination, finding that "Commerce properly concluded that Çayirova was not entitled to a duty drawback for its oil country tubular goods." <u>Id.</u>, 861 F.3d at 1274. Accordingly, a respondent can be eligible for a duty drawback adjustment related to an IPC only if that IPC involved imports suitable for use in the production of the subject merchandise. <u>See also</u> Def.-Intervs' 56.2 Br. at 13-17, Nov. 22, 2021 (ECF No. 29); Def-Intervs.' Reply at 5-7, Mar. 2, 2022 (ECF No. 45). While Commerce cited to this CAFC decision in deeming IPC 7734 ineligible for a duty drawback adjustment (<u>see</u> 3rd Remand Results at 18 n.106), Assan failed to address this decision anywhere in its comments. <u>See generally</u> Assan's Cmts.

In sum, it is impossible to determine whether Assan's imports associated with IPC 7734 can be used in the production of subject merchandise, because the record does not contain "a detailed list of actual imports or exports, customs duty rate and import and export ledgers for IPC" 7734. 3rd Remand Results at 18. As a result, consistent with <u>Maverick Tube Corp.</u>, Commerce appropriately determined that IPC 7734 is ineligible for a duty drawback adjustment.[9]

---

[9]   In addition, contrary to Assan's claim that, because this Court found that "'the amount of exempted duties under an open IPC is zero,'" "{i}t stands to reason that the amount of exempted duties under an IPC Commerce determines is closed is a non-zero figure," the GOT issues two types of IPCs: (1) "suspension system" IPCs, which allow for exempted import duties, and (2) "drawback system" IPCs, which exempt only Value Added Tax ("VAT"), not import duties. <u>See</u> Assan's Cmts. at 18 (quoting <u>Assan II</u>, 701 F. Supp. 3d at 1328); Letter from Kelley Drye & Warren LLP to Sec of Commerce Pertaining to Petitioners Cmts on Assan Supp QR at 3-5, Atts. 1-2 (June 13, 2024) (2nd Remand CR 8) (2nd Remand PR 5). Without official closure documentation on the record, or any other documentation establishing that IPC 7734 is a "suspension system" IPC, it is not possible to determine that this IPC involved any duty drawback benefit. Accordingly, even if the GOT has closed IPC 7734, Assan is not eligible for a duty drawback adjustment associated with this IPC. <u>See</u> 3rd Remand Results, at 15 ("The initial questionnaire states IPC" 7734 "is categorized as being in the **[                    ]**, and provides no supporting documentation.") (citation omitted).

NONCONFIDENTIAL

### 3.    A Neutral Facts Available Adjustment Is Also Not Appropriate

Having determined that it cannot calculate a drawback adjustment for IPC 7734, and that the IPC is not otherwise eligible for a drawback adjustment, Commerce declined to assign any per-unit drawback adjustment to Assan's U.S. sales associated with this IPC.  See 3rd Remand Results at 19.  While Assan does not contest that Commerce cannot calculate a duty drawback adjustment for IPC 7734, Assan nonetheless argues that the agency should have assigned a per-unit drawback adjustment to U.S. sales associated with this IPC through some other means.  See Assan's Cmts. at 9.  As explained below, Assan's proposed alternative methodologies are unlawful and distortive.

First, Assan argues Commerce should apply neutral facts available by applying the per unit adjustment applicable to sales made pursuant to IPC 7905 to sales made pursuant to IPC 7734 – a method Assan asserts Commerce applied in Aluminum Extrusions From the Republic of Türkiye: Final Affirmative Determination of Sales at Less Than Fair Value, 89 Fed. Reg. 80,512 (Dep't Commerce Oct. 3, 2024), and accompanying Issues and Decision Memorandum at 11 (Sept. 26, 2024) (hereinafter, "Aluminum Extrusions Turkey IDM").  See Assan's Cmts. at 11.  The U.S. International Trade Commission reached a negative final determination in that proceeding, and Commerce did not publish an antidumping duty order, so this Court should place limited (if any) precedential value on the Commerce Department's determination, as it was not subject to judicial review.[10]  Furthermore, Assan has not identified any other instances of Commerce applying a neutral facts available methodology, and counsel for Consolidated

---

[10]    See Aluminum Extrusions From China, Colombia, Ecuador, India, Indonesia, Italy, Malaysia, Mexico, South Korea, Taiwan, Thailand, Turkey, United Arab Emirates, and Vietnam, 89 Fed. Reg. 92,720 (U.S. Int'l Trade Comm'n Nov. 22, 2024) (notice of negative final injury determination).

NONCONFIDENTIAL

Plaintiffs are not aware of any. As a result, and for the reasons already addressed, a reliance on neutral facts available is inconsistent with Commerce's regulations, the State of Administrative Action, and court precedent.

In addition, unlike in the proceedings on aluminum extrusions from Turkey, Commerce deemed IPC 7734 ineligible for a drawback adjustment in part due to the incalculability of that adjustment, based on the absence of record information demonstrating that the IPC: (1) meets the two-pronged test, and (2) involved imported inputs suitable for use in the production of subject merchandise. See 3rd Remand Results at 15, 17-18; see also supra sections II.B.1, II.B.2. These additional reasons for IPC 7734's ineligibility – that are independent of the calculability of an adjustment for this IPC – were not at issue in aluminum extrusions from Turkey. See Aluminum Extrusions Turkey IDM at 10-12. As they pertain to drawback eligibility criteria endorsed by the CAFC (see Saha Thai, 635 F.3d at 1340-41; Maverick Tube Corp., 861 F.3d at 1272-74), these two additional reasons can stand alone in justifying Commerce's denial of a duty drawback adjustment for Assan's U.S. sales associated with IPC 7734.

As this Court is uniquely situated to appreciate as a result of this litigation, no two IPCs are alike, including the types of inputs used to satisfy the IPC, the rates of import duties on those inputs, the types of merchandise exported to close the IPC, or the destinations of those exports. For all these reasons, relying on a neutral facts available approach that uses a per-unit adjustment calculated for IPC 7905 may reward Assan handsomely by granting the company a substantially larger adjustment than would be permissible under the statute, despite Assan's failure to build a record for the adjustment.

Second, Assan argues that Commerce could have assigned a per-unit drawback adjustment to U.S. sales related to IPC 7734 by (1) continuing to use Commerce's "calculation

NONCONFIDENTIAL

from the Second Remand Redetermination," or (2) "reopening the record." Assan's Cmts. at 9. Neither of these alternatives is lawful or appropriate. Commerce's calculation of the drawback adjustment for IPC 7734 in the second remand redetermination is derived entirely from Assan's untimely June 20, 2024 submission,[11] which Commerce has correctly rejected from the record. See 3rd Remand Results at 15. Accordingly, Commerce's calculation for IPC 7734 in the second remand redetermination lacks any supporting record evidence and, therefore, cannot be supported by substantial evidence.

In arguing that Commerce should have reopened the record, Assan attempts to shift its evidentiary burden onto Commerce. Here, Commerce had already re-opened the record during the second remand proceeding (see 3rd Remand Results at 4), but Assan failed to timely submit the required information for IPC 7734. See Assan III, 789 F. Supp. 3d at 1271. Assan is not entitled to any further opportunities to meet its evidentiary burden. Commerce has wide discretion in deciding whether to reopen the record on remand and what information to collect. See Essar Steel Ltd. v. United States, 678 F.3d 1268, 1278 (Fed. Cir. 2012) ("The decision to reopen the record is best left to the agency, in this case Commerce."); Pro-Team Coil Nail Enter. Inc. v. United States, 587 F. Supp. 3d 1364, 1374 (Ct. Int'l Trade 2022) ("Commerce retains significant discretion to determine whether to reopen the record on remand.") (citation omitted), aff'd on other grounds, 2024 U.S. App. LEXIS 20,591 (Fed. Cir. Aug. 15, 2024); Mid Continent

---

[11] See Data From USDOC To File Pertaining To Interested Parties Attachment 6: Calc Worksheet Assan Second Closed IPC (Aug. 1, 2024) (2nd Remand CR 33). Commerce did not include the details of this calculation in the PDF record, but only in an accompanying electronic Excel file, an excerpt of which Consolidated Plaintiffs previously submitted. See Consol. Pl.'s Response to Court's Questions, February 27, 2025 (ECF No. 145) at 4-5, Att. 1 (the second from last line of the worksheet establishes that the [

          ]).

NONCONFIDENTIAL

Steel & Wire, Inc. v. United States, 586 F. Supp. 3d 1349, 1359-60 (Ct. Int'l Trade 2022), aff'd, Appeal No. 2023-1039, 2025 U.S. App. LEXIS 255 at *8-9 (Fed. Cir. Jan 7, 2025).  Commerce's decision not to collect additional information in light of the burden on respondents to build a record, particularly when a favorable adjustment is involved, falls well within the agency's discretion.  See New Am. Keg v. United States, CIT Ct No. 20-00008, Slip Op. 24-129 at 5-6, 2024 Ct. Intl. Trade LEXIS 131 at *5 (Nov. 25, 2024) ("Ningbo Master is in the 'awkward position {of} argu{ing} that Commerce abused its discretion by not relying on evidence that {the company} itself failed to introduce into the record.' QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011). As 'the burden of creating an adequate record lies with interested parties and not with Commerce,' id. (cleaned up), the agency reasonably chose to rely on the record built by the parties, which permitted an accurate margin calculation.").  Nor should this Court require Commerce to reopen the record "simply based on a plaintiff's argument that better information is available."  Pro-Team Coil Nail Enter., Inc. v. United States, Slip Op. No. 22-84, 2022 Ct. Intl. Trade LEXIS 83, 2022 WL 2783885, at *8 (CIT July 15, 2022), aff'd on other grounds, Appeal No. 2023-1039, 2025 U.S. App. LEXIS 255 at *8-9 (Fed. Cir. Jan. 7, 2025).

### III.    COMMERCE APPROPRIATELY CANCELLED VERIFICATION

In the third remand proceeding, Commerce initially issued a verification agenda pertaining to Assan's duty drawback information, but subsequently withdrew the agenda and cancelled the verification it had scheduled.  See 3rd Remand Results at 25.  Commerce's issuance of the verification agenda and its cancellation of the verification all occurred within one week. See id.  Assan argues that Commerce abused its discretion by cancelling verification and that Assan was prejudiced by Commerce's decision.  See Assan's Cmts. at 21-30.  For the reasons explained below, this Court should reject Assan's claims.  Contrary to Assan's claims, Assan

was not prejudiced by Commerce's decision and Commerce reasonably explained why verification was not necessary.

First, the purpose of verification is "'to test information provided by a party for accuracy and completeness.'" Pt. Asia Pac. Fibers TBK v. United States, 673 F. Supp. 3d 1320, 1327 (Ct. Int'l Trade 2023) (citation omitted).   It is a spot check – "not intended to be an exhaustive examination of a respondent's business" (Samsung Elecs. Co. v. United States, 70 F. Supp. 3d 1350, 1359-60 (Ct. Int'l Trade 2015)) – nor "a forum for respondents to provide or for Commerce to accept or collect new factual information" (Guizhou Tyre Co. v. United States, 523 F. Supp. 3d 1312, 1350 (Ct. Int'l Trade 2021) (citation omitted)).   As Commerce correctly determined, the record does not contain the necessary information for the agency to determine if Assan is eligible for a drawback adjustment of sales made pursuant to IPC 7734.  Without such information available, a respondent can be prejudiced by the cancellation of verification only if Commerce rejects information the respondent submitted on the basis that the information is unverified or unverifiable.  For example, in Hyundai Elec. & Energy Sys. Co. v. United States, Commerce cancelled verification and assigned the respondent a margin on the basis of total adverse facts available ("AFA"), thereby discarding all the respondent's submitted information. See 466 F. Supp. 3d 1303, 1307-08 (Ct. Int'l Trade 2020), aff'd, 15 4th 1078, 1089 (Fed. Cir. 2021) ("Where necessary information is absent, Commerce need not conduct a verification in an attempt to obtain the missing information.") (citing AMS Assocs., Inc. v. United States, 719 F.3d 1376, 1380 (Fed. Cir. 2013)).  Similarly, in China Kingdom Imp. & Exp. Co. v. United States, Commerce's cancellation of verification was accompanied by its application of total AFA, whereby "Commerce rejected all data that China Kingdom and Yancheng had submitted during the administrative review in response to the Department's information requests."  507 F. Supp.

2d 1337, 1340 (Ct. Int'l Trade 2007).  In contrast, in the instant case, Assan has not identified any element of Commerce's calculations or any component of its decisions that depends on the rejection of information Assan submitted on the basis that such information is unverified or unverifiable.  See generally Assan's Cmts.  Commerce rejected only the information contained in Assan's June 20, 2024 submission, and the agency predicated that rejection on timeliness, not on whether the information has been verified.  See 3rd Remand Results on 4-7.  Because Commerce's cancellation of verification did not affect any part of its margin calculations, Assan's claim of harm is meritless.

Instead, the "great{} prejudice{}" Assan alleges seems to revolve around the inconvenience of Commerce's purportedly abrupt cancellation of verification and the "resources and personnel {Assan invested} preparing for {a} verification" that was ultimately cancelled.  Assan's Cmts. at 22, 24.  While the burden that was imposed on Assan is regrettable, it cannot be remedied by forcing Commerce to perform an unnecessary verification that would simply impose additional burdens on both Assan and Commerce.  Further, "there is no *per se* rule requiring Commerce to go through with scheduled verifications once it has announced an intention to conduct verifications in a particular case."  Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995).

Second, Assan admits it wants verification only so that it can exploit the verification procedures to supplement the record with untimely new factual information.  Specifically, Assan states that Commerce can "ensure Assan receives its entire drawback" associated with IPC 7734 by "conducting verification of the June 6 Submission."  Assan's Cmts. at 9.  Assan is even more explicit later in its comments, stating:

NONCONFIDENTIAL

> {T}he import export documents needed to calculate the duty drawback adjustment {for IPC 7734} are within the scope of the supporting documents Assan would be reasonably expected to provide at the verification.

Id. at 29.    That is, Assan considers verification an opportunity to resubmit the untimely information in its June 20, 2024 submission, which Commerce has correctly rejected from the record.  See 3rd Remand Results at 4-7.

Assan's objective for verification, however, is an abuse of Commerce's verification procedures.  As Commerce explained in the final results of the 2016-2017 administrative review of the antidumping duty order on Large Power Transformers From the Republic of Korea, "{t}he purpose of verification is to verify the explanations and information *already submitted*," meaning "{v}erification is not an appropriate forum in which to collect significant amounts of new explanation and information."  84 Fed. Reg. 16,461 (Dep't Commerce Apr. 19, 2019) and accompanying Issues and Decision Memorandum at 13 (Comment 1) (Apr. 12, 2019) (emphasis added), aff'd, Hyundai Elec. & Energy Sys. Co., 466 F. Supp. 3d at 1318 n.22, aff'd, 15 4th 1078, 1089-90 (Fed. Cir. 2021).[12]

---

[12]    See also Aluminum Wire and Cable From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, 84 Fed. Reg. 58,134 (Dep't Commerce Oct. 30, 2019), and accompanying Issues and Decision Memorandum at 21 (Comment 2b) (Oct. 18, 2019) ("{W}e emphasize that verification is not the appropriate place to collect new information which has been requested already, nor is it intended to resolve issues or argue for positions that should have been addressed in questionnaire responses. Rather, the purpose of verification is to confirm the accuracy of the information *already on the record* of the investigation.") (emphasis in original) (citations omitted); Polyethylene Terephthalate Resin From Indonesia: Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part, 83 Fed. Reg. 48,278 (Dep't Commerce Sept. 24, 2018), and accompanying Issues and Decision Memorandum at 17 (Comment 1) (Sept. 17, 2018) (stating that "the purpose of verification is to test the accuracy of the closed record, not to collect additional information for purposes of quantifying the extent of a respondent's mistakes, estimating accurate 'partial' facts available adjustments, or fixing a respondent's data on its behalf").

NONCONFIDENTIAL

The CIT has repeatedly affirmed that the purpose of verification is not to gather new factual information, but to test the accuracy information that has already been submitted to the Department. In <u>Özdemir Boru San. ve Tic. Ltd. Sti. v. United States</u>, the Court held that "{t}he purpose of verification is not to 'continue the information-gathering stage of {Commerce's} investigation,'" but instead is "'intended to test the accuracy of data already submitted.'" 273 F. Supp. 3d 1225, 1242 (Ct. Int'l Trade 2017) (citations omitted) (hereinafter, "<u>Özdemir</u>"). Likewise, in <u>Marsan Gida Sanayi ve Ticaret A.S. v. United States</u>, the Court held that "'{t}he purpose of verification is not to collect new information.'" 931 F. Supp. 2d 1258, 1280 (Ct. Int'l Trade 2013) (citation omitted) (hereinafter, "<u>Marsan</u>"). Accordingly, Assan's designs for verification – <u>i.e.</u>, to provide information it failed to submit in a timely manner as part of its June 6, 2024 questionnaire response in the second remand proceeding – would be an abuse of Commerce's verification procedures.

<u>Third</u>, and finally, Commerce reasonably explained why verification is unnecessary, stating:

> {A}fter reviewing the record, Commerce determined that only two categories of information were at issue: (1) information concerning IPC 7905, which was already verified during the investigation; and (2) information concerning IPC 7734, which is not being used in these final results of redetermination.

3rd Remand Results at 25. Commerce's reasoning is supported by substantial record evidence. Assan submitted information concerning IPC 7905 as part of Commerce's verification procedure during the investigation. <u>See</u> Response from Mayer Brown, LLP to Sec of Commerce Pertaining to Assan Verification QR at 5-7, Exh.V-6, Exh. V-7 (Dec. 21, 2020) (CR 373-382, PR 305). Thus, no further verification of IPC 7905 is necessary. Additionally, IPC 7734 is irrelevant because the record contains neither the information necessary to calculate a duty drawback

NONCONFIDENTIAL

adjustment for this IPC, nor the information necessary to determine Assan's eligibility to a drawback adjustment on U.S. sales associated with this IPC. See 3rd Remand Results at 15-19; supra Section II. Verification, moreover, is not the venue at which to start collecting the missing information for IPC 7734. See Özdemir, 273 F. Supp. 3d at 1242; Marsan, 931 F. Supp. 2d at 1280. Because IPC 7905 has already been verified, and as IPC 7734 lacks any relevant record information to verify, Commerce reasonably determined that verification is unnecessary.

Accordingly, for the above reasons, this Court should affirm Commerce's decision not to conduct verification.

## IV. THE RECORD DOES NOT SUPPORT A FINDING THAT THE GOVERNMENT OF TURKEY CLOSED IPC 7734

Assan argues that Commerce correctly determined that IPC 7734 is closed. See Assan's Cmts. at 13-16. Importantly, this IPC is ineligible for a drawback adjustment, *even assuming it is closed*. See supra Section II. As explained in Consolidated Plaintiffs' comments on Commerce's third remand redetermination, however, Commerce's conclusion that the Government of Turkey has closed IPC 7734 is not supported by substantial record evidence. See Consol. Pl.'s Cmts. None of the record evidence to which Commerce refers (see 3rd Remand Results at 8-9), and that Assan summarizes (see Assan's Cmts. at 14-15), establishes that the Government of Turkey has forgiven any duty liability associated with IPC 7734. See Consol. Pl.'s Cmts. at 3-5. Further, Commerce's determination that the Government of Turkey has closed IPC 7734, without Assan's having submitted an official closure letter from the Government of Turkey for this IPC, is a departure from administrative precedent, which Commerce has not adequately explained. See id. at 5-7. While Assan claims that Commerce does not require such closure letters, it fails to provide any precedent for this claim. See Assan's

NONCONFIDENTIAL

Cmts. at 14 n.4.  In contrast, Consolidated Plaintiffs have identified overwhelming administrative precedent demonstrating that Commerce's consistent practice is to require official closure letters from the Government of Turkey to demonstrate closure.  See Consol. Pl.'s Cmts. at 5-6.[13]

However, if this Court affirms the Department's denial a duty drawback adjustment for Assan's sales associated with IPC 7734, the Court should consider the agency's conclusion about IPC 7734's closure to be harmless error and affirm the 3rd Remand Results.  See Consol. Pl.'s Cmts. at 2, 7.

---

[13]    Citing, e.g., Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No-Shipments; 2019-2020, 87 Fed. Reg. 7,118 (Dep't Commerce Feb. 8, 2022), and accompanying Issues and Decision Memorandum at 14 (Feb. 2, 2022); Certain Aluminum Foil From the Republic of Turkiye: Final Results of Antidumping Duty Administrative Review; 2022–2023, 90 Fed. Reg. 21,896 (May 22, 2025), and accompanying Issues and Decision Memorandum at 18 (May 16, 2025).

NONCONFIDENTIAL

## V.    **CONCLUSION**

For the reasons set forth above, the Court should affirm Commerce's 3<u>rd</u> <u>Remand Results</u>.

Alternatively, if the Court remands the 3<u>rd</u> <u>Remand Results,</u> the Court should order Commerce to

reconsider its conclusion that the record supports a finding that the Government of Turkey has

closed IPC 7734. <u>See</u> Consol. Pl.'s Cmts.

> Respectfully submitted,
>
> <u>/s/ John M. Herrmann</u>
> JOHN M. HERRMANN
> PAUL C. ROSENTHAL
> JOSHUA R. MOREY
> KELLEY DRYE & WARREN LLP
> 670 Maine Avenue, SW, Suite 600
> Washington, DC  20024
> (202) 342-8400
>
> Counsel to Consolidated Plaintiffs

Dated:  February 13, 2026

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to the U.S. Court of International Trade's ("CIT") decision in <u>Assan Aluminyum Sanayi ve Ticaret A.S. v. United States</u>, Slip Op. 25-63 dated May 21, 2025 (ECF No. 152) and the Court of International Trade Standard Chambers Procedures Rule 2(B)(1)(b) (limiting "cumulative" remand submissions to not exceed 10,000 words), the undersigned counsel to Aluminum Association Common Alloy Aluminum Sheet Trade Enforcement Working Group and its individual members, Aleris Rolled Products, Inc.; Arconic Corporation; Commonwealth Rolled Products Inc.; Constellium Rolled Products Ravenswood, LLC; JW Aluminum Company; Novelis Corporation; and Texarkana Aluminum, Inc. (collectively, "Consolidated Plaintiffs"), certifies that the combined total word count of its October 9, 2025 Comments on Commerce's Third Remand Redetermination (ECF No. 161) (2,157 words) and its February 13, 2026 Response to comments on Commerce's Third Remand Redetermination filed today (6,957 words) is less than 10,000 (totaling 9,114 words) including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft Enterprise – 365.

Respectfully submitted,

/s/ John M. Herrmann
JOHN M. HERRMANN
PAUL C. ROSENTHAL
JOSHUA R. MOREY
KELLEY DRYE & WARREN LLP
670 Maine Avenue, SW, Suite 600
Washington, DC  20024
(202) 342-8400

Counsel to Consolidated Plaintiffs

Dated:  February 13, 2026